KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Case No. 3:25-cv-09757-MMC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:       January 9, 2026
Time:       9:00 a.m.
Dept.:      Ctrm 7 – 19th Floor
Judge:      Hon. Maxine M. Chesney

1    U.S. IMMIGRATION AND CUSTOMS                Date Filed:  November 12, 2025
     ENFORCEMENT; TODD M. LYONS,
2    Acting Director, U.S. Immigration and
     Customs Enforcement; SERGIO
3    ALBARRAN, Acting Director of San
     Francisco Field Office, Enforcement and
4    Removal Operations, U.S. Immigration and
     Customs Enforcement; U.S. DEPARTMENT
5    OF HOMELAND SECURITY; KRISTI
     NOEM, Secretary, U.S. Department of
6    Homeland Security,

7            Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 9, 2026, at 9:00 a.m., or as soon as this matter may be heard, in the Courtroom of the Honorable Judge Maxine M. Chesney at the Northern District of California, Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia, on behalf of themselves and all others similarly situated, hereby move the Court for an entry of an Order:

1. Certifying that this action is maintainable as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2);

2. Certifying a Plaintiff Class (the "Class") consisting of: "All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility ("California City").";

3. Certifying Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia as representatives of the Class;

4. Certifying a Plaintiff Subclass (the "Subclass") consisting of: "All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility ("California City") who have disabilities within the meaning of the Rehabilitation Act.";

5. Certifying Plaintiffs Jose Ruiz Canizales and Sokhean Keo as representatives of the Subclass;

6. Appointing Plaintiffs' counsel of record as Class Counsel for the Class and Subclass; and

7. Directing the parties, pursuant to Rule 23(c)(2)(A), to confer and submit a proposed notice to the Class and Subclass, and the proposed method of distribution of that notice, within 30 days of the order certifying the Class and Subclass.

This Motion is based on:

1. Plaintiffs' Amended Complaint (Doc. 15);

2. This Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities;

3. The concurrently filed Declarations of Margot Mendelson ("PLO Decl."), Steven Ragland ("KVP Decl."), Kyle Virgien ("ACLU Decl."), and Mariel Villarreal ("CCIJ Decl."), and any exhibits filed thereto;

4. The sworn Declarations of Plaintiffs, detained individuals, and immigration attorneys filed with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; and

5. Such other oral or documentary evidence as may be presented at or prior to the hearing of this Motion.

Dated: December 1, 2025

Respectfully submitted,

/s/ *Steven P. Ragland*
KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND
CODY S. HARRIS
CARLOS C. MARTINEZ

CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE
PRIYA ARVIND PATEL
MARIEL VILLARREAL

/s/ *Margot Mendelson*
PRISON LAW OFFICE
TESS BORDEN
MARGOT MENDELSON
PATRICK BOOTH
ALISON HARDY
RANA ANABTAWI

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
KYLE VIRGIEN
FELIPE HERNANDEZ
MARISOL DOMINGUEZ-RUIZ
CARMEN IGUINA GONZALEZ

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS .........................................................................................2

    A.      The Incarceration of Immigrants and their Conditions of Confinement at
California City ....................................................................................................2

    B.      The Named Plaintiffs ........................................................................................5

III.    LEGAL STANDARD ...............................................................................................6

IV.     ARGUMENT .............................................................................................................7

    A.      Plaintiffs Satisfy the Requirements of Rule 23(a). ...........................................7

        1.      The Class Is So Large and Fluid that Joinder is Impracticable..................7

        2.      The Challenged Conditions Present Common Questions of Fact and
Law. ..........................................................................................................9

        3.      Named Plaintiffs' Claims Are Typical of Those of the Putative
Class and Subclass. .................................................................................14

        4.      Named Plaintiffs and Class Counsel Will Fairly and Adequately
Represent Interests of the Class. .............................................................14

    B.      Class Certification is Appropriate under Rule 23(b)(1) and (2). ......................16

        1.      The Court May Certify a Rule 23(b)(2) Class Because Defendants
Have Acted on Grounds Generally Applicable to the Class and
Subclass, and Declaratory and Injunctive Relief is Appropriate. .............16

        2.      Alternatively, the Court May Certify a Rule 23(b)(1) Class Because
Separate Lawsuits by Each Class and Subclass Member Would
Create a Risk of Incompatible Standards of Conduct by Defendants........17

    C.      While Ascertainability Inquiries are Inapplicable to Classes Certified under
Rule 23(b)(2), the Class and Subclass are Ascertainable. .....................................18

V.      CONCLUSION.........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alcantara v. Archambeault*,
  613 F. Supp. 3d 1337 (S.D. Cal. 2020)................................................................7

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................16

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ......................................................................9, 13, 14

*Ashker v. Governor of California*,
  2014 WL 2465191 (N.D. Cal. June 2, 2014) .....................................................17

*Brown v. Plata*,
  563 U.S. 493 (2011)..............................................................................................11

*California Coal. for Women Prisoners v. United States*,
  723 F. Supp. 3d 712 (N.D. Cal. 2024) ................................................................7

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
  317 F.R.D. 91 (N.D. Cal. 2016)............................................................................8

*Coleman v. Wilson*,
  912 F. Supp. 1282 (E.D. Cal. 1995).................................................................8, 17

*Gray v. County of Riverside*,
  2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ....................................................17

*Gray v. Golden Gate Nat'l Recreational Area*,
  279 F.R.D. 501 (N.D. Cal. 2011)........................................................................16

*Greater L.A. Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*,
  2014 WL 12561074 (C.D. Cal. May 6, 2014) ...................................................19

*Hernandez Roman v. Wolf*,
  2020 WL 3869729 (C.D. Cal. Apr. 23, 2020) ................................................7, 19

*Hernandez v. Cnty. Of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015)..................................................................8, 9, 15

*Hernandez v. Lynch*,
  2016 WL 7116611 (C.D. Cal. Nov. 10, 2016)....................................................18

*Inland Empire-Immigrant Youth Collective v. Nielsen*,
  2018 WL 1061408 (C.D. Cal. Feb. 26, 2018)...............................................18, 19

ii

*Jane Doe 1 v. Nielsen*,
    357 F. Supp. 3d 972 (N.D. Cal. 2018) ...................................................................15

*Keegan v. Am. Honda Motor Co., Inc.*,
    284 F.R.D. 504 (C.D. Cal. 2012) .........................................................................18

*Kincaid v. City of Fresno*,
    244 F.R.D. 597 (E.D. Cal. 2007) ...........................................................................8

*L.H. v. Schwarzenegger*,
    2007 WL 662463 (E.D. Cal. Feb. 28, 2007) .........................................................13

*Mateo v. M/S Kiso*,
    805 F. Supp. 761 (N.D. Cal. 1991) ......................................................................15

*McDonald v. Heckler*,
    612 F. Supp. 293 (D. Mass. 1985) .........................................................................8

*O'Connor v. Boeing N. Am.*,
    184 F.R.D. 311 (C.D. Cal. 1998) .........................................................................15

*Pappas v. D.C.*,
    2024 WL 1111298 (D.D.C. Mar. 14, 2024) ...........................................................8

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .......................................................................*passim*

*Pierce v. Cnty. of Orange*,
    2003 WL 27387077 (C.D. Cal. Oct. 15, 2003) .....................................................13

*Robinson v. Labrador*,
    747 F. Supp. 3d 1331 (D. Idaho 2024) ...................................................................7

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ........................................................................14, 16

*Siddiqi v. Regents of Univ. of So. Cal.*,
    2000 WL 33190435 (N.D. Cal. Sep. 6, 2000) ......................................................19

*In re Tesla Advanced Driver Assistance Sys. Litig.*,
    2025 WL 2532185 (N.D. Cal. Sept. 3, 2025) ......................................................18

*Thakur v. Trump*,
    787 F. Supp. 3d 955 (N.D. Cal. 2025) ...................................................................8

*United Farm Workers v. Noem*,
    785 F. Supp. 3d 672 (E.D. Cal. 2025) ....................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................6, 9, 16

iii

*Xavier v. Phillip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ..................................................................18

*Yue v. Conseco Life Ins. Co.*,
   282 F.R.D. 469 (C.D. Cal. 2012) ...........................................................................7

*Zepeda Rivas v. Jennings*,
   445 F. Supp. 3d 36 (N.D. Cal. 2020) ......................................................................7

**Federal Statutes**

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. .....................13, 19

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. .......................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ....................................................................................6, 7, 8

Fed. R. Civ. P. 23(a) .............................................................................6, 7, 16

Fed. R. Civ. P. 23(a)(1) ..............................................................................7, 8

Fed. R. Civ. P. 23(a)(2) .................................................................................9

Fed. R. Civ. P. 23(a)(3) ................................................................................14

Fed. R. Civ. P. 23(a)(4) ...........................................................................14, 16

Fed. R. Civ. P. 23(b) ...............................................................................6, 16

Fed. R. Civ. P. 23(b)(1) ...................................................................7, 16, 17, 18

Fed. R. Civ. P. 23(b)(1)(A) ...........................................................................17

Fed. R. Civ. P. 23(b)(2) ...................................................................7, 16, 17, 18

**Other Authorities**

Claudia Elliott, *State removes all inmates from Cal City prison, remaining staff
   working to close facility* (Nov. 18, 2023),
     https://www.tehachapinews.com/news/state-removes-all-inmates-from-cal-
     city-prison-remaining-staff-working-to-close-facility/article_f6920d7c-864e-
     11ee-88b2-3f4bee2c5642.html ........................................................................2

Tyche Hendricks, *Conditions at Massive New California Immigration Facility
   'Are Alarming' Report Finds* (Nov. 4, 2025), KQED,
     https://www.kqed.org/news/12062774 ...............................................................2

CoreCivic, CoreCivic Announces New Contract Awards at California City
    Immigration Processing Center and Midwest Regional Reception Center (Sept.
    29, 2025), https://ir.corecivic.com/news-releases/news-release-
    details/corecivic-announces-new-contract-awards-california-city ............................................2

Sam Levin, "'Hell on earth': immigrants held in new California detention facility
    beg for help," THE GUARDIAN (Sep. 27, 2025),
    https://www.theguardian.com/us-news/2025/sep/27/immigrants-california-
    detention-facility ...........................................................................................................................15

Paola Echave & Dulce Gonzalez, *Being an Immigrant with Disabilities:*
    *Characteristics of a Population Facing Multiple Structural Challenges*, Urban
    Institute, (Apr. 2022), https://www.urban.org/sites/default/files/2022-
    04/Being%20an%20Immigrant%20with%20Disabilities.pdf ...................................................8

7A Mark J. Kane, FED. PRAC. & PROC. CIV § 1763 (3d ed. 2018) ..................................................9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:25-cv-09757-MMC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION[1]

Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia ("Named Plaintiffs"), on behalf of themselves and all others similarly situated ("Plaintiffs"), seek class certification because this action satisfies Federal Rule of Civil Procedure Rule ("Rule[s]") 23(a), 23(b)(1), and 23(b)(2). *See* Pls.' Mot. for Prelim. Inj. § II. Plaintiffs seek certification of a Class (the "Class") of:

> All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility ("California City").

Plaintiffs Jose Ruiz Canizales and Sokhean Keo seek to certify a Subclass (the "Subclass") of:

> All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility ("California City") who have disabilities within the meaning of the Rehabilitation Act.

The proposed Class and Subclass meet the requirements of Rules 23(a) and 23(b). *First*, they are sufficiently numerous, as Plaintiffs understand that there are more than 800 current members—many of whom have disabilities—and more people transferred into the facility each day. *Second*, all Class members' claims turn on "common contentions whose truth or falsity can be determined in one stroke: whether the specified [facility-]wide policies and practices to which they are all subjected by [Defendants] expose them to a substantial risk of harm." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). *Third*, the proposed Class Representatives have faced harms from the same facility-wide policies and practices that affect all Class and Subclass members, making their claims typical. *Fourth*, the proposed Class Representatives and proposed Class Counsel will zealously and competently represent the Class. *Finally*, because Plaintiffs challenge conduct that is applicable to the Class, the injunctive relief they seek will provide relief on a class-wide basis.

---

[1] In all quotations, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless otherwise noted. Citations to declarations are to those filed concurrently with Plaintiffs' Notice of Motion and Motion for Preliminary Injunction.

1

1

## II.    STATEMENT OF FACTS

### A.    The Incarceration of Immigrants and their Conditions of Confinement at California City

The California City Detention Facility ("California City") is a recently, and hastily, opened immigration detention facility in the middle of the Mojave Desert. The facility, owned and operated by the private prison corporation CoreCivic, is a previously shuttered state prison that sat vacant for almost two years.[2] In early 2025, CoreCivic and Defendants entered into a letter-contract to reopen it as an ICE detention facility.[3] At the end of August 2025, Defendants began to transfer detained migrants to California City, notwithstanding the fact that the facility is woefully understaffed and in poor condition.[4]  Currently, Plaintiffs understand that more than 800 people are detained at California City, with Defendants indicating an intent to triple this number by early 2026 to reach its full bed capacity of 2,560—making it the largest ICE facility in the state.[5]

California City is identical to prison in its design and infrastructure. Each Plaintiff lives in a shared two-person cell (nine feet by twelve feet), and people have no privacy when urinating or defecating. *See* Declaration of Yuniel Llufrio ("Llufrio Decl.") ¶ 10. Plaintiffs are locked in their cramped concrete cells for long periods and endure freezing temperatures, insect infestations, foul odors, and persistent sewage backups. Declaration of Gustavo Guevara Alarcon ("Guevara Alarcon Decl.") ¶ 39; Declaration of Alejo Juárez Ruiz ("Juarez Ruiz Decl.") ¶ 25; Declaration of Alejandro Mendiola Escutia ("Mendiola Escutia Decl.") ¶ 20; Llufrio Decl. ¶¶ 11, 20; Declaration

---

[2] Claudia Elliott, *State removes all inmates from Cal City prison, remaining staff working to close facility*, Tehachapinews.com (Nov. 18, 2023), https://www.tehachapinews.com/news/state-removes-all-inmates-from-cal-city-prison-remaining-staff-working-to-close-facility/article_f6920d7c-864e-11ee-88b2-3f4bee2c5642.html.

[3] CoreCivic, CoreCivic Announces New Contract Awards at California City Immigration Processing Center and Midwest Regional Reception Center, (Sept. 29, 2025), https://ir.corecivic.com/news-releases/news-release-details/corecivic-announces-new-contract-awards-california-city

[4] *See id.*

[5] Tyche Hendricks, *Conditions at Massive New California Immigration Facility 'Are Alarming' Report Finds* (Nov. 4, 2025), KQED, https://www.kqed.org/news/12062774 (reporting that "as of Oct. 25, the facility was housing roughly 746 ICE detainees, according to a court declaration by the warden," and that "CoreCivic has said it expects the detention center to be fully occupied by early next year").

2

of Veronica Garcia Romero ("Garcia Romero Decl.") ¶ 5; Declaration of Hilario Montes Regalado ("Montes-Regalado Decl.") ¶ 17. The entire facility is locked down for multiple daily counts that "happen at 7am, 11am, 3pm, and 7pm as well as a few times at night," which "last anywhere from 40 minutes to over 2 hours," and Plaintiffs are "also locked down from 10pm to 5am." Declaration of Oneil Guthrie ("Guthrie Decl.") ¶ 31; *see also* Mendiola Escutia Decl. ¶ 20. During these times, people held at the facility cannot leave their cells. *Id.* Defendants limit outdoor recreation to one hour a day in the early morning, when most people are asleep, and they often deny even this limited outdoor time because of staff shortages. *See* Declaration of Dennis Rivera-Trigueros ("Rivera-Trigueros Decl.") ¶ 13; Declaration of Edgar Giovanni Neri Valdez ("Neri Valdez Decl.") ¶ 15; Declaration of Fernando Viera Reyes ("Viera Reyes") Decl. ¶ 23; Llufrio Decl. ¶ 13. These restrictive conditions apply facility-wide, including in low security units that house people without criminal histories. *See* Llufrio Decl. ¶¶ 7-22 (describing experience in low security unit). Dan Pacholke, a nationally recognized custody expert who has run a state prison system, concluded, "the security measures undertaken at the [California City] facility are unnecessary, excessive, and potentially harmful to the people who are detained there." Declaration of Dan Pacholke ("Pacholke Decl.") ¶ 7.

Defendants severely compromise the necessities of daily living at the facility. Pacholke Decl. ¶¶ 18–23. Food portions are meager and nonnutritive, "drinking" water is unreliable, dirty, and foul-smelling, clothing or bedding is inadequate to keep people warm, and people are denied adequate access to basic hygiene supplies. *See, e.g.*, Mendiola Escutia Decl. ¶ 10; Declaration of Esteban Alvarez-Mora ("Alvarez-Mora Decl.") ¶¶ 15–18; Juarez Ruiz Decl. ¶¶ 17, 19; Declaration of Alfonso Leyva ("Leyva Decl.") ¶¶ 33–35; Neri Valdez Decl. ¶¶ 12, 14; Declaration of Fernando Gomez Ruiz ("Gomez Ruiz Decl.") ¶¶ 14–17; Garcia Romero Decl. ¶ 5. Despite being a civil detention facility, California City imposes prison-like restraints including strictly controlled movement and excessive and invasive body searches, threats of and improper use of solitary confinement for minor infractions, and categorical denial of in-person, contact visitation—even between parents and their children. *See, e.g.*, Rivera-Trigueros Decl. ¶¶ 14, 18; Guevara Alarcon Decl. ¶ 18; Mendiola Escutia Decl. ¶ 13; Declaration of Sokhean Keo ("Keo

Decl.") ¶¶ 14–15; Juarez Ruiz Decl. ¶ 22.

The medical and mental health care system is broken at every level. Dr. Todd Wilcox, a nationally recognized correctional health expert who has served as Medical Director at a large county jail for more than 15 years, found, "it is not safe to be medically or mentally sick at the California City ICE Detention Facility." Declaration of Todd Randall Wilcox ("Wilcox Decl.") ¶ 9. Defendants have employed an insufficient number of detention officers and medical personnel to safely supervise and care for Plaintiffs. Wilcox Decl. ¶¶ 145–46. As a result, people with chronic and emergent conditions experience dangerous delays in seeing a provider, are denied critical medications, and often receive no treatment at all during health crises. Montes-Regalado Decl. ¶¶ 10–18; Guevara Alarcon Decl. ¶ 35; Alvarez-Mora Decl. ¶¶ 6–7; Declaration of Daler Singh ("Singh Decl.") ¶¶ 14–17.

Defendants also strictly limit access to counsel. Legal calls and virtual attorney meetings take one or more weeks to schedule and are often plagued by technical issues and delays. Declaration of Stephanie Quintero ("Quintero Decl.") ¶¶ 4–6, 9; Declaration of Genesis Fabian ("Fabian Decl.") ¶¶ 5–7; Declaration of Hannah Kazim ("Kazim Decl.") ¶ 6; Declaration of Hudson Kyle ("Kyle Decl.") ¶¶ 5, 7; Declaration of Lee Ann Felder-Heim ("Felder-Heim Decl.") ¶ 5; Declaration of Julio Armenta ("Armenta Decl.") ¶ 15; Declaration of Yuri Alexander Roque Campos ("Roque Campos Decl.") ¶ 39; Garcia Romero Decl. ¶ 6. Phone calls from the housing units are not confidential, and in-person legal visits occur behind plexiglass, in non-private settings, or after long delays caused by insufficient escort staff. Felder-Heim Decl. ¶ 7; Declaration of Nicole Gorney ("Gorney Decl.") ¶ 9; Declaration of Sarah Goss ("Goss Decl.") ¶¶ 4–5, 13; Mendiola Escutia Decl. ¶¶ 15–16; Leyva Decl. ¶ 36; Guevara Alarcon Decl. ¶ 9. These restrictions on attorney access apply facility-wide. *See* Garcia Romero Decl. ¶ 6 (describing experience in women's unit).

Finally, there are pervasive violations of the rights of people with disabilities. Defendants do not appropriately identify disability needs at intake to the facility, nor do they have a dedicated disability services coordinator on staff. Wilcox Decl. ¶ 37; Keo Decl. ¶ 37; Guevara Alarcon Decl. ¶ 21; Declaration of Jonathan Jair Montes-Diaz ("Montes-Diaz Decl.") ¶ 17; Declaration of

4

Jose Ruiz Canizales ("Ruiz Canizales Decl.") ¶ 18. Similarly, they do not have a functional

system for people to request disability accommodations or file disability grievances and to receive

responses that address those disability concerns. Juarez Ruiz Decl. ¶ 14; Declaration of Daniel

Elias Benavides Zamora ("Benavides Zamora Decl.") ¶ 13; Keo Decl. ¶ 29; Leyva Decl. ¶ 10;

Ruiz Canizales Decl. ¶ 99. As a result, people with disabilities cannot access even the meager

programs and services the facility offers. Ruiz Canizales Decl. ¶¶ 37, 42, 58, 61–70 (unable to use

outdoor recreation or receive adequate medical care); Benavides Zamora Decl. ¶ 15 (essentially

bedridden due to unaccommodated mobility disability); Leyva Decl. ¶ 26 (sleeps on the floor due

to an inaccessible top bunk); Montes-Diaz Decl. ¶ 20 (forced to use inaccessible top bunk);

Declaration of Julio Santos Avalos ("Santos Avalos Decl.") ¶ 13 (same).

> **B.    The Named Plaintiffs**

Named Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales,

Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro

Mendiola Escutia have volunteered to represent the interests of the Class. In addition, Named

Plaintiffs Mr. Ruiz Canizales and Mr. Keo have volunteered to represent the interests of the

Subclass.

Named Plaintiffs experience the same extreme punitive conditions as the class members,

including, being housed in a cramped frigid concrete cell for long periods and enduring excessive

lockdowns, insect infestations and foul odors, limited outdoor recreation and programming, and

inadequate access to warm clothing and hygiene supplies. The systemic policies that Defendants

have put into place at California City have affected all Named Plaintiffs. Mr. Gomez Ruiz, an

insulin-dependent diabetic and father of two, has been denied regular insulin and wound care,

leaving him with an oozing foot ulcer and fears of possible amputation. Gomez Ruiz Decl. ¶¶ 5–

18. Defendants' attorney access limitations have prevented his lawyer from effectively

advocating for his medical needs or his release from the facility. Kazim Decl. ¶¶ 17, 19. Mr.

Viera Reyes arrived at California City with a pending appointment for a biopsy for suspected

prostate cancer, but has gone months without specialist care, even as he developed increasingly

alarming symptoms. Viera Reyes Decl. ¶¶ 6–17. Mr. Roque Campos, who has multiple heart

5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:25-cv-09757-MMC

conditions, experienced repeated lapses in receiving prescribed medication, resulting in two emergency hospitalizations for severe chest pain. Roque Campos Decl. ¶¶ 9–13, 16–19. The emergency room doctor wrote a note to California City advising medical staff that Mr. Roque Campos needed to be seen by a cardiology specialist within 72 hours of his return to the facility; two and a half months later, he has still not had that appointment, which Plaintiffs' expert Dr. Todd Wilcox calls a "willful dereliction of a physician's basic duties." Wilcox Decl. ¶ 93; Roque Campos Decl. ¶¶ 17, 33. Mr. Keo, who has chronic pain, mobility limitations, and hearing loss, was told that specialty appointments scheduled at his prior facility had been canceled because California City lacks specialist contracts; he continues to suffer without treatment or accommodations, and was not offered any mental health support after witnessing an attempted suicide. Keo Decl. ¶¶ 17–31. Mr. Ruiz Canizales, who is Deaf and communicates only in American Sign Language ("ASL"), has had virtually no access to interpretation since arriving at California City, leaving him isolated, unable to communicate with staff or request medical care, extremely distressed, and anxious. Ruiz Canizales Decl. ¶¶ 5, 14–101. Mr. Guevara Alarcon has faced excessive threats of discipline and was placed in solitary confinement merely for asking to finish his shower. Guevara Alarcon Decl. ¶¶ 35–39. Mr. Mendiola Escutia has been unable to communicate effectively with his immigration attorney due to weeks-long delays in legal calls and barriers to in-person visits, and like all Plaintiffs, he can see his family only through thick glass without physical contact. Mendiola Escutia Decl. ¶¶ 13–17.

## III.    LEGAL STANDARD

To certify a class under Rule 23, Named Plaintiffs must satisfy all elements of Rule 23(a), and at least one requirement of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The proposed Class and Subclass satisfy each Rule 23(a) requirement: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition, although the Class and Subclass need only satisfy one Rule 23(b) requirement,

6

here they satisfy two. First, prosecuting separate actions by individual class members "[w]ould create a risk of [] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[,]" Fed. R. Civ. P. 23(b)(1), and second, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[,]" Fed. R. Civ. P. 23(b)(2).

When plaintiffs satisfy the prerequisites of Rule 23, federal courts in the Ninth Circuit routinely grant class certification motions for purposes of entering injunctive relief. *See, e.g.*, *California Coal. for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 731 (N.D. Cal. 2024); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 480, 485 (C.D. Cal. 2012); *see also Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1343 (D. Idaho 2024) (noting "the Ninth Circuit has expressly approved the granting of a class certification alongside a preliminary injunction"). Indeed, California district courts have certified many classes of detained immigrants seeking preliminary injunctive relief from their conditions of confinement. *See, e.g.*, *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38–39 (N.D. Cal. 2020) (certifying class of immigration detainees challenging their conditions of confinement alleging serious risk of becoming infected with COVID-19); *Hernandez Roman v. Wolf*, No. 20-cv-00768 TJH (PCVx), 2020 WL 3869729, at *4 (C.D. Cal. Apr. 23, 2020) (certifying class of immigration detainees challenging their conditions of confinement alleging serious risk of becoming infected with COVID-19); *Alcantara v. Archambeault*, 613 F. Supp. 3d 1337, 1349–50 (S.D. Cal. 2020) (certifying class of civil immigration detainees with medical vulnerabilities to COVID-19). As detailed below, the proposed Class and Subclass here meet the requirements of Rule 23(a) and 23(b)(2).

## IV.    ARGUMENT

### A.    Plaintiffs Satisfy the Requirements of Rule 23(a).

#### 1.    The Class Is So Large and Fluid that Joinder is Impracticable.

Rule 23(a)(1) permits class certification where the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict number requirement for numerosity, "'courts find the numerosity requirements satisfied when a class

1  includes at least 40 members.'" *Thakur v. Trump*, 787 F. Supp. 3d 955, 1000 (N.D. Cal. 2025)

2  (quoting *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010)). Plaintiffs need only "show

3  some evidence of or reasonably estimate the number of class members." *Kincaid v. City of*

4  *Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007). And, this requirement is relaxed where a plaintiff

5  seeks only injunctive and declaratory relief, allowing a plaintiff to rely on reasonable inferences

6  that the number of unknown members is sufficient to make joinder impracticable. *See Civil Rights*

7  *Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016).

8       Here, the proposed Class easily satisfies the numerosity requirement. Approximately 800

9  or more people are currently detained at California City.[6] Defendants do not adequately identify

10  and track people with disabilities under the Rehabilitation Act and thus have no reliable statistics

11  on the number of Subclass members. However, that group within the entire population here

12  includes well over 40 people.[7] Additionally, under Rule 23(a)(1), courts may, and should,

13  consider the particular impracticality of joinder for Subclass members here, detained immigrants

14  whose disabilities may impact their ability to institute separate suits.[8]

15       Courts are especially likely to find numerosity "where, as here, the class[] include[s]

16  future, unknowable class members" who are yet to be detained in a facility. *Hernandez v. Cnty.*

17  *Of Monterey*, 305 F.R.D. 132, 152–53 (N.D. Cal. 2015) (citing *Nat'l Ass'n of Radiation Survivors*

18  *v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986)). Here, Defendants have contracted to hold

19  _____

20  [6] *See supra* note 5.

21  [7] A recent Urban Institute study reported that approximately 5.6% of nonelderly (18-64)
   immigrants in the US have a disability. Paola Echave & Dulce Gonzalez, *Being an Immigrant*
22  *with Disabilities: Characteristics of a Population Facing Multiple Structural Challenges*, Urban
   Institute, (Apr. 2022), at 7, https://www.urban.org/sites/default/files/2022-
   04/Being%20an%20Immigrant%20with%20Disabilities.pdf.

23  [8] *See Pappas v. D.C.*, No. CV 19-2800 (RC), 2024 WL 1111298, at *4 (D.D.C. Mar. 14, 2024)
24  ("Moreover, all class members suffer some form of disability, which may limit their resources
   and make it difficult for class members to sue individually."); *Coleman*, 306 F.R.D. at 80
25  (explaining that "the vulnerability of many members of the class renders their claims uniquely
   unsuited for individual prosecution" and that "Rule 23, in permitting the aggregation of claims,
   embodies a 'principle of protection for weaker plaintiffs'"); 2 WILLIAM B. RUBENSTEIN,
26  NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:65 (6th ed. 2022) (explaining that
   courts are more likely to certify small classes where the class is composed of a "vulnerable
27  population"); *McDonald v. Heckler*, 612 F. Supp. 293, 300 (D. Mass. 1985) ("These individuals
   claim to be disabled and of low income. It is therefore impracticable for these persons to bring
28  individual lawsuits challenging the Secretary's policies.").

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:25-cv-09757-MMC

more than 2,500 persons at California City and are regularly transferring new people to the facility.[9] *See United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 714 (E.D. Cal. 2025) (recognizing that classes would necessarily include "future members" because the government will continue arresting immigrants).

### 2. The Challenged Conditions Present Common Questions of Fact and Law.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, Rule 23(a)(2) requires "a common contention" capable of class wide resolution, meaning that determining its truth or falsity will resolve an issue central to each claim "in one stroke." *Dukes*, 564 U.S. at 350. What ultimately matters "is the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Thus Plaintiffs "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class-wide resolution," because "so long as there is 'even a single common question,' a would be class can satisfy the commonality requirement." *Hernandez*, 305 F.R.D. at 152 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2012)).

When, as here, plaintiffs challenge "policies and practices of . . . systemic application," "[t]hese policies and practices are the 'glue' that holds together the putative class and the putative subclass; either each of the policies and practices is unlawful as to every [class member] or it is not." *Parsons*, 754 F.3d at 676, 678; *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."). Moreover, suits for injunctive or declaratory relief like this one "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Mark J. Kane, FED. PRAC. & PROC. CIV § 1763 (3d ed. 2018).

As detailed below, each of Plaintiffs' claims involves at least one common question.

#### i. First Claim: Punitive and Prison-like Conditions

A critical common question to the entire Class is whether Defendants operate California City in a way that subjects the people detained there to punitive conditions worse than those in

---

[9] *See supra* note 3.

1  prison.  They do. *See* Pls.' Mot. for Prelim. Inj. § II.A.

2          The facts showing unconstitutional punishment apply uniformly across the Class, and

3  Plaintiffs' 25 detained declarants report consistent experiences. All class members are prohibited

4  from hugging their families or physically comforting their children. Wilcox Decl. App. C at 35;

5  *see, e.g.*, Rivera-Trigueros Decl. ¶ 14; Guevara Alarcon Decl. ¶ 9; Armenta Decl. ¶ 7. All are

6  escorted when they are outside of their housing units and subjected to invasive pat downs when

7  they return. Pacholke Decl. ¶¶ 11, 13; *see, e.g.*, Llufrio Decl. ¶¶ 14–15; Rivera-Trigueros Decl.

8  ¶¶ 8, 18; Guevara Alarcon Decl. ¶ 43; Montes-Diaz Decl. ¶ 8; Guthrie Decl. ¶ 30; Garcia Romero

9  Decl. ¶¶ 12–13. California City's excessive lockdowns result from its facility-wide policy of

10  locking people in their cells 10pm to 5am and for four very time-consuming counts at 7am, 11am,

11  3pm, and 7pm. *See, e.g.*, Mendiola Escutia Decl. ¶ 20; Guthrie Decl. ¶ 31; Llufrio Decl. ¶ 11.

12  Declarants uniformly report receiving meals so meager that they remain hungry throughout the

13  day, Alvarez-Mora Decl. ¶ 16; Juarez Ruiz Decl. ¶ 17; Leyva Decl. ¶ 33; Neri Valdez Decl. ¶ 17,

14  and water that is dirty and foul-smelling, Mendiola Escutia Decl. ¶ 10; Juarez Ruiz Decl. ¶ 19;

15  Alvarez-Mora Decl. ¶ 15; Viera Reyes Decl. ¶ 28. People uniformly describe inadequate clothing,

16  bedding, and basic hygiene supplies. *See, e.g.*, Alvarez-Mora Decl. ¶ 17; Leyva Decl. ¶¶ 34–35;

17  Neri Valdez Decl. ¶¶ 12, 14; Gomez Ruiz Decl. ¶¶ 15, 17. California City's cold, cramped, and

18  isolating physical form and crumbling infrastructure apply to all who are held there. *See, e.g.*,

19  Llufrio Decl. ¶¶ 7–22 (describing experience in low security unit); Garcia Romero Decl. ¶¶ 7–16

20  (describing experience in women's unit). Defendants also permit staff abuse that is pervasive and

21  affects the entire class, with multiple class members reporting excessive use of pepper spray and

22  restraints, along with threats and use of segregation to quiet dissent. Guthrie Decl. ¶¶ 26–27;

23  Juarez Ruiz Decl. ¶¶ 27–28; Guevara Alarcon Decl. ¶¶ 35–39; Montes-Diaz Decl. ¶ 28; Singh

24  Decl. ¶¶ 29–30; Rivera-Trigueros Decl. ¶¶ 21–25.

25          California City imposes prison-level conditions (or worse) on its entire civil detainee

26  population, raising a shared question of whether these uniformly applied practices violate the Due

27  Process Clause. Moreover, there is a common question as to whether the conditions at California

28  City are similar or more restrictive than those of a penal facility for persons detained under the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:25-cv-09757-MMC

1    criminal laws, including those of the same facility when it was previously run as a state prison.

2        ii.    <u>Second Claim: Adequacy of Policies and Practices Governing Healthcare</u>

3            Another common question of fact exists as to the adequacy of Defendant's policies,

4    practices, and procedures governing the provision of adequate health care and whether these

5    conditions put the Class at risk of harm. They do. *See* Pls.' Mot. for Prelim. Inj. § II.B.

6            Established law in this circuit provides that systemic challenges to inadequate medical

7    care raise common questions capable of class-wide resolution. In such cases, any class member

8    "could easily fall ill, be injured, need to fill a prescription, require emergency or specialist care,

9    crack a tooth, or require mental health treatment," and every class member thus "faces a

10   substantial risk of serious harm if [Defendants'] policies and practices provide constitutionally

11   deficient care for treatment of medical, dental, and mental health needs." *Parsons*, 754 F.3d at

12   678–79; *see also Brown v. Plata*, 563 U.S. 493, 531–32 (2011) (holding that "even [those] with

13   no present physical or mental illness" remained at risk from poor medical care due to systemic

14   overcrowding).

15           Plaintiffs bring the exact type of systemic claims addressed in *Parsons* and *Plata*.

16   Plaintiffs base their medical claims on fundamental and uniform deficiencies. *See* Wilcox Decl.

17   ¶¶ 9–15. Every Plaintiff is processed through the same flawed intake system, where serious

18   chronic conditions and acute medical needs routinely go unidentified and untreated for days or

19   weeks. *Id*. ¶ 10. Anyone who falls ill or develops a chronic condition will face California City's

20   flawed (or non-existent) specialty care and continuity-of-care systems. *Id*. ¶¶ 9–10; *see, e.g.*,

21   Singh Decl. ¶¶ 5–12; Roque Campos Decl. ¶¶ 13, 33–35; Armenta Decl. ¶ 9; Orejuela Gutierrez

22   Decl. ¶ 7. The facility fails those it detains at the systemic level because it has no system to obtain

23   or review prior medical records, Wilcox Decl. ¶¶ 68–74, and because severe staffing shortages

24   exacerbate these deficiencies, *id.* ¶¶ 125–132, 137–144.

25           These systemic failures concerning the provision of healthcare at California City raise

26   common questions suitable for class resolution.

27       iii.    <u>Third and Fourth Claims: Access to Counsel Policies</u>

28           A common question of fact also exists as to the adequacy of Defendants' policies,

11

practices, and procedures governing access to counsel.  They are woefully deficient. *See* Pls.'
Mot. for Prelim. Inj. § II.C.

As with Plaintiffs' first and second claims, Defendants' poor access to counsel results
from uniform policies that apply across all class members. It presents common questions for the
same reasons. Defendants' limits on availability for confidential phone and video attorney calls
imposes delays of a week or more for every class member who tries to obtain a scheduled call
with counsel or prospective counsel. Quintero Decl. ¶¶ 6, 9; Fabian Decl. ¶¶ 5–6; Kazim Decl.
¶ 6; Kyle Decl. ¶ 5. Technical issues and late start times are common. Kyle Decl. ¶ 7; Quintero
Decl. ¶¶ 4, 5; Fabian Decl. ¶ 7; Felder-Heim Decl. ¶ 5. Defendants do not provide confidential
rooms for detained people to place outgoing calls to their attorneys absent advance scheduling;
instead, if people wish to call their attorneys, they must do so from wall phones or tablets in
crowded dayrooms, resulting in uniform failures to ensure confidentiality. Felder-Heim Decl. ¶ 7;
Gorney Decl. ¶ 9. Defendants uniformly require every legal visit to occur behind glass, often after
a significant wait of many hours. *See, e.g.*, Goss Decl. ¶¶ 4–5, 13, 15; Mendiola Escutia Decl.
¶¶ 14; Leyva Decl. ¶ 36; Guevara Alarcon Decl. ¶ 9; Garcia Romero Decl. ¶ 6. These restrictions
on attorney access are facility-wide. *Id*.

These uniform facts raise common questions: whether Defendants' policies and practices
with respect to attorney visitation impermissibly burden or interfere with access to counsel or to
retain prospective counsel at California City, in violation of the First and Fifth Amendments.

     iv.   <u>Fifth Claim: Failure to Provide Disability Accommodations under Section 504</u>

Finally, a common legal question exists for the Subclass as to whether Defendants fail to
maintain functional systems to (1) identify and track disability needs, (2) receive and
appropriately respond to disability grievance or requests, (3) evaluate self-reported disability
needs and assess and provide appropriate accommodations, and (4) issue reasonable
accommodations that allow people with disabilities equal access to facility programs and
operations as compared to their non-disabled peers.  The systems failure here is extensive. *See*
Pls.' Mot. for Prelim. Inj. § II.D.

The Ninth Circuit has long held that systemic disability-discrimination claims challenging

12

uniform detention or correctional policies present classic common questions suitable for class wide resolution. In *Armstrong v. Davis*, for example, the Court held that a class of incarcerated and paroled people with disabilities presented common questions of fact by challenging "system-wide" policies and practices under the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act. 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). The Ninth Circuit recognized that people with "different disabilities" could nonetheless show a common question if they "suffer similar harm" because they were excluded from the same set of programs or activities. *Id.* Courts in this circuit have repeatedly followed *Armstrong* in disability-based detention cases and have found commonality when plaintiffs have sought injunctive relief to correct "a system-wide practice or policy that affects all of the putative class members." *Pierce v. Cnty. of Orange*, No. SA CV 01-0981-GLT (MLGX), 2003 WL 27387077, at *2 (C.D. Cal. Oct. 15, 2003), *class upheld in relevant part and decertified in irrelevant part at* 2004 WL 7340112, at *8–9 (C.D. Cal. Mar. 1, 2004); *L.H. v. Schwarzenegger*, No. CIV. S-06-2042 LKK/GGH, 2007 WL 662463, at *12 (E.D. Cal. Feb. 28, 2007) (finding commonality because plaintiffs challenged "system wide deficiencies [that] affects all of the putative class members with disabilities, regardless of the specific nature of their individual disability").

In this case, Plaintiffs challenge Defendants' systemic failures to enact any meaningful disability policies. They operate California City with no functional intake screening for disabilities, no mechanism for continuing prior accommodations, no reliable system for evaluating or referring disability-related needs, and no meaningful process for requesting accommodations or filing disability-related grievances. *See* Wilcox Decl. ¶¶ 18, 37–43. As a result of these systemic failures, people with disabilities are uniformly denied access to what meager programs and services California City offers. *Id.*; Ruiz Canizales Decl. ¶¶ 37, 40–47, 61, 71–88, 95; Keo Decl. ¶¶ 29, 35–38; Leyva Decl. ¶¶ 9–15, 30–32; Santos Avalos Decl. ¶¶ 12–13; Benavides Zamora Decl. ¶¶ 11–12, 16.

Because these policies and conditions apply uniformly across the facility and affect every person with a disability in Defendants' custody, they present core common questions appropriate

13

for class wide resolution.

### 3. Named Plaintiffs' Claims Are Typical of Those of the Putative Class and Subclass.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts assess typicality by asking whether class members "have the same or similar injury," whether the claims arise from conduct "not unique to the named plaintiffs," and whether class members "have been injured by the same course of conduct." *Parsons*, 754 F.3d at 685. Injuries need only be similar, not identical. *Id.* at 685–86; *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (finding typicality even though class members "do not raise identical claims" because all "raise similar constitutionally-based arguments"); *Armstrong*, 275 F.3d at 869 (holding "minor" distinctions are "insufficient to defeat typicality" because the plaintiffs "all suffer a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities"). "Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different." *Armstrong*, 275 F.3d at 868–69.

Here, the Named Plaintiffs satisfy typicality because, like the rest of the Class, they are all exposed to "a substantial risk of serious harm by the challenged [Defendants'] policies and practices," which apply facility-wide to all Named Plaintiffs. *Parsons*, 754 F.3d at 685. Likewise, Mr. Ruiz Canizales and Mr. Keo both "suffer a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities," satisfying typicality for the Subclass. *Armstrong*, 275 F.3d at 869 (9th Cir. 2001); *see also* Ruiz Canizales Decl. ¶¶ 14–101; Keo Decl. ¶¶ 29–38.

### 4. Named Plaintiffs and Class Counsel Will Fairly and Adequately Represent Interests of the Class.

Finally, Rule 23(a)(4) requires that Named Plaintiffs fairly and adequately represent the interests of the Class. Fed. R. Civ. P. 23(a)(4). Courts address two questions in determining if this requirement is met: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action

1   vigorously on behalf of the class?" *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 990 (N.D. Cal.

2   2018) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998)).

3       First, Named Plaintiffs and their counsel have no conflicts of interest with other class

4   members. For a conflict of interest to defeat the adequacy requirement, this conflict would have to

5   go "to the very subject matter of the litigation." *O'Connor v. Boeing N. Am.*, 184 F.R.D. 311, 335

6   (C.D. Cal. 1998). There is no evidence that the Named Plaintiffs have any interest contrary to the

7   interests of the Class. To the contrary, all Plaintiffs share a common interest in seeking redress for

8   Defendants' conduct. *Hernandez v. County of Monterey*, 305 F.R.D. 132, 160 (N.D. Cal. 2015)

9   ("Class representatives have less risk of conflict with unnamed class members when they seek

10  only declaratory and injunctive relief.").

11      Second, Named Plaintiffs and their counsel will prosecute the action vigorously on behalf

12  of absent class members. Prior to filing the complaint, Mr. Keo spoke to the media to try to

13  improve conditions where he described the denial of medical care he experienced and stating that

14  "[California City] is built to break us."[10] Mr. Keo also stated that "[t]here is nothing but

15  harassment and torture here. It's inhumane, unsanitary and a health hazard every single day."[11]

16  Named Plaintiffs have stepped forward and used their names in this suit, despite widespread fear

17  of retaliation in the facility, because they are committed to vindicating the rights of those who feel

18  too vulnerable to speak publicly about their conditions of confinement. *See* Am. Compl. ¶ 48.

19  Proposed Class Counsel have significant experience with large and complex class action

20  litigation, including litigation challenging conditions in detention and correctional facilities, and

21  will fairly and adequately protect the interests of the Class and Subclass. "Absent a basis for

22  questioning the competence of counsel, the named plaintiffs' choice of counsel will not be

23  disturbed . . . ." *Mateo v. M/S Kiso*, 805 F. Supp. 761, 771 (N.D. Cal. 1991). Here, Proposed

24  Class Counsel is well-qualified. The proposed class is represented by experienced counsel from

25  the Prison Law Office, Keker, Van Nest & Peters LLP, the American Civil Liberties Union

26  ---

[10] Sam Levin, "'Hell on earth': immigrants held in new California detention facility beg for help," THE GUARDIAN (Sep. 27, 2025), https://www.theguardian.com/us-news/2025/sep/27/immigrants-california-detention-facility.

[11] *Id.*

("ACLU"), and the California Collaborative for Immigrant Justice ("CCIJ"). *See* PLO Decl.;

KVP Decl.; ACLU Decl.; CCIJ Decl. Counsel are experienced in class action, complex litigation,

detention and prisoners' rights litigation, disability law, immigration law, and constitutional law

generally and have deep experience in representing detained people and in class actions and in

other similar work. *See id.* Proposed Class Counsel are adequate for the purposes of class

certification under Rule 23(a)(4), and this Court should appoint them Class Counsel pursuant to

Rule 23(g)(1) and (4).

> **B.    Class Certification is Appropriate under Rule 23(b)(1) and (2).**

In addition to meeting the requirements under Rule 23(a), Plaintiffs must establish that at

least one provision for maintaining a class action under Rule 23(b) applies. While Plaintiffs need

only satisfy one of the grounds, the case fits squarely within both Rule 23(b)(1) and 23(b)(2). The

Court should certify the Class and Subclass under Rule 23(b)(2); in the alternative, it should

certify them under Rule 23(b)(1).

> **1.    The Court May Certify a Rule 23(b)(2) Class Because Defendants
> Have Acted on Grounds Generally Applicable to the Class and
> Subclass, and Declaratory and Injunctive Relief is Appropriate.**

Under Rule 23(b)(2), class certification is warranted if "the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.

23(b)(2). "[C]ivil rights cases against parties charged with unlawful [conduct] are prime examples

of what (b)(2) is meant to capture." *Dukes*, 564 U.S. at 361 (quoting *Amchem Prods. Inc. v.

Windsor*, 521 U.S. 591, 614 (1997)). Rule 23(b)(2)'s "requirements are unquestionably satisfied

when members of a punitive class seek uniform injunctive or declaratory relief from policies or

practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citing

*Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Indeed, Rule 23(b)(2) is "almost

automatically satisfied in actions primarily seeking injunctive relief." *Gray v. Golden Gate Nat'l

Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011).

The current suit falls squarely within the types of cases contemplated by Rule 23(b)(2).

Named Plaintiffs seek a uniform injunction against practices and policies that affect the Class as a

16

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:25-cv-09757-MMC

1    whole, and Mr. Ruiz Canizales and Mr. Keo seek a uniform injunction against policies that affect

2    the Subclass as a whole. *See* [Proposed] Order Granting Pls.' Mot. for Prelim. Inj. Accordingly,

3    Plaintiffs satisfy the requirements of Rule 23(b)(2).

4    **2.    Alternatively, the Court May Certify a Rule 23(b)(1) Class Because
         Separate Lawsuits by Each Class and Subclass Member Would Create
5         a Risk of Incompatible Standards of Conduct by Defendants.**

6    A class action is proper under Rule 23(b)(1) where separate lawsuits by class members

7    would risk imposing incompatible standards of conduct on the opposing party through

8    inconsistent adjudications. Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1) "in particular has been

9    applied in actions by prisoners challenging the conditions of their confinement." *Gray v. County*

10   *of Riverside*, No. EDCV 13-00-444 VAP (OPx), 2014 WL 5304915, at *38 (C.D. Cal. Sept. 2,

11   2014). Courts have certified classes under Rule 23(b)(1) in systemic prison-conditions litigation

12   precisely because adjudicating individualized suits would subject correctional officials to

13   conflicting obligations concerning uniform, institution-wide policies. For example, in *Ashker v.*

14   *Governor of California*, the court certified a Rule 23(b)(1) class of prisoners housed in Security

15   Housing Units, recognizing that piecemeal suits challenging the same segregation policies under

16   the Fifth and Eighth Amendments "would be a significant risk of inconsistent judgments." No. C

17   09-5796 CW, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014). Similarly, in *Coleman v.*

18   *Wilson*, the court certified a class of prisoners with serious mental illness challenging statewide

19   failures in mental health care because individualized relief would risk inconsistent directives

20   regarding staffing, treatment protocols, and access to services. 912 F. Supp. 1282, 1293 (E.D. Cal.

21   1995).

22   The same risk exists here. The facility-wide policies and practices at California City

23   already affect approximately 800 putative class members, with many more to come. If each

24   person were forced to sue individually, courts could impose divergent requirements concerning

25   medical staffing levels, emergency-care protocols, housing restrictions, access to interpreters,

26   mobility accommodations, or visitation and legal-access procedures, among many other policies

27   and practices at issue in this case. Likewise, systemic disability policies affect the Subclass,

28

17

1  which exceeds 40 people.[12] Individualized adjudication could require Defendants to establish

2  different systems for identifying people with disabilities and evaluating and accommodating their

3  disability needs.

4       Because these policies operate on a facility-wide basis and cannot feasibly be

5  administered differently for individual persons without creating conflicting obligations,

6  certification under Rule 23(b)(1) is appropriate.

7       **C.**     **While Ascertainability Inquiries are Inapplicable to Classes Certified under Rule 23(b)(2), the Class and Subclass are Ascertainable.**

8

9       Finally, for some classes, an additional "implied prerequisite to class certification is that

10  the class must be sufficiently definite; the party seeking certification must demonstrate that an

11  identifiable and ascertainable class exists." *Xavier v. Phillip Morris USA Inc.*, 787 F. Supp. 2d

12  1075, 1089 (N.D. Cal. 2011). However, "the majority of district courts in the Ninth Circuit, and

13  the appellate opinions in several other circuits, [hold] that ascertainability is not a requirement for

14  certifying a Rule 23(b)(2) class." *In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-

15  05240-RFL, 2025 WL 2532185, at *137 (N.D. Cal. Sept. 3, 2025) (citing *In re Yahoo Mail Litig.*,

16  308 F.R.D. 577, 597 (N.D. Cal. 2015)); *see also Inland Empire-Immigrant Youth Collective v.*

17  *Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *12 (C.D. Cal. Feb. 26, 2018)

18  (same); *Hernandez v. Lynch*, No. EDCV 16-00620-JGB (KKx), 2016 WL 7116611, at *14 n.17,

19  2016 U.S. Dist. LEXIS 191881, at *43 n.17 (C.D. Cal. Nov. 10, 2016) ("Courts have held that

20  ascertainability may not be required with respect to a class seeking injunctive relief."). The Court

21  may certify the class under Rule 23(b)(2), so it need not consider ascertainability.

22       Nevertheless, even if the ascertainability requirement were to apply here, the Class and

23  Subclass satisfy it. A class is ascertainable if it is "administratively feasible for the court to

24  determine whether a particular individual is a member" using objective criteria. *Keegan v. Am.*

25  *Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012) (citation omitted). Class

26  membership is based upon objective criteria: members are those in the legal custody of ICE who

27  are detained at California City Detention Facility. Courts certify similarly defined classes. *See,*

28  ---
[12] *See supra* note 7.

*e.g.*, *Hernandez Roman*, 2020 WL 3869729, at *4. Similarly, it would be "administratively feasible" to ascertain whether an individual is a member of the Subclass: a person detained at California City with a qualifying disability under the Rehabilitation Act. *See Greater L.A. Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, No. CV 13–7172 PSG (ASx), 2014 WL 12561074, at *5 (C.D. Cal. May 6, 2014) (finding that a class composed of "all individuals who are deaf and hard of hearing" is ascertainable); *Siddiqi v. Regents of Univ. of So. Cal.*, No. C 99–0790 SI, 2000 WL 33190435, at *11 (N.D. Cal. Sep. 6, 2000) (certifying class of "deaf and hard of hearing" students with respect to ADA challenge of university's policies and procedures); *see also Inland Empire-Immigrant Youth Collective*, at *13 ( "That some administrative effort is required does not preclude certification.").

Therefore, even if ascertainability were required, minimal effort would be necessary here to ascertain the Class and Subclass.

## V.    CONCLUSION

For the above stated reasons, Plaintiffs request that this Court enter an order certifying this action as a class action and certify a Class of "all persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility ("California City")." Named Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia request that they be certified as the representatives of the Class and that their counsel of record be appointed as Class Counsel.

Plaintiffs further request that this court certify a Subclass consisting of "all persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility ("California City") who have disabilities within the meaning of the Rehabilitation Act." Named Plaintiffs Jose Ruiz Canizales and Sokhean Keo request that they be certified as the representatives of the Subclass and that their counsel of record be appointed as Subclass Counsel.

Dated: December 1, 2025

Respectfully submitted,

/s/ *Steven P. Ragland*
KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND
CODY S. HARRIS
CARLOS C. MARTINEZ

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL
MARIEL VILLARREAL

/s/ *Margot Mendelson*
PRISON LAW OFFICE
TESS BORDEN
MARGOT MENDELSON
PATRICK BOOTH
ALISON HARDY
RANA ANABTAWI

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN
FELIPE HERNANDEZ
MARISOL DOMINGUEZ-RUIZ
CARMEN IGUINA GONZALEZ

*Attorneys for Plaintiffs*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 3:25-cv-09757-MMC