| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>STEVEN P. RAGLAND - # 221076<br>sragland@keker.com<br>CODY S. HARRIS - # 255302<br>charris@keker.com<br>CARLOS C. MARTINEZ - # 354616<br>cmartinez@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:      415 397 7188<br><br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>PRIYA ARVIND PATEL - # 295602<br>priya@ccijustice.org<br>MARIEL VILLARREAL - # 317048<br>mariel@ccijustice.org<br>1999 Harrison Street #1800<br>Oakland, California 94612<br>Tel: (650) 762-8990 | PRISON LAW OFFICE<br>MARGOT MENDELSON - # 268583<br>mmendelson@prisonlaw.com<br>TESS BORDEN - MJP # 805022, *pro hac vice*<br>tess@prisonlaw.com<br>PATRICK BOOTH - # 328783<br>patrick@prisonlaw.com<br>ALISON HARDY - # 135966<br>ahardy@prisonlaw.com<br>RANA ANABTAWI - # 267073<br>rana@prisonlaw.com<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Tel.: (510) 280-2621<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>KYLE VIRGIEN - # 278747<br>kvirgien@aclu.org<br>FELIPE HERNANDEZ - # 338468<br>npp_fhernandez@aclu.org<br>MARISOL DOMINGUEZ-RUIZ - # 345416<br>mdominguez-ruiz@aclu.org<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 343-0770<br><br>CARMEN IGUINA GONZALEZ - # 277369<br>ciguinagonzalez@aclu.org<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Tel.: (202) 393-4930 |

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v. | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF DANIEL ELIAS ZAMORA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br>Date:        January 9, 2026<br>Time:       9:00 a.m.<br>Dept.:      Ctrm 7 – 19th Floor<br>Judge:     Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

| | |
|---|---|
| 1 | U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 |         Defendants. |

**Declaration of Daniel Elias Benavides Zamora, 028697156**

1. I, Daniel Elias Benavides Zamora, am currently detained at the California City Detention Facility.

2. I arrived to California City Detention Facility on November 5, 2025, from Golden State Annex, where I was detained since August 7, 2025.

3. I am currently 61 years old.

4. I have lived in California for 41 years. I received Temporary Protective Status (TPS) in 2002. I have three U.S. citizen children. My oldest son passed away in 2010. My second son is 37 years old. My daughter is 35 years old and served in the U.S. military. I was previously detained by ICE in September 7, 2023 but was released that same day under ATD-ISAP, which required that I attend monthly check-ins. I was incarcerated in CDCR between February 2022 and August 2023.

5. I was detained on August 7, 2025. On the day I was detained, I reported to my monthly immigration check-in where ICE was waiting for me. I was not shown a warrant or deportation order by the ICE officers nor was I told why I was being detained.

6. I am currently housed in Unit G-200, Cell 101 in a double cell with one other detained person.

7. I have diabetes, diabetic neuropathy, diabetic retinopathy, low blood pressure, and mobility issues as a result of having two toes on my left foot amputated in November 2021 and March 2022. In the community, I was prescribed insulin, atorvastatin, aspirin, monthly eye injections, and custom orthopedic shoes and insoles. I also attended weekly therapy sessions to help with depression, anxiety, and PTSD.

8. I arrived to California City on November 5 at approximately 1 pm. I and seven other people who also have diabetes were placed in a holding cell upon our arrival where we stayed until the following day. The holding cell did not have any beds or mattresses for us to sleep on, so we slept on the hard, cold concrete floor.

9. During this time, we were only given one meal at around 6 pm. By that time, we had not eaten for several hours, which is not good for someone like me with diabetes. I and others informed the officers in the booking area that we needed to eat at certain times as diabetics, but the officers told us to be patient and that they were short staffed.

10. To my knowledge, there was only one person doing booking, which took a long time. I was not processed by the booking officer until 11 pm or 12 am on the night we arrived. I thought I would be sent to my assigned pod after being booked, but we were told by the booking officer that we needed to wait until the nurse did our intake screening. However, the nurse had gone home for the night and would not be back until the following morning.

11. During the booking process, the officer confiscated my custom orthopedic shoes and insoles even though I explained to him that I needed them to accommodate my medical and mobility issues. The officer said that I was not allowed to have the shoes without a doctor's order and that I could tell the doctor about my shoes when I see them. I need my orthopedic shoes and insoles because my toe amputations cause an imbalance when I walk. I was ordered orthopedic shoes and insoles by my podiatrist in the community after I fractured three toes in my right foot from walking off balance.

12. I was finally seen by the intake nurse around 11 am on November 6. The nurse asked if I had any PREA or safety concerns and whether I had any intent to harm myself or others. The nurse did not ask any questions about my physical health or medical conditions. I told the nurse that I was a diabetic and take insulin. I also told her that I wore orthopedic shoes and insoles that had been taken from me when I arrived. She said that I should tell the doctor this information when I get called to see them. I have yet to see a doctor since arriving to California City.

13. When I arrived to my pod, I was told I was assigned to the top bunk of Cell 101. I cannot be housed on a top bunk due to my medical conditions and mobility issues. I explained my concerns to the housing unit officer, but he said there was nothing he could do and I would need to wait for a bottom bunk to become available. All of the other seven people I arrived with also requested bottom bunks due to their medical issues, but only one person—a 77-year-old man—was assigned to a bottom bunk.

14. An officer suggested that I should bring my mattress to the floor if I did not want to climb to the top bunk. However, my cellmate did not think this was a good idea because the mattress would be by the toilet which means he would not be able to use the restroom during the night. I decided not to sleep on the floor and climb on the top bunk even though it felt unsafe.

15. When I went in my cell, I asked the person in the bottom bunk if he would be willing to switch, but he said he also had medical conditions and needed the bottom bunk. I don't feel safe going up and down to get to my bed due to my age and medical and mobility issues. I also suffer from knee pain that makes it difficult to get up and

down. Because of my diabetes, I also have to get up in the middle of the night to use the bathroom, which is difficult to do from the top bunk. I am afraid that if my glucose levels drop, which causes me to be shaky and disoriented, I will fall from the top bunk and hurt myself. I tell the officers every day about the bunk issue but nothing has been resolved.

16. I am not able to access the limited programming in my unit without my orthopedic shoes and insoles. The sandals that I was issued do not provide the same level of support that I need in order to safely ambulate. Because of this, I mostly stay in bed and will only come out to dayroom to get my food and watch TV for a little bit. I cannot go to the yard because it is a long walk and it is not safe for me out there with the sandals. Most of the time I stay in my bed because my feet hurt if I try to walk around in the sandals.

17. When I arrived to California City, I was not provided my insulin or other medications despite letting staff know that I needed my medication, especially my insulin. Without my insulin, I was getting headaches, dizziness, and blurry vision.

18. Here, all visits are behind a glass. This is different than at Golden State Annex where I could hug my grandchildren and we were in the same room when they visited. It is a prison here at CCDF. If I could only describe this place with one word, it would be: horrible.

19. I am still not able to use a phone since my arrival. The reason for this is because my commissary funds from GSA have not been transferred over. I do not know when this issue will be resolved.

20. It is very cold here and they do not provide any jackets or beanie for my head. My cell is very cold which means I am always cold.

21. This declaration was read for me in my native language.

I, Daniel Elias Benavides Zamora, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at California City, California this _____ day of November 2025.

*[Signature: Daniel Benavides]*
11/10/25

### ATTESTATION OF TRANSLATOR

I am a native Spanish speaker. On November 10, 2025, I reviewed the above declaration with Daniel Elias Benavides Zamora in Spanish, which Daniel Elias Benavides Zamora represented to me was his preferred and/or native language, and witnessed his signature.

*[Signature]*                                                November 20, 2025

Marisol Dominguez-Ruiz, Staff Attorney        Date
ACLU NATIONAL PRISON PROJECT