| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>STEVEN P. RAGLAND - # 221076<br>sragland@keker.com<br>CODY S. HARRIS - # 255302<br>charris@keker.com<br>CARLOS C. MARTINEZ - # 354616<br>cmartinez@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:    415 391 5400<br>Facsimile:    415 397 7188<br><br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>PRIYA ARVIND PATEL - # 295602<br>priya@ccijustice.org<br>MARIEL VILLARREAL - # 317048<br>mariel@ccijustice.org<br>1999 Harrison Street #1800<br>Oakland, California 94612<br>Tel: (650) 762-8990 | PRISON LAW OFFICE<br>MARGOT MENDELSON - # 268583<br>mmendelson@prisonlaw.com<br>TESS BORDEN - MJP # 805022, *pro hac vice*<br>tess@prisonlaw.com<br>PATRICK BOOTH - # 328783<br>patrick@prisonlaw.com<br>ALISON HARDY - # 135966<br>ahardy@prisonlaw.com<br>RANA ANABTAWI - # 267073<br>rana@prisonlaw.com<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Tel.: (510) 280-2621<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>KYLE VIRGIEN - # 278747<br>kvirgien@aclu.org<br>FELIPE HERNANDEZ - # 338468<br>npp_fhernandez@aclu.org<br>MARISOL DOMINGUEZ-RUIZ - # 345416<br>mdominguez-ruiz@aclu.org<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 343-0770<br><br>CARMEN IGUINA GONZALEZ - # 277369<br>ciguinagonzalez@aclu.org<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Tel.: (202) 393-4930 |

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v. | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF SARAH GOSS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      January 9, 2026<br>Time:     9:00 a.m.<br>Dept.:    Ctrm 7 – 19th Floor<br>Judge:    Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

| | |
|---|---|
| 1 | U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, |
| 2 | Acting Director, U.S. Immigration and Customs Enforcement; SERGIO |
| 3 | ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and |
| 4 | Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT |
| 5 | OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of |
| 6 | Homeland Security, |
| 7 | Defendants. |

**Declaration of Sarah Goss**

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am a private immigration attorney. I have focused on immigration law during my 23 years of legal practice. I have represented detained clients at Golden State Annex, Adelanto, and Imperial Regional Detention Facility.

3. I currently have one client who is detained at the California City Detention Facility. She was detained on October 8, 2025 and retained me as her attorney on October 10, 2025.

4. On October 21, 2025, I drove four hours to meet my client in person at the California City Detention Facility. I did not reach out in advance to schedule a visit as my general practice is to arrive at a detention facility, identify myself as an attorney, and ask to meet with my client. I have never had to wait more than 15 minutes to visit a detained client.

5. When I arrived at the facility at 2:30pm, I was told that there was a "Code 1" and that no movement was allowed on the floor during the code.

6. At 3:00pm, the count started. I was told that I would need to keep waiting to visit my client because no movement was allowed on the floor during the count.

7. At 4:30pm, staff at the facility announced that the count had concluded at 4:00pm.

8. While I was waiting to meet with my client, I encountered three other groups of people also waiting to visit with detained individuals. When I arrived at the facility, there was a woman with her young children and her mother waiting outside. The woman told me she was waiting to meet with her husband and had been waiting for a long time. An older gentleman who did not speak much English told me he had traveled from San Francisco that day and was waiting to speak with his wife. He shared that his wife told him that she had only been fed small quantities of potatoes and noodles and that she was hungry. Another woman arrived around 4:15pm and was told that she had arrived too late for a visit. She said that she comes to visit her partner every week and had previously been told that if she arrived before 5:00pm she would be able to visit with him. Both women were brought to tears while waiting because of the long wait times and because they were told that they wouldn't be able to meet with their loved ones.

9. A guard at the front desk told us all that visitors should arrive at 7:30am so that they would be ready when visitation opened at 8:00am because after 10:30am every day it became much more difficult to get in to visit.

10. Another guard at the front desk said that they were short-staffed and that only one person would be allowed to visit at a time. He said that they were concerned about moving more than one detained person at a time for security reasons. During my time at the facility, I never heard any other reason, aside from short-staffing, for the significant visitation delays.

11. I told the front desk guard that I had papers for my client to sign and asked if my client would be able to sign those papers. I was told that my client did not have a pen and so would not be able to sign any papers.

12. There was confusing messaging about whether or not I could bring my cell phone with me to the visit. A guard at the front desk told me that I would not be able to bring my cell phone with me to the visitation room. There was no locker available to keep my phone in and so I took it out to my car in the parking lot. I encountered a guard outside who told me that I should ask the warden about bringing my cell phone in to the visitation room.

13. Around 5:00pm they decided to allow the family and the other woman in to visit their loved ones. Those visits concluded around 6:20pm and I was told that I could then go in to visit my client. Around 6:30pm, I was taken back to visit my client and the man who had traveled from San Francisco was also allowed back to visit his wife.

14. There appeared to be four confidential attorney rooms available. There was also a long row of desks with a glass partition that could accommodate approximately 15 detained people and their visitors. I was escorted to one of the attorney rooms while the man from San Francisco was taken to the row of desks for his visit. There were large posters hung up behind the row of desks advertising voluntary departure. The visitation rooms that I observed appeared to me to be able to accommodate four confidential visits and around 15 non-confidential visits. However, the facility was using them at much less than their full capacity.

15. The room that I was brought to for my visit was split into two. On my side, there was a table and a chair. A large pane of glass separated me from my client on the other side. There was a slot under the glass through which I was able to pass my client papers and a pen to sign the papers.

16. It was very difficult to hear my client during the visit. This was in part because the pane of glass between us and the concrete walls make it very difficult to clearly hear. It was also in part because she was speaking quietly. She told me that the door on her side of the room was open and that a guard was standing just outside the door. She spoke quietly because she didn't want him to hear her. I had to repeatedly ask her to repeat herself.

17. I was able to meet with my client for about an hour. We spent considerable time during that visit discussing my client's concerns about the facility and her treatment there. She told me that she is hungry because the food portions are small, often only half of a hamburger patty and 1-2 tablespoons each of noodles and carrots. She also told me that she is cold. During my visit, she was wearing two sweatshirts, which she had been able to purchase through commissary before they ran out of items.

18. My client also shared concerns about her access to medical care. She has type 2 diabetes and up until my visit had only received her diabetes medication 6 times and only had her blood sugar checked 4 times. Her medical records indicate that she is supposed to check her blood glucose twice a day and is supposed to receive one of her medications twice a day before meals, and the other medication once a day before her morning meal. She reported that she had once received her medication at 1:30am while detained. She has repeatedly filled out paperwork requesting a doctor's appointment but has not yet seen a doctor.

19. I have been able to advocate for previous clients' medical needs when they do not receive adequate treatment and an urgent need arises. For my client at California City, it would be challenging to provide similar advocacy because the barriers to accessing my client for a confidential meeting mean that I may go days or weeks before knowing if she has an urgent need.

20. My visit concluded around 7:30pm. At that point, I had been at the facility for five hours.

21. It was particularly important for me to meet with this client in person because she is very depressed and has a history of other mental health issues. Because of the long wait time, it's not feasible for me to visit her in person as often as I typically would for my clients, especially those, like her, who particularly benefit from in person time with their attorney.

I, Sarah Goss, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Paso Robles this 6th day of November 2025.

*Sarah Goss*