| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>STEVEN P. RAGLAND - # 221076<br>sragland@keker.com<br>CODY S. HARRIS - # 255302<br>charris@keker.com<br>CARLOS C. MARTINEZ - # 354616<br>cmartinez@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: 415 391 5400<br>Facsimile: 415 397 7188<br><br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>PRIYA ARVIND PATEL - # 295602<br>priya@ccijustice.org<br>MARIEL VILLARREAL - # 317048<br>mariel@ccijustice.org<br>1999 Harrison Street #1800<br>Oakland, California 94612<br>Tel: (650) 762-8990 | PRISON LAW OFFICE<br>MARGOT MENDELSON - # 268583<br>mmendelson@prisonlaw.com<br>TESS BORDEN - MJP # 805022, *pro hac vice*<br>tess@prisonlaw.com<br>PATRICK BOOTH - # 328783<br>patrick@prisonlaw.com<br>ALISON HARDY - # 135966<br>ahardy@prisonlaw.com<br>RANA ANABTAWI - # 267073<br>rana@prisonlaw.com<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Tel.: (510) 280-2621<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>KYLE VIRGIEN - # 278747<br>kvirgien@aclu.org<br>FELIPE HERNANDEZ - # 338468<br>npp_fhernandez@aclu.org<br>MARISOL DOMINGUEZ-RUIZ - # 345416<br>mdominguez-ruiz@aclu.org<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 343-0770<br><br>CARMEN IGUINA GONZALEZ - # 277369<br>ciguinagonzalez@aclu.org<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Tel.: (202) 393-4930 |

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v. | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF HUDSON KYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 9, 2026<br>Time: 9:00 a.m.<br>Dept.: Ctrm 7 – 19th Floor<br>Judge: Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

| | |
|---|---|
| 1 | U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, |
| 7 | Defendants. |

DECLARATION OF HUDSON KYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

**Declaration of Hudson Kyle**

1. I make this declaration based on my own personal knowledge, and if called to testify I could and would do so competently and truthfully to these matters.

2. I am an immigration attorney with Immigrant Legal Defense. Since 2018, I have specifically focused on detained removal defense. Over the course of my career, I have represented hundreds of detained immigration clients.

3. I am located in San Antonio, Texas. I rely on video and phone conversations to provide representation to my detained clients in California.

4. I currently represent three individuals detained at the California City Detention Facility. I represented two of those individuals before they were transferred to the California City Detention Facility. I began representation of the other one after they were already detained at the California City Detention Facility.

5. It has been extremely difficult to schedule confidential video calls with my clients who are detained at the California City Detention Facility. Generally, it has taken anywhere from 10 days to more than 2 weeks to get a call scheduled. For example, on October 9, 2025, I sent an email to calcityattorneyschedule@corecivic.com to request the soonest available VAV. The following day, the facility responded and stated: "While we understand the urgent need, due to limited slots and availability, we unfortunately do not have any availability until 10/24/25." In another example, on September 30, 2025, I sent an email to [calcityattorneyschedule@corecivic.com](mailto:calcityattorneyschedule@corecivic.com) to request a one-hour virtual attorney visit (VAV) for some time that week. On the same day, I received a response offering me times on October 9 or 10, 2025. I asked if it would be possible to schedule a 30-minute VAV any earlier, and they confirmed a time on October 1, 2025.

6. It has also been challenging to schedule calls at specific times. In one case, I reached out to schedule a call and offered the available time slots on my calendar. The facility responded and said that a call would only be possible during a time when I had indicated that I was not available and, in fact, had a conflicting meeting. Luckily, I was able to reschedule my other meeting in order to accommodate the facility's limited options and to reach my client.

7. On November 3, 2025, I had two VAVs scheduled with existing clients and an additional call scheduled with a prospective client. The first two calls were plagued with technological problems which led to the video freezing or audio cutting off repeatedly throughout our calls. I lost approximately 10-15 minutes from each call

    while waiting for the connection to load or having to repeat myself. This was particularly challenging because the connection dropped during particularly sensitive moments of our conversation and required me asking my clients to repeat painful memories multiple times. My third call did not have any technological issues, but detention center staff did not log my prospective client onto the call until approximately 10-15 minutes after it was scheduled to begin.

8. On occasion, my clients have been able to reach me by phone. My phone number is registered with Talton, the provider of telephone service to people detained at the facility, as a legal line. Therefore, it is my understanding that none of those calls are monitored or recorded. However, the phones are located in a common area, so I worry about the confidentiality of those conversations if other people are nearby. I have also heard from my clients that there are long lines to use the phone. One client told me there are only approximately six phones for the more than 80 women in her dorm.

9. The long wait times to get calls scheduled with my clients have been a major impediment to my ability to reach my clients and to effectively represent them. In my experience representing detained clients, I am usually able to schedule calls with my clients within 24 hours of reaching out to schedule a call.

10. The difference between scheduling a call for the following day or having to wait for 10-14 plus days is monumental. In my seven years practicing detained removal defense, this is the longest I have ever had to wait to schedule video or phone calls with my clients. It is a huge hurdle for my work on their behalf.

11. The court process for detained clients can run fairly quickly. One of my clients already has a removal order, so timing is absolutely of the essence for me to gather enough information about her case and her wishes in order to counsel her on her options, including possibilities to seek release. There is a looming possibility of her removal each time I'm able to speak with her.

12. Consistent communication is particularly important for immigration clients. I am often speaking to my clients across language barriers. In addition, immigration law necessarily requires applicants to bare their souls in some way or another. The subject of our conversations is nearly always sensitive and emotionally taxing. Depending on the requirements of the case, I have to ask my clients to share the worst things that have ever happened to them or to their families and/or the intimate details of their mental health. To help my clients tell their stories, I need to spend a lot of time building trust. In many cases, that's impossible to do quickly. Piecing out that story of the most difficult parts of my clients' lives over multiple weeks is really tough. It's all

the more challenging to build trust when I have to end each call by saying that I hope to talk to them again soon but that it might take multiple weeks to get another call scheduled. Likewise, it is difficult to gather these facts when my clients call me from their dayroom, within earshot of others, because my clients generally do not feel comfortable sharing intimate details of their lives where others can overhear.

13. Two of my clients at the California City Detention Facility have mental health concerns. One of them has struggled being in detention and has expressed thoughts of self-harm verging on suicidal ideation. I worry that if she has a mental health crisis that the facility will be ill equipped to respond. When other clients have had mental health crises, I have been able to quickly schedule calls with them and take action on their behalf. The significant wait times to obtain a confidential virtual visit at California City are far too long to effectively help my clients in crisis.

      I, Hudson Kyle, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed in San Antonio, Texas this 7th day of November 2025.

_____