| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>STEVEN P. RAGLAND - # 221076<br>sragland@keker.com<br>CODY S. HARRIS - # 255302<br>charris@keker.com<br>CARLOS C. MARTINEZ - # 354616<br>cmartinez@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:      415 397 7188<br><br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>PRIYA ARVIND PATEL - # 295602<br>priya@ccijustice.org<br>MARIEL VILLARREAL - # 317048<br>mariel@ccijustice.org<br>1999 Harrison Street #1800<br>Oakland, California 94612<br>Tel: (650) 762-8990 | PRISON LAW OFFICE<br>MARGOT MENDELSON - # 268583<br>mmendelson@prisonlaw.com<br>TESS BORDEN - MJP # 805022, *pro hac vice*<br>tess@prisonlaw.com<br>PATRICK BOOTH - # 328783<br>patrick@prisonlaw.com<br>ALISON HARDY - # 135966<br>ahardy@prisonlaw.com<br>RANA ANABTAWI - # 267073<br>rana@prisonlaw.com<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Tel.: (510) 280-2621<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>KYLE VIRGIEN - # 278747<br>kvirgien@aclu.org<br>FELIPE HERNANDEZ - # 338468<br>npp_fhernandez@aclu.org<br>MARISOL DOMINGUEZ-RUIZ - # 345416<br>mdominguez-ruiz@aclu.org<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 343-0770<br><br>CARMEN IGUINA GONZALEZ - # 277369<br>ciguinagonzalez@aclu.org<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Tel.: (202) 393-4930 |

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>     v. | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF JULIO ARMENTA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     January 9, 2026<br>Time:    9:00 a.m.<br>Dept.:   Ctrm 7 – 19th Floor<br>Judge:  Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

1  U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS,
2  Acting Director, U.S. Immigration and Customs Enforcement; SERGIO
3  ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and
4  Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT
5  OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of
6  Homeland Security,
7           Defendants.

**Declaration of Julio Armenta, 220937953**

1. I, Julio Armenta, am currently detained at the California City Detention Facility.

2. I arrived to California City Detention Facility at the end of August 2025, from the Mesa Verde Detention Facility in Bakersfield, where I had been for about one month.

3. I am seeking asylum in the United States.

4. I am currently 54 years old.

5. I have lived in California for approximately 22 years. Until I was detained, I lived in Salinas with my wife and my two younger children. My eldest child, who is 33 years old, also lives in Salinas. My youngest child is a U.S. citizen. Since I have lived in California, I have never been arrested or detained, until ICE detained me recently.

6. I was detained at the end of July 2025. The day that I was detained, I was on my way to the medical clinic with my wife because we both needed blood tests for our medical conditions. We were at home, and had just gotten into our car to drive to the clinic, when I was detained.

7. Before I was sent to California City, I was at Mesa Verde. While I was at Mesa Verde, I had several visits with my family. At Mesa Verde, we were allowed to have contact visits, and my family and I could hug each other. Our visits could be for up to two hours. At California City Detention Facility, I have been able to have two visits with my family, but the visits were through a glass wall. We were not allowed to hug or touch each other and had to speak through a phone. We were only able to see each other for one hour each time.

8. I am currently housed in Unit G-300, in a double cell with one other detainee.

9. I have a medical condition that causes a risk of blood clots. This condition causes my legs to become inflamed and sometimes go numb. At times, it is difficult for me to walk because of the inflammation and numbness in my legs. I have not received the treatment that I need since I have been at California City. The problems with my medical care have really worried me. I am afraid about the consequences for my health if I stay here. I am worried that I could have a stroke or a heart attack.

10. I had to spend approximately six days in an observation cell at the end of October and beginning of November. I believe that I was placed in the observation cell because of a concern that I might have had tuberculosis. The cell only had a bed, shower, and a

toilet. The cell was small. I could only take about ten paces along one side, and about six paces along the other side. The shower was not working, and I was not able to take a shower during the entire time that I was in the observation cell. I told staff that the shower was not working, but they did not move me to a different cell or fix the shower. I felt very dirty because I was not able to bathe. While I was in the cell, I developed sores on one of my legs. I believe it might be a fungal infection that developed because I was not able to bathe. I tried to talk to the doctor about this, but the doctor told me that he was not interested in discussing the issue right now.

11. In the observation cell, there was nothing to read and no radio. For the first three days that I was in the observation cell, I did not have any access to a telephone. I was not able to communicate with my family to tell them how or where I was. Later, my family told me that they had contacted several hospitals trying to find out if I had been hospitalized because they did not know where I was. After the first three days that I was in the observation cell, staff gave me a tablet, so I could finally make phone calls. Later, I learned that my attorney had contacted the facility and asked to talk to me. I don't know if staff would have given me the tablet if my attorney had not been contacting the facility.

12. I was not allowed to leave the observation cell at any point during those six days. I did not have a lot of space to walk around, which was stressful, because my doctors have told me that I have to walk regularly to prevent blood clots from forming. Being stuck in a very small room by myself for so long was very traumatic and isolating, and it was psychologically hard for me. It was especially difficult because I was worried that I might have tuberculosis, in addition to my other medical conditions.

13. I would like to be released to return home to my wife and children and the life that we have built together in California for over 20 years. However, I am considering accepting voluntary deportation because of how dangerous and horrible the conditions have been at the California City Detention Facility since I have arrived here. The problems with my medical care make me very worried that I will get a lot worse, and could even die, if I continue to stay at this facility. Several years ago, my brother died at the Terminal Island federal prison in Long Beach, because of medical care problems. I am very worried that the same thing could happen to me. In addition, the conditions at the California City Detention Facility have been very punitive and harsh, and I cannot endure this mistreatment any longer.

14. We are rarely allowed outside to breathe fresh air and feel sunshine. We only get to go outside for only one hour a day, and some days we are not allowed outside at all. When we go outside, the yard is dirty and dusty and there is not much for us to do.

15. We are locked up for many hours, sometimes five to six hours, a day, because there are many counts when we are locked inside our cells. There are four counts, at 7 am, 11 am, 3 pm, and 7 pm, and they often take over an hour, sometimes up to two hours. During that time, we are locked inside our cells with nothing to do. We are not allowed to use the tablets during counts, so we cannot use that time to talk with our families or our attorneys. We are also locked in our cells from 10 pm to 5 am the next day. It is traumatic to be locked inside a small space for so long.

16. We are not given enough food, and I am often still hungry after eating the meals. Many times, the food is provided cold. I have to spend hundreds of dollars a month buying extra food from the commissary in order to not go hungry. Our meals are provided inside our housing unit. We can eat at the tables in the dayroom or inside our cells.

17. Many of the officers who work here do not treat us respectfully. They yell at us, and speak to us disrespectfully and rudely. Most of the guards do not seem to speak languages other than English, and they do not make an effort to understand those of us who do not speak English, like me.

18. I use the tablets to make phone calls. I have to spend around $50 a week to talk to my family. In addition, I had to buy headphones to use with the tablet, in order to be able to make phone calls. Sometimes, other people ask to borrow my headphones to use the tablet because they cannot buy their own.

19. This declaration was read for me in my native language.

I, Julio Armenta, declare under penalty of perjury that the foregoing is true and correct and that this declaration was completed and signed on November 6, 2025 in California City, California

_Julio César Armenta_

ATTESTATION OF TRANSLATOR

I am a native Spanish speaker. On November 6, 2025, I reviewed the above declaration with Julio Cesar Armenta in Spanish, which Julio Cesar Armenta represented to me was his preferred and/or native language, and witnessed his signature.

_Gabriela Pelsinger_
Gabriela Pelsinger, Investigator
PRISON LAW OFFICE

November 24, 2025
Date