KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v. | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF MARIO VALENZUELA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br>Date:        January 9, 2026<br>Time:        9:00 a.m.<br>Dept.:        Ctrm 7 – 19th Floor<br>Judge:        Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

1  U.S. IMMIGRATION AND CUSTOMS
   ENFORCEMENT; TODD M. LYONS,
2  Acting Director, U.S. Immigration and
   Customs Enforcement; SERGIO
3  ALBARRAN, Acting Director of San
   Francisco Field Office, Enforcement and
4  Removal Operations, U.S. Immigration and
   Customs Enforcement; U.S. DEPARTMENT
5  OF HOMELAND SECURITY; KRISTI
   NOEM, Secretary, U.S. Department of
6  Homeland Security,

7          Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Declaration of Mario Valenzuela**

1.  I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2.  I am a private immigration attorney. I have represented hundreds of detained immigration clients over the course of my 20-year legal career. In California, I have represented detained clients at Golden State Annex, Mesa Verde, Adelanto, and Otay Mesa.

3.  I currently have 11 clients detained at the California City Detention Facility.

4.  I have visited my clients in person at the facility 6 times in the past 2 months. It takes me approximately 1 and a half hours to get to or from the facility each time I visit.

5.  On September 10, 2025, I emailed calcityattorneyschedule@corecivic.com to say that I was planning to come to the facility to see 3 of my detained clients. I did not receive a response to my email but traveled to the facility and was able to meet with my three clients that day. When I arrived at the facility, I was taken back to an area with four attorney visit rooms and a long row of desks for non-confidential visits. The attorney visit rooms are each one long room with a glass partition separating the attorney from their client. A guard was standing outside of the room watching our interaction from a glass window in the door for the entire time.

6.  On September 21, 2025, I went back to the facility to visit with 8 of my clients. I emailed the facility at calcityattorneyschedule@corecivic.com on September 19, 2025 to notify them of my planned visit. During this visit, the facility staff were able to have my clients ready for my visit and so there was minimal wait time between clients. Every other time I have visited clients at the California City Detention Facility, I have to wait 15-30 minutes between client visits for the next client to be brought to the room.

7.  On October 5, 2025, I made another trip to the facility to visit 5 clients. I emailed the facility at calcityattorneyschedule@corecivic.com on October 3, 2025 to notify them of my planned visit. One of my clients on that day required a language interpreter because he spoke limited English. One of the guards called a live interpreter for us on his device but we lost connection after a few minutes and the guards were not able or willing to reestablish connection. A different guard told me that I would need to bring my own interpreter next time. I was not able to connect with an interpreter online because the internet connection is very poor at the facility. My cell phone's hot spot cannot provide reliable internet while I'm in the facility meaning that having my

laptop with me is basically useless. I was not able to continue my conversation with that client after the guards' interpreter connection failed.

8. On October 14, 2025, I emailed calcityattorneyschedule@corecivic.com to ask for guidance on having a paralegal join me for my in-person visits. I never received a response to that email.

9. On October 15, 2025, I emailed calcityattorneyschedule@corecivic.com to notify the facility that I planned to visit that day to meet with 3 clients. When I visit detained clients, I typically bring a portable printer and laptop with me so that I can print out papers for my clients to sign during our meeting. The side of the attorney room I am nearly always placed in does not have any outlets so I was unable to plug in my printer and so could not print out any papers for my client to sign.

10. On October 17, 2025, I emailed calcityattorneyschedule@corecivic.com to notify them that I planned to visit the facility on October 19, 2025 to visit 5 clients. In particular, I needed to visit with a specific client, Alejandro Mendiola Escutia, to have him sign papers that I had been unable to print for him to sign during my visit on October 15, 2025.

11. On October 19, 2025, I arrived at the facility in the early afternoon. I was told that the client I had particularly needed to see to sign papers would be the last person they brought for me to meet because he was currently in solitary.

12. On October 19, 2025, I was meeting with my second client when the count started. During the count, detained individuals at the facility are not allowed to move locations. The count lasted more than 2 hours that day because the facility could not locate either a detained individual or a food tray. I stayed with my client in the attorney room for some time and then asked to leave to use the restroom. I was then left in the corridor between attorney rooms until the count concluded around 6:30pm.

13. After the count ended on October 19, 2025, I was placed on the other side of the attorney room. For the first time, I was placed on the side of the room that appeared to be intended for attorneys to use because it included an outlet. That is the only time I have ever been placed on that side of the room while visiting clients at the California City Detention Center. I was not able to visit with my client who guards said was in solitary confinement because I had to return home to my family.

14. I visited the California City Detention Facility on November 2, 2025. I emailed calcityattorneyschedule@corecivic.com on October 31, 2025 to notify them of my

intended visit with 10 of my clients. On November 1, 2025, I emailed again to add an 11th client to my visit list.

15. On November 2, 2025, I arrived at the facility around 11:15am. I was initially told that I could not have electronics, including my cell phone with me during this visit, which was surprising because I had previously been able to bring all my electronics, including my cell phone, back with me. I waited in the lobby area until about 2:00pm when I was escorted back to begin my legal visits. I was allowed to take my electronics this time and given an 'electronics' form to complete for my next visits.

16. During my third visit of the day, the count began. My visit concluded at 3:20 but my client had to wait until the count was completed at 4:00pm to be escorted back. I could not begin another legal visit during that 40-minute period. Shortly after 5:00pm, while I was meeting with my fourth client of the day, a guard interrupted us to say that I would need to wrap up by 6:30pm. I was surprised to hear this because my understanding since first visiting the facility in September was that attorneys could visit their clients from 8:00am – 8:00pm each day. They allowed me to meet with one additional client. Because of the delay in beginning my visit, the time lost during the count, and the abrupt end to my visiting time, I was only able to meet with 5 of the 11 people I had planned to meet with on that day.

17. On November 12, 2025, I was retained by a new client who is being held at California City. Based on her procedural posture, I knew that the next step in her case was to have a Reasonable Fear Interview with an immigration judge, and that she should be served with a notice when the hearing would be scheduled. Attorneys cannot enter appearances for Reasonable Fear Interviews until they are scheduled, so I explained to this client that she should call me as soon as she receives this notice. This client never received the notice and therefore never called me. She was nonetheless called in for her hearing with the Immigration Judge, who held it without me present despite my client's statements that she never was served with notice of the hearing. A couple days after this hearing, I listened to the audio of the hearing and client told the Immigration Judge she never told me about the hearing because she did not know about it beforehand.

18. I visited clients at the facility again on November 23, 2025. It took the facility over one hour to allow me in. My visits were further delayed by two counts that took place, during which the facility would not bring clients to meet me, and by other delays between visits. The facility ended my visits at 6:00 pm. As a result, I was not allowed to see one of the clients I had planned to visit, and I had a truncated first consultation with another client. I now need to return to the facility earlier than I had planned to cover these visits that—according to the facility's own policy—I should

have been permitted to conduct my visits through 8:00 pm. I was told there was no staffing for visit after 6:00 pm as the reason my visits would have to end.

19. It is important to have consistent, reliable communication with immigration clients. I need this time in order to build trust and discuss sensitive issues with them. It often takes multiple conversations to get important details from a client.

I, Mario Valenzuela, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Bakersfield, California this 24th day of November 2025.