1   KEKER, VAN NEST & PETERS LLP                  PRISON LAW OFFICE
    STEVEN P. RAGLAND - # 221076                  MARGOT MENDELSON - # 268583
2   sragland@keker.com                            mmendelson@prisonlaw.com
    CODY S. HARRIS - # 255302                     TESS BORDEN - MJP # 805022, *pro hac vice*
3   charris@keker.com                             tess@prisonlaw.com
    CARLOS C. MARTINEZ - # 354616                 PATRICK BOOTH - # 328783
4   cmartinez@keker.com                           patrick@prisonlaw.com
    633 Battery Street                            ALISON HARDY - # 135966
5   San Francisco, CA 94111-1809                  ahardy@prisonlaw.com
    Telephone:    415 391 5400                    RANA ANABTAWI - # 267073
6   Facsimile:    415 397 7188                    rana@prisonlaw.com
                                                  1917 Fifth Street
7                                                 Berkeley, California 94710-1916
    CALIFORNIA COLLABORATIVE FOR                  Tel.: (510) 280-2621
8   IMMIGRANT JUSTICE
    PRIYA ARVIND PATEL - # 295602
9   priya@ccijustice.org                          AMERICAN CIVIL LIBERTIES UNION
    MARIEL VILLARREAL - # 317048                  FOUNDATION
10  mariel@ccijustice.org                         KYLE VIRGIEN - # 278747
    1999 Harrison Street #1800                    kvirgien@aclu.org
11  Oakland, California 94612                      FELIPE HERNANDEZ - # 338468
    Tel: (650) 762-8990                           npp_fhernandez@aclu.org
12                                                MARISOL DOMINGUEZ-RUIZ - # 345416
                                                  mdominguez-ruiz@aclu.org
13                                                425 California Street, 7th Floor
                                                  San Francisco, CA 94104
14                                                Tel.: (415) 343-0770

15                                                CARMEN IGUINA GONZALEZ - # 277369
                                                  ciguinagonzalez@aclu.org
16                                                915 15th Street, NW, 7th Floor
                                                  Washington, DC 20005
17                                                Tel.: (202) 393-4930

18  *Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri*
    *Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia*
19  *and all others similarly situated*

20                          UNITED STATES DISTRICT COURT

21                       NORTHERN DISTRICT OF CALIFORNIA

22  FERNANDO GOMEZ RUIZ; FERNANDO          Case No. 3:25-cv-09757-MMC
    VIERA REYES; JOSE RUIZ CANIZALES;
23  YURI ALEXANDER ROQUE CAMPOS;           **PLAINTIFFS' NOTICE OF MOTION**
    SOKHEAN KEO; GUSTAVO GUEVARA           **AND MOTION FOR TEMPORARY**
24  ALARCON; and ALEJANDRO MENDIOLA        **RESTRAINING ORDER**
    ESCUTIA, on behalf of themselves and all
25  others similarly situated,             Date:      To be set by the Court
                                           Time:      To be set by the Court
26                          Plaintiffs,    Dept.:     Ctrm 7 – 19th Floor
                                           Judge:     Hon. Maxine M. Chesney
27          v.
                                           Date Filed:  November 12, 2025
28  U.S. IMMIGRATION AND CUSTOMS
    ENFORCEMENT; TODD M. LYONS,

1   Acting Director, U.S. Immigration and
    Customs Enforcement; SERGIO
2   ALBARRAN, Acting Director of San
    Francisco Field Office, Enforcement and
3   Removal Operations, U.S. Immigration and
    Customs Enforcement; U.S. DEPARTMENT
4   OF HOMELAND SECURITY; KRISTI
    NOEM, Secretary, U.S. Department of
5   Homeland Security,

6                        Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>NOTICE OF MOTION AND MOTION</u>**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** as soon as it may be heard before the Honorable Maxine M. Chesney in Courtroom 7 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, that Plaintiffs Yuri Alexander Roque Campos and Fernando Viera Reyes (collectively, "Plaintiffs") hereby move this Court pursuant to Federal Rule of Civil Procedure 65(b) and Civil Local Rule 65-1 for a temporary restraining order against Defendants: the United States Immigration and Customs Enforcement ("ICE"); Todd M. Lyons in his official capacity as Acting Director of ICE; Sergio Albarran in his official capacity as Acting Director of the San Francisco Field Office, Enforcement and Removal Operations, of ICE; the United States Department of Homeland Security; and Kristi Noem in her official capacity as Secretary of the Department of Homeland Security; and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them.

Plaintiffs respectfully move the Court to enter a temporary restraining order to remedy ongoing violations of Plaintiffs' Fifth Amendment right to adequate medical care. A [Proposed] Temporary Restraining Order and Order to Show Cause is attached to this Motion.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying supporting Declarations of Cody S. Harris, Todd Randall Wilcox, Fernando Viera Reyes, Yuri Alexander Roque Campos, and Patrick Booth and exhibits thereto; the [Proposed] Temporary Restraining Order and order to Show Cause; the papers, evidence, and records on file in this action; and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court.

i

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-09757-MMC

1    Dated: December 16, 2025

2    Respectfully submitted,

3    /s/ *Cody S. Harris*                                  /s/ *Margot Mendelson*

4    KEKER, VAN NEST & PETERS LLP          PRISON LAW OFFICE
     STEVEN P. RAGLAND                               TESS BORDEN

5    CODY S. HARRIS                                      MARGOT MENDELSON
     CARLOS C. MARTINEZ                             PATRICK BOOTH

6                                                                  ALISON HARDY
     AMERICAN CIVIL LIBERTIES UNION        RANA ANABTAWI

7    FOUNDATION
     KYLE VIRGIEN                                         CALIFORNIA COLLABORATIVE FOR

8    FELIPE HERNANDEZ                               IMMIGRANT JUSTICE
     MARISOL DOMINGUEZ-RUIZ                  PRIYA ARVIND PATEL

9    CARMEN IGUINA GONZALEZ                 MARIEL VILLARREAL

10                                                                 *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-09757-MMC

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................................1

II.  FACTS ....................................................................................................................2

    A.   Mr. Roque Campos is at risk of sudden cardiac death and needs urgent and specialized medical attention. ...........................................................................3

    B.   Mr. Viera Reyes likely has prostate cancer and needs urgent and specialized medical treatment. .......................................................................5

III. LEGAL STANDARD ............................................................................................7

IV.  ARGUMENT ..........................................................................................................7

    A.   Plaintiffs are likely to succeed on the merits of their Fifth Amendment claim....................................................................................................................7

    B.   Without seeing medical specialists and receiving appropriate treatment, Plaintiffs are likely to suffer irreparable harm. ....................................................12

    C.   The balance of hardships and the public interest weigh heavily in favor of a temporary restraining order......................................................................14

V.   CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ..................................................................7

*Atwood v. Days*,
  2021 WL 5811800 (D. Ariz. Dec. 7, 2021) ...........................................12

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) .................................................................14

*Beck v. Hurwitz,*
  380 F. Supp. 3d 479 (M.D.N.C. 2019) ..................................................11

*Bent v. Barr*,
  445 F. Supp. 3d 408 (N.D. Cal. 2020) ...................................................14

*Casey v. Lewis*,
  834 F. Supp. 1477 (D. Ariz. 1993) .........................................................11

*Castro v. Cnty. of L.A.*,
  833 F.3d 1060 (9th Cir. 2016) ........................................................8, 9, 12

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989) ..................................................................................8

*Doe v. Kelly*,
  878 F.3d 710 (9th Cir. 2017) ....................................................................8

*F.R.P. v. Wamsley*,
  2025 WL 3037858 (D. Or. Oct. 30, 2025).............................................14

*Fromer v. Cnty. of Riverside*,
  2025 WL 819719 (C.D. Cal. Feb. 4, 2025).............................................10

*Gordon v. Cnty. of Orange*,
  888 F.3d 1118 (9th Cir. 2018) ......................................................8, 9, 10

*Guel v. Cnty. of San Bernardino*,
  2024 WL 5185331 (C.D. Cal. Oct. 23, 2024).....................................9, 10

*Helling v. McKinney*,
  509 U.S. 25 (1993)....................................................................................8

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) .............................................................12, 15

iv

*Jensen v. Shinn*,
    609 F. Supp. 3d 789 (D. Ariz. 2022) ........................................................................11

*Madrid v. Gomez*,
    889 F. Supp. 1146 (N.D. Cal. 1995) ........................................................................11

*Mercado v. Noem*,
    2025 WL 2658779 (S.D.N.Y. Sept. 17, 2025) ........................................................15

*Nken v. Holder*,
    556 U.S. 418 (2009)..................................................................................................14

*Pablo Sequen v. Albarran*,
    2025 WL 3283283 (N.D. Cal. Nov. 25, 2025) ..........................................12, 14, 15

*Pimentel v. Dreyfus*,
    670 F.3d 1096 (9th Cir. 2012) ...................................................................................7

*Rodriguez v. Kaiser*,
    2025 WL 2855193 (E.D. Cal. Oct. 8, 2025) ............................................................12

*Roman v. Wolf*,
    977 F.3d 935 (9th Cir. 2020) ..........................................................................7, 8, 10

*Tater v. City of Huntington Beach*,
    2023 WL 4291656 (C.D. Cal. May 8, 2023) .............................................................9

*Ward v. Cnty. of San Diego*,
    2025 WL 319250 (S.D. Cal. Jan. 28, 2025)..........................................................9, 10

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ...................................................................................12

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ...................................................................................7

*West v. Atkins*,
    487 U.S. 42 (1988)......................................................................................................2

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................7, 14, 15

*Zepeda v. U.S. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ...................................................................................15

**Constitutional Provisions**

Fifth Amendment.................................................................................2, 7, 8, 11

Eighth Amendment............................................................................3, 8, 11

v

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**[1]

3          The stakes for this motion, and the need for a temporary restraining order, could not be

4    higher. Plaintiffs Yuri Alexander Roque Campos and Fernando Viera Reyes are experiencing

5    acute medical distress and need immediate specialized medical attention. Their risk of severe

6    illness—and in Mr. Roque Campos's case, imminent death—is real and rising by the day.

7    Plaintiffs' counsel presented the urgent facts regarding Messrs. Roque Campos and Viera Reyes

8    in the Motion for Preliminary Injunction they filed on December 1, 2025. *See* Dkt. No. 22.

9    Undersigned counsel has pleaded for help for these two men from their very first call with

10   Defendants' counsel on December 2, 2025. They tried again on December 15, alerting

11   Defendants that these Plaintiffs' conditions had deteriorated and that the life-or-death

12   consequences of Defendants' delays required Plaintiffs to seek immediate intervention from this

13   Court. Despite all of this, Defendants have done ***nothing***—apparently content to see these two

14   men suffer and die on their watch. We plead the Court for help.

15          As Plaintiffs explained in their preliminary injunction motion, many putative class

16   members detained at California City Detention Facility ("California City") need urgent medical

17   care that medical staff at the facility are unable or unwilling to provide. Two of those individuals

18   are Messrs. Roque Campos and Viera Reyes, both of whom are suffering from severe, life-

19   threatening diseases that require immediate medical intervention. Based on a review of medical

20   records and sworn declarations, Plaintiffs' expert, Dr. Todd Wilcox, concluded that Mr. Roque

21   Campos has a serious heart condition and is at "significant risk for sudden cardiac death." Dkt.

22   No. 22-03, Decl. of Dr. Todd Wilcox ("Wilcox Decl.") ¶ 89.[2] Mr. Viera Reyes has been

23   exhibiting clear symptoms of advancing prostate cancer and "needs aggressive treatment quickly

24   to minimize his risk of having widespread disease and a much higher mortality rate." *Id.* ¶ 116.

25   _____

26   [1] In all quotations, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless otherwise noted.

27   [2] Dr. Wilcox has submitted a supplemental declaration, filed concurrently with this motion, that focuses on Messrs. Roque Campos's and Viera Reyes's medical conditions and required

28   treatment plans. *See* Suppl. Decl. of Dr. Todd Wilcox ("Suppl. Wilcox Decl.") ¶¶ 11–42.

Because Messrs. Roque Campos and Viera Reyes cannot wait for briefing to be complete on Plaintiffs' preliminary injunction motion—and because the classwide relief requested through that motion is not specific to these two men's particular, urgent medical needs in any event—these two Named Plaintiffs respectfully seek the emergency relief set forth herein.

As set forth below and in the accompanying supplemental declarations, both men's medical conditions have only deteriorated since Plaintiffs filed their preliminary injunction motion, and neither man has seen a specialist or begun an appropriate course of treatment. Mr. Roque Campos's diagnosed heart condition requires prompt and consistent treatment from a cardiologist, but he has yet to see one. He must therefore live every day in fear that it may be his last, even though his condition could be managed with appropriate care. Mr. Viera Reyes likely has prostate cancer. He previously reported blood in his urine and stool and is now experiencing such intense pain that he cannot sit for extended periods of time. Yet he still has not seen a urologist or received the prostate biopsy that was previously recommended on an urgent basis. And recent medical tests reveal a likely malignancy that is already spreading.

Defendants have both a legal and moral obligation to provide adequate medical care for the individuals under their custody and control. By failing to provide timely emergency medical care to individuals with acute, documented, and urgent medical needs—a heart condition that could prove fatal on the one hand, and a cancer that is likely metastasizing on the other—Defendants are violating the Fifth Amendment. Both men are suffering, and will continue to suffer, irreparable harm absent relief. Accordingly, Plaintiffs respectfully ask the Court to order Defendants to immediately ensure that Mr. Roque Campos sees a cardiologist and Mr. Viera Reyes sees a urologist, and that both men receive appropriate medical treatment and follow-up.

## II.    FACTS

Messrs. Roque Campos and Viera Reyes are currently detained at California City. Dkt. No. 22-06, Decl. of Yuri Alexander Roque Campos ("Roque Campos Decl.") ¶ 1; Dkt. No. 22-24, Decl. of Fernando Viera Reyes ("Viera Reyes Decl.") ¶ 1. Defendants have contracted the operation of that facility to a private contractor but remain responsible for its compliance with the law and the humane treatment of those held there. *See West v. Atkins*, 487 U.S. 42, 56 (1988)

2

1    ("Contracting out prison medical care does not relieve the State of its constitutional duty to

2    provide adequate medical treatment to those in its custody, and it does not deprive the State's

3    prisoners of the means to vindicate their Eighth Amendment rights."). Messrs. Roque Campos

4    and Viera Reyes each arrived at California City with serious preexisting medical conditions. The

5    catastrophic health care gaps outlined in Plaintiffs' Motion for Preliminary Injunction exacerbated

6    the men's conditions. *See generally* Pls.' Mot. For Prelim. Inj. at 5–8. Both men's health

7    conditions have significantly deteriorated since Plaintiffs filed that Motion. *See* Suppl. Decl. of

8    Yuri Alexander Roque Campos ("Suppl. Roque Campos Decl.") ¶ 6; Suppl. Decl. of Fernando

9    Viera Reyes ("Suppl. Viera Reyes Decl.") ¶¶ 6-8. Dr. Wilcox, the medical director of a large

10   county jail with 31 years of experience in correctional medicine, is no stranger to the realities of

11   providing medical care behind bars. *See* Suppl. Wilcox Decl. ¶ 4. He opines that these two men

12   "are receiving grossly inadequate medical care at California City Detention Facility." *Id.* ¶ 11.

13   Having reviewed their declarations and medical records, Dr. Wilcox has concluded that "it is

14   critical that each of these patients be urgently seen by a specialist, that that specialist develop a

15   comprehensive treatment plan, and that California City Detention Facility follow that treatment

16   plan, which may include subsequent specialist visits, to avoid the risk of immediate death or other

17   irreversible medical harm." *Id.* ¶ 12.

18           A.    **Mr. Roque Campos is at risk of sudden cardiac death and needs urgent and
                   specialized medical attention.**
19

20           Mr. Roque Campos has been "diagnosed with pulmonary hypertension and congestive

21   heart failure, conditions that are life-threatening and need close monitoring and appropriate

22   management." Wilcox Decl. ¶ 48; *see also* Suppl. Wilcox Decl. ¶ 13 (describing Mr. Roque

23   Campos's condition as "pulmonary hypertension, congestive heart failure, right atrial

24   enlargement, and a right bundle branch block"). When Mr. Roque Campos arrived at California

25   City on September 5, 2025, he was immediately sent to the emergency room. Suppl. Wilcox Decl.

26   ¶ 14. In an "unusual" move, the ER doctor who saw Mr. Roque Campos sent him back to

27   California City with a lengthy note, which stated that it was "imperative that Mr. Campos follow

28   up within 72 hours with a specialist in right heart failure or pulmonary hypertension." *Id.* ¶ 14 &

3

App'x D. The ER doctor believed it was safe to send Mr. Roque Campos back to California City, but only "provided that he receives daily check-ins with health officials and that arrangements are made for close follow-up with appropriate cardiology and/or pulmonology specialists." *Id.*

The next day, Mr. Roque Campos was again sent to the Emergency Room for evaluation for chest pain. *Id.* ¶ 18. Upon his return he was placed under "medical observation," but did not see a doctor at California City until September 9, 2025. *Id.* Defendants failed to follow the ER doctor's recommendation that Mr. Roque Campos see a cardiac specialist within 72 hours. *Id.* ¶ 17. Indeed, a review of Mr. Roque Campos's medical records reveal that he has ***never*** seen a cardiologist since arriving at California City. *Id.*

This lack of critical care poses a dire risk to Mr. Roque Campos. His "complicated heart condition . . . makes him a medically very high risk patient." Wilcox Decl. ¶ 62. According to his medical records, Mr. Roque Campos had an EKG completed on September 24, 2025 that showed "concerning abnormalities." *Id.* ¶ 93. One doctor who saw Mr. Roque Campos in October 2025 determined that he "has a right bundle branch block and right atrial enlargement and referred him to a cardiologist on a routine basis." *Id.* ¶ 88. By then, roughly six weeks had passed since he had arrived at California City, and he "should already have been seen" by a specialist. *Id.*

Since Mr. Roque Campos's initial declaration, he still has not seen a cardiologist, despite multiple sick call requests. Suppl. Roque Campos Decl. ¶¶ 6, 8; Suppl. Wilcox Decl. ¶ 17. A subsequent December EKG again showed he had heart irregularities, but the nurse said she could not send him to a specialist. Suppl. Roque Campos Decl. ¶ 9. His symptoms have since worsened. He experiences frequent chest pain and pain around his lungs. *Id.* ¶ 6. This pain is exacerbated by stress and so severe it prevents him from walking for more than twenty minutes. *Id.* ¶¶ 6-7.

Mr. Roque Campos's condition requires "extremely complicated medicine involving multiple medications, some of which can only be obtained through a cardiology office because of their unique attributes and limited availability." Wilcox Decl. ¶ 89. Failure to "do the appropriate workup" and prescribe the correct medication regimen—"a regimen that far exceeds the simple baby aspirin that the facility has agreed to"—places Mr. Roque Campos "***at significant risk for sudden cardiac death***." *Id.* Moreover, medical staff at California City have failed to even

1  consistently provide Mr. Roque Campos with a "simple" blood thinning medication that he needs

2  to help manage his heart condition. Suppl. Wilcox Decl. ¶ 24. Since his detention, Mr. Roque

3  Campos has experienced multiple lapses of weeks and even an entire month in receiving his

4  medication. *Id.* Missing a single dose significantly increases his risk of a heart attack, stroke, or

5  death; due to these inexplicable lapses, he has missed several dosages. *Id.*

6         Defendants know that Mr. Roque Campos is at serious risk of a major cardiac event or

7  death. Records show a "due date" of January 16, 2026, for a cardiology referral, "pending

8  financial authorization." *Id.* ¶ 20. Nothing else in the records shows that any appointment has

9  been scheduled with a cardiac specialist or that the "financial authorization" has been approved.

10 *Id.* In any event, Mr. Roque Campos "must be seen immediately." *Id.* Without immediate

11 assessment and care by a cardiologist, Mr. Roque Campos faces a heightened and unnecessary

12 risk of sudden death. *Id.* ¶ 25.

13      **B.    Mr. Viera Reyes likely has prostate cancer and needs urgent and specialized
               medical treatment.**

14

15        Before Defendants transferred Mr. Viera Reyes to California City, he was detained at

16 Golden State Annex Detention Facility. Viera Reyes Decl. ¶ 6. While at Golden State Annex, he

17 began experiencing difficulty and pain while urinating. *Id.* ¶ 10. His subsequent blood work

18 showed elevated prostate-specific antigen ("PSA") levels. As Dr. Wilcox explains, "PSA is a

19 blood test which measures prostate-specific antigen and could be indicative of various conditions,

20 including prostate cancer." Wilcox Decl. ¶ 115. When Mr. Viera Reyes' PSA levels continued to

21 rise, Golden State Annex referred him to a urologist to undergo various tests to determine

22 whether he had prostate cancer. Viera Reyes Decl. ¶¶ 6–7. Based on that testing, Mr. Viera

23 Reyes' urologist ordered a prostate biopsy to be done "right away." Suppl. Viera Reyes Decl. ¶

24 5.d. But Defendants transferred Mr. Viera Reyes to California City before the prostate biopsy

25 could be conducted. *Id.*[3]

26        Mr. Viera Reyes arrived at California City in August 2025. *Id.* ¶ 2. To date, Defendants

27

28 _____
[3] Mr. Viera Reyes's medical records reveal that he had been scheduled for a rapid biopsy on
March 19, 2025, but that biopsy appears to have never taken place. *See* Suppl. Wilcox Decl. ¶ 28.

have still not completed his urgently needed prostate biopsy. *Id.* ¶ 4. Indeed, as Dr. Wilcox notes, "in the three and a half months that Mr. Viera Reyes has been housed at the facility, medical staff have not taken the necessary steps to diagnose his condition in order to timely treat him, leaving him at risk of progressive, metastatic cancer." Suppl. Wilcox Decl. ¶ 28. The situation is dire. According to Dr. Wilcox: "The rate by which [Mr. Viera Reyes's] PSA is increasing, in combination with the actual PSA level, points to a high likelihood that he has cancer." *Id.* ¶ 29. Dr. Wilcox notes that Mr. Viera Reyes's PSA levels increased "from 6.3 in January 2025 at his prior facility to 74 on October 1, 2025, a month after his arrival to California City, at a rate vastly above the cutoff for concern." *Id.* Once a patient's PSA levels pass 10, "their risk for cancer increases dramatically so the standard medical practice is to bypass other workups once the level exceeds 10 and go straight to a prostate biopsy by a urologist for diagnosis." *Id.* ¶ 30.

Mr. Viera Reyes's symptoms are worsening at an alarming rate. He is suffering from urinary bleeding, nocturia, and extreme pain. Viera Reyes Decl. ¶ 16. In more recent days, Mr. Viera Reyes also suffers from a "constant, pulsing pain," requiring him to spend most of his time sitting or lying down. Suppl. Viera Reyes Decl. ¶ 6. He feels himself "getting weaker every day": he has a hard time catching his breath and continues losing weight. *Id.* ¶¶ 6–8. His urinary bleeding continues to get worse, and he is now bleeding into his catheter bag. *Id.* ¶¶ 9–13.

During an emergency room visit on November 27, 2025, an MRI showed a lesion on his spine that the doctor said "could be cancer." *Id.* ¶ 10. Specifically, the MRI showed "prostate malignancy with sclerosis of the nearby Thoracic 12th vertebra, which is suspicious for metastatic prostate cancer." Suppl. Wilcox Decl. ¶ 28. Dr. Wilcox's review confirms that likely prognosis. *See id.* ¶ 34 ("Recent hospital records from November 27 through November 28, 2025 raise concerns about a lesion on his spine that may indicate cancer has already metastasized."). The ER physician's notes likewise show concern "for possible new onset malignancy." *Id.*

Medical staff at California City has failed to treat this situation with the urgency it requires. Mr. Viera Reyes cannot wait any longer for his first meeting with a urologist and the simple biopsy that was ordered months ago. As Dr. Wilcox explains: "this type of delay is unacceptable and, if his condition is in fact cancer, ***increases the risk of metastatic cancer***."

Wilcox Decl. ¶ 116. If Mr. Viera Reyes does have cancer, "he needs ***aggressive treatment quickly to minimize his risk of having widespread disease and a much higher mortality rate***." Suppl. Wilcox Decl. ¶ 34. In short, "[e]very day that [Mr. Viera Reyes] fails to receive a biopsy despite his rapidly increasing PSA level increases," his "risk for metastatic disease increases." *Id.* ¶ 36. The risks of delay are significant and measurable. When timely diagnosed and treated, prostate cancer is survivable. *Id.* ¶ 35. But when it remains untreated, the 5-year survival rate plummets from 99 percent to 30 percent, the cancer spreads to other locations in the body, and treatment options become much more invasive. *Id.*

## III.   LEGAL STANDARD

The standard for issuing a temporary restraining order is "substantially identical" to that governing the issuance of a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, Plaintiffs are entitled to a temporary restraining order if they show that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding-scale approach, Plaintiffs are also entitled to a temporary restraining order if they have raised "serious questions going to the merits," the "balance of hardships tips sharply in [their] favor," and the other two *Winter* factors are satisfied. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011).

## IV.   ARGUMENT

### A.   Plaintiffs are likely to succeed on the merits of their Fifth Amendment claim.

To establish a likelihood of success on the merits, Plaintiffs "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012). Because both Plaintiffs are civil detainees, their claims arise under the Fifth Amendment. *See Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) ("The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody."). Plaintiffs likely to establish that Defendants' failure to provide them with timely medical care for their serious, life-threatening medical conditions (i.e.,

7

cardiac care for Mr. Roque Campos and a biopsy and cancer treatment for Mr. Viera Reyes) violate their Fifth Amendment rights because that failure poses an unreasonable risk to their health and safety, and Defendants have failed to take reasonable measures to abate that risk.

As explained in Plaintiffs' Motion for Preliminary Injunction, "[t]here is no question that [ICE] detainees are entitled to adequate medical care." *Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) (holding that when the government "takes a person into its custody" it must provide for "his safety and general well-being," including by providing reasonable "medical care"). To evaluate a civil detainee's Fifth Amendment claim, the Ninth Circuit applies an "objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Detained individuals' constitutional protections extend to "future harm," including a "condition of confinement that is sure or very likely to cause serious illness and needless suffering in the next week, month, or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

The Fifth Amendment standard, which applies to Plaintiffs' claims, is less stringent than the Eighth Amendment test, which in addition to the objective inquiry also requires the prison official to "*subjectively* have a sufficiently culpable state of mind." *Gordon,* 888 F.3d at 1125 n.4 (emphasis in original). Consequently, deprivations of medical care that violate the rights of people in prison *a fortiori* violate the rights of people in civil detention. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016).

Under the Fifth Amendment's objective test, Plaintiffs must show that:

> (1) [the government] made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the [government] did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the [government's] conduct obvious; and (4) by not taking such measures, the [government] caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071; *see also Roman*, 977 F.3d at 943. Plaintiffs satisfy every element.

***First***, Defendants have intentionally chosen not to allow these two men to see medical specialists and receive care, despite knowing that each man is facing a potentially life-threatening

medical condition. A failure to act with respect to a known condition "may constitute an intentional decision." *Guel v. Cnty. of San Bernardino*, 2024 WL 5185331, at *3 (C.D. Cal. Oct. 23, 2024); *see also Castro*, 833 F.3d at 1071 n.4 (first element could be met "where a defendant actually knew of a substantial risk of serious harm and consciously took no action"). The evidence shows that Defendants have known for months that Messrs. Roque Campos and Viera Reyes need, but are not receiving, adequate care for their serious conditions. Defendants know that Mr. Roque Campos's life-threatening heart condition requires a cardiologist, as they received a recommendation from his emergency room doctor to send him to a cardiologist within 72 hours. Wilcox Decl. ¶ 62. Yet they intentionally failed to act on that recommendation. *Id.*

Meanwhile, Defendants were on notice that Mr. Viera Reyes had received a recommendation by a urologist in March 2025 that a prostate biopsy be completed on an urgent basis. Suppl. Wilcox Decl. ¶ 31. In the weeks since, Defendants have known about his worsening condition from his numerous sick-call slips reporting bloody urine and stool. *Id.* ¶¶ 11, 15–16; Suppl. Viera Reyes Decl. ¶¶ 9, 20 (submitted at least ten sick-call slips since early November 2025). And Defendants were certainly put on notice when Plaintiffs filed their preliminary injunction notice on December 1, 2025, highlighting these specific and urgent medical needs. But Defendants have ignored or otherwise not meaningfully respond to this medical emergency. Instead, Defendants have repeatedly made the intentional decision to not provide either man with the necessary and urgently needed specialists. *See*, *e.g.*, *Ward v. Cnty. of San Diego*, 2025 WL 319250, at *8 (S.D. Cal. Jan. 28, 2025) (failure to screen for and treat medical and mental health care needs on arrival to jail constitute intentional decisions); *Tater v. City of Huntington Beach*, 2023 WL 4291656, at *13 (C.D. Cal. May 8, 2023) (similar).

**Second**, Defendants' failure to provide the required specialists have put both men at "substantial risk of serious harm." *Gordon*, 888 F.3d at 1125. After reviewing developments since November 2025, Dr. Wilcox has expressly opined that "[w]ithout immediate medical intervention, either or both of these patients could suffer serious adverse health effects any day." Suppl. Wilcox Decl. ¶ 11. Immediate specialist intervention is necessary "to avoid the risk of immediate death or other irreversible medical harm" to both of these men. *Id.* ¶ 12.

1          ***Third***, Defendants' failure to provide access to necessary care is "objectively

2    unreasonable" based "on the facts and circumstances" present here. *Gordon*, 888 F.3d at 1125 &

3    n.4. Indeed, a "reasonable official in the[se] circumstances would have appreciated the high

4    degree of risk involved—making the consequences of the defendant's conduct obvious." *Id.* at

5    1125. A decision to ignore "medical needs, even for less than 24 hours, despite repeated warnings

6    of the severity of [the person's] injury," is sufficient to show objective unreasonableness. *Guel*,

7    2024 WL 5185331, at *4. Here, Defendants have ignored the men's urgent medical needs for

8    much longer than 24 hours: both men alerted Defendants to their serious conditions in late August

9    or early September. Roque Campos Decl. ¶¶ 3, 17–19; Viera Reyes Decl. ¶¶ 2, 11. Mr. Roque

10   Campos arrived at California City and was immediately sent to the emergency room. Roque

11   Campos Decl. ¶¶ 16–17. He exhibited chest pains and had to be hospitalized again. *Id.* ¶ 19. He

12   has repeatedly told staff members that he is in dire need of medical care and is now living in daily

13   fear for his life. *Id.* ¶¶ 16, 25–26, 33. Mr. Viera Reyes has been experiencing blood in his urine

14   and stool, is in terrible pain, and has been waiting for a routine biopsy for months. Viera Reyes

15   Decl. ¶¶ 10–11, 14, 16–17. Defendants' decision to ignore these cries for help in the face of life-

16   threatening conditions—whether from incompetence, indifference, intentional cruelty, or some

17   mixture of these—is objectively unreasonable. *See Ward*, 2025 WL 319250, at *9 (failure to

18   order mental health medications and to take any action despite obvious signs of deterioration was

19   objectively unreasonable); *Fromer v. Cnty. of Riverside*, 2025 WL 819719, at *4 (C.D. Cal. Feb.

20   4, 2025) (year-long delay in care despite multiple grievances was objectively unreasonable). It

21   hardly takes a medical expert to know that a serious heart condition that has already led to two

22   hospitalizations needs specialized treatment from a cardiologist, or that a pre-diagnosis for

23   prostate cancer requires a visit to a urologist. Any reasonable person facing these symptoms and

24   diagnoses would seek out such care immediately. But in any event, Dr. Wilcox's supplemental

25   declaration makes the point clearly from a medical professional's perspective. *See* Supp. Wilcox

26   Decl. ¶¶ 13–27 (Roque Campos); *see id.* ¶¶ 28–42 (Viera Reyes).

27         ***Fourth***, Plaintiffs have provided evidence showing "a sufficiently imminent danger"; they

28   "need not await a tragic event." *Roman*, 977 F.3d at 943; *Guel*, 2024 WL 5185331, at *5. Here,

10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-09757-MMC

based on a thorough and detailed analysis of developments since November 2025, Dr. Wilcox concluded that Messrs. Roque Campos and Viera Reyes "have very serious medical conditions that put them at significant risk of death and/or permanent harm," and "[i]t is imperative that they receive immediate medical interventions to prevent irreversible medical harm, or even risk of death." Suppl. Wilcox Decl. ¶ 11. The immediate risk of harm is clear and present.

Plaintiffs have not only proven a likelihood of prevailing under the Fifth Amendment, but they would even satisfy the Eighth Amendment's higher standard. Indeed, when a prison ignores urgent medical needs, such as cancer, and fails to provide access to necessary specialized medical care, a court may order the facility to take immediate steps to rectify the situation. *See Casey v. Lewis*, 834 F. Supp. 1477, 1544 (D. Ariz. 1993) (holding that when prison staff cannot meet certain medical needs, they must "refer prisoners to others who can" in "reasonably speedy" fashion). For example, in *Beck v. Hurwitz*, a woman in BOP custody experienced repeated delays in oncological care for breast cancer, including an 8-month delay in receiving a biopsy to confirm cancer, a 3-month delay in seeing a medical oncologist, and a failure to schedule follow-up appointments. 380 F. Supp. 3d 479, 482 (M.D.N.C. 2019). The court granted emergency relief, holding that that the failure to timely treat cancer violated the Eighth Amendment; that the balance of equities favored the plaintiff because there was no medical justification for delaying care or any harm that the BOP would suffer by providing care; and that a temporary restraining order would serve the public interest because it would further the goals of upholding incarcerated people's right to receive adequate, essential medical care in prison. *Id*. at 484–85. The court gave the BOP 24 hours to schedule the first available oncology appointment for the plaintiff and ordered that her appointments must occur as quickly as possible. *Id.* at 485.

The same sort of relief is needed here. Both Mr. Roque Campos and Mr. Viera Reyes have severe, life-threatening medical conditions that require urgent care, treatment, and follow-up. California City officials have long known about both men's conditions and have failed to provide timely and adequate medical care. Such systemic failures violate the Eighth Amendment. *See, e.g.*, *Madrid v. Gomez*, 889 F. Supp. 1146, 1205, 1256–57 (N.D. Cal. 1995); *Jensen v. Shinn*, 609 F. Supp. 3d 789, 864 (D. Ariz. 2022). Because Plaintiffs are subject only to civil detention,

11

1    Plaintiffs undoubtedly meet the Fifth Amendment's less stringent standard. *See Castro*, 833 F.3d

2    at 1067. Messrs. Roque Campos and Viera Reyes are likely to succeed on the merits of this claim.

3         **B.    Without seeing medical specialists and receiving appropriate treatment,
              Plaintiffs are likely to suffer irreparable harm.**

4

5         Because Plaintiffs' injuries flow from the deprivation of constitutional rights, the Court

6    may presume irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It

7    is well established that the deprivation of constitutional rights unquestionably constitutes

8    irreparable injury."); *Rodriguez v. Kaiser*, 2025 WL 2855193, at *7 (E.D. Cal. Oct. 8, 2025)

9    (citing *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)) ("When an alleged

10   deprivation of a constitutional right is involved, most courts hold that no further showing of

11   irreparable injury is necessary.").

12        But even without this presumption, Plaintiffs have demonstrated irreparable harm

13   sufficient to warrant emergency relief. Pain and suffering qualify as irreparable harm. *See Atwood*

14   *v. Days*, 2021 WL 5811800, at *7–8 (D. Ariz. Dec. 7, 2021). And lack of care for even minimal

15   periods of time, let alone the months Plaintiffs have gone without seeing specialists,

16   "unquestionably constitutes irreparable injury." *Pablo Sequen v. Albarran*, 2025 WL 3283283, at

17   *27 (N.D. Cal. Nov. 25, 2025); *see also Hernandez*, 872 F.3d at 995 (finding "subpar medical and

18   psychiatric care in ICE detention facilities" to constitute "irreparable harms imposed on anyone

19   subject to immigration detention"). Here, both men are at imminent risk of serious illness or death

20   due to Defendants' failure to provide them with reasonable and adequate medical care.

21        Mr. Roque Campos has "complicated heart conditions [that] make him a medically very

22   high risk and an extraordinarily fragile patient." Suppl. Wilcox Decl. ¶ 13. If he does not see a

23   cardiologist who can appropriately manage his condition, get him on the right medicine regimen,

24   and provide proper follow-up, he will remain "at very high risk of sudden cardiac arrest and

25   death." *Id.* The known standard of care for Mr. Roque Campos's heart condition is to perform a

26   "trans-esophageal echocardiogram, which provides objective measurements of heart chamber

27   size, wall thickness, blood flow velocities, [and] abnormal blood flow patterns," among other

28   things. *Id.* ¶ 21. Medical records show that this critical test has never been performed. *Id.* Without

12

the test, there is no way to develop an appropriate treatment plan. *Id.* In fact, a patient suffering from Mr. Roque Campos's condition requires "day-to-day management" that is "overseen by a cardiologist on a regular basis." *Id.* ¶ 22. None of this is happening.

The risks to Mr. Roque Campos are in no way hypothetical. According to Dr. Wilcox, "[f]urther delay in access to a full assessment by a cardiologist and compliance with a treatment plan directed by a cardiologist places Mr. Roque Campos at heightened and unnecessary risk of sudden death." *Id.* ¶ 25. Without proper treatment, his risk of sudden cardiac death could be as high as one in ten, if his ejection fraction (i.e., the amount of blood pumped out with each heartbeat) is less than 35 percent—a figure that can only be discovered if Mr. Roque Campos sees a cardiologist. *Id.* But even if Mr. Roque Campos does not suffer a sudden cardiac event, his "risk of ongoing and increasing cardiac damage from untreated pulmonary hypertension and right heart failure is guaranteed." *Id.* ¶ 26. Mr. Roque Campos is suffering ongoing harm to his heart muscle, lungs, and vascular system every day he goes without proper medical care. *Id.* He is experiencing near-daily chest pains and an inconsistent heartrate. Suppl. Roque Campos Decl. ¶ 6. He believes his symptoms are worsening and feels "pulsing pain" around his lungs. *Id.* He cannot run or exercise. *Id.* ¶ 7. He has a real and immediate fear of "dying in this detention center." *Id.* ¶ 12.

Mr. Viera Reyes, too, is likely to suffer irreparable harm absent relief from this Court. He very likely has prostate cancer, and cancer spreads if left untreated. Mr. Viera Reyes has not been seen by a urologist or received a biopsy for a cancer diagnosis since his arrival at California City, despite being advised to do so "right away." Suppl. Viera Reyes Decl. ¶¶ 4–5. In light of Mr. Viera Reyes's elevated (and quickly rising) PSA count, it is "essential" that he "receive[] that prostate biopsy in order to understand the nature of his condition and determine a plan of care." Suppl. Wilcox Decl. ¶ 30. Mr. Viera Reyes "has reported progressively worsening symptoms, including urinary bleeding, urinary retention, nocturia, and extreme pain." *Id.* ¶ 31.

If Mr. Viera Reyes does in fact have prostate cancer, his condition may be treatable if it is timely detected and treated. Suppl. Wilcox Decl. ¶ 35. But the delay in medical attention Mr. Viera Reyes has already experienced and continues to experience may lead to irreversible—and entirely avoidable—medical harm. *Id.* ¶¶ 30, 33, 35, 42. As Dr. Wilcox puts it, Defendants' delay

13

1   places Mr. Viera Reyes "at substantial risk of needless suffering or death." *Id.* ¶ 42.  All available

2   signs point to Mr. Viera Reyes having prostate cancer, which "could have been identified and

3   treated with appropriate intervention, resulting in a potential complete recovery." *Id.* Instead, due

4   to Defendants' "failure even to diagnose his condition," it is likely that Mr. Viera Reyes's cancer

5   "has metastasized and [] is no longer easily or successfully treatable," subjecting him "to a risk of

6   death that was entirely avoidable." *Id.*

7        In the meantime, Mr. Viera Reyes' condition continues to deteriorate. He now reports

8   "constant, pulsing pain" and fatigue that leaves him barely able to move. Suppl. Viera Reyes

9   Decl. ¶¶ 6–8.

10       Based on his review of the Plaintiffs' sworn declarations and medical records, Dr. Wilcox

11  concludes: "Without immediate medical intervention, either or both of these patients could suffer

12  serious adverse health effects any day. It is imperative that they receive immediate medical

13  interventions to prevent irreversible medical harm, or even risk of death." Suppl. Wilcox Decl. ¶

14  11. Numerous courts have recognized irreparable harm under similarly urgent circumstances. *See,*

15  *e.g.*, *Pablo Sequen*, 2025 WL 3283283, at *27 (finding irreparable harm where immigration

16  detainees' access to medical attention was denied or delayed); *F.R.P. v. Wamsley*, 2025 WL

17  3037858, at *7 (D. Or. Oct. 30, 2025) (finding same for immigration detainee who suffered

18  serious injuries during detention that warranted hospitalization); *Bent v. Barr*, 445 F. Supp. 3d

19  408, 419 (N.D. Cal. 2020) (finding same for immigration detainee at heightened risk of severe

20  illness from underlying health conditions). This case is no different.

21       **C.    The balance of hardships and the public interest weigh heavily in favor of a**
              **temporary restraining order.**

22

23       The final two *Winter* factors—the balance of hardships and the public interest—merge

24  when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the

25  balance of hardships and public interest tip sharply in Plaintiffs' favor. "Because public interest

26  concerns are implicated when a constitutional right has been violated, all citizens have a stake in

27  upholding the Constitution, meaning it is always in the public interest to prevent the violation of a

28  party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). Defendants

1  "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being

2  enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

3          Nor would any interest in detention administration be hindered by providing Plaintiffs the

4  urgent medical care they need. *See Mercado v. Noem*, 2025 WL 2658779, at *36 (S.D.N.Y. Sept.

5  17, 2025) ("The Court's preliminary injunction will not prevent defendants from pursuing the

6  policies they have set. It merely will require that they conform to the demands of the Constitution

7  in doing so."); *see also Pablo Sequen*, 2025 WL 3283283, at *27–28 (concluding the final two

8  *Winter* factors favor an injunction in part because the government did not explain why depriving

9  detainees of medical care furthers its interest in enforcing the immigration laws).

10          For these reasons, "any additional administrative costs to the government are far

11  outweighed by the considerable harm to Plaintiffs' constitutional rights in the absence of" a

12  temporary restraining order. *Hernandez*, 872 F.3d at 995–96.

13  **V.    CONCLUSION**

14          There is no need for either of these two men to suffer or die in the California City

15  Detention Facility. But if Defendants continue along their current derelict course, they will

16  continue to court the risk of that eminently predictable tragedy. Mr. Roque Campos must receive

17  cardiac care. Mr. Viera Reyes must receive his cancer diagnosis and develop a treatment plan.

18  Plaintiffs respectfully request that this Court grant this motion and enter the [Proposed]

19  Temporary Restraining Order, filed herewith.

20  Dated: December 16, 2025

21  Respectfully submitted,

22  /s/ *Cody S. Harris*                                    /s/ *Margot Mendelson*
    KEKER, VAN NEST & PETERS LLP          PRISON LAW OFFICE
23  STEVEN P. RAGLAND                            TESS BORDEN
    CODY S. HARRIS                                   MARGOT MENDELSON
24  CARLOS C. MARTINEZ                          PATRICK BOOTH
                                                              ALISON HARDY
25  AMERICAN CIVIL LIBERTIES UNION      RANA ANABTAWI
    FOUNDATION
26  KYLE VIRGIEN                                     CALIFORNIA COLLABORATIVE FOR
    FELIPE HERNANDEZ                            IMMIGRANT JUSTICE
27  MARISOL DOMINGUEZ-RUIZ              PRIYA ARVIND PATEL
    CARMEN IGUINA GONZALEZ            MARIEL VILLARREAL
28                                                            *Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR
TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-09757-MMC