1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division
3  SAVITH IYENGAR (CABN 268342)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
6       FAX: (415) 436-7234
        savith.iyengar@usdoj.gov
7
   Attorneys for Defendants
8

9                    UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  FERNANDO GOMEZ RUIZ, *et al.*,        )   No. 3:25-cv-09757-MMC
                                          )
14         Plaintiffs,                    )   **DEFENDANTS' OPPOSITION TO**
                                          )   **PLAINTIFFS' MOTION FOR CLASS**
15      v.                                )   **CERTIFICATION**
                                          )
16  U.S. IMMIGRATION AND CUSTOMS          )   Date:      Friday, February 6, 2026
    ENFORCEMENT, *et al.*,                )   Time:      9:00 a.m.
17                                        )   Location:  Courtroom 7, 19th Floor
           Defendants.                    )   Judge:     Hon. Maxine M. Chesney
18  _____ )

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

    A.    Plaintiffs' Motion for Class Certification ...............................................3

    B.    Plaintiffs' Class and Subclass Representatives........................................4

    C.    CoreCivic Policy and Procedure for Medical Care at CCDF ...............5

    D.    Meals at CCDF .......................................................................................7

III.    LEGAL STANDARD............................................................................................8

IV.     ARGUMENT .........................................................................................................9

    A.    Plaintiffs' Proposed Classes Are Overbroad and Fail to Satisfy Commonality ..................9

    B.    Plaintiffs' Proposed Classes Fail to Satisfy Typicality and Adequacy............................12

    C.    Plaintiffs' Proposed Classes Fail to Satisfy Rules 23(b)(1)(A) and (b)(2) ......................13

V.      CONCLUSION....................................................................................................15

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

Page(s)

3    *Amchem Prods., v. Windsor*, 521 U.S. 591 (1997) .................................................... 8, 9, 13

4    *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................... 12

5    *Bell v. Wolfish*, 441 U.S. 520 (1979) ......................................................................... 10

6    *Biwot v. Gonzales*, 403 F.3d 1094 (9th Cir. 2005) ..................................................... 11

7    *Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) ......................................................... 15

8    *Farmer v. Brennan*, 511 U.S. 825 (1994) ................................................................... 10

9    *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) .................................................... 14

10   *Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) ....................................... 10

11   *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) .............................. 8

12   *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...................................... 1

13   *Helling v. McKinney*, 509 U.S. 25 (1993) ................................................................... 10

14   *Jennings v. Rodriguez*, 583 U.S. 281 (2018) .............................................................. 14

15   *Lyon v. U.S. Immigration and Customs Enforcement*, 171 F. Supp.3d 961 (N.D. Cal. 2016) ...... 11

16   *McDonnell Douglas Corp. v. U.S. District Court*, 523 F.2d 1083 (9th Cir. 1975) ........ 13

17   *Morrissey v. Brewer*, 408 U.S. 471 (1972) ................................................................. 15

18   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ....... 8

19   *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................................ 3

20   *Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020) ............................................................. 10

21   *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174 (D.D.C. 2017) .......................... 9

22   *Senne v. Kan. City Royal Baseball Corp.*,
        No. 14-cv-00608-JCS, 2021 WL 3129460 (N.D. Cal. July 23, 2021) ...................... 1
23
     *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182 (9th Cir. 2024) .................. 12
24
     *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ....................... 1, 8, 9, 11, 12, 14
25

### **Statutes**

26   8 U.S.C. § 1252 ............................................................................................................. 14

27   Fed. R. Civ. P. 23 ................................................................................................... *passim*

28   Rehabilitation Act ............................................................................................... 1, 2, 3, 11

## I.    INTRODUCTION

Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia (collectively, "Plaintiffs") are aliens detained at the California City Detention Facility ("CCDF" or the "facility") who challenge alleged conditions of confinement, adequacy of medical care, and access to counsel at CCDF. *See generally* ECF No. 15 ("FAC").  Plaintiffs have moved to certify a class of "[a]ll persons who are now, or in the future will be, in the legal custody of [ICE] and detained at [CCDF]," and a subclass of "[a]ll persons who are now, or in the future will be, in the legal custody of [ICE] and detained at [CCDF] . . . who have disabilities within the meaning of the Rehabilitation Act."  ECF No. 21 ("Mot.").

The Court should deny Plaintiffs' motion.  First, Plaintiffs have not shown that members of the proposed class or subclass "have suffered the same injury," and thus fail to establish commonality.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); Fed. R. Civ. P. 23(a)(1).  Plaintiffs' allegations about conditions at the facility are fact-specific, individualized, and reflect "dissimilarities" among Plaintiffs themselves, between Plaintiffs and the proposed classes, and within the proposed classes. *Wal-Mart*, 564 U.S. at 351 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.").  The proposed classes encompass every single detainee who will ever be detained at CCDF, regardless of custody classification or gender, whether or not they have or are likely to experience any issues with conditions of confinement, medical care, or access to counsel.  Second, Plaintiffs have not established that their claims are typical of the claims of the proposed class, or that they will adequately protect their interests.  Fed. R. Civ. P. 23(a)(3)–(4). Plaintiffs' claims arise from unique incidents and relate to their specific custody classification, and are therefore not sufficiently "aligned" or "interrelated" with the proposed classes.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Senne v. Kan. City Royal Baseball Corp.*, No. 14-cv-00608-JCS, 2021 WL 3129460, at *19 (N.D. Cal. July 23, 2021).  Finally, and for similar reasons, Plaintiffs fail to establish a risk of inconsistent adjudications or that their allegations "apply generally to the class[es], so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole."  Fed. R. Civ. P. 23(b)(1)(A), (b)(2).  For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for class certification.

## II.    BACKGROUND

Plaintiffs filed this action on November 12, 2025.  *See* ECF No. 1.  In their operative FAC, Plaintiffs allege that in April 2025, ICE contracted with CoreCivic to open CCDF, a former prison, as a migrant detention center, and that in the last several months, ICE began detaining people at CCDF. FAC ¶¶ 25–27, 30–33.  Plaintiffs allege that individuals detained at CCDF are "impermissibly subject[ed] . . . to conditions constituting punishment, den[ied] . . . adequate medical care and reasonable disability accommodations, and restrict[ed] . . . access to counsel."  *Id.* ¶ 41.  Plaintiffs allege that the conditions of confinement and medical care at CCDF violate their (and the proposed class members') Fifth Amendment rights; that limitations on access to counsel violate their First and Fifth Amendment rights; and that alleged failures to accommodate disabilities by providing equal access to phone calls, outdoor recreation, medical encounters, housing units, and staff, and by denying access to auxiliary aids and assistive devices, violates the Rehabilitation Act.  *Id.* ¶¶ 268–94.

Specifically, Plaintiffs assert that detainees have inadequate access to loved ones; are frequently subjected to searches and lockdowns; and structured programming, housing conditions, and meals are inadequate.  *Id*. ¶¶ 12–123.  Plaintiffs also allege that detainees receive inadequate medical care; are deprived of necessary medications and treatment; and receive inadequate responses to their sick call slips and healthcare grievances.  *Id*. ¶¶ 124–183.  They further allege that while at CCDF, detainees have inadequate means to access counsel, as scheduling constraints limit the availability of confidential phone and video attorney calls.  *Id*. ¶¶ 184–202.  Finally, Plaintiffs allege that CCDF's "Disability, Identification, Assessment and Accommodation" policy is inadequately implemented.  *Id*. ¶¶ 204–45.

Defendants have responded to Plaintiffs' factual allegations with declarations by CCDF Warden Christopher Chestnut, ECF No. 38-1 ("Warden Chestnut Decl."); Susan Tiona, M.D., CoreCivic's Clinical Director for Correctional Medicine Associates and Regional Medical Director, ECF No. 38-2 ("Dr. Tiona Decl."); Dwan Morris, CCDF Food Service Director, ECF No. 38-3 ("Morris Decl."); and Maxwell Walker, Regional Dietician, ECF No. 38-4 ("Walker Decl."), submitted in opposition to Plaintiffs' motion for preliminary injunction, and the declaration of (A)SDDO David Landin, the ICE Enforcement and Removal Operations ("ERO") representative responsible for overseeing CoreCivic's operation of CCDF, ECF No. 37-1 ("(A)SDDO Landin Decl."), filed with Defendants' transfer motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Plaintiffs' Motion for Class Certification

On December 1, 2025, Plaintiffs moved for class certification.  *See generally* Mot.  Plaintiffs' proposed class is defined as:

> [a]ll persons who are now, or in the future will be, in the legal custody of [ICE] and detained at [CCDF].

Plaintiffs also seek to certify a subclass, defined as:

> [a]ll persons who are now, or in the future will be, in the legal custody of [ICE] and detained at [CCDF] . . . who have disabilities within the meaning of the Rehabilitation Act.

*Id.* at 10.

Plaintiffs argue that they meet each of the Rule 23 requirements for class certification.  They assert numerosity because "[a]pproximately 800 or more people are currently detained at California City," and approximately "well over 40 people" encompass the proposed subclass.  *Id.* at 17.  They assert commonality based on alleged common questions of law and fact regarding whether (i) CCDF is run in a manner that creates punitive and prison-like conditions, *id.* at 18–20; (ii) there are adequate policies and practices governing healthcare, *id.* at 20; (iii) there is sufficient access to counsel, *id.* at 20–21; and (iv) there has been a failure to provide disability accommodations under the § 504, *id.* at 21–23.  Plaintiffs assert typicality because they are allegedly exposed to "'a substantial risk of serious harm by the challenged [Defendants'] policies and practices,' which apply facility-wide to all . . . Plaintiffs." *Id.* at 23 (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).  Plaintiffs assert that the subclass's claims are typical because Plaintiffs Ruiz Canizales and Keo "suffer a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities[.]"  *Id.*  Finally, Plaintiffs assert adequacy based on their representations that they and their counsel will fairly and adequately represent the interests of the classes, and that they have no conflicts of interest with other class members.  *Id.* at 23–25.

With respect to the requirements of Rule 23(b)(2), Plaintiffs allege that they "seek a uniform injunction against practices and policies that affect the [c]lass as a whole, and Mr. Ruiz Canizales and Mr. Keo seek a uniform injunction against policies that affect the [s]ubclass as a whole."  *Id.* at 25–26.  Finally, Plaintiffs assert that they meet the requirements of Rule 23(b)(1) because, they allege, CCDF "[p]olicies operate on a facility-wide basis and cannot feasibly be administered differently for individual

1    persons without creating conflicting obligations[.]" *Id*. at 27.

2          B.    **Plaintiffs' Class and Subclass Representatives**

3          All Plaintiffs seek to represent the proposed class.  *Id*. at 14.  Plaintiffs Jose Ruiz Canizales and

4    Sokhean Keo seek to represent the proposed subclass.  *Id*.

5          Two Plaintiffs have been released from the facility.  Plaintiff Gomez Ruiz was transferred to

6    CCDF on October 20, 2025; was classified as ███████████████████████████████████

7    █████████████████████████; and was released from the facility on December 4, 2025.  Warden

8    Chestnut Decl. ¶ 12.  Plaintiff Ruiz Canizales was transferred to the facility on August 29, 2025; was

9    classified as ███████████ based on offenses of domestic violence with corporal injury and making

10   criminal threats; and was also released from the facility on December 4, 2025.  *Id.* ¶ 13.

11         The remaining Plaintiffs remain detained at CCDF.  Plaintiff Roque Campos was transferred to

12   the facility on September 5, 2025.  *Id.* ¶ 8.  He was classified as █████████████ based on an

13   arrest for domestic violence with willful infliction of corporal injury.  He was placed in restrictive

14   housing on November 27, 2025 for medical observation after returning from the hospital following

15   ████████████████.  *Id.*  He was released into general population housing on November

16   28, 2025.  *Id.*  Plaintiff Viera Reyes was transferred to the facility on August 29, 2025.  *Id.* ¶ 10.  He was

17   classified as ███████████ based on a murder conviction and ███████████████.  *Id.*  Plaintiff

18   Guevara Alarcon was transferred to the facility on August 29, 2025.  *Id.* ¶ 9.  He was classified as ██████

19   █████ based on an attempted murder conviction and ██████████████████.  *Id.*  He was

20   placed in restrictive housing on September 20, 2025 for a disciplinary charge and received a seven day

21   restrictive housing sanction.  *See id.*  Plaintiff Mendiola Escutia was booked into the facility on

22   September 4, 2025.  *Id.* ¶ 7.  He was classified as ████████████ based on a homicide conviction and a

23   ████████████████████████████.  *Id.*

24         Plaintiff Keo, the sole remaining proposed subclass representative, was transferred to the facility

25   on August 29, 2025.  *Id.* ¶ 11.  He was classified as █████████████ based on convictions for robbery and

26   aggravated assault and ██████████████████.  *Id.*  He was placed in restrictive housing on

27   November 12, 2025 for a disciplinary charge and released into general population housing on November

28   18, 2025.  *See id.*  Plaintiff Keo previously submitted a habeas petition in the Eastern District of

1   California challenging his alleged prolonged detention, which the district court dismissed based on his

2   mandatory detention "due to his prior conviction for aggravated felonies, including conspiracy to

3   commit home invasion robbery, and shooting a firearm at an occupied dwelling." *Id.*

4           **C.     CoreCivic Policy and Procedure for Medical Care at CCDF**

5           Pursuant to the operative NDS, all detainees receive "a medical screening within 12 hours of

6   arrival . . . , which may be done by a nurse, other health care practitioner, or a specially trained detention

7   officer." Dr. Tiona Decl. ¶ 19.  Once detainees are prioritized for screening, a nurse conducts an initial

8   intake screening and conducts a more detailed inquiry into allergies or medication sensitivities; physical

9   deformities; prosthetic devices; history of alcohol/tobacco/drug use; special health care needs or current

10  medical complaints; recent hospitalizations, operations or surgeries; previously scheduled specialty

11  appointments; current pain; current medications; skin problems; special diets; dental issues; history and

12  vaccination for chicken pox and shingles; and a detailed mental health screening.  *Id.* ¶ 23.  Responses to

13  these questions determine whether a detainee will receive an emergent, urgent, or routine referral to an

14  RN, LIP, dental, or mental health staff.  *Id.*  Emergent referrals are to be seen immediately, urgent

15  referrals are seen within 24 hours, and routine referrals occur within 2-14 days.  *Id.* ¶ 24.  Based upon

16  the prioritization of the initial intake screening, detainees are seen by a provider for their initial health

17  examination within 14 days.  *Id.* ¶ 31.

18          While there have been some delays in conducting intake examinations, changes at the facility

19  have decreased wait times — including improvements in staffing patterns, changes in health services

20  administration, and increased training and oversight of nursing and onsite physician staff, as well as the

21  ability of CoreCivic to dispatch additional providers from other facilities.  *Id.* ¶ 32.  Improved

22  effectiveness of the screening and prioritization process has also ensured that detainees with urgent

23  needs are seen by a provider most quickly.  *Id.*  The facility also has many bilingual staff, and where

24  bilingual staff are not available for interpretation, the facility utilizes (and health staff documents the use

25  of) interpretation services.  *Id.* ¶ 33.

26          Detainees can access health services by completing a paper sick call request form and submitting

27  it in the locked box in their housing unit.  *Id.* ¶ 34.  These are collected by health services personnel each

28  night and are triaged to determine if a face-to-face encounter is needed, and if so, to determine the

1    priority for nursing sick call or provider referral.  *Id.*  Sick call requests are classified as "emergency" to

2    be seen immediately; "urgent" to be seen within 24 hours; and "routine" to be seen by a nurse within

3    three days or a provider within two to 14 days.  *Id.*  Detainees often fill out sick call requests which do

4    not require a referral, such as seeking medication refills or medical records, which are also noted during

5    triage and returned to the detainee.  *Id.*  Detainees in restrictive housing are seen by medical staff who

6    make daily rounds in those units, and may advise staff of any requests for medical, mental health, or

7    dental care. *Id.* ¶ 35.  In addition, because pill call is conducted multiple times a day by health services

8    staff in each housing unit, detainees have multiple additional opportunities to report urgent concerns

9    directly to medical staff.  *Id.* ¶ 36.

10    Detainees with chronic medical conditions (i.e., cardiovascular disease, pulmonary disease,

11    diabetes, infectious disease, seizure disorder, sickle cell, other medical conditions, and mental illness)

12    are identified during intake through a review of intake records, intake screening, initial health appraisal,

13    sick call, or other health encounters, and are enrolled in a "Chronic Care Clinic" for their respective

14    conditions.  *Id.* ¶ 38.  CoreCivic's policy is that patients enrolled in a Chronic Care Clinic receive an

15    initial visit within 30 days of enrollment.  During the initial visit, the provider takes a targeted history

16    and physical examination of the patient and places orders for any necessary medications, vaccinations,

17    monitoring, diagnostic studies, laboratory tests, or specialty care referrals.  *Id.* ¶ 41.  CoreCivic also

18    contracts with Hall Ambulance to provide emergency medical transports by ground and air for detainees

19    with emergent medical conditions who must be transferred to an emergency department.  *Id.* ¶ 44.

20    Detainees experiencing medical emergencies are typically transported to Tehachapi Hospital, Antelope

21    Valley Medical Center in Lancaster, or Mercy Hospital in Bakersfield.  *See id.* ¶ 45.

22    In addition, all detainees have an equal opportunity to participate in services, programs, and

23    activities, in the least restrictive and most integrated setting possible.  *Id.* ¶ 49.  Detainees requesting an

24    accommodation may submit verbal or written requests to the Health Services Administrator, who serves

25    as the Disability Compliance Coordinator, through the sick call process.  *Id*.  Since September 2025, the

26    facility has made many improvements in patient care access and rectified delays.  *Id.* ¶ 54.  Sick call

27    requests are being processed more quickly, and detainees whose requests are classified as "urgent" are

28

seen the same day the request is received.  *Id.*  All other patients are seen within 72 hours of their sick call requests.  *See id.*

The facility has also corrected potential deficiencies identified in the initial weeks of operation through improved medical personnel staffing patterns, changes in health services administration, training of nurses in sick call protocols, and training of the on-site medical doctor regarding patient care responsibilities and documentation.  *Id.* ¶ 55.  In addition, the facility has specifically addressed the complaints of Plaintiffs and the detainees who submitted declarations in support of Plaintiffs' motion for preliminary injunction, and who are still at the facility.  *Id.* ¶¶ 56–57.

### D.    Meals at CCDF

With respect to meal service at CCDF, "detainees are provided three hot meals per day."  Morris Decl. ¶ 9.  The Food Service Director eats the same meals on his shifts.  *Id.* ¶ 18.  Portions are measured, monitored, and inspected.  *Id.* ¶¶ 15–17.  CCDF also utilizes a Regional Dietician who specializes in the provision of food service and nutritional consultation for detention and correctional facilities.  *See* Walker Decl. ¶ 6.  The Dietician is responsible for, among other duties, designing and evaluating existing menus to provide nutritionally adequate meals pursuant to specifications, directives, and guidelines of the correctional institutions, detention facilities, and government agencies.  *Id*. ¶ 7.  Nutritional adequacy and calorie count are based on dietary reference intakes, which comply with nutritional standards set by the National Institute of Health and the Recommended Daily Allowances from the National Academies of Sciences.  *Id.* ¶ 9.  These nutritional guidelines are standards followed throughout the corrections food service industry.  *Id.*

The menus meet American Correctional Association nutritional requirements.  *Id.* ¶ 15.  Medical and religious diets are also available.  *Id.* ¶¶ 17–18.  Regular menus are developed and provided on a five-week cycle.  *Id.* ¶ 16.  The types and portions of food items are varied, and menus specify portion sizes.  *Id.*  Menus vary daily and weekly to provide detainees with nutritious and varied fare.  *Id.*; *see also* Morris Decl. ¶ 26 (noting that contrary to one of Plaintiffs' declarants' assertions, potatoes are not served every day).  All menus include both fruit and vegetables.  *Id.* ¶ 25.

///

///

III.     **LEGAL STANDARD**

Class certification is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  To justify this exception, the burden falls squarely on Plaintiffs to establish that their proposed class and subclass satisfy the stringent requirements of Rule 23(a) and at least one prong of Rule 23(b).  *See Amchem Prods., v. Windsor*, 521 U.S. 591, 614 (1997).  This mandate exists because class certification imposes significant legal and practical consequences, including binding absent members and altering the procedural posture of the case.  Thus, Plaintiffs must demonstrate that their proposed class and their proposed subclass meet the fundamental prerequisites of numerosity, commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23.

Rule 23(a) requires a party seeking to certify a class to first demonstrate the following:

(1) the class is so numerous that joinder is impractical [("numerosity")];

(2) there are questions of law or fact common to the class [("commonality")];

(3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class [("typicality")]; and

(4) the named plaintiffs will fairly and adequately protect the interest of the class [("adequacy of representation")].

Fed. R. Civ. P. 23(a).

The Supreme Court has emphasized that "Rule 23 does not set forth a mere pleading standard," and a plaintiff "must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (*en banc*).  Consequently, this Court must conduct a "rigorous" class certification analysis, which may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351.

Additionally, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class." Fed. R. Civ. P. 23(c)(5).  Plaintiffs "must actually *prove* — not simply plead — that their proposed class satisfies each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).  If the Court is not fully satisfied

1  that all Rule 23 requirements are met, the Court cannot certify the class or subclass. *Wal-Mart*, 564 U.S.

2  at 351–52.

3      After satisfying the requirements of Rule 23(a), the proposed class and subclass must also

4  qualify under a Rule 23(b) subset. *Amchem*, 521 U.S. at 614. Rule 23(b)(1)(A) permits certification

5  where "prosecuting separate actions by or against individual class members would create risk of . . .

6  inconsistent or varying adjudications with respect to individual class members that would establish

7  incompatible standards of conduct for the party opposing the class." Thus, Plaintiffs must prove that the

8  proposed class and subclass are "sufficiently cohesive to warrant adjudication by representation."

9  *Amchem*, 521 U.S. at 623. To qualify under Rule 23(b)(2), Plaintiffs must demonstrate that Defendants

10 acted or refused to act on grounds that apply generally to the class, making final injunctive relief

11 appropriate for the class as a whole.

12 **IV.    ARGUMENT**

13     **A.    Plaintiffs' Proposed Classes Are Overbroad and Fail to Satisfy Commonality**

14     Plaintiffs' proposed classes lack commonality because they are overbroad. Rule 23(a)(2)

15 requires Plaintiffs to identify questions of law and fact common to the class. *See Wal-Mart*, 564 U.S. at

16 351. Class claims must depend on a common contention that allows a court to resolve the central issue

17 of each claim "in one stroke." *Id.* at 350. "What matters to class certification is not the raising of

18 common 'questions' — even in droves — but rather, the capacity of a class-wide proceeding to generate

19 common *answers* apt to drive resolution of the litigation." *Id.* (quotation marks omitted, emphasis in

20 original). Courts must assess the "dissimilarities within the proposed class" that "have the potential to

21 impede the generation of common answers" and explain why these dissimilarities do not defeat class

22 certification. *Id.* A class definition may be fatally overbroad if it "sweeps within it persons who could

23 not have been injured by the defendant's conduct." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d

24 174, 191 (D.D.C. 2017) (internal citations omitted).

25     Here, Plaintiffs' proposed classes cover individuals who could not have been injured by

26 Defendant's conduct, as the proposed class sweeps so broadly as to cover every single detainee who

27 either now or in the future will be detained at CCDF. *See* Mot. 10. Moreover, Plaintiffs assert that their

28 proposed classes satisfy commonality because they will be subjected to Defendants' policies, practices,

1    and procedures.  *Id.* at 18–23.  Yet Plaintiffs do not identify with specificity what policy, practice, or

2    procedure they are challenging when broadly complaining about, e.g., inadequate meals, clothing,

3    bedding, and hygiene supplies; cold temperatures in the facility; not being able to physically touch loved

4    ones during visits; and the facility's responses to disciplinary infractions.  *Id.*

5         Furthermore, to prevail on a conditions-of-confinement claim, Plaintiffs must prove that

6    operations at CCDF "pose an unreasonable risk of serious damage to [the detainees'] future health,"

7    *Helling v. McKinney*, 509 U.S. 25, 35 (1993), and that Defendants were deliberately indifferent to

8    Plaintiffs' wellbeing, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The Ninth Circuit has applied an

9    objective standard to some claims challenging conditions of confinement and requires a showing that an

10   "intentional decision" was made to the conditions at issue.  *See Roman v. Wolf*, 977 F.3d 935, 943 (9th

11   Cir. 2020); *see also Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (holding that

12   claims challenging adequate medical care must be brought "under an objective deliberate indifference

13   standard").  Such legal inquiries are fact-driven, implicating a cumulative and individualized analysis.

14   *See Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (analyzing affidavits and conducting an in person visit to

15   the facility).

16        Plaintiffs' own submissions to this Court confirm that the conditions at CCDF are fact-specific,

17   individualized, and indeed vary materially among Plaintiffs themselves.  *Compare* Gomez Ruiz Decl. ¶¶

18   17–18 (referencing cold temperatures and visits with family members where physical contact was

19   prohibited) *with* Viera Reyes Decl. ¶¶ 23–28 (referencing no contact family visits, insufficient access to

20   outdoors and programming, lockdown during counts, and food and water quality), Ruiz Canizales Decl.

21   ¶¶ 53–55, 91 (referencing cell size and cold temperatures, lockdown during counts, and non-

22   denominational Christian religious services), Roque Campos Decl. ¶¶ 37–42 (referencing being placed

23   in a dirty and dusty observation cell after trips to hospital), Keo Decl. ¶¶ 12, 14 (alleging that detention

24   facility staff "speak to [detainees] disrespectfully" and subject detainees to invasive pat downs), Guevara

25   Alarcon Decl. ¶¶ 38–39 (referencing being placed in administrative segregation for a disciplinary

26   infraction), *and* Mendiola Escutia Decl. ¶¶ 10–13, 18–19 (expressing concerns about water quality,

27   understaffing, and no contact family visits and the grievance submission process).

28        Plaintiffs' experiences also depend on their custody classifications, which differ from other

1  proposed class members.  *Compare, e.g.*, Ruiz Canizales ████████ Warden Chestnut Decl. ¶ 12)

2  *with* Viera Reyes ██████████ *id.* ¶ 10), Roque Campos ██████████████ *Id.* ¶ 8), *and*

3  Guevara Alarcon ██████████ *id.* ¶ 9).  Plaintiffs have not established that their experiences, which

4  depend on their custody status and gender, are common to the class or subclass.  Nor have Plaintiffs

5  established that their factual allegations are common to the class or subclass because many of those

6  allegations resulted from their specific actions.  For example, Plaintiff Guevara Alcaron was placed in

7  restrictive housing because he admittedly refused to exit the shower during a critical incident lock-down.

8  *See id.* ¶ 9.  Other Plaintiffs' experiences, too, have resulted from their own subjective behavioral

9  choices.  *See generally* Warden Chestnut Decl.

10      Similarly, Plaintiffs' medical allegations reflect no qualitatively similar pattern of harm, but

11  instead illustrate myriad injuries, ailments, or illnesses among them ranging from ██████████ to

12  ██████ , and unrelated to any one source of conduct.  *See generally* Guevara Alarcon Decl. &

13  Viera Reyes Decl.  Further, some illnesses or injuries either predate Plaintiffs' detention at CCDF or

14  reflect conditions not attributable to alleged inadequacies of medical care at the facility.  Plaintiffs have

15  failed to allege that Defendants' responses to medical concerns demonstrate not only common questions,

16  but common answers sufficient to warrant class certification.  *See Wal-Mart*, 564 U.S. at 351.

17      Defendants also dispute Plaintiffs' allegation that Defendants' "policies and practices with

18  respect to attorney visitation impermissibly burden or interfere with access to counsel" in violation of

19  the First and Fifth Amendments.  Mot. 20–21.  Although Plaintiffs complain about scheduling

20  limitations and the availability of confidential phone and video calls with counsel, they stop short of

21  arguing that their right to counsel was outright denied.  *Id.*  Courts have held that the right to counsel in

22  immigration proceedings is violated only where conditions are "tantamount to denial of counsel."  *E.g.*,

23  *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005); *Lyon v. U.S. Immigration and Customs*

24  *Enforcement*, 171 F. Supp.3d 961, 975–76 (N.D. Cal. 2016) (limitations on telephone communication

25  policies did not violate immigration detainees' statutory right to counsel).  In any event, given factual

26  differences among the allegations, and among detainees, Plaintiffs have not established that their

27  contentions, if accurate, are common enough to warrant class-wide resolution.

28      Finally, as to the Rehabilitation Act claim and proposed subclass, Plaintiffs fail to demonstrate

that immigration detainees with different disabilities "suffer[] the same injury," such that they are able to demonstrate a common question. *Wal-Mart*, 564 U.S. at 350 (cleaned up). Plaintiffs cite *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) for the proposition that they can demonstrate a common question by showing that they suffer similar harm by being excluded from the same set of programs or activities. Mot. 13. Plaintiffs fail to make such a showing. Indeed, while one of the proposed class representatives claims to be unable to access programs or activities because of his disability, the other makes no such claim. *Compare* Ruiz Canizales Decl. ¶¶ 42–44, *with* Keo Decl.

In sum, Plaintiffs have failed to carry their burden of proving that all proposed class or subclass members suffer sufficiently common injuries, and that the basis for those injuries are also sufficiently common. To the contrary, the circumstances and conditions of detention vary based on individual circumstances, which is fatal to class-wide relief.

### B. Plaintiffs' Proposed Classes Fail to Satisfy Typicality and Adequacy

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality focuses on whether the class representatives' claims and interests are sufficiently aligned with the class's interest. *See Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1201–02 (9th Cir. 2024). "Measures of typicality include whether other members have the *same or similar injury*, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1202 (emphasis added, internal citations omitted).

Here, Plaintiffs have not demonstrated that their claims are typical of those of the proposed classes. Indeed, the grievances Plaintiffs allege vary significantly among the individual Plaintiffs, particularly with respect to their challenges to general detention conditions. *Compare* Gomez Ruiz Decl. ¶¶ 17–18 *with* Viera Reyes Decl. ¶¶ 23–28, Ruiz Canizales Decl. ¶¶ 53–55, 91, Roque Campos Decl. ¶¶ 37–42, Keo Decl. ¶¶ 12, 14, Guevara Alarcon Decl. ¶¶ 38–39, *and* Mendiola Escutia Decl. ¶¶ 10–13, 18–19. Plaintiffs also include allegations about the members of the proposed classes that are inconsistent with Plaintiffs' own treatment, including alleged denial of access to prescription medications and medical treatment, FAC ¶¶ 124, 141–45, 151–55, and "extraordinary difficulty meeting with and speaking to their retained or prospective counsel," *id.* ¶ 184. By contrast, Plaintiffs have

1    received extensive medical care during their detention at CCDF.  *See, e.g.*, Roque Campos Decl. ¶¶ 21–

2    35.  Plaintiffs also have counsel with whom they meet and speak with at the facility.  *See, e.g.*, Mendiola

3    Escutia Decl. ¶¶ 14, 17 (stating that he "h[as] a lawyer for [his] immigration case" with whom he "h[as]

4    talked" while at CCDF).  At least one Plaintiff makes no specific allegations about his ability to

5    communicate with counsel, yet challenges Defendants' actions in this regard.  *See generally* Gomez

6    Ruiz Decl.  And although Plaintiff Sokhean Keo challenges the facility's disability accommodation

7    policies, he does not allege that he was unable to access programs or activities because of his disability.

8    *See generally* Keo Decl.  For these reasons, Plaintiffs are not appropriate representatives of the proposed

9    classes because the classes' claims are not fairly encompassed by their own claims.

10          For similar reasons, Plaintiffs also have not satisfied the adequacy requirement.  Rule 23(a)(4)

11   requires named plaintiffs to be able to "fairly and adequately protect the interests of the class."

12   *Amchem*, 521 U.S. at 625.  "[A] class representative must be part of the class and possess the same

13   interest and suffer the same injury as the class members."  *Id.* at 625–26 (cleaned up).  Plaintiffs have

14   not shown that they have suffered the same injury as the class members they seek to represent.  *See*

15   *generally* Mot. 14–16.  They have therefore failed to meet their burden of establishing their adequacy as

16   class representatives.

17          **C.      Plaintiffs' Proposed Classes Fail to Satisfy Rules 23(b)(1)(A) and (b)(2)**

18          Plaintiffs also fail to satisfy the requirements of either Rule 23(b)(1)(A) or 23(b)(2).  Rule

19   23(b)(1)(A) permits class certification if separate actions risk "inconsistent or varying adjudications with

20   respect to individual class members that would establish incompatible standards of conduct for the party

21   opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  "[I]ncompatible standards of conduct" is interpreted

22   as "incompatible standards of conduct required of the defendant in fulfilling judgments in separate

23   actions."  *McDonnell Douglas Corp. v. U.S. District Court*, 523 F.2d 1083, 1086 (9th Cir. 1975).  Here,

24   Plaintiffs allege that there is a risk of inconsistent judgments because different courts may determine

25   different requirements to impose on Defendants regarding the "many" "policies and practices at issue in

26   this case."  Mot. 17–18.  Yet apart from this broad and perfunctory assertion, Plaintiffs do not explain

27   how separate lawsuits are likely to create inconsistent requirements for Defendants, particularly where

28   they fail to specify precisely what policies, procedures, and practices they are specifically challenging.

1    Under Rule 23(b)(2), final injunctive or declaratory relief must be appropriate respecting the

2    class as a whole.  Fed. R. Civ. P. 23(b)(2).  The "key to the (b)(2) class is the indivisible nature of the

3    injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined

4    or declared unlawful only as to all of the class members or as to none of them."  *Wal-Mart*, 564 U.S. at

5    360 (citation omitted).  Plaintiffs fail to meet Rule 23(b)(2)'s requirements because, as discussed above,

6    the proposed classes include dissimilarly situated individuals, and the Court could therefore not enter a

7    single declaratory judgment to resolve class-wide claims.

8    Plaintiffs also fail this requirement because 8 U.S.C. § 1252(f)(1) prohibits the Court from

9    granting Plaintiffs the relief they seek, and any version of the relief sought that would not run afoul of

10    § 1252(f)(1) would not address the alleged injuries of the proposed class.  First, the Court lacks

11    jurisdiction to enjoin or restrain Defendants from detaining individuals under 8 U.S.C. § 1225(b).

12    Section 1252(f)(1) states that:

13          Regardless of the nature of the action or claim or of the identity of the party or parties
          bringing the action, *no court (other than the Supreme Court)* shall have jurisdiction or
14          authority to enjoin or restrain the operation of the provisions of Part IV [of subchapter II
          of the INA], other than with respect to the application of such provisions to an individual
15          alien against whom proceedings under such part have been initiated.

16    8 U.S.C. § 1252(f)(1) (emphasis added).  As the Supreme Court has explained, § 1252(f)(1)'s reference

17    to "the 'operation' of the relevant statutes is best understood to refer to the Government's efforts to

18    enforce or implement them."  *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).  Section

19    1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take

20    or refrain from taking actions to enforce, implement, or otherwise carry out" the covered statutory

21    provisions of the INA.  *Id.*  Thus, to the extent Plaintiffs seek to restrain the government from detaining

22    aliens on a class-wide basis, § 1252(f)(1) applies because the statutory authority for the detention of

23    aliens present in the United States without being admitted a covered provision.  *Id.*

24    Second, the Court should be hesitant to resolve Plaintiffs' due process claims via class-wide

25    relief.  As the Supreme Court has cautioned, courts should consider "whether a Rule 23(b)(2) class

26    action litigated on common facts is an appropriate way to resolve [plaintiffs'] Due Process Clause

27    claims.  '[D]ue process is flexible,' we have stressed repeatedly, and it 'calls for such procedural

28    protections as the particular situation demands.'"  *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018)

1    (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see also Diaz v. Garland*, 53 F.4th 1189, 1213

2    (9th Cir. 2022) (noting that "the Due Process Clause does not mandate procedures that reduce the risk of

3    erroneous deprivation to zero" and that [d]ue process is a flexible concept that varies with the particular

4    situation").  Because Plaintiffs' proposed classes, as defined, are highly varied, the Court should not

5    enter a single, class-wide judgment to resolve Plaintiffs' due process claims.

6    **V.     CONCLUSION**

7         For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion

8    for class certification.

9

10                                       Respectfully submitted,

11                                       CRAIG H. MISSAKIAN
                                         United States Attorney
12

13   Dated: January 2, 2026        By:    */s/ Savith Iyengar*
                                         SAVITH IYENGAR
14                                       Assistant United States Attorney

15

16

17

18

19

20

21

22

23

24

25

26

27

28