PRISON LAW OFFICE
MARGOT MENDELSON (268583)
mmendelson@prisonlaw.com
TESS BORDEN (MJP 805022, *pro hac vice*)
tess@prisonlaw.com
PATRICK BOOTH (328783)
patrick@prisonlaw.com
ALISON HARDY (135966)
ahardy@prisonlaw.com
RANA ANABTAWI (267073)
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL (295602)
priya@ccijustice.org
MARIEL VILLARREAL (317048)
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel.: (650) 762-8990

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND (221076)
sragland@keker.com
CODY S. HARRIS (255302)
charris@keker.com
CARLOS C. MARTINEZ (354616)
cmartinez@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Tel.: 415 391 5400
Fax: 415 397 7188

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN (278747)
kvirgien@aclu.org
FELIPE DE JESÚS HERNÁNDEZ (338468)
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ (345416)
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ (277369)
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

Attorneys for Plaintiffs *Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and | Case No. 3:25-cv-09757-MMC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:      February 6, 2026<br>Time:     9:00 a.m.<br>Dept.:     Ctrm 7 – 19th Floor<br>Judge:    Hon. Maxine M. Chesney |

| | |
|---|---|
| 1 | Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Defendants. |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................................1

II.  FACTUAL BACKGROUND..................................................................................................2

III.  ARGUMENT...........................................................................................................................4

    A.  Plaintiffs Satisfy Commonality Because They Challenge Facility-Wide Policies and Practices........................................................................................................4

    B.  Plaintiffs Satisfy Typicality Because All Named Plaintiffs and All Putative Class Members Face a Risk of Harm from Facility-Wide Policies .........................7

    C.  Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Class ..................................................................................................................................9

    D.  Plaintiffs Satisfy the Rule 23(b)(1) and (2) Requirements for Classwide Treatment .........................................................................................................................9

VII. CONCLUSION .....................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Aichele v. City of L.A.*,
   314 F.R.D. 478 (C.D. Cal. 2013) ............................................................................................ 6

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................................................. 4

*Ashker v. Governor of California*,
   No. C 09-5796 CW, 2014 WL 2465191 (N.D. Cal. June 2, 2014) ........................................ 10

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ................................................................................................................ 6

*Brown v. Plata*,
   563 U.S. 493 (2011) ............................................................................................................ 6, 7

*Coleman v. Wilson*,
   912 F. Supp. 1282 (E.D. Cal. 1995) ...................................................................................... 10

*Gonzalez v. U.S. Immigration & Customs Enf't*,
   975 F.3d 788 (9th Cir. 2020) .................................................................................................. 9

*Gordon v. Cnty. of Orange*,
   888 F.3d 1118 (9th Cir. 2018) ................................................................................................ 6

*Gray v. County of Riverside*,
   No. EDCV 13-00-444 VAP (OPx), 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ............... 10

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) .............................................................................................................. 11

*Johnson v. California*,
   543 U.S. 499 (2005) ................................................................................................................ 4

*Mansor v. United States Citizenship & Immigr. Servs.*,
   345 F.R.D. 193 (W.D. Wash. 2023) ....................................................................................... 4

*Pablo Sequen v. Albarran*,

No. 25-CV-06487-PCP, 2025 WL 3283283 (N.D. Cal. Nov. 25, 2025) ............................ 1, 6, 7

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................................................... passim

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ............................................................................................................ 10

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020) ........................................................................................................... 1, 6

*Wade v. Kirkland*,
   118 F.3d 667 (9th Cir. 1997) ............................................................................................................... 9

**<u>Statutes</u>**

8 U.S.C. § 1252(f)(1) ................................................................................................................................ 10

I.  **INTRODUCTION**[1]

This case challenges systemic, facility-wide practices that affect every person detained at California City Detention Facility ("CCDF"). This type of case is highly suited to classwide treatment because "every [putative class member] suffers exactly the same constitutional injury when he is exposed to a single [facility-wide] policy or practice that creates a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). Although Defendants try to argue that Plaintiffs' claims are not suitable to class treatment, they cannot escape that their *own* arguments and evidence in opposing Plaintiffs' motion for a preliminary injunction rely on "routine policies and procedures," ECF No. 38 at 22–23, and practices, like multiple daily counts, that "impact[] all detainees in the facility," Declaration of Christopher Chestnut, ECF No. 38-1, ¶ 128 ("Chestnut Decl."). Nor can they escape the clear holdings from the Ninth Circuit certifying classes raising similar conditions of confinement challenges. *See, e.g.*, *Parsons*, 754 F.3d at 685–86; *Roman v. Wolf*, 977 F.3d 935, 943–45 (9th Cir. 2020). Relying on that case law, another court in this district recently granted provisional class certification to a class of immigration detainees raising similar challenges to the "policies and practices governing conditions of confinement" at an ICE detention facility. *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 3283283, at *19–22 (N.D. Cal. Nov. 25, 2025).

Defendants' opposition rests on the same flawed premise throughout: that because individual detainees experience CCDF's systemic failures in different ways, Plaintiffs cannot proceed as a class. As shown below, that position is squarely foreclosed by controlling Ninth Circuit precedent holding that commonality, typicality, and adequacy are satisfied where, as here, detainees challenge uniform, facility-wide policies that expose everyone to a substantial risk of serious harm. Defendants' own evidence confirms that Plaintiffs' claims rise or fall based on shared policies and practices, not individualized circumstances. And, in that way, the Named Plaintiffs' claims are typical of, and fully aligned with, the Class and Subclass, and they can adequately serve as class representatives. Finally, Rule 23(b)(1) and (b)(2) are satisfied because

---

[1] In all quotations, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless otherwise noted.

Defendants' conduct is generally applicable to the class and because uniform injunctive relief is both appropriate and necessary.

This case is a paradigmatic example of a class action, and the Court should certify it as such.

## II.     FACTUAL BACKGROUND

The questions on which this motion turns—whether the conditions Plaintiffs challenge involve facility-wide policies—are largely undisputed.

Plaintiffs base their punitive-conditions claim on facility-wide security measures that are "unnecessary, excessive, and potentially harmful to the people who are detained [at CCDF]." Declaration of Dan Pacholke, ECF No. 22-2, ¶ 7 ("Pacholke Decl."). Defendants admit that Plaintiffs' allegations involve facility-wide policies: attempting to counter Plaintiffs' allegations, they also rely on facility-wide policies and practices. *See* Chestnut Decl., ¶¶ 46–57 (describing facility-wide staffing, supervision, and contracting policies), 71–76 (describing policies for clothing and linens that are consistent facility-wide but for the color of the uniform), 109–111 (describing universal policies of non-contact social visits limited to 60 minutes), 113–123 (describing consistent policies and training for pat searches, "at least" seven counts, and lockdowns), 128 (admitting that count delays "impact[] all detainees in the facility"), 132 (claiming a "zero-tolerance policy for retaliation by staff").

Plaintiffs base their claims of inadequate medical care on allegations of facility-wide deficiencies. People with chronic and emergent conditions experience inadequate initial assessments, dangerous delays in seeing a provider, are denied critical medications and care, are denied access to specialty care, receive minimal, if any, chronic care management, and often receive no treatment at all during health crises. Declaration of Todd Wilcox ("Wilcox Decl."), ECF No. 22-3, ¶¶ 9–15 (providing a summary of findings); 68 (finding that the medical intake at CCDF is "dangerously ineffective"), 78 (CCDF's "sick call system is broken"), 95 (CCDF "does not provide appropriate medical care to patients with chronic conditions"), 109 (describing CCDF inconsistent medication delivery system), 121 (finding a broken specialty care system), 129 (finding inadequate emergency services), 133 (concluding that the medical observation housing

does not provide an "elevated level of care"), 141 (finding "inadequate" mental health care), 143 (noting that CCDF does not have a "sufficiently robust healthcare system or adequate relationships with community partners"). Defendants do not dispute the facility-wide nature of these claims. Instead, they argue their facility-wide "routine policies and procedures" are sufficient. ECF No. 38 at 23; Chestnut Decl. ¶¶ 140–51 (describing medical and mental health policies), 152–57 (describing disability accommodation policies); Declaration of Susan Tiona, ECF No. 38-2 ("Tiona Decl.") ¶¶ 30–51 (describing medical care policies and procedures).

Plaintiffs' attorney access claims, too, involve evidence of consistently applied policies and practices. Plaintiffs show significant delays in scheduling virtual attorney visits and technical issues when they occur. *E.g.*, Declaration of Stephanie Quintero, ECF No. 22-32, ¶¶ 4–9 ("Quintero Decl."); Declaration of Genesis Fabian, ECF No. 22-26, ¶¶ 5–8 ("Fabian Decl."); Declaration of Hannah Kazim, ECF No. 22-30, ¶ 6 ("Kazim Decl."); Declaration of Hudson Kyle, ECF No. 22-31, ¶¶ 5–7, 9–10 ("Kyle Decl."); Declaration of Lee Ann Felder-Heim, ECF No. 22-27, ¶¶ 4–5 ("Felder-Heim Decl."); Declaration of Julio Armenta, ECF No. 22-33, ¶ 15 ("Armenta Decl."); Declaration of Yuri Alexander Roque Campos, ECF No. 22-6, ¶ 39 ("Roque Campos Decl."); Declaration of Veronica Garcia Romero, ECF No. 22-37, ¶ 6 ("Garcia Romero Decl."). Again, in opposing Plaintiffs' claims, Defendants admit that attorney access at the facility is governed by their "procedures . . . publicly available on ICE's website," which apply uniformly to all people detained at the facility. ECF No. 38 at 26; Chestnut Decl. at ¶ 185 (referencing "procedures . . . outlined in the detainee handbook"); *id*. Attachment D, 2-3 (ICE procedures for contacting a detainee).

Finally, Plaintiffs presented evidence of issues with Defendants' facility-wide policies on disability accommodations. That is, that Defendants do not appropriately identify or track detained people's disability needs. Wilcox Decl. ¶¶ 35–36; Declaration of Sokhean Keo, ECF No. 22-12, ¶¶ 37–38 ("Keo Decl."); Declaration of Gustavo Guevara Alarcon, ECF No. 22-7, ¶ 21 ("Guevara Alarcon Decl."); Declaration of Jonathan Jair Montes-Diaz, ECF No. 22-16, ¶ 17 ("Montes-Diaz Decl."); Declaration of Jose Ruiz Canizales, ECF No. 22-21, ¶ 18 ("Ruiz Canizales Decl."). Defendants also lack a system for providing disability accommodations to

detained people who need them or for ensuring that detained people are not denied access to programs, services, or activities on the basis of their disabilities. *E.g.*, Declaration of Alejo Juarez Ruiz, ECF No. 22-10, ¶¶ 7–11 ("Juarez Ruiz Decl."); Declaration of Alfonso Leyva, ECF No. 22-13, ¶¶ 30–32 ("Leyva Decl."), Keo Decl., ¶¶ 33–36, Ruiz Canizales Decl., ¶¶ 56–57, 69–70. Defendants also do not have a system for substantively responding to detained people's requests for disability accommodations. Juarez Ruiz Decl. ¶ 14; Declaration of Daniel Elias Benavides Zamora, ECF No. 22-5, ¶¶ 11, 13–16 ("Benavides Zamora Decl."); Keo Decl. ¶¶ 28–29; Leyva Decl., ¶¶ 9–10; Ruiz Canizales Decl. ¶¶ 18, 56, 99. Defendants do not contest that these disability claims will be resolved at the level of facility-wide policies. In fact, their evidence related to Plaintiffs' disability claim centers on a single, facility-wide "CoreCivic Policy 14-101." Chestnut Decl., ¶ 154.

## III. ARGUMENT

In opposing Plaintiffs' motion for class certification, Defendants do not contest numerosity or the adequacy of class counsel. Nor do Defendants contend that an ascertainability requirement applies. Defendants contest only commonality, typicality, adequacy, and Plaintiffs' satisfaction of Rule 23(b). But Defendants' arguments on each fail.

### A. Plaintiffs Satisfy Commonality Because They Challenge Facility-Wide Policies and Practices

As the Ninth Circuit has explained in upholding class certification in a case concerning conditions of confinement allegations in prison, Plaintiffs satisfy commonality when they allege that "policies and practices of . . . systemic application expose all" putative class members "to a substantial risk of serious harm." *Parsons*, 754 F.3d at 676. In such cases, "[t]hese policies and practices are the 'glue' that holds together the putative class and the putative subclass[,]" because "either each of the policies and practices is unlawful as to every [class or subclass member] or it is not." *Id.* at 678. As a result, the commonality "standard is 'readily met' where plaintiffs seek prospective relief 'challeng[ing] a system-wide practice or policy that affects all of the putative class members.'" *Mansor v. United States Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 204 (W.D. Wash. 2023) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

1    Plaintiffs present exactly this type of facility-wide claim here. Plaintiffs challenge facility-
2    wide policies and practices that place every detained person at CCDF in harm's way. Plaintiffs
3    presented evidence from 25 declarants showing uniform punitive conditions, inadequate medical
4    and mental health care, barriers to accessing counsel, and subclass-wide failures to accommodate
5    disabilities. *See* ECF No. 21 at 19–22, and declarations cited therein.

   In opposing Plaintiffs' motion for a preliminary injunction, Defendants concede that every
7    single claim in this case turns on facility-wide policies and practices that apply across the putative
8    class and subclass regardless of housing unit or custody classification:

- Defendants oppose Plaintiffs' claims of inadequate medical care by pointing to their facility-wide "routine policies and procedures." ECF No. 38 at 23; *see also* Chestnut Decl. ¶¶ 140–45, 152–57; Tiona Decl. ¶¶ 30–51.
- They oppose Plaintiffs' claims involving attorney access by citing their "procedures . . . publicly available on ICE's website," which apply uniformly to all people detained at the facility. ECF No. 38 at 26; Chestnut Decl. at Attachment D, 2–3.
- Their evidence related to Plaintiffs' disability claim centers on a single, facility-wide "CoreCivic Policy 14-101." Chestnut Decl. ¶ 154.
- And their evidence related to Plaintiffs' punitive conditions claim refers to or cites facility-wide policies and practices. *See* Chestnut Decl., ¶¶ 46–57 (custody staffing and supervision), 71–76 (clothing and uniforms), 77–84 (hygiene and cleaning), 91–96 (recreation), 109–111 (visitation), 113–128 (searches and security practices), 132 (retaliation).

These claims, which undisputedly involve facility-wide policies and practices, necessarily satisfy commonality.

Defendants nonetheless attempt to argue that Plaintiffs' claims do not present common questions. These arguments fail. Defendants contend that class certification is improper because the "objective standard" that applies to Plaintiffs' Fifth Amendment claims is necessarily fact-driven and inappropriate for class treatment. ECF No. 39 ("Opp."), at 13. They cite to *Roman v.*

5

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

*Wolf*, 977 F.3d 935, 943 (9th Cir. 2020), *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018), and *Bell v. Wolfish*, 441 U.S. 520, 542 (1979), but none supports Defendants here. *Gordon* was an individual wrongful death damages case, not a class action seeking injunctive relief. *Roman* actually *affirmed* certification of a Fifth Amendment conditions of confinement class despite differences in medical preconditions and custody status. *Roman*, 977 F.3d at 944 (recognizing that the government's failure to protect against COVID-19 in an ICE detention facility "exposed *all* [class members] to an unnecessary risk of harm, not only those who are uniquely vulnerable to COVID-19 or who are not subject to mandatory detention" (emphasis in original)). And *Bell* left undisturbed the district court's decision to certify a class. *Bell*, 441 U.S. at 526 n.6. The Court in *Roman* explained that, in a "challenge to inmate medical care policies, [the Court] likewise affirmed class certification under Rule 23(b)(2) where a presently existing risk may ultimately result in different future harm for different inmates— ranging from no harm at all to death because every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide . . . policy or practice that creates a substantial risk of serious harm." *Roman*, 977 F.3d at 944–45 (quoting *Parsons*, 754 F.3d at 678, 689); *see also Brown v. Plata*, 563 U.S. 493, 532 (2011).

For the same reasons, Defendants' arguments that class certification is inappropriate due to differences between putative class members' custody status or medical conditions fail under clearly established Ninth Circuit law. This claim that "some [putative class members] are exposed to a *greater* or *idiosyncratic* risk of harm by the policy and practice" is not enough to defeat commonality, as the Ninth Circuit has held many times. *Parsons*, 754 F.3d at 680 n.23 (emphasis in original); *see also Roman*, 977 F.3d at 944–45 (same). As this Court recently explained in rejecting the same argument concerning individual circumstances and granting provisional class certification to a class of immigration detainees raising similar conditions of confinement claims: "[p]laintiffs challenge the overall conditions in which they were detained . . . [and] need not prove that every single class member was subjected to every single adverse condition to establish a custom or practice of unconstitutional conditions." *Pablo Sequen*, 2025 WL 3283283, at *19 (quoting *Aichele v. City of L.A.*, 314 F.R.D. 478, 490 (C.D. Cal. 2013)).

Finally, Defendants fail in their attempt to point to differences in Plaintiffs' declarations to claim that certain Plaintiffs have yet to experience harm from the challenged policies. Opp. 13. To the contrary, even though "[s]ome [class members] may not actually be harmed" by every single challenged policy, Defendants' deficient policies each expose all members of the putative class to a "risk of harm that is, in its own right, a constitutional injury amenable to resolution in a class action." *Parsons*, 754 F.3d at 680; *see also Brown*, 563 U.S. at 532.

Accordingly, because Plaintiffs challenge uniform, facility-wide policies that expose all detainees to a substantial risk of serious harm, Rule 23(a)(2)'s commonality requirement is plainly satisfied.

### B.  Plaintiffs Satisfy Typicality Because All Named Plaintiffs and All Putative Class Members Face a Risk of Harm from Facility-Wide Policies

Named Plaintiffs satisfy typicality for much the same reason they satisfy commonality. As explained above, Defendants admit that facility-wide policies and procedures govern each of the areas Plaintiffs challenge in this case. ECF No. 38 at 23; *supra* at III.A. Thus "each of the named plaintiffs is similarly positioned to all other [putative class members] with respect to a substantial risk of serious harm resulting from exposure to the defendants' policies and practices…." *Parsons*, 754 F.3d at 686.

Defendants' arguments against typicality fail. First, Defendants point to variations in the specific facts that each Named Plaintiff includes in his declaration. Opp. 15. But, as the Ninth Circuit explained in *Parsons*, any differences in how the Named Plaintiffs have specifically experienced the impacts of the challenged policies does not matter, because the "policies and practices"—not any particular person's experience of them—"are the 'glue' that holds together the putative class." 754 F.3d at 678. For this reason, "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Id.* at 686; *see also Pablo Sequen*, 2025 WL 3283283, at *20 (rejecting challenge to typicality based on "some differences among class members and the plaintiffs").

Second, Defendants attempt to argue that certain Named Plaintiffs have not shown actual

harm from the Defendants' policies. Opp. 15–16. As a threshold matter, Defendants raise this argument only as to Named Plaintiffs Roque Campos, Mendiola Escutia, Gomez Ruiz, and Keo, *id.*, thus conceding that the other Named Plaintiffs can satisfy typicality as to the Class and that Named Plaintiff Ruiz Canizales can satisfy typicality as to the Subclass. In any event, Defendants are wrong on both the law and the facts. On the law, this argument about the harm that Named Plaintiffs have suffered does not defeat typicality. A Named Plaintiff need only show "a substantial *risk* of serious harm resulting from exposure to the defendants' policies and practices"—not that the policies have succeeded in causing him harm. *Parsons*, 754 F.3d at 686.

Regardless, Defendants are wrong on the facts. Defendants assert that Named Plaintiff Roque Campos cannot represent a medical-care claim because he received "extensive" treatment. Opp. 15–16. But the record shows the opposite: Plaintiffs' expert opined that the medical care Defendants provided to Mr. Roque Campos was so poor that it amounted to "willful dereliction of a physician's basic duties." Wilcox Decl. ¶ 89. This care was so deficient that Mr. Roque Campos had to seek a TRO and secure a stipulated order just to be seen by a specialist. ECF No. 27; ECF No. 34, 3. Indeed, as *Parsons* illustrates, facility-wide medical-care classes are proper even if "the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs," because the shared injury is exposure to a deficient system of care that places everyone at substantial risk when medical needs inevitably arise. 754 F.3d at 685–86.

Defendants also claim that Named Plaintiff Gomez Ruiz "makes no specific allegations about his ability to communicate with counsel." Opp. 16. But they ignore the declaration from his lawyer detailing significant difficulties in communicating with Mr. Gomez Ruiz regarding the lack of medical care at the facility and potential bond and habeas relief. Kazim Decl. ¶¶ 3-19. Defendants also claim that Named Plaintiff Mendiola Escutia cannot represent an access-to-counsel claim because he succeeded in talking to his lawyer. Opp. 16. But his declaration explains serious problems with prolonged delays, restricted scheduling, and non-confidential settings that have prevented him from meaningfully communicating with his counsel about conditions at the facility. Declaration of Alejandro Mendiola Escutia ("Mendiola Escutia Decl."), ECF No. 22-15, ¶¶ 13–17. And his attorney likewise attests that CCDF's policies and staffing

shortages prevented at least one meeting with Mr. Mendiola Escutia. Decl. Mario Valenzuela, ECF No. 22-35, ¶¶ 10, 13. Finally, Defendants argue that Named Plaintiff Keo does not show that the facility's failure to accommodate his hearing disability deprives him of access to the facility's "programs or activities." Opp. 16. To the contrary, his declaration clearly states that Mr. Keo "ha[s] a hard time hearing" without his hearing aids. Keo Decl. ¶ 36.

For these reasons, the Named Plaintiffs' claims are typical of the class because they arise from the same challenged policies and present the same legal and factual theories of liability.[2]

### C.  Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

Defendants contest only the adequacy of Named Plaintiffs—not of class counsel. Opp. 16. Named Plaintiffs set out the facts supporting their adequacy in their motion. ECF No. 21, at 23–25. Defendants' sole argument on adequacy is that Plaintiffs did not show that the Named Plaintiffs "have suffered the same injury as the class members they seek to represent." Opp. 16. But this argument is just a recycled version of Defendants' argument against typicality, *see supra* III.B, and fails for the same reasons. That is, as in *Parsons*, Named Plaintiffs and "every [putative class member] suffers exactly the same constitutional injury when he is exposed to a single [facility-wide] policy or practice that creates a substantial risk of serious harm." 754 F.3d at 678. Plaintiffs thus readily satisfy this requirement in this case involving facility-wide policies and practices. *See supra* III.A.

The Named Plaintiffs therefore fairly and adequately protect the interests of the class, which rise and fall together based on the legality of Defendants' facility-wide practices.

### D.  Plaintiffs Satisfy the Rule 23(b)(1) and (2) Requirements for Classwide Treatment

Plaintiffs qualify for certification of their claims under Rule 23(b)(2). This rule addresses precisely this type of case: its "requirements are unquestionably satisfied when members of a

---

[2] To the extent the government implies that the release of certain Named Plaintiffs defeats typicality or otherwise renders them unsuitable class representatives, that contention is foreclosed by the inherently transitory exception to mootness, which applies where detention is by nature too short in duration to be fully litigated before release and there is a constant class of persons subject to the challenged conditions. *See,* e.g., *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 806–07 (9th Cir. 2020) (holding ICE's cancellation of the detainer did not moot claims under the "inherently transitory" exception); *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).

putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)). Defendants counter that the Court cannot "enter a single declaratory judgment to resolve class-wide claims" in this case because "the proposed classes include dissimilarly situated individuals." Opp. 17. Defendants' counter is unsupported and misunderstands how remedies work in cases challenging facility-wide policies and practices. "Contrary to the defendants' assertion that each [putative class member]'s alleged injury is amenable only to individualized remedy, every [putative class member] is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in [facility-wide] policy and practice." *Parsons*, 754 F.3d at 689. It is for this reason that Plaintiffs' proposed preliminary injunction seeks uniform—not individualized—relief. ECF No. 22-38 (proposed preliminary injunction order).

In the alternative, Plaintiffs also satisfy Rule 23(b)(1). As multiple courts have found, challenges to uniform detention policies may be certified under Rule 23(b)(1) to avoid "a significant risk of inconsistent judgments" in individual challenges to these policies. *Ashker v. Governor of California*, No. C 09-5796 CW, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014); *see also Coleman v. Wilson*. 912 F. Supp. 1282, 1293 (E.D. Cal. 1995); *Gray v. County of Riverside*, No. EDCV 13-00-444 VAP (OPx), 2014 WL 5304915, at *38 (C.D. Cal. Sept. 2, 2014). Defendants' only counter is to retread their argument that Plaintiffs have not pointed to the "policies, procedures, and practices they are specifically challenging." Opp. 16. As explained above, Plaintiffs set these policies and procedures out in their opening brief, and Defendants admit the issues Plaintiffs raise in this case are governed by facility-wide policies. *See supra* III.A.

Defendants also contend that the Court should not certify this class because 8 U.S.C. § 1252(f)(1) strips it of jurisdiction. Opp. 17. Plaintiffs address Defendants' jurisdictional arguments in detail in their Reply in Support of Plaintiffs' Motion for a Preliminary Injunction, filed concurrently herewith. *See* Pls.' Reply in Supp. of Mot. for Prelim. Inj., at 18–20.

Finally, Defendants claim that courts are wary of certifying classes to resolve "'Due Process Clause claims,'" which they contend "'call[s] for such procedural protections as the particular situation demands.'" Opp. 17–18 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018)). But Plaintiffs' claims here do not turn on any particular procedure that due process requires. Instead, they turn on conditions of confinement guaranteed by substantive due process.

Because Defendants' conduct is generally applicable to the class and the relief sought is uniform injunctive relief, certification under Rule 23(b)(1) and (b)(2) is proper.

## VII. CONCLUSION

Because the proposed Class and Subclass meet the requirements of Rule 23(a) and Rule 23(b)(1) and (2), the Court should grant Plaintiffs' motion for class certification.

Dated: January 16, 2026

*/s/ Cody S. Harris*
KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND
CODY S. HARRIS
CARLOS C. MARTINEZ
LISA C. LU

*/s/ Margot Mendelson*
PRISON LAW OFFICE
MARGOT MENDELSON
TESS BORDEN
PATRICK BOOTH
ALISON HARDY
RANA ANABTAWI

CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE
PRIYA ARVIND PATEL
MARIEL VILLARREAL

*/s/ Felipe De Jesús Hernández*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
KYLE VIRGIEN
FELIPE HERNANDEZ
MARISOL DOMINGUEZ-RUIZ
CARMEN IGUINA GONZALEZ

*Attorneys for Plaintiffs*