1   KEKER, VAN NEST & PETERS LLP
    STEVEN P. RAGLAND - # 221076
2   sragland@keker.com
    CODY S. HARRIS - # 255302
3   charris@keker.com
    CARLOS C. MARTINEZ - # 354616
4   cmartinez@keker.com
    LISA C. LU - # 364259
5   llu@keker.com
    633 Battery Street
6   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
7   Facsimile:    415 397 7188

8   CALIFORNIA COLLABORATIVE FOR
    IMMIGRANT JUSTICE
9   PRIYA ARVIND PATEL - # 295602
    priya@ccijustice.org
10  MARIEL VILLARREAL - # 317048
    mariel@ccijustice.org
11  1999 Harrison Street #1800
    Oakland, California 94612
12  Tel: (650) 762-8990

        PRISON LAW OFFICE
        MARGOT MENDELSON - # 268583
        mmendelson@prisonlaw.com
        TESS BORDEN - MJP # 805022, pro hac vice
        tess@prisonlaw.com
        PATRICK BOOTH - # 328783
        patrick@prisonlaw.com
        ALISON HARDY - # 135966
        ahardy@prisonlaw.com
        RANA ANABTAWI - # 267073
        rana@prisonlaw.com
        1917 Fifth Street
        Berkeley, California 94710-1916
        Tel.: (510) 280-2621

        AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION
        KYLE VIRGIEN - # 278747
        kvirgien@aclu.org
        FELIPE HERNANDEZ - # 338468
        npp_fhernandez@aclu.org
        MARISOL DOMINGUEZ-RUIZ - # 345416
        mdominguez-ruiz@aclu.org
        425 California Street, 7th Floor
        San Francisco, CA 94104
        Tel.: (415) 343-0770

        CARMEN IGUINA GONZALEZ - # 277369
        ciguinagonzalez@aclu.org
        915 15th Street, NW, 7th Floor
        Washington, DC 20005
        Tel.: (202) 393-4930

18  *Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri*
19  *Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia*
    *and all others similarly situated*

20              UNITED STATES DISTRICT COURT

21              NORTHERN DISTRICT OF CALIFORNIA

22  FERNANDO GOMEZ RUIZ; FERNANDO         Case No. 3:25-cv-09757-MMC
    VIERA REYES; JOSE RUIZ CANIZALES;
23  YURI ALEXANDER ROQUE CAMPOS;          **PLAINTIFFS' OPPOSITION TO**
    SOKHEAN KEO; GUSTAVO GUEVARA          **DEFENDANTS' MOTION TO**
24  ALARCON; and ALEJANDRO MENDIOLA       **TRANSFER**
    ESCUTIA, on behalf of themselves and all
25  others similarly situated,            Date:     February 6, 2026
                                          Time:     9:00 a.m.
26              Plaintiffs,               Dept:     Ctrm. 7 – 19th Floor
                                          Judge:    Hon. Maxine M. Chesney
27          v.
                                          Date Filed: November 12, 2025
28  U.S. IMMIGRATION AND CUSTOMS

1  ENFORCEMENT; TODD M. LYONS,
   Acting Director, U.S. Immigration and
2  Customs Enforcement; SERGIO
   ALBARRAN, Acting Director of San
3  Francisco Field Office, Enforcement and
   Removal Operations, U.S. Immigration and
4  Customs Enforcement; U.S. DEPARTMENT
   OF HOMELAND SECURITY; KRISTI
5  NOEM, Secretary, U.S. Department of
   Homeland Security,
6
            Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND ................................................................................................... 3

    A.    The San Francisco Field Office is responsible for overseeing CCDF .................. 4

    B.    The Judicial Emergency in the Eastern District of California .............................. 6

    C.    Plaintiffs urgently need emergency relief. ........................................................... 7

III.   LEGAL STANDARD ........................................................................................... 8

IV.   ARGUMENT ........................................................................................................ 9

    A.    Venue is proper in the Northern District of California. ....................................... 9

    B.    Defendants fail to establish that transfer is appropriate. ..................................... 9

         1.    Plaintiffs' choice of forum is entitled to significant deference. ................ 9

         2.    The interests of justice decisively weigh against transfer. ...................... 11

              a.    Transfer to the overburdened Eastern District would cause unacceptable delays and reduce existing efficiencies. ................ 11

              b.    The Northern District has a strong local interest in the case. ....... 13

         3.    The convenience factors do not favor transfer. ...................................... 13

              a.    Witness convenience is neutral at best. ....................................... 13

              b.    The access-to-evidence factor is neutral at best. ......................... 17

V.    CONCLUSION .................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. Scribner,*
   812 F.2d 426 (9th Cir. 1987) ............................................................................................. 12

*Barnes & Noble, Inc. v. LSI Corp.,*
   823 F. Supp. 2d 980 (N.D. Cal. 2011) ................................................................................ 8

*Bibo v. Fed. Express, Inc.,*
   2007 WL 2972948 (N.D. Cal. Oct. 10, 2007) .................................................................. 16

*California v. Bureau of Land Mgmt.,*
   2018 WL 3439453 (N.D. Cal. July 17, 2018) ............................................................... 9, 10

*Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.,*
   2018 WL 7297829 (C.D. Cal. Sept. 30, 2018) ................................................................. 15

*Commodity Futures Trading Comm'n v. Savage,*
   611 F.2d 270 (9th Cir. 1979) ............................................................................................. 12

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,*
   472 F. Supp. 2d 1183 (S.D. Cal. 2007) ............................................................................ 16

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986) ................................................................................. 8, 10, 14

*Doe v. Spahn,*
   2021 WL 6052088 (N.D. Cal. Dec. 21, 2021) ................................................................. 13

*Doe v. Uber Techs., Inc.,*
   2017 WL 2352032 (N.D. Cal. May 31, 2017) ................................................................. 14

*Franey v. Am. Battery Sols. Inc.*
   2022 WL 4280638 (N.D. Cal. Sept. 15, 2022) ................................................................ 16

*Fraser v. Team Health Holdings, Inc.,*
   2022 WL 971579 (N.D. Cal March 31, 2022) .................................................................. 13

*Frias v. Aetna Life Ins. Co.,*
   2014 WL 5364105 (N.D. Cal. Oct. 21, 2014) .................................................................. 16

*Gelber v. Leonard Wood Mem'l For Eradication of Leprosy,*
   2007 WL 1795746 (N.D. Cal. June 21, 2007) ............................................................ 15, 16

*Jensen v. Shinn,*
   609 F. Supp. 3d 789 (D. Ariz. 2022) .................................................................................. 9

*Jernigan v. California Dep't of Corr. & Rehab.*,
  2011 WL 255798 (N.D. Cal. Jan. 24, 2011) ........................................................................ 8

*Jimenez v. U.S. Immigr. & Customs Enf't*,
  2024 WL 2306281 (N.D. Cal. May 20, 2024) .................................................................... 10

*Lopez v. United States*,
  2024 WL 3588013 (N.D. Cal. July 29, 2024) .................................................................... 16

*Madani v. Shell Oil Co.*,
  2008 WL 268986 (N.D. Cal. Jan. 30, 2008) ................................................................ 8, 11

*Midkiff v. Prudential Ins. Co. of Am.*,
  2019 WL 12469793 (N.D. Cal. Dec. 6, 2019) .................................................................... 11

*Nachison v. Am. Airlines, Inc.*,
  2024 WL 3153216 (N.D. Cal. June 24, 2024) .................................................................... 17

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) .................................................................................... 16, 17

*Park v. Dole Fresh Vegetables, Inc.*,
  964 F. Supp. 2d 1088 (N.D. Cal. 2013) ............................................................................ 11

*Pratt v. Rowland*,
  769 F. Supp. 1128 (N.D. Cal. 1991) ................................................................... 11, 13, 14

*Right to Life of Central Cal. v. Bonta*,
  614 F. Supp. 3d 729 (E.D. Cal. 2022) .............................................................................. 12

*Ringler v. J.M. Smucker Co.*,
  2025 WL 3150679 (C.D. Cal. Oct. 30, 2025) .................................................................... 17

*Selby v. Sovrn Holdings, Inc.*,
  2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ................................................................ 8, 17

*Sierra Forest Legacy v. U.S. Fish & Wildlife Serv.*,
  2021 WL 2354852 (N.D. Cal. June 9, 2021) .................................................................... 11

*Smith v. Corizon Health, Inc.*,
  2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) ............................................................... 13, 15

*State v. Bureau of Land Mgmt.*,
  286 F. Supp. 3d 1054 (N.D. Cal. 2018) ............................................................................ 12

*STX, Inc. v. Trik Stik, Inc.*,
  708 F. Supp. 1551 (N.D. Cal. 1988) .......................................................................... 14, 15

*Tokarski v. Med-Data, Inc.*,
  2022 WL 815882 (W.D. Wash. Mar. 17, 2022) .................................................................. 17

iii

*West v. Atkins*,
   487 U.S. 42 (1988)................................................................................................. 4

*Zepeda Rivas v. Jennings*,
   445 F. Supp. 3d 36 (N.D. Cal. 2020) ...............................................................10, 16

**Federal Statutes**

28 U.S.C. § 1346 ........................................................................................................ 9

28 U.S.C. § 1391 ...................................................................................................2, 8, 9

28 U.S.C. § 1404 .................................................................................................... 8, 9

**Other Authorities**

15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3851 (4th
   ed. 2025)............................................................................................................ 13

1 Moore's Federal Practice ......................................................................................... 9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
Case No. 3:25-cv-09757-MMC

4041315

## I.      INTRODUCTION

This case belongs in this Court. There is no dispute that the relevant U.S. Immigration Customs & Enforcement ("ICE") field office is located in San Francisco. Nor is it disputed that the San Francisco Field Office has jurisdiction and ultimate responsibility over California City Detention Facility ("CCDF"). This is no mere allegation; Defendants announce it to the world. ICE's own publicly available records confirm that CCDF falls within the San Francisco Field Office's area of responsibility. The ICE office in Bakersfield—which Defendants now argue is the base for various ICE staff members who work on or are responsible for CCDF—is, in fact, a *sub*-field office within the San Francisco Field Office's jurisdiction, and lacks a Field Office Director. Most tellingly, the official CCDF website prominently identifies the "San Francisco Field Office" as the office in charge and expressly directs complaints of misconduct, press inquiries, and general feedback concerning California City to the San Francisco Field Office and the Field Office Director in particular:[1]



In other words, Defendants themselves tell individuals detained at CCDF that if they "feel that an ICE employee or contract services employee mistreated [them] and [they] wish to make a complaint of misconduct," they must take it up with the Field Office Director of Enforcement and Removal Operations, who is located in San Francisco. *Id.* Plaintiffs have accordingly sued

---

[1] Declaration of Steven P. Ragland in Supp. of Opp'n to Mot. to Transfer ("Ragland Decl.") Ex. 1 (U.S. Immigration & Customs Enforcement, California City Detention Facility, https://www.ice.gov/detain/detention-facilities/california-city-detention-facility).

Defendant Sergio Albarran, who is the Acting Director of the San Francisco Field Office. None of this is or can be disputed. Nor can Defendants show that venue is improper under 28 U.S.C. § 1391(e), which expressly allows Plaintiffs to sue in a venue where a federal defendant resides.

Nevertheless, Defendants now seek to pause all litigation—including the pending motion for preliminary injunction that is now fully briefed—and transfer this case to the Eastern District of California, one of the most congested and overburdened judicial districts in the nation. Defendants do not meaningfully dispute that this Court has jurisdiction and that venue is proper in the Northern District of California, but instead argue that the Eastern District of California would be more convenient and serve the interests of justice. Defendants are wrong.

There is no more appropriate or convenient forum for this case than the Northern District of California. The detention facility itself is in the middle of the Mojave Desert, hundreds of miles away from *any* Article III judge. Sacramento, with the largest courthouse and most judges within the Eastern District, is no closer to CCDF than San Francisco.[2] Fresno, which has only two district judges, is still about 200 miles away from California City.[3] The Bakersfield Courthouse is closer, but still 70 miles from CCDF, and—more fundamentally—has only a single magistrate judge and no Article III judicial officers at all.[4] Redding and Yosemite similarly house a single magistrate judge, and regardless are 500 and 300 miles away, respectively, with potentially hazardous roads in the winter months.[5] And, as the Court likely knows, the Eastern District has been in a state of judicial emergency for years, with repeated calls for more judges to "carry one of the heaviest caseloads in the country" and warnings that "[t]his continuing crisis, if left unaddressed, will soon result in serious and catastrophic consequences."[6] It makes no sense

---

[2] Ragland Decl. ¶ 2.

[3] *All Judges*, U.S. District Court, Eastern District of California, https://www.caed.uscourts.gov/caednew/index.cfm/judges/ (last accessed Jan. 16, 2026) ("List of E.D. Cal. Judges") (Judges Sherriff and Thurston); Ragland Decl. ¶ 3.

[4] List of E.D. Cal. Judges (Magistrate Judge Baker); Ragland Decl. ¶ 4.

[5] List of E.D. Cal. Judges (Magistrate Judges Cota and Barch-Kuchta); Ragland Decl. ¶ 5 (Redding); Ragland Decl. ¶ 6 (Yosemite).

[6] Ragland Decl., Ex. 2 (U.S. District Court, Eastern District of California, *An Important Letter to Congress from the Judges of the Eastern District of California Regarding Our Caseload Crisis*, https://www.caed.uscourts.gov/caednew/index.cfm/news-archive/important-letter-re-caseload-crisis/).

whatsoever to send this complex case to an overburdened and understaffed court, especially when this Court is already familiar with the facts and has indeed already issued an order resolving Plaintiffs' emergency motion addressing some of them. In addition, transferring the case now, while Plaintiffs' preliminary injunction motion is pending, would prejudice Plaintiffs by jeopardizing the prompt resolution of claims seeking to halt serious, ongoing constitutional and statutory violations. Doing so would also deprive Plaintiffs of the substantial deference to which their choice of forum is entitled.

Plaintiffs' lawsuit challenges and seeks to change facility-wide policies, practices, procedures, and oversight failures at CCDF. Any changes to those policies will emanate from this District, and any orders demanding changes to those policies will be directed to this District. This Court should continue to preside over this case and adjudicate the emergency relief motion before it. Defendants' motion to transfer should be denied.

## II.   BACKGROUND

The California City Detention Facility ("CCDF") is a remote, former prison in the Mojave Desert that began detaining noncitizens in August 2025 and is now the largest ICE detention facility in the state. Plaintiffs, all of whom are civilly detained at CCDF, filed this lawsuit on November 12, 2025, challenging ongoing practices and conditions of confinement at CCDF that blatantly violate their rights under the First and Fifth Amendments of the Constitution and the Rehabilitation Act. ECF 1. Plaintiffs subsequently moved for a preliminary injunction requiring Defendants to comply with the law by providing humane custodial treatment, adequate access to medical care and legal counsel, and equal access to programs, services, and activities for detained people with disabilities. ECF 22.

Defendants spend the bulk of their Motion to Transfer ("Motion" or "Mot.") attempting to dispute factual matters that have nothing to do with the forum issues presently before the Court. *See* ECF 40-3 ("Mot.") at 3-13. To the extent they are using the transfer motion as an end-run around the page limit set for their preliminary injunction opposition, that is improper and the Court should disregard that material. As detailed in Plaintiffs' concurrently-filed Reply in Support of Motion for Preliminary Injunction, Plaintiffs vehemently dispute Defendants' factual assertions

and characterizations, but need not delve into that here.[7] The facts that matter here concern (a) the San Francisco ICE Field Office's role in overseeing and managing conditions at CCDF, (b) the judicial emergency in the Eastern District due to a crushing caseload and a roster of judges that has remained stagnant for decades, and (c) the urgent nature of Plaintiffs' request for relief.

### A. The San Francisco Field Office is responsible for overseeing CCDF.

Plaintiffs bring this lawsuit against ICE; Todd Lyons, Acting Director of ICE; Sergio Albarran, Acting Director of ICE's San Francisco Field Office; the Department of Homeland Security ("DHS"); and Kristi Noem, the DHS Secretary. Although Defendants have contracted with CoreCivic to operate CCDF, Defendants remain legally responsible for ensuring the facility's compliance with constitutional and statutory requirements and for the humane treatment of individuals detained there. *See* ECF 37-1 ("Landin Decl.") ¶ 13 (stating that "ICE ERO's role with respect to CCDF is to . . . ensure . . . that detainee rights are upheld and . . . that detainee medical care is properly given"); *West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their [constitutional] rights.").

It is undisputed that Defendant Sergio Albarran is the Acting Director of ICE's San Francisco Field Office and resides in this District. *See* Mot. at 13 (conceding that Defendant Albarran "[is] located in this District"). Although CCDF is geographically located in the Eastern District of California, ICE's own facilities records identify CCDF as falling within the San Francisco Field Office's Area of Responsibility ("AOR"). *See* Ragland Decl., Ex. 3 (*ICE Facilities Data, FY26,* U.S. Immigration and Customs Enforcement (Dec. 26, 2025), https://www.ice.gov/doclib/detention/FY26_detentionStats01082026.xlsx (listing "SFR" as the "AOR" for California City)).

ICE's own detention standards and operations manuals assign a critical role to Field Office Directors ("FODs") such as Defendant Albarran, making clear that they hold authority and

---

[7] A detailed factual record is further set forth in Plaintiffs' Motion for Preliminary Injunction and supporting declarations, ECF 22, and Plaintiffs' Motion for Temporary Restraining Order, ECF 27.

responsibility in areas directly relevant to this case. The most recent National Detention Standards define the Field Office Director as the "ICE/ERO Officer with **chief responsibility for facilities** in an assigned geographic area." Ragland Decl., Ex. 4 (U.S. Immigration & Customs Enforcement, *2025 National Detention Standards* at 218, https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf) (emphasis added). Reports relating to use of force and restraints "must be sent directly" to the relevant FOD. *Id.* at 207. Any "detainee grievance that contains an allegation of staff misconduct" must "be sent directly to the FOD." *Id.* at 211. The FOD must sign off on the housing of any person with a disability or "serious medical or mental health needs." Ragland Decl., Ex. 5 (U.S. Immigration & Customs Enforcement, *2011 Operations Manual ICE Performance-Based National Detention Standards* at 70, https://www.ice.gov/detain/detention-management/2011). Every facility administration must promptly notify the FOD of "any incident or allegation of staff misconduct" that "relates to treatment of ICE detainees" security, or compliance with applicable detention standards. *Id.* at 89.

Consistent with this structure, CCDF's official public website prominently identifies the San Francisco Field Office and directs complaints of misconduct, press inquiries, and general feedback to that office. *See* Ragland Decl., Ex. 1. Similarly, "[r]equests for case information pertaining to aliens detained at [CCDF]" must be sent to "SanFrancisco.Outreach@ICE.DHS.GOV." *Id.* And to identify a detained individual's deportation officer, one must "contact the San Francisco Field Office to obtain that information." *Id.*

To be sure, there is a "sub-office" in Bakersfield. Landin Decl. ¶¶ 2, 8. But this office falls under the San Francisco Field Office's jurisdiction and lacks its own Field Office Director. *See* Ragland Decl., Ex. 6 (U.S. Immigrations & Customs Enforcement, *Bakersfield, CA*, https://www.ice.gov/node/62167). Indeed, if one wishes to contact the Bakersfield office, one is directed to email "SanFrancisco.Outreach@ice.dhs.gov." *Id.*

In support of their motion to transfer, Defendants have offered the declaration of David Landin, who is the Acting Supervisory Detention and Deportation Officer stationed in the Bakersfield sub-office. Landin Decl. ¶¶ 1–2. Nowhere in his declaration does Mr. Landin state or

suggest that he has primary responsibility—or indeed any responsibility—for setting policies or procedures at CCDF. On the contrary, his role is described as "overseeing and managing [] daily operation of compliance related duties" at CCDF, such as providing notices to detained individuals, investigating "various components related to the NDS and PBNDS with detainee grievances [sic]," and overseeing visual inspections of the facility. *Id.* ¶ 15.

In short, Defendants offer no evidence suggesting that anyone other than the Field Office Director, who is located in San Francisco, has "chief responsibility" over what goes on at CCDF. Ragland Decl., Ex. 4 at 218.

### B.    The Judicial Emergency in the Eastern District of California

The Eastern District of California is and has long been facing a severe resource crisis, with judicial officials there routinely highlighting the overwhelming caseload and the lack of Article III judges to handle them. The emergency in the Eastern District is so severe that in 2018, the judges of the district sent an urgent letter to Congress, seeking at least five new judgeships in light of the District's judicial crisis and understaffing. Ragland Decl., Ex. 7 (*Judgeship Letter*, U.S. Dist. Ct. for E.D. Cal. (Jun. 19, 2018), at 3–4, https://www.caed.uscourts.gov/caednew/assets/File/Judgeship%20Letter%20June%202018.pdf). At that time, the Eastern District had only six District Judges and three Senior District Judges. *Id.* at 2.

In 2021, the Eastern District released its biannual judgeship survey, which showed that "the Eastern District continues to struggle with the long standing judgeship crisis." *See* Ragland Decl., Ex. 8 (U.S. Dist. Ct. for E.D. Cal., *Eastern District of California's Judicial Emergency Exacerbated by the Coronavirus Disease-2019 (COVID-19) Pandemic*, https://www.caed.uscourts.gov/CAEDnew/index.cfm/news-archive/eastern-district-of-californiae28099s-judicial-emergency-exacerbated-by-the-coronavirus-disease-2019-covid-19-pandemic/). According to the survey, "[w]ith full utilization of all the current resources available to [the court], processing times for our civil cases are insurmountable." Ragland Decl., Ex. 9 (U.S. Dist. Ct. for E.D. Cal., 2021 Biennial Survey of Judgeship Needs, https://www.caed.uscourts.gov/caednew/assets/File/EDCA%202021%20Biennial%20Survey%20

of%20Judgeship%20Needs.pdf). In 2022, the court told the Ninth Circuit Judicial Council that its "staggering pending caseloads" were "simply jaw-dropping." Ragland Decl., Ex. 10 (Chief Judge Hon. Kimberly J. Mueller, Memorandum to Ninth Circuit Judicial Council at 4 (Aug. 1, 2022), https://www.caed.uscourts.gov/caednew/assets/File/EDCA%20BJS%202023 %20Response%20-%20Final(1).pdf). Despite these requests, the Eastern District remains overburdened: today, it still has only six District Judges and one fewer Senior District Judge on its bench. *See* List of E.D. Cal. Judges.

### C. Plaintiffs urgently need emergency relief.

Plaintiffs filed their complaint on November 12, 2025. ECF 1. They filed their motion for a preliminary injunction on December 1, 2025, seeking a hearing on January 9, 2026. ECF 22. At Defendants' request, the parties agreed to continue the hearing to January 23, 2026, a date that the Court later extended to February 6, 2026. ECF 26; ECF 36.

On December 16, 2025, Plaintiffs filed an emergency motion for a temporary restraining order ("TRO") seeking urgently needed medical care for two detained Plaintiffs, Yuri Alexander Roque Campos and Fernando Viera Reyes, both of whom were experiencing acute medical deterioration while housed at CCDF. ECF 27. By December 2025, both Plaintiffs' conditions had significantly worsened. Plaintiffs' medical expert concluded that both individuals required urgent specialist evaluation and treatment to avoid the risk of immediate death or irreversible harm. ECF 27-2 (Suppl. Wilcox Decl.) ¶ 12. The Court held an emergency hearing on December 17, 2025, where it heard argument and gave Defendants five days to either reach a stipulated resolution with Plaintiffs or file an opposition to the TRO motion. ECF 29. On December 22, 2025, the Court entered an order resolving the TRO motion based on a joint stipulation, under which Defendants agreed to ensure prompt specialist evaluations and appropriate treatment for these two individuals. ECF 36.

Throughout this process, Defendants never raised the supposed need to transfer this case or indicated that they were unable to address or deal with the issues before this Court due to where the case was venued. On the contrary, Plaintiffs' counsel has been in consistent contact with Defendants' counsel—who is himself located in San Francisco—to address various issues

1  including attorney access, compliance with the stipulated TRO order, and other matters. *See*

2  Ragland Decl. ¶ 8.

3  **III.    LEGAL STANDARD**

4          Pursuant to 28 U.S.C. § 1391(e), "[a] civil action in which a defendant is an officer or

5  employee of the United States" may be brought in any judicial district in which "a defendant in

6  the action resides" or "a substantial part of the events or omissions giving rise to the claim

7  occurred."

8          Title 28 U.S.C. § 1404(a) governs requests to transfer a case. When seeking to transfer a

9  case to a different district in which the case "might have been brought," the moving party bears

10  "[t]he burden of showing that transfer is appropriate." *Selby v. Sovrn Holdings, Inc.*, 2025 WL

11  2950164, at *2 (N.D. Cal. Oct. 17, 2025). Moreover, "[t]ransfer under § 1404(a) should ***not*** be

12  freely granted." *Id.* (emphasis added). In making transfer determinations, courts in this District

13  consider: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the

14  convenience of witnesses; (4) the ease of access to the evidence; (5) the familiarity of each forum

15  with the applicable law; (6) the feasibility of consolidation with other claims; (7) any local

16  interest in the controversy; and (8) the relative court congestion and the time of trial in each

17  forum. *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).

18          Ultimately, "[t]he question of which forum will better serve the interest of justice is of

19  predominant importance on the question of transfer, and the factors involving convenience of

20  parties and witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, 2008 WL 268986, at *2

21  (N.D. Cal. Jan. 30, 2008). The movant "must make a strong showing of inconvenience to warrant

22  upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805

23  F.2d 834, 843 (9th Cir. 1986). Transfer is inappropriate where the fora are "likely to prove

24  equally convenient or inconvenient" or "if the effect is simply to shift the inconvenience to the

25  party resisting the transfer." *Jernigan v. California Dep't of Corr. & Rehab.*, 2011 WL 255798, at

26  *2 (N.D. Cal. Jan. 24, 2011).

27

28

1    IV.    **ARGUMENT**

2         **A.    Venue is proper in the Northern District of California.**

3         Venue is indisputably proper in the Northern District of California under 28 U.S.C. §

4    1391(e), which provides, *inter alia*, that venue is proper in any district in which a defendant

5    resides.[8] As noted above, Defendants include ICE, which has a San Francisco Field Office that

6    oversees CCDF, and San Francisco ICE Field Office Director Albarran, who is a federal

7    employee, has chief responsibility over CCDF, and is a resident of the Northern District of

8    California. *See* 1 Moore's Federal Practice 1487–88 (public official is deemed to "reside" for the

9    purposes of § 1391(e) in the judicial district where he or she performs official duties).

10        Defendants appear to imply that Acting Field Office Director Albarran is not a proper

11   defendant because he lacks a nexus to the facts of this case. But this argument is improper on a

12   motion for discretionary transfer under 28 U.S.C. § 1404(a). And in any event, as already noted,

13   the ICE San Francisco Field Office—and Acting Field Office Director Albarran—is chiefly

14   responsible for conditions at CCDF.

15        Indeed, where detention is carried out through a contract facility, the proper defendant in a

16   case involving that facility is the federal official with actual authority to ensure compliance with

17   governing standards and law—not lower-level or geographically proximate subordinates with

18   limited, delegated roles. *See Jensen v. Shinn*, 609 F. Supp. 3d 789, 866 n.36 (D. Ariz. 2022)

19   ("Defendant Shinn, as [state prison system] Director, is legally responsible for providing a

20   constitutionally adequate health care system. . . . [W]hen Defendant Shinn believes his chosen

21   vendor must provide health care in a different manner, he must enforce his rights under the

22   contract.").

23        **B.    Defendants fail to establish that transfer is appropriate.**

24             **1.    Plaintiffs' choice of forum is entitled to significant deference.**

25        It is well-established that Plaintiffs' choice of forum is entitled to "substantial deference."

26   *See California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at *4 (N.D. Cal. July 17, 2018)

27   _____

28   [8] The Complaint's reference to 28 U.S.C. § 1346 as a jurisdictional basis was inadvertent. ECF 1
     ¶ 9. Plaintiffs do not rely on § 1346 to contend that venue is proper in the Northern District.

(citation omitted). Defendants claim that such deference should be reduced here because the connection between this case and this District is "*de minimis.*" Not so. By their own admission, the ICE San Francisco Field Office is the sole and appropriate contact for issues concerning conditions of confinement at CCDF. *See supra* § II.A. And ICE's own detention standards, the NDS and PBNDS, assign "chief responsibility" to the Field Office Director (i.e., Defendant Albarran) in areas directly relevant to this case, including use of force, staff misconduct grievances, and detained individuals with significant vulnerabilities such as serious medical needs or disabilities. *Id.* Defendants can hardly contend that the San Francisco Field Office plays a *de minimis* role in CCDF's operations when, as noted above, the CCDF website displays a large "San Francisco Field Office" banner, and states that complaints of misconduct, inquiries about press, general feedback, and legal inquiries should all be directed to the San Francisco Field Office. *Id.* The Field Office Director's oversight and ultimate accountability—even if daily operational tasks are delegated to local subordinates—underscores the Northern District's significant nexus to the controversy.

Defendants attempt to downplay this District's nexus to the case by submitting a vague and generalized declaration from (A)SDDO Landin, who works in ICE's Bakersfield sub-office. But Mr. Landin's declaration in no way contradicts—or even mentions—the many official statements making clear that the San Francisco Field Office has chief responsibility over conditions and policies at CCDF. Mr. Landin nowhere claims to exercise any significant authority over CCDF policies or procedures; his role is admittedly limited to overseeing day-to-day operations, performing investigations, and conducting visual inspections. Landin Decl. ¶ 15.

In short, Defendants provide no reason to deviate from the "general rule" that a plaintiff's choice of forum is afforded substantial weight. *Decker*, 805 F.2d at 843. And indeed, other cases involving contract facilities located within the Eastern District of California but administratively overseen by the San Francisco Field Office have been litigated in the Northern District of California. *See, e.g.*, *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020); *Jimenez v. U.S. Immigr. & Customs Enf't*, 2024 WL 2306281 (N.D. Cal. May 20, 2024).

## 2.   The interests of justice decisively weigh against transfer.

The interests of justice weigh heavily against transferring this time-sensitive case to an overburdened district when it is already being capably litigated in this court. *See Madani,* 2008 WL 268986, at *3. As the Court explained in *Madani*, "the 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all the other factors point the other way." *Id.* Where transfer would cause a delay in proceedings and thus "cause extreme hardship to [the] [P]laintiffs," transfer is properly denied as against the "interest[] of justice." *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991).[9]

### a.   Transfer to the overburdened Eastern District would cause unacceptable delays and reduce existing efficiencies.

A transfer would result in significant delay in at least two ways. ***First***, Defendants ask the Court to transfer this case to one of the most congested and under-resourced courts in the nation. The relevant inquiry when evaluating court congestion is "whether a trial may be speedier in another court because of a less crowded docket." *Midkiff v. Prudential Ins. Co. of Am.*, 2019 WL 12469793, at *5 (N.D. Cal. Dec. 6, 2019). Courts in this District have recognized the "dire" judicial resource constraints and "overwhelming" caseload in the Eastern District, characterizing the situation as a "crisis." *Sierra Forest Legacy v. U.S. Fish & Wildlife Serv.*, 2021 WL 2354852, at *6 (N.D. Cal. June 9, 2021). Indeed, the court in *Sierra Forest* noted that "the Eastern District is one of the most congested district courts across the country" and that "relative congestion" of the Eastern District compared to the Northern District weighed against transfer. *Id.* And, as detailed above, the congestion and resource crisis in the Eastern District has been ongoing since at least 2018, when the judges sent their urgent appeal to Congress. Judges of the Eastern District have continued to sound the alarm (apparently to no avail) ever since.

***Second***, Defendants' transfer motion would upend Plaintiffs' pending preliminary injunction motion, vacating all scheduled proceedings and restarting the case in the Eastern

---

[9] Defendants claim that the convenience of witnesses is "often" the most important factor in resolving a motion to transfer, citing *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013). But the convenience of witnesses factor is less important when the interests of justice weigh strongly against transfer, as is the case here. *Madani,* 2008 WL 268986, at *3. In any event, as detailed herein, the convenience factor in no way favors transfer.

District, effectively hobbling this case. Transferring the case now would force the parties to refile their motion for preliminary injunction before a new court, deprive Plaintiffs of the benefit of this Court's familiarity with the record, and—most fundamentally—further delay the emergency relief Plaintiffs so desperately need. Courts routinely deny transfer where it would cause delay or where the original court is already engaged with the case's substantive issues. In *State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1062 (N.D. Cal. 2018), for example, the court denied transfer in part because "the most efficient and expedient option" is for the court to proceed with the fully-briefed preliminary injunction motions, explaining that "[g]ranting Defendants' transfer would require refiling of all the briefing and setting of a new hearing date in the District of Wyoming, incurring delay and contributing to Plaintiffs' alleged irreparable harm." Similarly, in *Right to Life of Central Cal. v. Bonta*, 614 F. Supp. 3d 729, 733 (E.D. Cal. 2022), the Court denied the defendant's motion to transfer where "the undersigned issued the TRO in this case" and had already "engage[d] with the substantive issues presented." Here, the Court has already held a hearing on Plaintiffs' TRO, reviewed declarations of experts and detained individuals, and entered an order mandating urgent relief. Moreover, the preliminary injunction briefing is now complete, and the motion is set for hearing in a matter of weeks. A transferee court in the Eastern District would need to reset the briefing schedule and independently familiarize itself with the record and legal issues, causing certain—and likely substantial—delay.

Moreover, Ninth Circuit authority clearly establishes that a motion for transfer is properly denied where transfer would result in delay. *See, e.g.*, *Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir. 1987). Indeed, in *Allen*, the Court summarily affirmed the district court's denial of a motion for transfer solely because "transfer of th[e] case undoubtedly would have led to delay." *Id.* It did so "notwithstanding possible inconvenience to the witnesses." *Id.* Similarly, in *Commodity Futures Trading Comm'n v. Savage*, the Ninth Circuit affirmed the denial of a motion for transfer from California to Illinois—even though "Chicago proceedings would have been more convenient"—because "[t]he district court [in California] was familiar with the case and transfer may have led to delay." 611 F.2d 270, 279 (9th Cir. 1979).

Here, there is no doubt: transfer of the case to the Eastern District will result in delay—

delay that would further endanger the health, wellbeing, and lives of named Plaintiffs and members of the putative class.

### b.    The Northern District has a strong local interest in the case.

Defendants also contend that the Northern District has no local interest in the case. That is wrong. At all relevant times, the San Francisco Field Office Director—based in the Northern District—exercised supervisory authority over CCDF and bore ultimate responsibility for ensuring compliance with ICE standards. As courts in this district have emphasized, "[b]ecause the alleged [] decision-making occurred in [the Northern District], the local interest in this case is stronger there than it is [elsewhere]." *Doe v. Spahn*, 2021 WL 6052088, at *7 (N.D. Cal. Dec. 21, 2021). Moreover, Plaintiffs challenge systemic detention conditions and compliance with ICE's own national policies at the largest ICE detention facility in California—one that houses individuals from across the state and beyond. The facts here are entirely unlike *Smith v. Corizon Health, Inc.*, 2016 WL 1275514, at *1-2 (N.D. Cal. Apr. 1, 2016), which involved a single plaintiff and claims arising from localized acts at a county facility, rather than a putative class action seeking systemwide injunctive relief for a federal detention center. The local-interest factor thus weighs decisively against transfer.[10]

### 3.    The convenience factors do not favor transfer.

#### a.    Witness convenience is neutral at best.

Defendants make much of the fact that CCDF employees are not local. But the key decisionmaker, FOD Albarran, is based in San Francisco. And in any case, "[f]airness considerations may be decisive in ruling on a transfer motion, even when convenience of witness[] and parties points the other way." *Pratt*, 769 F. Supp. at 1133; *see also* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3851 (4th ed. 2025) (same). As discussed above, fairness considerations here are decisive.

---

[10] The final interests-of-justice factors are the courts' familiarity with the governing law and the feasibility of consolidation with other claims. Because Plaintiffs' claims arise under federal statutes and the Constitution, both courts are equally familiar with the applicable law, rendering the familiarity with governing law factor neutral. *See Fraser v. Team Health Holdings, Inc.*, 2022 WL 971579, at *5-6 (N.D. Cal March 31, 2022). The feasibility of consolidation factor is irrelevant here.

Additionally, it is well established that "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker,* 805 F.2d at 843; *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (same). In order "[t]o demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses, state their location and describe their testimony and its relevance." *Doe v. Uber Techs., Inc.*, 2017 WL 2352032, at *5 (N.D. Cal. May 31, 2017). Defendants make no such showing here.

**First**, Defendants have failed to establish that the Eastern District of California would be more convenient than the Northern District for anyone who is likely to be a witness in this case, or that a venue change would in any way ease access to evidence. Because a single magistrate judge occupies the Bakersfield courthouse, this case would be heard in either Sacramento—approximately 350 miles away from CCDF—or Fresno—approximately 200 miles away. The difference between these courthouses and San Francisco's is marginal at best. When Defendants chose to house people in a remote prison in the Mojave Desert, they can hardly complain that witnesses may need to travel some distance to a federal courthouse. The Eastern District is no more convenient, or inconvenient, than this District.

*Pratt* is instructive. There, the defendants sought transfer to the Eastern District because "much of plaintiff's complaint concerns events which took place at Tehachapi—which is located in the Eastern District." *Pratt*, 769 F. Supp. at 1132. Rejecting that request, the court observed: "it is unclear whether transfer to the Eastern District would in fact be more convenient for the parties and witnesses. Many defendants reside in distant Kern County. For them, the difference in travel time between this Court and the Eastern District is negligible." *Id.* That is the case here. Tehachapi and California City are both in Kern County—in fact California City is nearly 30 miles further from the Fresno courthouse than Tehachapi.[11] And, as noted above, ultimately, the Court held that notwithstanding the potential convenience of witnesses, "[m]ore importantly . . . the interests of justice tip decidedly in favor of retaining the action here." *Id.* at 1133.

Defendants' argument also implies that every person even tangentially related to the case—(A)SDDO Landin, Warden Chestnut, approximately 40 ICE ERO staff members, and the

---

[11] Ragland Decl. ¶¶ 3, 7.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
Case No. 3:25-cv-09757-MMC

4041315

334[12] CoreCivic employees who staff CCDF—would all need to travel from Kern County to this District. But the universe of relevant witnesses is of course far smaller. Moreover, when the putative witnesses are employees of a party who can be compelled to testify, courts discount any argument as to inconvenience. *See, e.g., STX, Inc.*, 708 F. Supp. at 1556. Accordingly, any inconvenience associated with ICE employee travel is not entitled to any significant weight. As for CoreCivic employees, whom Defendants claim may be outside of the reach of compulsory process, "[a]bsent identification of any witnesses who will testify or are unwilling to testify, the availability of compulsory processes in each district is irrelevant." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 2018 WL 7297829, at *3 (C.D. Cal. Sept. 30, 2018).

Defendants' reliance on *Smith v. Corizon Health, Inc.,* 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016), does not aid its argument. *Corizon* involved a single civilly detained individual seeking damages for personal injury and negligence arising from discrete acts by county and private medical staff at a Fresno County jail. *Id.* at *1. It was not a putative class action, did not seek prospective or systemwide injunctive relief, and did not challenge federal detention policies or oversight by senior federal officials in the Northern District. The *Corizon* court's conclusion that the Northern District lacked a local interest in the dispute therefore has no bearing on the inquiry here. Additionally, in *Corizon*, the case was transferred to Fresno—the very location of the challenged facility—aligning the forum with the operative facts, witnesses, and evidence. *Id.* at *2. Here, by contrast, the challenged detention facility is located in the middle of the Mojave Desert, hundreds of miles from any Article III judge, such that neither forum is meaningfully more convenient with respect to the facility itself. *Corizon* therefore provides no support for transfer.

**Second**, Defendants improperly focus on *counsel's* convenience. Mot. at 19-20. As many courts in the Ninth Circuit have pointed out, the convenience of counsel is "irrelevant and improper for consideration in determining the question of transfer of venue." *Gelber v. Leonard*

---

[12] Defendants' motion to transfer refers to 70 CoreCivic employees, but a corrected filing at ECF 43 reflects that the actual number is 334. *See* ECF 40-3 at 15; ECF 43 at 2.

4041315

*Wood Mem'l For Eradication of Leprosy*, 2007 WL 1795746, at *4 n.2 (N.D. Cal. June 21, 2007); *see, e.g.*, *Bibo v. Fed. Express, Inc.*, 2007 WL 2972948, at *3 (N.D. Cal. Oct. 10, 2007); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1195 (S.D. Cal. 2007) ("[B]ecause 1404(a) makes no reference to counsel, the convenience of counsel is irrelevant."). Courts similarly disregard assertions based on higher costs stemming from the location of counsel, *Gelber*, 2007 WL 1795746, at *4 n.2, or greater convenience for the party to litigate in the District where its counsel was located. *Bibo*, 2007 WL 2972948, at *3. What's more, Defendants' current counsel has "shown an ability to [litigate in this forum] in the past." *Frias v. Aetna Life Ins. Co.*, 2014 WL 5364105, at *3-4 (N.D. Cal. Oct. 21, 2014) (finding the convenience-of-parties factor to be neutral). Although Defendants complain that their counsel, an Assistant United States Attorney in San Francisco, would need to travel to Kern County to take depositions, ICE and the local U.S. Attorney's Office has already vigorously litigated this very case for more than two months, and ICE has readily litigated similar cases brought in this District—and litigated them by the U.S. Attorney's Office in San Francisco—involving detention facilities located in the Eastern District. *See Zepeda Rivas*, 445 F. Supp. 3d at *38-39 (concerning Yuba County Jail and Mesa Verde).

**Third**, modern practices—including remote depositions and testimony—substantially mitigate travel costs and burdens. The Ninth Circuit has long recognized that the location of witnesses and evidence carries less weight "given the modern advances in communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). In accordance with this principle, the Northern District court in *Lopez v. United States* discounted inconvenience arguments where the immigration detention facility and its employees were based in Kern County, noting that such advances reduce the burden on witnesses. 2024 WL 3588013, at *4-5 (N.D. Cal. July 29, 2024). And the court in *Franey v. Am. Battery Sols. Inc.* similarly afforded this factor little weight even where most of the witnesses were out-of-state because of the capacity to conduct Zoom depositions and the fact that most documents were likely to be stored electronically. 2022 WL 4280638, at *14 (N.D. Cal. Sept. 15, 2022). Plaintiffs are prepared to accommodate travel for witnesses and remote participation where possible to

minimize any inconvenience to witnesses. *See Ringler v. J.M. Smucker Co.*, 2025 WL 3150679, at *4 (C.D. Cal. Oct. 30, 2025) (finding witness convenience neutral where non-moving party was willing to accommodate witnesses).

### b. The access-to-evidence factor is neutral at best.

Ease of access to evidence provides no basis to transfer this case to the Eastern District. Defendants possess the overwhelming majority of relevant materials, including policies, directives, medical records, and facility logs, and can produce them electronically regardless of forum. Such evidence is "relatively easy to obtain in any district," making this factor neutral. *Nachison v. Am. Airlines, Inc.*, 2024 WL 3153216, at *5 (N.D. Cal. June 24, 2024); *see also Panavision Int'l L.P.*, 141 F.3d at 1323; *Tokarski v. Med-Data, Inc.*, 2022 WL 815882, at *7 (W.D. Wash. Mar. 17, 2022) (discounting this factor as "no longer relevant in the modern era"). Nowhere in their motion do Defendants contend that any evidence "cannot be converted to digital form . . . prior to their production to the plaintiffs or use in court proceedings, as is done in almost all modern civil litigation." *Nachison*, 2024 WL 3153216, at *5; *see also Selby*, 2025 WL 2950164, at *2 (giving this factor minimal weight where movant failed to identify any reason why most discovery could not be exchanged electronically).

Additionally, given that the San Francisco Field Office is the official and declared point of notification for complaints originating from CCDF, that office necessarily already maintains some of the relevant information and, of course, can access any additional materials that may exist by asking its contracted provider, CoreCivic, with which it signed a contract worth $130 million per year. And as discussed above, given CCDF's remote location in the Mojave Desert, facility inspections would be equally burdensome whether conducted by a court sitting in San Francisco or one sitting in Sacramento or Fresno.

### V. CONCLUSION

This Court is fully equipped to continue presiding over this important and urgent case. Venue is proper here, the Court has already engaged with the issues, and transferring the case to one of the most under-resourced and overburdened courts in the nation would in no way serve the interests of justice. Plaintiffs respectfully request that the Court deny Defendants' motion to

1  transfer.

2  Dated:  January 16, 2026

3

4  Respectfully submitted,

5  /s/ Steven P. Ragland

6  KEKER, VAN NEST & PETERS LLP
   STEVEN P. RAGLAND
   CODY S. HARRIS
7  CARLOS C. MARTINEZ
   LISA C. LU
8
   CALIFORNIA COLLABORATIVE FOR
9  IMMIGRANT JUSTICE
   PRIYA ARVIND PATEL
10 MARIEL VILLARREAL

11

12

13

/s/ Margot Mendelson

PRISON LAW OFFICE
MARGOT MENDELSON
TESS BORDEN
PATRICK BOOTH
ALISON HARDY
RANA ANABTAWI

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN
FELIPE HERNANDEZ
MARISOL DOMINGUEZ-RUIZ
CARMEN IGUINA GONZALEZ

*Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4041315