| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>STEVEN P. RAGLAND - # 221076<br>sragland@keker.com<br>CODY S. HARRIS - # 255302<br>charris@keker.com<br>CARLOS C. MARTINEZ - # 354616<br>cmartinez@keker.com<br>LISA C. LU - # 364259<br>llu@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:     415 397 7188<br><br>CALIFORNIA COLLABORATIVE FOR<br>IMMIGRANT JUSTICE<br>PRIYA ARVIND PATEL - # 295602<br>priya@ccijustice.org<br>MARIEL VILLARREAL - # 317048<br>mariel@ccijustice.org<br>1999 Harrison Street #1800<br>Oakland, California 94612<br>Tel: (650) 762-8990 | PRISON LAW OFFICE<br>MARGOT MENDELSON - # 268583<br>mmendelson@prisonlaw.com<br>TESS BORDEN - MJP # 805022, *pro hac vice*<br>tess@prisonlaw.com<br>PATRICK BOOTH - # 328783<br>patrick@prisonlaw.com<br>ALISON HARDY - # 135966<br>ahardy@prisonlaw.com<br>RANA ANABTAWI - # 267073<br>rana@prisonlaw.com<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Tel.: (510) 280-2621<br><br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION<br>KYLE VIRGIEN - # 278747<br>kvirgien@aclu.org<br>FELIPE HERNANDEZ - # 338468<br>npp_fhernandez@aclu.org<br>MARISOL DOMINGUEZ-RUIZ - # 345416<br>mdominguez-ruiz@aclu.org<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 343-0770<br><br>CARMEN IGUINA GONZALEZ - # 277369<br>ciguinagonzalez@aclu.org<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Tel.: (202) 393-4930 |

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>  v. | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF CODY HARRIS IN SUPPORT OF REPLY TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     February 6, 2026<br>Time:    9:00 a.m.<br>Dept:    Ctrm. 9 – 17th Floor<br>Judge:   Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

| | |
|---|---|
| 1 | U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | Defendants. |

I, Cody S. Harris, declare:

1. I am an attorney licensed to practice in the State of California and am a partner at Keker, Van Nest and Peters, LLP. I represent Plaintiffs in this action. I submit this declaration in support of Plaintiffs' Reply to Opposition to Motion for Preliminary Injunction. I have personal knowledge of the facts set forth herein, and if called to testify as a witness thereto under oath, I could competently do so.

**Attorney Visit at California City**

2. On December 29, 2025, my colleague, Carlos Martinez, and I visited the California City Detention Facility to conduct legal visits with four individuals detained there. The visits were scheduled to begin at 8:00 AM, which is when we arrived.

3. After a roughly 30-minute wait, a detention officer escorted us to an attorney visit room that had a printed visit schedule displayed next to the door. The schedule listed the four individuals' names and accompanying meeting times as follows:

    i) Fernando Viera Reyes – 8:00 a.m.

    ii) Alejandro Mendiola Escutia – 9:00 a.m.

    iii) Jesus Efren Reyes Murillo – 10:00 a.m.

    iv) Chong Sik Kim – 11:00 a.m.

4. Our scheduled 8:00 a.m. visit with Mr. Viera Reyes did not begin until approximately 8:45 a.m. It lasted roughly an hour.

5. Our second visit with Mr. Mendiola Escutia began at approximately 10:00 AM and ended at approximately 10:50 a.m., almost an hour after the scheduled start time of our third visit. At that point, however, Mr. Mendiola Escutia could not leave due to the 11:00 AM count. We therefore continued speaking with Mr. Mendiola Escutia until approximately 11:45 AM.

6. Our third visit, with Mr. Reyes Murillo, began at approximately 12:25 PM, after we waited 40 minutes for him to arrive in the attorney visit room.

7. We waited another 40 minutes for Mr. Kim to arrive for our final visit.

8. Altogether, it took us roughly six hours to meet with four people.

9. All four attorney visits were non-contact visits. We conducted each visit in a small, cold room with plexiglass separating us from our clients, who sat in another small room on the other side of the plexiglass. It was extremely difficult to hear the clients.

10. A large and empty room with tables, chairs, and vending machines adjoined the attorney visit rooms. I asked the detention officer what function the room served, and he responded, "contact visits, if we were ever to have those." I asked if the facility had plans to institute contact visits. The detention officer replied, "No, not to my knowledge."

11. On January 5, 2026, counsel for Defendants, Savith Iyengar, responded to co-counsel Tess Borden's request for "confidential, sound-private contact legal visits, without a glass partition" due to "difficulty hearing our clients because of the heavy glass in the visitation booths." Mr. Iyengar responded that counsel's request "appear[s] to seek changes to existing regulations at the facility." After conferring with his client, Mr. Iyengar reiterated that "the facility has confirmed that it can accommodate confidential, non-contact legal visits in private areas with a glass partition." Attached hereto as **Exhibit 1** is a true and correct copy of the emails between co-counsel and Mr. Iyengar concerning co-counsel's request for contact attorney visits.

**Follow-up on Court's December 22, 2025 Order re Plaintiff's TRO**

12. On December 16, 2025, Plaintiffs filed a Temporary Restraining Order that sought urgent specialized care for Fernando Viera Reyes and Yuri Alexander Roque Campos, two Plaintiffs with serious and life-threatening conditions. *See* ECF No. 27.

13. On December 22, 2025, Defendants stipulated to resolve the TRO and agreed, among other things, to "ensure that Fernando Viera Reyes receives a comprehensive assessment by a urologist on the agreed-upon date (barring scheduling issues outside of Defendants' control) in order for the urologist to perform a biopsy." ECF No. 36. Defendants also agreed to "ensure that Yuri Alexander Roque Campos receives a comprehensive assessment by a cardiologist on the agreed-upon date (barring scheduling issues outside of Defendants' control) in order for the cardiologist to develop a comprehensive treatment plan." *Id.* Mr. Iyengar told us, on an attorneys-eyes-only basis, that Mr. Viera Reyes' urology appointment would take place on December 30, 2025.

14. On December 22, 2025—the same day that the Court entered the stipulated order—I emailed Mr. Iyengar to let him know that, based on our understanding and Mr. Viera Reyes' previous inability to have the biopsy performed, Mr. Viera Reyes needed to be placed on antibiotics before his visit to the urologist, or he would be sent back, for the second time, without the biopsy being performed. In relevant part, Mr. Iyengar responded, "[T]hank you for the additional, important note." Attached hereto as **Exhibit 2** is a true and correct copy of the emails between me and Mr. Iyengar.

15. Mr. Viera Reyes did not have a biopsy on December 30, 2025.

16. On December 31, 2025, one day after Mr. Viera Reyes' scheduled biopsy, I emailed Mr. Iyengar and told him that the biopsy did not occur. I also informed him that I understood that Mr. Viera Reyes had not been placed on the appropriate antibiotics for a biopsy to occur. I also told him that, based on our understanding of the medical records, "Kern Medical Center set a date for a follow-up urology appointment for February 2, 2026." I requested confirmation that Mr. Viera Reyes' biopsy would occur no later than January 7, 2026, noting that Plaintiffs would otherwise seek Court intervention. Mr. Iyengar responded that he was looking into the matter and would keep us updated.

17. On January 2, 2026, Mr. Iyengar informed me that Mr. Viera Reyes' biopsy had been rescheduled for the morning of January 7, 2026. Attached hereto as **Exhibit 3** is a true and correct copy of the emails between me and Mr. Iyengar concerning Mr. Viera Reyes' biopsy.

18. Upon information and belief, Mr. Viera Reyes's biopsy took place on January 7, 2026.

19. Mr. Roque Campos saw a cardiologist on January 13, 2026. The cardiologist requested for two procedures to be completed as part of Mr. Roque Campos' treatment plan. Both were initially recommended on September 3, 2025, before Mr. Roque Campos transferred to California City on September 5, 2025, and have not been conducted during the more than four months that Mr. Roque Campos has been at California City. We do not know if Defendants have ordered those procedures. Plaintiffs' counsel continue to monitor Mr. Roque Campos' treatment and have been in contact with Defendants' counsel about it.

**Purported Correction of Errors in Warden Chestnut's Declaration**

20. On January 8, 2026, co-counsel Tess Borden emailed Mr. Iyengar to request corrections to paragraphs 195 and 200 of Warden Chestnut's declaration, an exhibit to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF No. 38-1).

21. Ms. Borden explained that paragraph 200 of the Warden's declaration claims Prison Law Office sent 221 emails to calcityattorneyschedule@corecivic.com, but after review, co-counsel found that Prison Law Office emailed the facility only 24 times during the date range the Warden described. Ms. Borden requested proof of the 221 emails or correction of the inaccurate number. Ms. Borden also requested that Defendants "double-check the other numbers listed in paragraphs 197 through 199. If Mr. Chestnut's count was off by a factor of ten for the Prison Law Office, then it is worth checking the other numbers he referenced in his declaration." Mr. Iyengar replied the same day and told co-counsel he would "follow up."

22. While waiting for Defendants to explain the allegations in paragraphs 195 and 200, co-counsel discovered additional errors in paragraphs 197 and 198 to the Warden's declaration and emailed Mr. Iyengar on January 12, 2026 about it. Co-counsel explained that paragraph 197 claims Lee Ann Felder-Heim and Genesis Fabian sent 74 emails to calcityattorneyschedule@corecivic.com, but upon further review of their email logs, both collectively sent only 22 emails. Co-counsel also explained that paragraph 198 claims that Attorney Hannah Kazim works for Immigrant Legal Defense and sent 122 emails to calcityattorneyschedule@corecivic.com along with a lawyer Mr. Chestnut identified as her colleague, Attorney Kyle Hudson, and others at Immigrant Legal Defense. But Attorney Kazim does not work for Immigrant Legal Defense. Rather, she works for Immigrant Defenders Law Center. Additionally, co-counsel noted that Hudson Kyle—not Kyle Hudson—had provided a declaration in this case. In response to co-counsel's request for proof or correction of these allegations, Mr. Iyengar replied the next day that he had "followed up and will keep [co-counsel] updated." Attached hereto as **Exhibit 4** is a true and correct copy of the emails between co-counsel and Mr. Iyengar concerning the various errors in the Warden's declaration.

23. On January 15, 2026, Defendants filed a corrected version of Mr. Chestnut's declaration, which purports to correct the errors in his original declaration regarding the number of emails sent to California City's scheduling address. *See* ECF 45. The revised declaration is misleading for several reasons:

   i) Rather than admit that his email numbers were inflated, he now counts emails *and attachments* separately, combining both into his total figures. Many of those attachments are likely forms and identification that Defendants require. *See* U.S. Immigration & Customs Enforcement, *California City Detention Facility*, https://www.ice.gov/detain/detention-facilities/california-city-detention-facility (providing instructions for requesting legal calls, including requiring scans of forms and identification).

   ii) To address the error with respect to Attorney Kazim's employer, he combines two separate organizations (Immigrant Legal Defense and Immigrant Defenders Law Center) into one line item.

   iii) To address the error with respect to the Prison Law Office, he combines three separate organizations—the Prison Law Office, ACLU, and CCIJ—into another line item, which he claims collectively account 188 emails—which is still fewer emails than the number he had previously ascribed to the Prison Law Office alone. Additionally, in retaining the term "Counsel for Plaintiffs in this matter" in corrected Paragraph 200, Mr. Chestnut implies that all of the emails sent by ACLU and CCIJ to this email address were sent in the capacity as counsel for Plaintiffs in this matter. *See* ECF 45. Based on the representations of my co-counsel, I do not believe that to be true. For example, CCIJ attorneys also represent individual people detained at California City in habeas petitions and immigration proceedings, which require legal calls.

**Official Reports and Statements Regarding California City**

24. Attached hereto as **Exhibit 5** is a true and correct copy of a PDF document titled "California City Detention Facility (CCDF) Preliminary Findings", which I downloaded from the website https://oag.ca.gov/news/press-releases/attorney-general-bonta-warns-dangerous-conditions-california-city-detention on January 15, 2026.

25. Attached hereto as **Exhibit 6** is a true and correct copy of a PDF document titled "Representative Ro Khanna California City Detention Facility Tour Report, January 6, 2026", which I downloaded from the website https://x.com/RepRoKhanna/status/2008574388585578626 on January 16, 2026.

26. Attached hereto as **Exhibit 7** is a true and correct copy of a PDF document titled "Newly Opened California City ICE Detention Facility: Dangerous for Disabled People", which I downloaded from the website https://www.disabilityrightsca.org/reports/california-city-ice-processing-center-a-dangerous-expansion-of-immigration-detention-in on January 15, 2026.

Executed on January 16, 2026, in San Francisco, California.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.

CODY S. HARRIS