| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>STEVEN P. RAGLAND - # 221076<br>sragland@keker.com<br>CODY S. HARRIS - # 255302<br>charris@keker.com<br>CARLOS C. MARTINEZ - # 354616<br>cmartinez@keker.com<br>LISA C. LU - # 364259<br>llu@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:     415 397 7188<br><br>CALIFORNIA COLLABORATIVE FOR IMMIGRANT JUSTICE<br>PRIYA ARVIND PATEL - # 295602<br>priya@ccijustice.org<br>MARIEL VILLARREAL - # 317048<br>mariel@ccijustice.org<br>1999 Harrison Street #1800<br>Oakland, California 94612<br>Tel: (650) 762-8990 | PRISON LAW OFFICE<br>MARGOT MENDELSON - # 268583<br>mmendelson@prisonlaw.com<br>TESS BORDEN - MJP # 805022, *pro hac vice*<br>tess@prisonlaw.com<br>PATRICK BOOTH - # 328783<br>patrick@prisonlaw.com<br>ALISON HARDY - # 135966<br>ahardy@prisonlaw.com<br>RANA ANABTAWI - # 267073<br>rana@prisonlaw.com<br>1917 Fifth Street<br>Berkeley, California 94710-1916<br>Tel.: (510) 280-2621<br><br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>KYLE VIRGIEN - # 278747<br>kvirgien@aclu.org<br>FELIPE HERNANDEZ - # 338468<br>npp_fhernandez@aclu.org<br>MARISOL DOMINGUEZ-RUIZ - # 345416<br>mdominguez-ruiz@aclu.org<br>425 California Street, 7th Floor<br>San Francisco, CA 94104<br>Tel.: (415) 343-0770<br><br>CARMEN IGUINA GONZALEZ - # 277369<br>ciguinagonzalez@aclu.org<br>915 15th Street, NW, 7th Floor<br>Washington, DC 20005<br>Tel.: (202) 393-4930 |

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS | Case No. 3:25-cv-09757-MMC<br><br>**SUPPLEMENTAL DECLARATION OF GUSTAVO GUEVARA ALARCON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date Filed:     November 12, 2025<br><br>Trial Date:  Not Set |

SUPPLEMENTAL DECLARATION OF GUSTAVO GUEVARA ALARCON
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

4015313

| | |
|---|---|
| 1 | ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security, |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | Defendants. |
| 7 | |

SUPPLEMENTAL DECLARATION OF GUSTAVO GUEVARA ALARCON
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

4015313

**Supplemental Declaration of Gustavo Guevara Alarcon**

1.  I am a Named Plaintiff in the above-captioned case and submitted a declaration in support of our Motion for Preliminary Injunction, which I signed on October 28, 2025 (ECF No. 22-7). The facts in that declaration remain true.

2.  I submit this supplemental declaration to provide additional information about the current conditions at California City, as well as my experience at Golden State Annex ("GSA"), the immigration detention facility that I was housed at before being transferred to California City.

3.  I have been detained at California City since August 29, 2025. In my initial declaration, I described the harsh conditions and extremely restrictive practices at California City. Since completing that declaration, the custodial practices and conditions have remained largely unchanged.

4.  In my housing unit, we are still prohibited from having any contact visits with family, friends, or attorneys. I am not aware of anyone who has ever had a contact visit at California City. We continue to be subjected to clothed body searches every time we return to the housing unit from outdoor recreation. We are only allowed out of our housing unit for outdoor recreation for around seven hours each week. As a result, I spend nearly every hour of the week in my housing unit. We have very little to do, and we have no classes or groups to pass the time.

5.  I am also locked in my cell multiple times throughout the day while staff complete four counts per day, which typically occur around 7 AM, 11 AM, 3 PM, and 7 PM. Each of those counts usually takes anywhere from 30 minutes to an hour and a half, and usually around an hour, during which time we are locked in our cells with nothing to do.

6.  The temperature is still very cold in the cells. Around November 2025, staff gave us windbreakers. The windbreakers are very thin, have no hood, and do not retain heat. They do not provide warmth. Cold air blows out of the vents in our cells even though it's cold outside. We have not been issued a sweatshirt, sweatpants, or a beanie by the facility. I purchased sweatpants from commissary at California City and wear a sweatshirt and beanie from GSA to try to stay warm, but I am still cold all the time in my cell.

1

SUPPLEMENTAL DECLARATION OF GUSTAVO GUEVARA ALARCON
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

4015313

7. In my unit, we have two PlayStation consoles with four games, one board game, four puzzles, and Uno cards, and rubber dominos, which were all provided by California City. We have to share all of these games with 80 people in the unit, and the games and puzzles are not changed out. We have four televisions that do not get local channels and only get English channels, two or three Spanish language channels, and no channels in other languages. I do not have access to a newspaper in my unit. A librarian only comes by my unit every two weeks to ask if we want to check out books from the library. I am not provided any art supplies, such as colored pencils, and have to purchase these items from commissary. These items are important to me because art is therapeutic for me and one of my primary hobbies.

8. During outdoor recreation, I am only allowed to borrow a soccer ball, volleyball, or handball, which are poor quality and constantly flat. Staff only recently replaced the soccer balls after five months of use.

9. I have filed 18 grievances at California City, and I do not consistently receive responses. The responses that I do receive do not resolve the issues that I raise in the grievances. I have also filed around six sick call requests regarding my ongoing chronic foot pain and need for orthopedic shoes on September 10, September 23, October 6, October 29, December 23, 2025, and January 8, 2026. I have not received a response to any of my requests. I continue to experience pain in my feet daily due to a lack of adequate footwear. I purchased a pair of shoes through commissary, but they do not provide the appropriate support I need for my condition.

10. The conditions at California City are very different from the ones at GSA, where I was previously detained. While detained at GSA, I could have contact visits with lawyers and family or friends for an hour and 45 minutes minimum. I had a contact visit with my loved ones at least once a month.

11. At GSA, officers did not escort me throughout the facility unless I was going to medical or visitation. I was never handcuffed, and officers did not pat me down or search me every time I entered or left my housing unit and only did so when I had a visit. I had around three hours of outdoor recreation time per day. I also had access to an indoor recreation space that had a pool table, foosball table, ping pong table, air hockey, basketball hoop, and DVDs.

2

SUPPLEMENTAL DECLARATION OF GUSTAVO GUEVARA ALARCON
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

4015313

12. At GSA, there were times I was able to access classes and structured recreational opportunities, including arts-and-crafts. I know that other detained people were sometimes able to lead classes, such as English as a second language (ESL) classes, at GSA. At GSA, I had access to over 70 channels on the televisions including local channels, several Spanish language channels, and channels in Mandarin, Punjabi, and other languages commonly spoken by the people in my unit. While I was at GSA, staff did not call me "inmate," which California City staff use to refer to us.

13. While at GSA, I was issued a sweatshirt, sweatpants, and beanie at no cost. It was not extremely cold at that facility like it is here. Count at GSA was much less restrictive and typically only took about 30 minutes to complete. GSA only had count two times during the day around 10 or 10:30 AM and 4:30 PM. I was able to sit on my bed in the dorm during count and immediately access the dayroom after count was done. At California City, I am locked inside my cold cell for an hour and wait for staff to unlock the cell in order to go back out to the dayroom.

14. I had a much lower security level in prison than I do at California City. When I entered prison in 2006, I was at a high security level. While in prison, I joined as many programs as I could and I stayed out of trouble. I even taught programs to other people in prison. I worked my classification level down as far as it could possibly go, and I was low security by the time I was released. While in prison, I was allowed to program from 9 AM to 9:45 PM every day because of my low security level. I was able to go in and out of my unit to attend various programs and self-help groups and was never escorted or searched by staff on the yard in order to attend these programs. Because I was a self-help group facilitator and earned the trust of the staff on my yard, I was allowed to meet with the captain and other custody staff regularly. I had more freedom in prison than I do at California City.

15. Before I was released from prison, I was granted parole by the California Board of Parole Hearings. In prison, most people who I knew that went before the Board were denied parole at their first hearing. But when I went to the Board for the first time, I was found suitable for parole. The Board said that I was not a risk to society and that I could be released to the community. The Board saw that I stayed true to the commitment I made to myself to participate

3

SUPPLEMENTAL DECLARATION OF GUSTAVO GUEVARA ALARCON
IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

4015313

in rehabilitative programs, stay committed to my Christian faith, and become a positive role model.

16. The Board also recognized that I was committed to developing into a better person, that I treat others with respect, and that I grew and matured a lot during my time in prison. I put in hundreds of hours of work to improve myself in prison. I completed more than 15 different self-help groups and numerous vocational programs. I taught self-help groups in prison, and several custody staff members wrote positive notes about me to include in my file. In one of these notes, my facility captain wrote, "Guevara has been instrumental in making the [youth diversion] program a success and it is clear he clearly has a heart for helping the youth stay away from criminal activity…I wholeheartedly trust Guevara as the lead because it is apparent Guevara's rehabilitation is genuine…More so than just his participation in such programs, I feel it necessary that Guevara is recognized for his genuine respectfulness and positive attitude. Guevara is well known by staff for such attributes and I can confidently say that all facility staff would agree with this description of his attitude and the earned appreciation…Guevara is an exemplary model of what rehabilitation should look like in prison."

17. I felt really proud when I was granted parole. It felt like the Board acknowledged how much effort I had put in to work on myself. Now at California City, I am treated like I just committed a crime yesterday. I am classified as high security just because I was in prison, even though the Board decided that I could safely be released into the community. California City ignores all of my years of hard work to improve myself. The conditions at California City are much more restrictive than in prison. California City has confined me to a small cell, limited my access to the outside world, to my rehabilitative programs, to my support group, and to my community.

1  I, Gustavo Guevara Alarcon, declare under penalty of perjury that the foregoing is true
2  and correct and that this declaration is completed and executed on January 13, 2026 from
3  California City.

_____
Gustavo Guevara Alarcon

January 13, 2026
Date