CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
SAVITH IYENGAR (CABN 268342)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
savith.iyengar@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FERNANDO GOMEZ RUIZ, *et al.*,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

Defendants.

No. 3:25-cv-09757-MMC

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE**

Date: Friday, February 6, 2026
Time: 9:00 a.m.
Location: Courtroom 7, 19th Floor
Judge: Hon. Maxine M. Chesney

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Venue Is Proper in the Eastern District of California ..... 3

B. The Balance of Relevant Factors Strongly Favors Transfer to the Eastern District ..... 3

1. This District Lacks A Significant Connection to Plaintiffs' Allegations ..... 3

(i) Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference ..... 3

(ii) Plaintiffs' New Allegations About the San Francisco Field Office Director Are Incorrect and Do Not Weigh Against Transfer ..... 4

(iii) Plaintiffs Understate (A)SDDO Landin's and His Staff's Roles with Respect to the Factual Allegations Underlying Their Claims ..... 6

2. The Interests of Justice Favor Transfer to the Eastern District ..... 8

(i) Transfer Would Not Cause Meaningful Delay Due to the Eastern District's Familiarity with the Same Issues ..... 8

(ii) Transfer Would Not Meaningfully Delay Any Briefing ..... 9

(iii) The Eastern District's Interest Weighs in Favor of Transfer ..... 10

3. The Convenience of the Parties and Witnesses Favors Transfer to the Eastern District ..... 11

(i) The Location of Parties and Witnesses Favors Transfer ..... 11

(ii) The Location of Eastern District Courthouses Favors Transfer ..... 13

(iii) Relative Costs of Proceeding in the Eastern District Favor Transfer ..... 14

4. Ease of Access to Evidence Favors Transfer to the Eastern District ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Scribner*,
812 F.2d 426 (9th Cir. 1987) .......... 10

*AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*,
No. 06-cv-03805-JSW, 2006 WL 2850054 (N.D. Cal. Oct. 5, 2006) .......... 4

*Backcountry Against Dumps v. Abbott*,
No. 10-cv-394, 2010 WL 2349194 (E.D. Cal. June 8, 2010) .......... 11

*Barroca v. United States*,
No. 19-cv-00699-MMC, 2019 WL 5722383 (N.D. Cal. Nov. 5, 2019) .......... 15

*California v. Bureau of Land Mgmt.*,
No. 18-cv-00521-HSG, 2018 WL 3439453 (N.D. Cal. July 17, 2018) .......... 3

*Chen v. Pioneer Oil, LLC*,
472 F. Supp. 3d 704 (N.D. Cal. 2020) .......... 4

*Chess v. Romine*,
No. 18-cv-05098-JSC, 2018 WL 5794526 (N.D. Cal. Nov. 2, 2018) .......... 12

*Clip Ventures LLC v. Suncast Corp.*,
No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) .......... 12, 13

*Commodity Futures Trading Comm'n v. Savage*,
611 F.2d 270 (9th Cir. 1979) .......... 10

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
472 F. Supp. 2d 1183 (S.D. Cal. 2007) .......... 15

*Ctr. for Biological Diversity v. McCarthy*,
No. 14-cv-05138-WHO, 2015 WL 1535594 (N.D. Cal. Apr. 6, 2015)) .......... 3

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) .......... 10

*Desert Survivors v. U.S. Dep't of the Interior*,
No. 16-cv-01165-JCS, 2016 WL 3844332 (N.D. Cal. July 15, 2016) .......... 15

*Dignity Not Det. Coal. v. City of California City*,
No. 1:25-cv-01292-JLT-CDB, 2025 WL 3126698 (E.D. Cal. Nov. 7, 2025) .......... 2, 8, 9

*Doe v. Uber Techs., Inc.*,
2017 WL 2352032 (N.D. Cal. May 31, 2017) .......... 12

*Fabus Corp. v. Asiana Exp. Corp.*,
No. 00-cv-03172-PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001) .......... 4

*Galveston, Harrisburg & San Antonio Ry. Co. v. Gonzales*,
151 U.S. 496 (1894) .......... 4

*Gulf Oil v. Gilbert*,
330 U.S. 501, 511 (1947) ... 15

*Harrist v. United States*,
No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) ... 12, 13

*Herbert v. VWR Int'l, LLC*,
686 F. App'x 520 (9th Cir. 2017) ... 12

*Hoefer v. U.S. Dep't of Com.*,
No. 00-cv-00918-VRW, 2000 WL 890862 (N.D. Cal. June 28, 2000) ... 6

*In re Funeral Consumers Antitrust Litig.*,
No. 05-cv-01804-WHA, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) ... 15

*In re Nat'l Presto Indus., Inc.*,
347 F.3d 662 (7th Cir. 2003) ... 14

*Jensen v. Shinn*,
609 F. Supp. 3d 789 (D. Ariz. 2022) ... 8

*Kholyavskiy v. Achim*,
443 F.3d 946 (7th Cir. 2006) ... 8

*Knapp v. Wachovia Corp.*,
No. 07-cv-4551-SI, 2008 WL 2037611 (N.D. Cal. May 12, 2008) ... 1, 3, 5

*Laitram Corp. v. Hewlett-Packard Co.*,
120 F. Supp. 2d 607 (E.D. La. 2000) ... 15

*Martensen v. Koch*,
No. 12- cv-05257-JSC, 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013) ... 15

*Mazik v. Kaiser Permanente, Inc.*,
No. 2:19-cv-00559-DAD-JDP, 2024 WL 3011214 (E.D. Cal. June 14, 2024) ... 14

*Morris v. Safeco Ins. Co.*,
No. 07-cv-2890-PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ... 4

*Newegg, Inc. v. Telecomm. Sys.*,
No. 09-cv-0982-JL, 2009 WL 1814461 (N.D. Cal. June 23, 2009) ... 15

*Our Children's Earth Found. v. EPA*,
No. 08-cv-01461-SBA, 2008 WL 3181583 (N.D. Cal. Aug. 4, 2008) ... 10

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) ... 12

*Parr v. Stevens Transp., Inc.*,
No. 19-cv-02610-WHA, 2019 WL 4933583 (N.D. Cal. Oct. 7, 2019) ... 2

*Pratt v. Rowland*,
769 F. Supp. 1128 (N.D. Cal. 1991) ... 11

*R.T.B. by & through Breault v. United States*,
No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019) .......... 12, 13

*Ruiz v. Darigold, Inc.*,
No. 14-cv-02054-WHO, 2014 WL 4063002 (N.D. Cal. Aug. 14, 2014) .......... 12

*SEC v. Rose Fund, LLC*,
No. 03-cv-04593-WHA, 2004 WL 2445242 (N.D. Cal. Jan. 9, 2004) .......... 14

*Singh v. Roadrunner Intermodal Servs., LLC*,
No. 15-cv-01701-JSW, 2015 WL 5728415 (N.D. Cal. Sept. 30, 2015) .......... 12

*Smith v. Corizon Health*,
No. 16-cv-00517-WHA, 2016 WL 1275514 (N.D. Cal. Apr. 1, 2016) .......... 10, 11

*Sorensen v. Daimler Chrysler AG*,
No. 02-cv-04752-MMC (EDL), 2003 WL 1888866 (N.D. Cal. Apr. 11, 2003) .......... 4

*Tyler v. Travelers Commercial Ins. Co.*,
499 F. Supp. 3d 693 (N.D. Cal. 2020) .......... 3

*Van Mourik v. Big Heart Pet Brands, Inc.*,
No. 17-cv-03889-JD, 2018 WL 3549122 (N.D. Cal. July 24, 2018) .......... 10

*W. Coast Reg'l Ctr., Inc. v. Jaddou*,
No. 23-cv-06336-PCP, 2024 WL 3498242 (N.D. Cal. July 19, 2024) .......... 7

*Williams v. Bowman*,
157 F. Supp. 2d 1103 (N.D. Cal. 2001) .......... 10, 13

**Statutes**

28 U.S.C. § 1391 .......... 3, 4

28 U.S.C. § 1404(a) .......... *passim*

**Rules and Treatises**

E.D. Civ. L.-R. 120(c) .......... 2, 13, 15

E.D. Civ. L.-R. 302(c) .......... 14, 15

15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) .......... 11

## I. INTRODUCTION

This case is about detention conditions at CCDF, a facility owned and operated by CoreCivic and its staff in the Eastern District of California. There is no dispute that a substantial part of the alleged events or omissions purportedly giving rise to Plaintiffs' claims occurred in the Eastern District. Indeed, Plaintiffs' sole factual allegation about the only defendant in the Northern District, San Francisco Field Office Director Sergio Albarran, FAC ¶ 22, is eclipsed by the remaining hundreds of disputed factual allegations about the facility and its staff, all of which arise in the Eastern District. *See generally* FAC; ECF No. 37 ("Mot.") at 3–15. Confronted with facts and law establishing that transfer is appropriate given this *de minimis* alleged contact with this district — and the overwhelming center of gravity in the Eastern District — Plaintiffs have submitted an opposition that is remarkable in its omissions.

***First***, Plaintiffs disregard the allegations of their operative complaint, in which only one out of 294 paragraphs specifically refers to Director Albarran. FAC ¶ 22. That lone allegation discusses his role only generally, and incorrectly suggests that he, and not CCDF Warden Chestnut, is Plaintiffs' and the proposed class members' custodian. *See* Mot. 18.

***Second***, in an attempt to add a specific allegation against Director Albarran for the first time in opposition, Plaintiffs tout a *partial* screenshot of ICE's facility webpage to assert that it "expressly directs complaints of misconduct" to the San Francisco Field Office as "the sole and appropriate contact for issues concerning conditions of confinement at CCDF." ECF No. 47 ("Opp'n") at 1, 10. In full, the webpage states that "to make a complaint of misconduct, you may" contact *any of*: the Field Office Director in San Francisco, two officials in Washington, D.C., and/or a phone number and email address. Feedback or Complaints (Dec. 16, 2025), https://www.ice.gov/detain/detention-facilities/california-city-detention-facility (last visited January 23, 2026). An individual's theoretical ability to complain about misconduct in San Francisco makes this district no more appropriate than Washington, D.C., and indeed has "no bearing on the venue analysis" in any case. *Knapp v. Wachovia Corp.*, No. 07-cv-4551-SI, 2008 WL 2037611, at *2–3 (N.D. Cal. May 12, 2008).

***Third***, Plaintiffs omit key portions of (A)SDDO Landin's declaration to assert that he lacks sufficient responsibility "over what goes on at CCDF" and discount the role that he and his staff in Bakersfield play at the facility. Opp'n 6, 10. Yet (A)SDDO Landin describes many more

responsibilities than Plaintiffs acknowledge, including — importantly — overseeing the facility's "compliance with the NDS and PBNDS and detainee grievances." Mot. 15, 18. That is precisely what this case is about — the facility's purported "detention conditions and compliance with ICE's own national policies" and "Defendants' own standards," Opp'n 13; Mot. 4–6 — and (A)SDDO Landin's and his staff's location in Bakersfield is thus material to where this action should proceed.

***Fourth***, in claiming that transfer to the Eastern District would "caus[e] certain — and likely substantial — delay" because that district would need to "independently familiarize itself with the record and legal issues," Opp'n 12, Plaintiffs ignore that the Eastern District is already familiar with the precise issue presented here: alleged conditions of confinement at CCDF. *Five days* before Plaintiffs filed this action, the Eastern District denied a motion for a TRO brought by a CCDF detainee and coalition of community organizations against CoreCivic alleging "various concerns about conditions at the [f]acility," including many of the same factual allegations raised in this case. *Dignity Not Det. Coal. v. City of California City*, No. 1:25-cv-01292-JLT-CDB, 2025 WL 3126698, at *4 (E.D. Cal. Nov. 7, 2025). Plaintiffs' complaint makes no mention of that action despite demanding injunctive relief from *this* district based on the same alleged conditions of confinement in the Eastern District.

***Fifth***, Plaintiffs' claims that a "congestion and resource crisis" in the Eastern District *as of 2022* would lead to delay today, and that the closest Article III judge who could hear this case would be in Fresno, "approximately 200 miles away" from the facility, are incorrect. Opp'n 7, 11, 14. The Eastern District's actual median time interval from filing to disposition of civil cases is 8.1 months, versus 20.5 months for this district. *See* "Median Time From Filing to Disposition of Civil Cases, by Action Taken," available at https://www.uscourts.gov/sites/default/files/document/stfj_c5_630.2025.xlsx (last visited Jan. 25, 2026) (reflecting data for civil cases terminated during the 12-month period ending June 30, 2025).[1] Moreover, the Eastern District permits Article III judges to hold sessions "at other places in the District as the Court requires," E.D. Civ. L.-R. 120(c), and thus utilize the court's 100-mile subpoena power by holding sessions in, and commanding attendance at, the Bakersfield Federal Courthouse.

[1] Defendants respectfully request that the Court take judicial notice of these statistics, contained in "Statistical Tables for the Federal Judiciary - June 2025," a publication of the United States Courts, available at https://www.uscourts.gov/data-news/reports/statistical-reports/statistical-tables-federal-judiciary/statistical-tables-federal-judiciary-june-2025. *See Parr v. Stevens Transp., Inc.*, No. 19-cv-02610-WHA, 2019 WL 4933583, at *4 (N.D. Cal. Oct. 7, 2019).

In sum, Plaintiffs fail to meaningfully dispute that transfer to the Eastern District is appropriate. All events giving rise to Plaintiffs' claims occurred at CCDF. All material witnesses reside at or near the facility. And the Eastern District is "in a vastly better position to assess and gather information about this case" and has a strong *and proven* interest in doing so. Mot. 3. This Court should transfer this case to the Eastern District and hold in abeyance all pending motions to be ruled on by that district.

## II. ARGUMENT

### A. Venue Is Proper in the Eastern District of California

Defendants have satisfied the threshold issue of whether this case "might have been brought" in the transferee district, 28 U.S.C. § 1404(a), as Plaintiffs do not dispute that "a substantial part of the [alleged] events or omissions [purportedly] giving rise to the claim[s] occurred" in the Eastern District. 28 U.S.C. § 1391(b)(2); *Tyler v. Travelers Commercial Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020) ("Plaintiff concedes these arguments by failing to address them in her opposition."). This Court may thus proceed to considering the balance of relevant factors. *Knapp*, 2008 WL 2037611, at *2.

### B. The Balance of Relevant Factors Strongly Favors Transfer to the Eastern District

#### 1. This District Lacks A Significant Connection to Plaintiffs' Allegations

##### (i) Plaintiffs' Choice of Forum Is Not Entitled to Substantial Deference

Contrary to their assertion, Opp'n 3, 9, Plaintiffs' choice of forum is not entitled to "substantial deference." The case Plaintiffs cite for this proposition, *California v. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2018 WL 3439453, at *4 (N.D. Cal. July 17, 2018), actually quotes another case, *Ctr. for Biological Diversity v. McCarthy*, No. 14-cv-05138-WHO, 2015 WL 1535594, at *3 (N.D. Cal. Apr. 6, 2015)), which explains that while "ordinarily" a plaintiff's choice of forum receives "substantial deference," if the forum is not "within the plaintiff's home district or state," or "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice of forum is entitled only to minimal consideration." Thus, a plaintiff's choice of forum "is not absolute" and "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint." *Fabus Corp. v. Asiana Exp. Corp.*, No. 00-cv-03172-PJH, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001)

(granting motion to transfer).

Here, Plaintiffs do not dispute that they are not residents of this district. 28 U.S.C. § 1391(c)(1); *Galveston, Harrisburg & San Antonio Ry. Co. v. Gonzales*, 151 U.S. 496, 506–07 (1894). Deference to their choice of forum is thus "substantially reduced" for this reason alone. *Fabus*, 2001 WL 253185, at *1. Deference is further reduced to being "slight, if any" because Plaintiffs' chosen "forum lacks a significant connection to the events that gave rise to the complaint." *Morris v. Safeco Ins. Co.*, No. 07-cv-2890-PJH, 2008 WL 5273719, at *3 (N.D. Cal. Dec. 19, 2008). Moreover, "[a]s deference accorded to a Plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *AV Media, Pte, Ltd. v. OmniMount Sys., Inc.*, No. 06-cv-03805-JSW, 2006 WL 2850054, *3 (N.D. Cal. Oct. 5, 2006) (finding "Plaintiff's choice of forum is entitled to little deference" and granting motion to transfer where, despite some connections to this district, "the facts giving rise to the underlying causes of action have no material connection to this forum").

As discussed in Part II.B.1.ii, below, Plaintiffs' new arguments about Director Albarran are incorrect and, in any case, are substantially outweighed by the hundreds of disputed factual allegations about CCDF and its staff in the Eastern District that underlie all of Plaintiffs' claims. This Court should not afford "any deference" to their choice of forum for these reasons. *See Chen v. Pioneer Oil, LLC*, 472 F. Supp. 3d 704, 709–10 (N.D. Cal. 2020) (transferring case to the Eastern District of California, emphasizing the need for "strong contacts between the chosen forum and the dispute"; finding that the complaint did "not allege that any of the challenged conduct occurred" in the chosen forum and that the Northern District had "minimal contacts with the parties or [plaintiff's] claims"); *Sorensen v. Daimler Chrysler AG*, No. 02-cv-04752-MMC (EDL), 2003 WL 1888866, *3 (N.D. Cal. Apr. 11, 2003) (explaining that the "[plaintiff]'s choice of the Northern District is entitled to little, if any, deference" where "the center of the accused activity" occurred outside this district, and granting motion to transfer).

**(ii) Plaintiffs' New Allegations About the San Francisco Field Office Director Are Incorrect and Do Not Weigh Against Transfer**

Plaintiffs' opposition to transfer is predicated on a new and incorrect allegation about Director Albarran: that ICE's facility webpage tells individuals who wish to make a complaint of misconduct that "they must take it up" with Director Albarran, and that "Plaintiffs have accordingly sued" Director

Albarran. Opp'n 1–2. But Plaintiffs' operative complaint makes no such allegation. Instead, only one out of 294 paragraphs references Director Albarran, and does so only generally, and incorrectly. FAC ¶ 22 (alleging that he "is a legal custodian of Plaintiffs and members of the putative class"); *see* Mot. 18 (explaining that Warden Chestnut is Plaintiffs' and the proposed class members' immediate custodian).

Further, while Plaintiffs make much of this webpage — asserting that it shows that "[b]y their own admission, the ICE San Francisco Field Office is the *sole* and appropriate contact for issues concerning conditions of confinement at CCDF," Opp'n 10 (emphasis added) — Plaintiffs provide only a *partial* screenshot. *Id.* at 1. In full, it states that "to make a complaint of misconduct, you may" contact *any of the following*: the Field Office Director in San Francisco, the Director of ICE's Office of Professional Responsibility ("OPR") in Washington, D.C., DHS's Office of Inspector General in Washington, D.C., and/or OPR's Integrity Coordination Center by phone or email. Feedback or Complaints, *supra* at 1. While Plaintiffs nowhere allege that they made any such complaint to any of these offices, even if they had, it would still have "no bearing on the venue analysis." *Knapp*, 2008 WL 2037611, at *2–3 (finding that while "[p]laintiffs make much of the fact that they complained to" a department located in Oakland, and allege that it "did not adequately investigate their complaint," "the gravamen of plaintiffs' claims concerns events that allegedly took place at the Roseville worksite" in the Eastern District, and that filing administrative complaints in the Northern District "has no bearing on the venue analysis"; transferring case to the Eastern District); (A)SDDO Landin Decl. ¶¶ 3–20 (explaining that the process of evaluating detainee grievances lies primarily within CCDF, with oversight from the Bakersfield sub-office); Warden Chestnut Decl. ¶ 23 (describing one such investigation). Plaintiffs' theoretical ability to complain about misconduct in San Francisco makes this district no more appropriate than Washington, D.C., and in any event has no bearing on this Court's venue analysis when all of the events that Plaintiffs actually allege give rise to their claims occurred — and all of the witnesses "referenced repeatedly throughout the complaint" are located — in the Eastern District. *Id.*

To the extent that Plaintiffs may assert that their generic use of "Defendants" is relevant to this analysis, they are mistaken, as the term repeatedly refers to alleged conduct by CoreCivic staff alone. *See, e.g.*, FAC ¶ 116 (alleging that "Defendants distributed sealed plastic water bottles and told people not to drink the tap water" and "now provide tap water in Igloo coolers" and "stopped passing out

bottles”), ¶¶ 34, 59, 94, 139, 142, 193, 210, 221. Neither these allegations — nor the selective portion of the ICE webpage Plaintiffs now tout — establish any meaningful contact with Director Albarran or this district, and instead confirm the overwhelming importance of the approximately 334 CoreCivic employees who carry out the responsibilities that underlie Plaintiffs’ allegations. These responsibilities include ensuring that the facility is operated within the NDS and PBNDS, investigating detainee grievances under those guidelines; managing the physical delivery of meals, recreational activities, and medical care; providing on-site security and resolving detainee misconduct or altercations; and ensuring general staff alertness and availability, adequate medical staffing, and the availability of legal resources — all of which occur and involve staff located within the Eastern District. (A)SDDO Landin Decl. ¶ 16.

**(iii) Plaintiffs Understate (A)SDDO Landin’s and His Staff’s Roles with Respect to the Factual Allegations Underlying Their Claims**

To the extent that Plaintiffs challenge ICE’s supervision of the facility, that supervision, too, takes place in the Eastern District: at ICE ERO’s Bakersfield sub-office. *See* Mot. 14–15. In opposition, Plaintiffs seek to minimize the sub-office’s role by leaving out the key portions of (A)SDDO Landin’s declaration that explain these responsibilities and confirm the Eastern District as the “center of gravity” of this case. *Hoefer v. U.S. Dep’t of Com.*, No. 00-cv-00918-VRW, 2000 WL 890862, *3 (N.D. Cal. June 28, 2000) (“Litigation should proceed where the case finds its ‘center of gravity.’”) (transferring case to District of Columbia under Section 1404(a)). (A)SDDO Landin’s role is not, as Plaintiffs erroneously claim, “limited to overseeing day-to-day operations, performing investigations, and conducting visual inspections.” Opp’n 10. (A)SDDO Landin oversees CCDF’s implementation of NDS and PBNDS — the very standards Plaintiffs allege are being violated at the facility; supervises the approximately 40 ICE ERO employees with duties that relate to the facility; and assigns DOs from the sub-office to perform functions relevant to Plaintiffs’ allegations of noncompliance with national standards, including investigating the facility’s compliance with the NDS and PBNDS and detainee grievances and conducting inspections. (A)SDDO Landin Decl. ¶¶ 10–18. The sub-office’s location in Bakersfield thus confirms the “center of gravity” in the Eastern District.

Plaintiffs next seek to minimize the sub-office’s role because it allegedly is not responsible for “setting policies or procedures at CCDF.” Opp’n 6, 10. Yet Plaintiffs’ complaint nowhere identifies

any policies or procedures — let alone any set in the Northern District — that they challenge. Instead, Plaintiffs challenge alleged actions by the facility's staff that they say violate "national policies" and "Defendants' own standards." FAC ¶¶ 54–60, 65, 72, 76, 104, 109, 123; Opp'n 13 (conceding that their case is about "detention conditions and compliance with ICE's own national policies" at CCDF). The facility, its warden and staff, and the ICE ERO sub-office that oversees the facility to ensure its compliance with the NDS and PBNDS, are all located in the Eastern District.

Further, Plaintiffs' claim that the detention standards make Director Albarran "directly relevant to this case" ignores their own allegations and the actual operation and oversight of the facility, substantially all of which arise in the Eastern District. Opp'n 5, 10. Plaintiffs claim that under the detention standards, the Field Office Director is "sent" reports relating to use of force and restraints and detainee grievances alleging staff misconduct; is "notif[ied]" of incidents or allegations of staff misconduct relating to detainees' treatment; and concurs with local ICE officers' custody determinations for individuals with special vulnerabilities. Opp'n 5. Yet the complaint contains no allegations about any such notifications or concurrences, and instead alleges specific conduct at the facility that Defendants dispute. This alleged conduct, any associated detainee grievances, and any evaluation of those grievances, as well as custody determinations, lie primarily within CCDF, with oversight from the Bakersfield sub-office. (A)SDDO Landin Decl. ¶¶ 3–20; Warden Chestnut Decl. ¶ 23.

Finally, any claim that Director Albarran's position within the chain of command makes him so central to this case that it may shift the center of gravity to this district is belied by Plaintiffs' allegations, all of which arise in the Eastern District. *See W. Coast Reg'l Ctr., Inc. v. Jaddou*, No. 23-cv-06336-PCP, 2024 WL 3498242, at *3 (N.D. Cal. July 19, 2024) ("[O]nly the events that directly give rise to a claim are relevant.") (citation omitted). It would also eviscerate this Court's venue analysis. Indeed, the sole case Plaintiffs cite for the proposition that this Court must focus on Director Albarran and "not lower-level or geographically proximate subordinates with limited, delegated roles," Opp'n 9, had nothing to do with transfer, and instead involved an official's propriety as a defendant — not whether the action should proceed in his district despite an overwhelming center of gravity elsewhere. *See Jensen v. Shinn*, 609 F. Supp. 3d 789, 866 n.36 (D. Ariz. 2022). Further, Field Office Directors report to superiors, up a chain that includes the Executive Associate Director of ERO, the Deputy Director of

ICE, and the Director of ICE, who in turn ultimately reports to the Secretary of Homeland Security and the President. Finding an intermediate official's district dispositive to the venue analysis would permit forum shopping among districts with a single contact, rather than requiring cases to proceed where the actual events giving rise to the claims occurred, all material witnesses reside, relevant real property is located, and the parties and court can meaningfully assess and gather information relevant to the case. *See, e.g.*, *Kholyavskiy v. Achim*, 443 F.3d 946, 954 (7th Cir. 2006) (explaining, in the habeas context, that a Field Office Director shares authority with "superiors, all the way up to the President of the United States," and is thus not a proper respondent for venue purposes based on that authority alone).

### 2. The Interests of Justice Favor Transfer to the Eastern District

#### (i) Transfer Would Not Cause Meaningful Delay Due to the Eastern District's Familiarity with the Same Issues

In asserting that transfer to the Eastern District would cause "certain" and "likely substantial" delay because it would have to "independently familiarize itself with the record and legal issues," Opp'n 12, Plaintiffs ignore the Eastern District's familiarity with alleged conditions of confinement at CCDF. On September 16, 2025, a coalition of community organizations and one CCDF detainee sued CoreCivic and the City of California City alleging "various concerns about conditions at the [f]acility," including allegations identical to those raised here, which the plaintiffs alleged "pose[d] imminent, irreparable harm to those who are imprisoned there." *Dignity Not Det. Coal.*, 2025 WL 3126698, at *4. Those allegations include "access to clean water," tablet functionality, a "dirty and dusty facility," insufficient cleaning supplies, issues with envelopes and pens, *id.* at *4–5; invasive searches, time in cells, "small cells," non-private toilets, *id.*, ECF No. 10-3 at 5; interpreter support, "prison-style conditions," no business license, *id.* at 6; the facility "not seem[ing] ready to house" detainees, "filthy" conditions, "no law library or legal resources," medical care and medication issues, *id.* 9; treatment of Muslims, a suicide attempt, physical "structural deficiencies" that "pose imminent harms" to plaintiff and "other current and future detainees," a failed fire inspection, *id.* 10; potentially high temperatures, *id.* 11; and planning commission issues, *id.* 17. On October 17, 2025, the plaintiffs moved the Eastern District for a TRO, which was fully briefed, and the district court denied the motion three weeks later, on November 7, 2025, "[finding] that there has not been a sufficient showing of imminent irreparable harm to justify

emergency treatment of this motion." *Id.*, at *9.

Five days later, on November 12, 2025, Plaintiffs filed this action demanding injunctive relief from *this* district without any mention of the ongoing Eastern District action — despite alleging many of the same conditions at CCDF, and even though its plaintiff, while pseudonymous, is at the very least a member of the class they seek to represent. *See* FAC ¶¶ 116 (access to water), 87 (limited tablets), 35 ("dirty and dusty" units; lack of cleaning supplies), 80 (pens), 110 (invasive searches), 4 ("hours" in cells), 43 ("small cells"), 76 (non-private toilets), 245 (interpreters), 270 (conditions similar to prisons), 29 (no business license), 24–25 (opening "before they were ready to safely house people there"), 31 ("filthy cells"), 42 ("legal resources" and "law library"), 43 ("medical care"), 151 (medication), 100 (treatment of Muslims), 183 (suicide attempt), 235 ("physical structure is inaccessible"), 28 ("failed a local Fire Department inspection"), 113 ("cold temperatures"), 29 ("planning commission" concerns).

In opposition, Plaintiffs again ignore the Eastern District action and claim that this Court, which has not yet decided any substantive issues in this case, is somehow more familiar with and has more of an interest in the alleged issues at CCDF than the Eastern District. Plaintiffs assert incorrectly that this "Court has already held a hearing on Plaintiffs' TRO, reviewed declarations of experts and detained individuals, and entered an order mandating urgent relief." Opp'n 12. In fact, this Court held a "scheduling conference" regarding Plaintiffs' TRO motion the morning after Plaintiffs' late-night filing, set the hearing for six days later, and vacated it before Defendants even filed an opposition after Plaintiffs withdrew the motion, "in light of the parties' agreement set forth in" their stipulation. ECF No. 29, 36. By contrast, the Eastern District has heard and decided a fully briefed TRO motion in an ongoing, first-filed case involving many of the same alleged conditions at CCDF. *Dignity Not Det. Coal.*, 2025 WL 3126698. Transferring this case to the Eastern District would not cause meaningful delay, while allowing it to proceed here would require the same issues to be litigated inefficiently and potentially inconsistently in multiple federal district courts. *Our Children's Earth Found. v. EPA*, No. 08-cv-01461-SBA, 2008 WL 3181583, at *5–6 (N.D. Cal. Aug. 4, 2008). The proper district to consider these issues is the Eastern District, where the center of gravity for both sets of plaintiffs' allegations lies.

**(ii) Transfer Would Not Meaningfully Delay Any Briefing**

Plaintiffs assert that this Court should deny transfer because "the preliminary injunction briefing

is now complete," and "[a] transferee court in the Eastern District would need to reset the briefing schedule." Opp'n 12. Yet a transferee court would not need to reset the briefing schedule precisely because it is "now complete." *Id.* Plaintiffs' next claim — that "Ninth Circuit authority clearly establishes that a motion for transfer is properly denied where transfer would result in delay," *id.* — is similarly misguided. In *Allen v. Scribner*, the Ninth Circuit affirmed a district court's denial of a motion to transfer because "the bulk of the cause of action had occurred in the Northern District, and . . . the court's familiarity with the case after three and one-half years counseled against a change of venue." 812 F.2d 426, 436 (9th Cir. 1987); *see also Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (deferring to the district court's "familiar[ity] with the case" without further discussion). This case shares none of these traits. The "bulk" of Plaintiffs' claims occurred in the Eastern District, and this case has been pending before this Court for fewer than three *months*. Finally, Plaintiffs are incorrect that a "congestion and resource crisis" in the Eastern District *as of 2022* would lead to delay in 2026. Opp'n 11. Current statistics show that the Eastern District's median time interval from filing to disposition of civil cases is 8.1 months, versus 20.5 for this district. *See* "Median Time From Filing to Disposition of Civil Cases," *supra* at 3.

**(iii) The Eastern District's Interest Weighs in Favor of Transfer**

The Eastern District's clear and proven interest "in deciding controversies arising out of" CCDF and "the interest of burdening citizens in our forum with jury duty both weigh in favor of transfer" here. *Smith v. Corizon Health*, No. 16-cv-00517-WHA, 2016 WL 1275514, at *2 (N.D. Cal. Apr. 1, 2016); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1109–10 (N.D. Cal. 2001). In opposition, Plaintiffs assert a "strong local interest" in the Northern District because they challenge "detention conditions and compliance with ICE's own national policies" at CCDF. Opp'n 13. Yet "detention conditions" at CCDF and its "compliance with ICE's own national policies" is a decidedly local controversy — one involving the functioning of a facility located, owned, operated, and supervised in the Eastern District — and is thus properly "decided at home." *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 17-cv-03889-JD, 2018 WL 3549122, at *1 (N.D. Cal. July 24, 2018) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

Plaintiffs are also mistaken that *Corizon Health* is distinguishable because it "involved a single

plaintiff and claims arising from localized acts at a county facility," while this case involves a "putative class action seeking systemwide injunctive relief for a federal detention center." Opp'n 13. Like the plaintiff in *Corizon Health*, Plaintiffs and the proposed class are detained — and challenging conditions of confinement — at a facility in the transferee district, and the relief they seek is limited to that facility. Whether it is a "county facility" or "federal detention center" is of no moment; "[t]he clear and logical place for this case to be tried and for discovery into jail conditions to occur" is the district where the facility is located, "as that would ease access to certain evidence and witnesses and the Eastern District has an interest in the local controversy." *Corizon Health*, 2016 WL 1275514 at *3; *Backcountry Against Dumps v. Abbott*, No. 10-cv-394, 2010 WL 2349194, at *4 (E.D. Cal. June 8, 2010) ("Courts regularly find that localized controversies should be decided in the forum of greatest interest and impact").

**3. The Convenience of the Parties and Witnesses Favors Transfer to the Eastern District**

**(i) The Location of Parties and Witnesses Favors Transfer**

Plaintiffs, their proposed class of CCDF detainees, the facility, its warden and staff, the ICE ERO representative who oversees the facility, his staff, and all relevant healthcare providers are located in the Eastern District. (A)SDDO Landin Decl. ¶ 8. By contrast, Plaintiffs have identified a single defendant, Director Albarran, who resides in this district. FAC ¶ 22. Perhaps for that reason, Plaintiffs misquote *Pratt* in asserting that "[f]airness considerations may be decisive in ruling on a transfer motion, even when convenience of witness[] and parties points the other way." Opp'n 13. *Pratt* actually states that fairness considerations may be decisive "even when convenience of *witnesses* and parties points the other way." *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991) (emphasis added). Plaintiffs' other citation, which they claim holds the "same," actually states that "[t]he convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C. § 1404(a)." 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.). If this Court considers the convenience of *witnesses*, as it must, then it would find that all of the hundreds of potential material witnesses, including nonparties, are in the Eastern District.

Plaintiffs next argue that "Defendants make no such showing" of inconvenience of witnesses, Opp'n 14, because Defendants do not "identify relevant witnesses, state their location and describe their

testimony and its relevance." *Id.* (quoting *Doe v. Uber Techs., Inc.*, 2017 WL 2352032, at *5 (N.D. Cal. May 31, 2017)). Once again, the case that Plaintiffs rely upon actually establishes that transfer is proper here. In *Doe*, the court transferred the action because "it would be cheaper and more efficient to litigate" the case in the transferee district "where the overwhelming majority of the witnesses identified by the parties live," and because otherwise the defendant "[would] be hampered in its defense of this case by not being able to subpoena critical witnesses to testify at trial." 2017 WL 2352032, at *6 (citing *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) ("Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify.")).

In any event, Plaintiffs are wrong that Defendants failed to sufficiently "identify" potential witnesses. "The Supreme Court and Ninth Circuit have rejected the notion that evidence in the alternative forum must be identified with a high degree of specificity." *Herbert v. VWR Int'l, LLC*, 686 F. App'x 520, 521–22 (9th Cir. 2017) (affirming grant of *forum non conveniens* motion where "[t]he record contained sufficient information to balance the parties' interests and the district court did not abuse its discretion by drawing illogical or implausible conclusions from the record regarding the *probable presence* of witnesses and evidence" in the alternate forum) (emphasis added).

Courts in this district have applied this general principle in assessing the convenience of parties and witnesses factor in the Section 1404(a) transfer analysis, *see Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-01701-JSW, 2015 WL 5728415, at *3 (N.D. Cal. Sept. 30, 2015), and have weighed the convenience of witnesses in favor of transfer even where defendants did not identify specific witnesses. *See, e.g.*, *Chess v. Romine*, No. 18-cv-05098-JSC, 2018 WL 5794526, *6 (N.D. Cal. Nov. 2, 2018) (granting motion to transfer in tort case); *Ruiz v. Darigold, Inc.*, No. 14-cv-02054-WHO, 2014 WL 4063002, *3–4 (N.D. Cal. Aug. 14, 2014). District courts here and elsewhere have instead looked to the *foreseeability of witnesses* in the transferee venue. *See, e.g.*, *Clip Ventures LLC v. Suncast Corp.*, No. 10-cv-04849-CRB, 2011 WL 839402 (N.D. Cal. Mar. 7, 2011) (granting Section 1404(a) transfer); *R.T.B. by & through Breault v. United States*, No. 19-CV-276-JDP, 2019 WL 6492826 (W.D. Wis. Dec. 3, 2019) (same); *Harrist v. United States*, No. 2:13-CV-009-JRG, 2013 WL 11331168 (E.D. Tex. Dec. 5, 2013) (same). In *Clip Ventures*, for example, the plaintiff brought a *qui tam* action here, in its resident district, against an Illinois-based company whose products were manufactured, packaged,

labeled and shipped from Illinois. The district court concluded that the convenience of the parties and witnesses was the "most significant factor[] in this case" and held that "[t]his factor favors transfer" notwithstanding the absence of a record of specifically identified witnesses by the defendant. 2011 WL 839402, at *3 (reasoning that "one of the two parties and *all foreseeable witnesses* are located in the Northern District of Illinois," where "[t]he center of gravity of the case is," and the plaintiff did not identify any non-party witnesses in its home district) (emphasis in original); *see also Breault*, 2019 WL 6492826, at *2 (granting transfer and rejecting argument that the government failed to carry its burden of specifying which particular healthcare providers and medical staff would be called as witnesses); *Harrist*, 2013 WL 11331168, at *3 (transferring action to district that was the "focus" of plaintiff's claims, because potential witnesses "*can reasonably be expected* to reside" there) (emphasis added).

Likewise here, Defendants have identified all foreseeable party and non-party witnesses — including Plaintiffs, the proposed class, the facility's warden and staff, (A)SDDO Landin, his staff, and outside healthcare providers — all of whom are located in the Eastern District. (A)SDDO Landin Decl. ¶ 8. These witnesses may "testify about the merits of the case," while the sole witness Plaintiffs have identified is "not as important to the litigation." *Williams*, 157 F. Supp. 2d at 1109 (finding that, for these reasons, "the balance of witness convenience favors defendants").

**(ii) The Location of Eastern District Courthouses Favors Transfer**

Plaintiffs are also wrong that "[t]he Eastern District is no more convenient, or inconvenient, than this [d]istrict" because the closest courthouse where this case could "be heard" is in "Fresno — approximately 200 miles away." Opp'n 14. Setting aside the fact that the parties could consent to magistrate jurisdiction in Bakersfield, the Eastern District's local rules permit Article III judges to hold sessions "at other places in the District as the Court requires," E.D. Civ. L.-R. 120(c), and thus utilize the court's 100-mile trial subpoena power by commanding attendance at the Bakersfield Federal Courthouse. *See, e.g.*, *Mazik v. Kaiser Permanente, Inc.*, No. 2:19-cv-00559-DAD-JDP, 2024 WL 3011214, at *7 (E.D. Cal. June 14, 2024) (explaining that this power extends to witnesses within 100 miles of a courthouse). In any case, the local rules delegate numerous critical matters before trial — including conducting hearings (including evidentiary hearings) and pretrial conferences, resolving discovery disputes, and holding settlement conferences — to magistrate judges, E.D. Civ. L.-R. 302(c),

one of whom Plaintiffs concede "occupies the Bakersfield courthouse." Opp'n 14. Finally, even if this case were to proceed in Fresno, the difference in travel between this Court and the United States Courthouse in Fresno is not "negligible," as Plaintiffs contend, *id.*, as proceeding in Fresno would make a single-day trip by car feasible for all material witnesses, while proceeding in this Court would not.

**(iii) Relative Costs of Proceeding in the Eastern District Favor Transfer**

Plaintiffs' claim that Defendants "improperly focus on *counsel's* convenience" misses the point of this factor, which relates to the relative costs of proceeding in each forum. Opp'n 15; Mot. 19 ("The convenience of parties factor . . . takes into consideration the relative cost of litigation in each forum."). Defendants' costs will be much greater if this case proceeds here, over 350 miles from CCDF. Indeed, Plaintiffs' attempt to downplay these costs ignores the realities of litigation involving the federal government. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) ("Given the vast resources of the federal government, it might seem that the government would rarely if ever be seriously inconvenienced by being compelled to litigate in a district more convenient to the defendant. But such a suggestion would be unrealistic."); *SEC v. Rose Fund, LLC*, No. 03-cv-04593-WHA, 2004 WL 2445242, at *2 (N.D. Cal. Jan. 9, 2004). "Federal agencies have limited resources," *In re Nat'l Presto Indus.*, 347 F.3d at 664, and the government's ability to litigate each case is constrained by restrictions on budgets, assigned personnel, and spheres of responsibility. Plaintiffs cannot reasonably dispute that coordinating litigation in a distant forum will be more difficult and expensive. *See id.* ("[w]hen government lawyers and investigators incur time and travel costs to litigate in a remote forum, the burden falls on the taxpayer, who finances the federal government"). These expenses and logistical burdens arise from the separation of attorneys and client, and the distance from relevant witnesses, employees, and locations. Indeed, courts have granted Section 1404(a) motions brought by the United States even in cases against *pro se* plaintiffs, *see Barroca v. United States*, No. 19-cv-00699-MMC, 2019 WL 5722383, at *3 (N.D. Cal. Nov. 5, 2019); and non-profit parties, *see Desert Survivors v. U.S. Dep't of the Interior*, No. 16-cv-01165-JCS, 2016 WL 3844332, at *5, 7 (N.D. Cal. July 15, 2016).

**4. Ease of Access to Evidence Favors Transfer to the Eastern District**

Plaintiffs claim this factor "is neutral at best" because "facility inspections" would be "equally burdensome" for an Eastern District judge in Fresno or Sacramento, and some evidence can be produced

electronically. Opp'n 17. Plaintiffs are incorrect. First, Article III judges may in fact hold sessions at the Bakersfield Federal Courthouse, E.D. Civ. L.-R. 120(c), and, in any event, the magistrate judge in Bakersfield would conduct relevant evidentiary matters, E.D. Civ. L.-R. 302(c). *See supra* Part II.B.3.ii. Second, many of Plaintiffs' allegations are not amenable to electronic discovery and may involve testimony and/or inspections. *See* Mot. 20–21 (citing FAC ¶¶ 54–68, 73–83, 88–90, 93–108, 110–122, 127, 130–137, 140–169, 184–198, 194–198, 229–238); *Martensen v. Koch*, No. 12- cv-05257-JSC, 2013 WL 4734000, at *10 (N.D. Cal. Sept. 3, 2013) (granting transfer given the potential need for a site visit).

The Eastern District's proximity to witnesses is also crucial in securing *live* testimony at trial:

> [C]ourts recognize that reading a deposition at trial — even a videotaped deposition — is no substitute for the advantages to the parties, the judge and the jury of having important witnesses appear live at trial. *Gulf Oil* [*v. Gilbert*, 330 U.S. 501, 511 (1947)] ("to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to the court, jury or most litigants."); *see also Costco* [*Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1194 (S.D. Cal. 2007)] ("Offering unavailable witnesses' testimony via videotaped deposition testimony is disfavored . . . ."); *Laitram* [*Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 610 (E.D. La. 2000)] ("It is essential to the cause of justice itself. Deposition testimony . . . is a sterile, inadequate substitute for live testimony on key issues.").

*Newegg, Inc. v. Telecomm. Sys.*, No. 09-cv-0982-JL, 2009 WL 1814461, at *7 (N.D. Cal. June 23, 2009). Live testimony is "easier to follow and comprehend than deposition read-ins or video clips," and preferable to "better assess demeanor and credibility." *In re Funeral Consumers Antitrust Litig.*, No. 05-cv-01804-WHA, 2005 WL 2334362, at *5 (N.D. Cal. Sept. 23, 2005) ("It would be better to try a case where any such unwilling but important witnesses could be compelled to appear in person.").

## III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, transfer this action to the Eastern District of California under 28 U.S.C. § 1404(a), and hold in abeyance all pending motions to be ruled on by the Court to whom this case is transferred.

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

Dated: January 26, 2026

By: */s/ Savith Iyengar*
SAVITH IYENGAR
Assistant United States Attorney