CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
SAVITH IYENGAR (CABN 268342)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: 415-436-7200
    Facsimile: 415-436-6748
    savith.iyengar@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FERNANDO GOMEZ RUIZ, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-09757-MMC<br><br>**DEFENDANTS' PROPOSAL REGARDING SELECTION OF EXTERNAL MONITOR** |

Pursuant to this Court's Order Granting in Part Plaintiffs' Motions for Preliminary Injunction and Class Certification ("Order"), ECF No. 72, Defendants respectfully propose that the Court select one of the following individuals as "External Monitor":

    1. Dr. David L. Thomas, MD, JD, EDD

    2. Dr. Jane Leonardson, MD, CCHP

    3. Dr. Carl Keldie, MD, CCHP

    4. Dr. Randall Stoltz, MD, CPI, CCHP

    5. Dr. David Mathis, MD, CCHP-P, FAAFP

Defendants have attached these individuals' curricula vitae hereto as **Exhibits 1 – 5** and summarize their relevant expertise below. By submitting this proposal regarding the selection of a monitor, Defendants are not waiving their right to appeal the Order in its entirety and expressly reserve their right to do so.

The parties met and conferred regarding the selection of the External Monitor, during which Plaintiffs proposed one candidate, Defendants proposed five candidates, and Plaintiffs proposed an additional three candidates, but the parties were unable to agree upon the selection of any of these candidates. Upon Plaintiffs' request, the parties agreed to submit their respective candidates to the Court at the same time on February 24, 2026. Defendants have attached a true and correct copy of the parties' meet-and-confer discussions hereto as **Exhibit 6**.

Defendants summarize their five proposed candidates in **Part I**, below. Given that the Court has limited the parties' submissions to "present[ing] their proposal(s) to the Court" and has not otherwise permitted argument, Defendants briefly discuss their concerns with Plaintiffs' four proposed candidates and the one individual who reached out to the Court directly in **Parts II and III**, respectively, in order to explain why Defendants could not agree with any one of these candidates as a "qualified, independent, third-party monitor" in this case. ECF No. 72 ¶ 2. To the extent that Plaintiffs' submission contains any additional argument, Defendants would respectfully request an opportunity to respond.

Finally, Defendants strongly object to any proposed order that would modify the language of the Court's Order, which has already defined the scope of the External Monitor. *Id.* ¶¶ 1–2. Defendants have therefore submitted herewith a proposed order that *expressly applies* the language of the Order, as written:

> As set forth in the Order, Defendants will provide access to the External Monitor for a period of 120 days, subject to renewal by court order, to ensure compliance with Paragraph (1) of the Order and the provision of constitutionally adequate health care; the External Monitor will ensure compliance with the Order and will monitor its implementation, including through review of medical records and on-site inspection and interviews with patients and staff; and Defendants will pay the External Monitor's reasonable rate.

*See* ECF No. 76-7 (Defendants' proposed order). Defendants respectfully request that the Court adopt their proposed order, which appoints an External Monitor to serve the functions expressly stated in the Order. *See* ECF No. 72 ¶¶ 1–2; ECF No. 76-7.

///

///

## I. DEFENDANTS' PROPOSED CANDIDATES

### 1. Dr. David L. Thomas, MD, JD, EDD

Dr. Thomas has been a board-certified physician in Ophthalmology since 1977. He attended and graduated from the University of Miami School of Medicine in 1970. He also attended and graduated from law school at Stetson University College of Law in 1995. He is currently engaged in the private practice of medicine and law. Dr. Thomas dedicates the majority of his medical practice to advancing correctional healthcare. Currently, he serves as Professor and Chairman for the Division of Correctional Medicine, which is a part-time appointment. In this position, he collaborates with federal programs, including the Health Resources Financing Administration and the Centers for Disease Control and Prevention ("CDC"), to highlight and research the unique aspects of correctional healthcare. Prior to that appointment, Dr. Thomas held positions with the Florida Department of Corrections as the Secretary for Health Services and Director of Health Services from 1998 to 2003, Assistant Secretary for Health Services and Chief of Health Services from 1995 to 1998, Regional Health Services Director in 1995, and Medical Executive Director from 1994 to 1995.

Dr. Thomas served as the district court-appointed special monitor in *Southern Poverty Law Center v. U.S. Department of Homeland Security*, No. 1:18-cv-00760-CKK-RMM (D.D.C.) (filed Apr. 4, 2018), where he was tasked with evaluating compliance with the CDC's COVID-19 guidelines and access to legal representatives at three facilities, and with providing an "entirely objective account of the policies and practices at each of the [f]acilities." *Id.*, Order Appointing Special Monitor, Apr. 14, 2022, ECF No. 191 at 3.

Dr. Thomas has also published or co-authored numerous publications regarding correctional medicine, including Advanced Directives in the Correctional Setting, Accreditation and You – Why Correctional Systems Need Independent Accrediting Bodies to Evaluate Their Services; HIPPA – Do Correctional Facilities Need to Address Health Insurance Portability and Accountability Act?; Legal Aspects of Correctional Medical Care, The Future of Correctional Health Care – Correctional Health Care Reporter; and Research in Corrections – Infectious Diseases in Corrections Report. He has also provided expert testimony in numerous cases involving correctional medicine. In 2015, Dr. Thomas

was awarded the Armond Start Award, the highest honor presented by the American College of Correctional Physicians.

### 2. DR. JANE LEONARDSON, MD, CCHP

Dr. Jane Leonardson is a practicing physician, board-certified in Internal Medicine since 1991 and in Clinical Informatics since 2016. She is licensed to practice medicine in the State of Texas. Dr. Leonardson has practiced medicine in correctional settings for approximately 30 years. She started her correctional medicine career at the Cook County Jail, a more than 10,000 bed jail in urban Chicago, after completing medical school and an Internal Medicine residency at Northwestern University in 1991. Dr. Leonardson has worked in the Texas prison system since 1995. She has provided direct patient care for approximately 20 years inside a prison (not through telehealth), and through this experience, understands the housing settings in prison, housing restrictions based on disease states and risk, the interplay between security and medical staff and the medical treatment of detainees and inmates, and the provision of medical care to detainees and inmates in prisons and jails.

In Dr. Leonardson's most recent role with the Texas prison system as Chief Medical Information Officer, she guides correctional healthcare providers and staff in the treatment of incarcerated patients through their interactions with the electronic health record ("EHR"), and deals with quality and safety outcomes through the documentation of patient care in the EHR for the University of Texas Medical Branch – Correctional Managed Care, which is charged with providing medical records documentation for the more than 100 units operated by the Texas Department of Criminal Justice.

Since March 2022, Dr. Leonardson has served as a consultant to the State of Illinois, Department of Corrections, and has, among other things, written over 20 Clinical Care Guidelines for that organization. Those guidelines are to be used to guide the medical staff working in that prison system to practice medicine in a standardized manner that follows the most modern medical recommendations.

Dr. Leonardson has extensive experience both as a regional and facility medical director and as an attending physician in a broad range of correctional settings and capacities. She has chaired and served on numerous committees pertaining to correctional healthcare, and has devoted her entire career to advancing the care of detainees and inmates.

### 3. Dr. Carl Keldie, MD, CCHP

Dr. Carl Keldie graduated from the University of South Florida College of Medicine in 1978. Thereafter, he completed an internship at the Carraway Methodist Medical Center in 1979. He held board certification in Emergency Medicine from 1990 until 2021. Dr. Keldie currently holds a Correctional Health Professional certification and participates as a member of the American College of Correctional Physicians. Dr. Keldie holds medical licenses in the States of Colorado, North Carolina, Michigan, Tennessee, and Pennsylvania.

Dr. Keldie has served as a correctional healthcare consultant for the past 12 years. He previously served as the Senior Vice President of Clinical Affairs at Wellpath where he provided direct patient care at five different prisons in the State of Maine from 2020 to 2022. In this role, Dr. Keldie also provided telemedicine service for a diverse population of prison patients with chronic diseases. Before this role, he served as the Chief Clinical Officer at Wellpath and Correct Care Solutions from May 2015 to September 2019. Before his employment at Wellpath, Dr. Keldie served as the Chief Clinical Officer at Corizon Healthcare from December 2011 to April 2013 and at Prison Health Services from October 2000 to June 2011.

Dr. Carl Keldie has more than four decades of clinical and administrative experience. His experience includes providing direct patient care in primary care, urgent care, and emergency medicine, including Level 1 and Level 2 trauma centers. Dr. Keldie's experience extends into civilian facilities, Department of Defense facilities, correctional facilities in 40 U.S. states and Australia, and forensic hospitals. Dr. Keldie also developed, adapted and deployed information technology applications in emergency medicine and correctional care medicine for almost two decades and served as the lead physician for deployment of a Meaningful Use Stage 2 certified EHR in more than 80 hospitals for Community Health System, Inc., which is one of the nation's leading operators of general acute care hospitals.

### 4. Dr. Randall Stoltz, MD, CPI, CCHP

Dr. Randall Stoltz received his medical degree from Indiana University School of Medicine in 1984 and completed his residency in Family Medicine at St. Mary's Medical Center. His areas of expertise include clinical operation policies and procedures, quality improvement, and clinical staff

oversight. Dr. Stoltz joined the Indiana University School of Medicine in 1990 as a faculty member, where he taught and continues to teach Correctional Health Care, Clinical Pharmacology, and Family Medicine. He also participates as a member of the Academy of Correctional Health Professionals and the American College of Correctional Physicians. Dr. Stoltz joined Advarra's Institutional Review Board as a board member in 2018 and continues to serve as an active board member.

Dr. Stoltz holds board certification in Family Medicine and broad experience in correctional health care, general medicine, and pharmaceutical research. He served as the medical director for the Vanderburgh County Detention Center from 1998 until 2024. From 2017 to 2024, Dr. Stoltz served as the medical director for the Warrick County Correctional Center. As the medical director at both of these Indiana detention centers, he developed and implemented patient health care plans and worked with local public agencies to oversee ongoing health care after reentry. Since 2017, Dr. Stoltz has served as an expert witness in matters involving civil rights claims and provider malpractice. Most notably, he has served as a physician surveyor for the National Commission on Correctional Health Care's accreditation program since 2014, in which he evaluates and monitors jails and prisons.

**5. DR. DAVID MATHIS, MD, CCHP-P, FAAFP**

Dr. David Mathis received his medical degree from Wayne State University School of Medicine in 1976. He holds a Correctional Health Professional–Physician certification and broad clinical experience in emergency care, acute care, and hospice care. Dr. Mathis holds board certification in Family Medicine with added credentials in Hospice and Palliative Medicine. He has dedicated more than 25 years of his career providing healthcare to incarcerated individuals in the Commonwealth of Virginia and States of Maryland and California. Dr. Mathis's experience in correctional settings includes emergency care, acute care, chronic care, hospice care, and utilization management.

Dr. Mathis was a physician and surgeon at the California State Prison in Sacramento where he administered acute and chronic medical care in facilities holding approximately 2,400 and 3,000 incarcerated individuals. He also provided care as a physician and surgeon to approximately 2,500 incarcerated individuals at the California Medical Facility, a state prison with medium to high acuity medical issues, for more than a decade. Dr. Mathis served for eight years as the Medical Director and hospice physician at the California Medical Facility inpatient hospice, which served 33 California state

prisons. He also served four years as the Medical Director of Eastern Correctional Institution, which housed approximately 3,500 incarcerated individuals in Maryland. Dr. Mathis possesses experience as a medical consultant (while at California Correctional Healthcare Services) and as an expert witness in matters involving correctional medicine and issues relating to civil rights and deliberate indifference.

\* \* \* \* \*

Defendants respectfully propose that the Court select either Dr. Thomas, Dr. Leonardson, Dr. Keldie, Dr. Stoltz, or Dr. Mathis to serve as External Monitor, and adopt the form of Defendants' proposed order, which appoints an External Monitor using only the language of this Court's prior Order, which already defined the scope of the External Monitor. *See* ECF No. 72 ¶¶ 1–2; ECF No. 76-7.

## II.   PLAINTIFFS' PROPOSED CANDIDATES

Defendants were unable to agree that any one of Plaintiffs' four proposed candidates — Dr. Marc Stern, Dr. Muthusamy Anandkumar, Dr. Radha Sadacharan, and Dr. Sara Kariko — is appropriate as a "qualified, independent, third-party monitor" in this case. ECF No. 72 ¶ 2.

Dr. Stern does not appear to be appropriate as an "independent" monitor, as he has been retained by plaintiffs or adverse to government defendants in approximately 16 of the 18 civil cases Defendants have identified in which he served as an expert witness, including approximately 5 cases where he was retained by the ACLU or one of its affiliates. Of significance, in one of those cases, the district court discounted Dr. Stern's opinions provided on behalf of plaintiffs regarding "the delivery and adequacy of medical care" at a facility, which the court found "were based on what [Dr. Stern] termed 'purposeful' or 'purposive' sampling" — involving a "limited sample [that] only included prisoners whose records established that they had complex medical histories, and who had sought treatment in complicated or difficult situations" — and that "were not based on accepted national or prison standards, . . . but, instead, he based his opinions entirely on his training and experience in reviewing and working with prisons." *Dockery v. Hall*, 443 F. Supp. 3d 726, 738–39 (S.D. Miss. 2019) ("Stern's personal opinions regarding the adequacy of the medical care provided to prisoners at [the facility] does not establish a standard for decency."), *aff'd sub nom. Dockery v. Cain*, 7 F.4th 375 (5th Cir. 2021).

Dr. Stern also appears to have contributed to a report co-authored by the ACLU alleging "Fatal Consequences of Dangerously Substandard Medical Care in Immigration Detention," which specifically

criticized health care ICE provided to 15 civil immigration detainees. ACLU, *Code Red: The Fatal Consequences of Dangerously Substandard Medical Care in Immigration Detention* (June 20, 2018), https://www.aclu.org/publications/code-red-fatal-consequences-dangerously-substandard-medical-care-immigration-detention. Dr. Stern also appears to advocate for ending the privatization of correctional health care, which is at odds with the model of care at the California City Detention Facility. Dr. Stern also served as a monitor in *Jensen v. Thornell*, No. 2:12-cv-00601-ROS (D. Ariz.) (filed Mar. 22, 2012), in which he created a new model for correctional healthcare that was untested in any detention or correctional setting, and used it to impose requirements and performance metrics that far exceeded National Detention Standards, Performance-Based National Detention Standards, and other community or national standards, including those promulgated by the National Commission on Correctional Health Care and American Correctional Association, the two leading independent standards and accreditation bodies for correctional health care.

      Dr. Anandkumar's experience as an expert witness is more limited, raising concerns about his qualifications, and he appears to have been similarly retained primarily by plaintiffs and adverse to government defendants, including by the ACLU or one of its affiliates, in at least two ongoing matters, raising concerns about his independence. *See Duvall v. Moore*, No. 1:94-cv-02541-MJM (D. Md.) (filed Sept. 14, 1994); *Butler v. Suffolk County,* No. 2:11-cv-02602-JS-ST (E.D.N.Y) (filed May 27, 2011). In addition, Dr. Anandkumar has served lengthy terms as the monitor in cases in which systems were never brought into compliance, which appears to be incompatible with the Court's Order requiring a monitor who is qualified to serve in a time-limited capacity.

      Defendants also have concerns about Dr. Sadacharan's relevant qualifications. Other than a limited role as a research and data consultant for the Idaho Department of Corrections, Dr. Sadacharan appears to have no experience working in a detention or correctional facility, much less operating a medical department in such a facility. Defendants were also unable to find any cases where Dr. Sadacharan served as an expert witness or monitor. She has, however, appeared to contribute to an ACLU-co-authored report criticizing ICE for alleged "Deadly Failures: Preventable Deaths in U.S. Immigration Detention," which raises concerns about her independence. *See* Maurizio Guerrero, *Nearly*

*all deaths in ICE custody over 5 years were preventable, new report finds* (June 25, 2024), https://prismreports.org/2024/06/25/nearly-all-deaths-in-ice-detention-over-5-years-were-preventable/.

      Defendants have similar concerns about Dr. Kariko's qualifications, as she appears to have limited experience as an expert and none as a court-appointed monitor. She also appears to have been a member of Dr. Stern's monitoring team in *Jensen v. Thornell*, in which she assessed compliance with the new healthcare delivery model and performance metrics that Dr. Stern created, and which — as discussed above — far exceeded the community and national standards for health care in a detention or correctional setting, raising concerns about her ability to apply national detention standards here. Defendants have also identified multiple cases brought by individuals incarcerated by the Washington State Department of Corrections alleging deliberate indifference to serious medical needs during the time that Dr. Kariko served as the Department's Facility Medical Director, Deputy Chief Medical Officer, or Chief Medical Officer. *See, e.g.*, *Holmes v. Wash. State Dep't of Corr.*, No. C18-5735-MJP-TLF (W.D. Wash.) (filed Sept. 9, 2018), ECF No. 7 at ¶ 1 (alleging that the facility "systematically denied necessary medical care for plaintiff with severe cataracts" in violation of the Eighth Amendment and Rehabilitation Act); *Reed v. Hammond*, No. 3:16-CV-05993-BHS-DWC (W.D. Wash.) (filed Dec. 2, 2016), ECF No. 8 at 4 (alleging that the facility denied plaintiff medication for Hepatitis C in violation of Fifth, Eighth and Fourteenth Amendments).

      For these reasons, Defendants were unable to agree that any of these candidates is consistent with the Order requiring a "qualified, independent, third-party monitor." ECF No. 72 ¶ 2.

## III.   INDIVIDUAL NOT PROPOSED BY THE PARTIES

      The individual who contacted the Court directly to offer her and her company's services — and was not proposed by either side — is similarly inappropriate as a "qualified, independent, third-party monitor" in this case. *Id.* That individual appears to be involved in ongoing litigation against the federal government based upon the termination of her employment. *See Storch v. Hegseth*, No. 25-cv-415-ACR (D.D.C.) (filed Feb. 12, 2025). The communication itself also raises questions about independence, as it touts "[s]ubject matter expertise in prison reform." Moreover, and critically, the individual does not appear to possess experience relating to the "provision of constitutionally adequate health care" at issue here, ECF No. 72 ¶ 2, including a medical degree or any experience operating a

1  medical department in an immigration detention facility, jail, or prison.  As a result, the individual
2  appears to be unqualified to determine compliance with Paragraph 1 of the Order and the provision of
3  constitutionally adequate health care.  *Id.*

4       Finally, the law firm referenced in the communication appears to perform significant pro bono
5  work for the ACLU or its affiliates.  *See, e.g.*, *Shook Files Class Action Lawsuit Alleging Wichita Police
6  Department's "Gang List" Unconstitutional* (Apr. 15, 2021), https://www.shb.com/news/2021/04/shook
7  -files-class-action-against-wpd; *The ACLU of Kansas settles Hep-C lawsuit* (Apr. 30, 2019),
8  https://www.aclukansas.org/ press-releases/aclu-kansas-settles-hep-c-lawsuit-medicaid-enrollees-will-
9  receive-life-saving/; *ACLU Sues Missouri High School for Censoring Gay Student* (Nov. 23, 2004),
10 https://www.aclu.org/press-releases/aclu-sues-missouri-high-school-censoring-gay-student.

     \*    \*    \*    \*    \*

12      For these reasons, Defendants respectfully request that the Court decline to select any of
13 Plaintiffs' four proposed candidates or the individual who contacted the Court directly, and instead
14 adopt Defendants' proposed order submitted herewith that (i) appoints one of Defendants' candidates as
15 External Monitor, and (ii) properly applies the language of this Court's Order that has already defined
16 the scope of the External Monitor.  *See* ECF No. 72 ¶¶ 1–2; ECF No. 76-7.

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

Dated: February 24, 2026    By:    */s/ Savith Iyengar*
                                              SAVITH IYENGAR
                                              Assistant United States Attorney