KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, pro hac vice
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS | Case No. 3:25-cv-09757-MMC <br><br> **PLAINTIFFS' PROPOSAL RE COURT APPOINTED MONITOR** <br><br> Judge:    Hon. Maxine M. Chesney <br><br> Date Filed:  November 12, 2025 |

1 | ENFORCEMENT; TODD M. LYONS,
Acting Director, U.S. Immigration and
2 | Customs Enforcement; SERGIO
ALBARRAN, Acting Director of San
3 | Francisco Field Office, Enforcement and
Removal Operations, U.S. Immigration and
4 | Customs Enforcement; U.S. DEPARTMENT
OF HOMELAND SECURITY; KRISTI
5 | NOEM, Secretary, U.S. Department of
Homeland Security,
6 |
|                         Defendants.
7 |

On February 10, 2026, this Court granted in part Plaintiffs' Motion for Preliminary Injunction and, *inter alia*, ordered Defendants to provide access to a qualified independent, third party monitor ("External Monitor") for a period of 120 days, subject to renewal by court order, to ensure compliance with the Court's order and the provision of constitutionally adequate health care. *See* Dkt. No. 72 ("February 10 Order"). The Court ordered the parties to meet and confer regarding the selection of the External Monitor and to present their proposal(s) to the Court within 14 days. *Id.*

Plaintiffs hereby submit, as Exhibit A, a proposed order appointing Dr. Marc F. Stern, MD, MPH, FACP as the External Monitor pursuant to Federal Rule of Civil Procedure 706 and outlining the basic terms of his appointment. Below, Plaintiffs explain the selection of Dr. Stern, who has extensive experience as a special master and court-appointed medical monitor. Plaintiffs also provide two alternate candidates should the Court require. In addition, Plaintiffs explain their objections to the five candidates proposed by Defendants, all of whom have served almost exclusively as defense-side experts and none of whom have prior experience serving as a court-appointed medical monitor. Defendants' candidates lack the necessary experience to fulfill this role and have repeatedly been found lacking in credibility by federal courts across the country.

Plaintiffs attempted to engage in a telephonic meet and confer with Defendants to discuss the parties' proposed monitors and Plaintiffs' proposed order of appointment, a copy of which they shared with Defendants on February 19, 2026. However, Defendants refused to engage in a telephonic meet and confer, refused to comment on Plaintiffs' proposed order, and at no point indicated whether they disagreed with any of the substantive terms of Plaintiffs' proposed order. *See* Ex. E, Declaration of Margot Mendelson ¶ 11 Ex. 1 ("Mendelson Decl.") (attaching correspondence). Therefore, Plaintiffs explain herein several key provisions of the proposed order to ensure the External Monitor can competently fulfill his or her obligations to the Court. Plaintiffs can provide additional information about the necessity of the proposed order's provisions, should the Court wish to hold a status conference.

4126259

I.    **PLAINTIFFS' PROPOSED MONITOR**

    A.    **Dr. Marc Stern**

    Dr. Marc Stern is among the country's leading experts in correctional healthcare and has been recognized as such by courts, litigants (both plaintiff- and defense-side), state and local law enforcement and corrections, and a multitude of professional associations. His *curriculum vitae* is attached as **Exhibit B**. He currently serves in a number of medical advisor, director, and board positions, including with the National Sheriffs Association, the American Jail Association, the Washington Association of Sheriffs and Police Chiefs, and the U.S. Department of Justice. He was previously a consultant to the USDOJ Bureau of Justice Statistics, the National Institute of Corrections, and the California Attorney General's Office. From 2009 to 2014, Dr. Stern was a consultant to *the Defendant in this matter*, the U.S. Department of Homeland Security, providing investigative support and expert medical services. In this capacity, he contributed to the revision of Defendant ICE's 2009 Performance-Based National Detention Standards.

    From 1998 to 2008, Dr. Stern practiced as a physician in correctional settings, including as assistant secretary/medical director for the Washington State Department of Corrections, regional medical director for the New York State prison system, medical director for a county jail, and regional medical director for a for-profit prison health care vendor. Since then, in addition to clinical practice, Dr. Stern has served as a consultant or adviser to federal, state, and local corrections entities, as a court-appointed neutral monitor and special master, and as an expert for both defendants and plaintiffs in litigation involving correctional healthcare, as described more fully below. Dr. Stern currently teaches and conducts research at the University of Washington School of Public Health, sits on the editorial board of the Journal of Correctional Medicine, and is past chair of the education committees of the American College of Correctional Physicians and the Academic Consortium on Criminal Justice Health. He has received awards from the National Commission on Correctional Health and the American College of Correctional Physicians, among many others. His qualifications are outlined in his *curriculum vitae*, attached as Exhibit B, and in an order from the District of Arizona just last week, *Jensen v. Thornell*, 2026 WL 472338 at * 2, *14 n.36 (D. Ariz. Feb. 19, 2026) (noting both Dr. Stern's extensive qualifications with respect to

1    correctional health care and Defendants' strong recommendation of him).

2         Unlike Defendants' monitor candidates, Dr. Stern has extensive experience serving as a

3    court-appointed neutral for medical care and has been proffered as a third-party monitor by

4    defendants and plaintiffs alike. From 2011 to 2012, Dr. Stern served as Special Master for the

5    District Court of Idaho to evaluate the medical and mental health care delivery system at a state

6    prison. *Balla v. Idaho State Bd. of Corr.*, 2016 WL 6762651 at *1 (D. Idaho Feb. 1, 2016). From

7    2010 to 2015, he was a jointly agreed-to monitor of the settlement agreement in *Flynn v. Walker*,

8    No. 2:16-cv-00453-JPS (E.D. Wis.), involving health care delivery at a Wisconsin women's

9    prison. From 2013 to 2016, he was a medical monitor in *United States v. Miami-Dade County*,

10   1:13-cv-21570-CIV (S.D. Fla.), regarding health care and suicide protections at the Miami jail.

11   Since 2022, Dr. Stern has served as a Rule 706 Expert and Lead Medical Monitor in *Jensen v.*

12   *Thornell* (previously *Parsons v. Ryan*), regarding healthcare delivery in the Arizona state prison

13   system. Notably, *defendants* in that case proposed Dr. Stern as one of their two Monitor

14   candidates, writing that "Dr. Stern's dedication to the design, management, and operation of

15   health services in corrections settings will provide this Court and the parties with valuable

16   guidance." *Jensen v. Thornell*, Dkt. No. 4339, Defendants' Proposed Experts in Response to

17   Court Order at 3. The Court noted that, at the time of "Defendants' enthusiastic choice" of Dr.

18   Stern as a monitor, they had already "collaborated with [him] for well over a year, and [had]

19   wholeheartedly recommended and approved [him] as highly competent." *Jensen*, 2026 WL

20   472338, at *5.

21        Just last week in *Jensen*, Judge Silver referred to Dr. Stern as a "revered expert" and

22   favorably described "the Court's experiences" with him and a member of his team:

23            The Monitors' reports are thorough, amply supported, and their
             reasoning is fully explained. . . . [They] have consistently and
24            patiently explained their methodologies and have shown ample
             latitude and understanding in their recommendations,
25            acknowledging the difficult hurdles faced by Defendants in making
             the changes required by the Injunction. The experts, like the Court,
26            have without exception demonstrated that the main concern is that
             the prisoners in the custody of the State of Arizona receive
27            constitutional healthcare.

28   *Jensen*, 2026 WL 472338, at *14, *39.

4126259

1     Beyond his court-appointed neutral roles, Dr. Stern has served as an expert witness,

2 including for correctional system defendants. *See*, *e.g., Dixon v. Cook Cnty.*, 2013 WL 5874573

3 at *3 (N.D. Ill. Oct. 30, 2013) (defense expert in medical care case brought by detainee at Cook

4 County Jail); Deposition of Marc F. Stern, M.D., M.P.H., *Mitchell v. Felker*, 08-CV-01196 (E.D.

5 Cal. July 9, 2013) (defense expert in class action alleging race-based lockdowns impacting

6 medical needs). Courts across the country have found Dr. Stern to be a reliable and qualified

7 expert in healthcare delivery in correctional settings. *Est. of Carlock v. Williamson*, 2012 WL

8 13008859 at *9 (C.D. Ill. Aug. 29, 2012) ("The Court finds that Dr. Stern's opinion is reliable

9 because it is based on his experience as an internist and his relevant medical knowledge."); *J.F. v.*

10 *Correct Care Sols.*, 2019 WL 1057401 at *5 (D. Md. Mar. 6, 2019) (finding that "Dr. Stern has

11 sufficient knowledge, skill, experience, and training to testify as to cause of death" of incarcerated

12 patient); *United States v. Patel*, 2020 WL 1698785 at *5 (D.N.J. Apr. 8, 2020) (recognizing

13 Dr. Stern as "a correctional public health expert").

14     Notwithstanding this overwhelming consensus, counsel for Defendants here claimed in

15 correspondence to Plaintiffs that one district court had "discounted Dr. Stern's methodology as

16 both based on a limited sample size and not based on accepted national detention standards." *See*

17 Mendelson Decl. ¶ 11 Ex. 1. In fact, in *Dockery v. Hall*, the court was not concerned about

18 Dr. Stern's methodology, but rather the scope of relief sought by the plaintiff class. *See* 443 F.

19 Supp. 3d 726, 738 (S.D. Miss. 2019) (acknowledging that Dr. Stern's testimony "could support a

20 finding of deficient medical treatment as regards certain prisoners" but that "it has not been

21 shown to be applicable to all class members"). The court did not reject the substance of Dr.

22 Stern's expert findings, but rather ruled that it preferred an analysis based on specific correctional

23 standards.[1] This ruling by the Southern District of Mississippi, rejecting the classwide Eighth

24 Amendment claims at issue, hardly undermines Dr. Stern's decades of service as a leader in the

25

26 ───────────────

[1] Dr. Stern is well-versed in the two standards named by the court in *Dockery*, the American
Correctional Association ("ACA") and the National Commission on Correctional Health Care

27 ("NCCHC") standards. He obtained ACA accreditation for over a dozen facilities while at the
Washington Department of Corrections. He has served on NCCHC committees, authored

28 NCCHC papers and curricula, taught NCCHC courses and trainings, presented at over ten
NCCHC conferences or meetings, and received an NCCHC award.

field of correctional healthcare, a qualified litigation expert for plaintiffs and defense, and as a neutral monitor appointed by multiple district courts across the country.

### B.    Alternate Candidates

For the reasons set forth above, Plaintiffs believe that Dr. Stern is the ideal choice to serve as External Monitor in this case. But in the event that the Court prefers another candidate, Plaintiffs also offer two other highly qualified experts in correctional health care for consideration.[2]

**Dr. Muthusamy Anandkumar, MD, MBA, CHCQM, FABQAURP, CCHP** is a Board-certified physician with extensive experience as a medical monitor in immigration detention facilities, state prisons, and county jails, whose services are frequently sought by the federal government. His *curriculum vitae* is attached at **Exhibit C**. Between 2018 and 2025, Dr. Anandkumar was a medical expert for Defendant U.S. Department of Homeland Security, where he was contracted to audit Defendant ICE's detention centers. During these seven years, Dr. Anandkumar monitored more than thirty immigration detention centers across the country and evaluated their medical care according to ICE's Performance-Based National Detention Standards ("PBNDS") and National Detention Standards ("NDS"). Dr. Anandkumar was retained by the U.S. Department of Justice to conduct an investigation into jail medical care in Oklahoma County in 2022 and Erie County, New York in 2023. Between 2014 and 2025, he served continuously as a medical monitor pursuant to USDOJ settlements, including at the Cook County Jail in Chicago, the Miami-Dade County Jail, and the St. Croix Correctional Facility in the Virgin Islands. In each of these roles, he was approved by both parties to the litigation.

State and local corrections entities also rely on Dr. Anandkumar's expertise. He currently serves as the court-appointed medical monitor in cases involving the Baltimore County Jail and Metropolitan Detention Center in Albuquerque and has been approved by the parties as a member of the medical monitoring team in a case involving the Illinois Department of Corrections.

---

[2] Plaintiffs are aware that a private company that provides assurance, tax, and financial advisory services and a large law firm have approached the Court and offered to jointly serve as the External Monitor. Plaintiffs do not believe these entities are qualified to serve as a court-appointed medical monitor and maintain that the role must be performed by a medical provider.

Dr. Anandkumar is also currently retained by county jail systems to monitor compliance with national medical standards (Chatham County, Georgia) and monitor health care delivery following the conclusion of a USDOJ settlement (Lake County Jail, Indiana). In one recent case, a district court found Dr. Anandkumar to be a reliable and qualified expert witness on healthcare delivery in correctional settings, noting: "The County does not challenge Dr. Anandkumar's qualifications, which it would be hard-pressed to do." *Butler v. Suffolk Cnty.*, 2025 WL 417777 at *12 (E.D.N.Y. Feb. 6, 2025).

Dr. Anandkumar practiced for more than a decade as a physician and medical director at Dallas County Correctional Health, which provides medical and mental health care within the Dallas County Jail. As a staff physician, he provided care to detained people in the jail for three years, before being promoted to director-level roles in which he developed quality assurance systems and implemented programs to improve timely access to medical care for detained patients. As a Medical Director focusing on Performance Improvement, he was responsible for regulatory compliance and physician supervision at the jail and led a committee on patient safety and healthcare utilization. In addition to his court-appointed monitor and retained expert roles, Dr. Anandkumar currently works as a physician advisor on utilization management for a major hospital in Dallas.

**Dr. Sara Kariko, MD, MPH** is a Board-certified physician who has worked for more than ten years in correctional settings. Her *curriculum vitae* is attached at **Exhibit D**. She has served as the Chief Medical Officer for the Washington State Department of Corrections and a Facility Medical Director of a Washington prison. As Chief Medical Officer, she was responsible for overseeing health services for all incarcerated people in the state prison system and for developing and implementing healthcare policies and procedures. As Facility Medical Director, she directly supervised all facility practitioners, provided clinical and administrative direction and oversight, planned health care delivery, led quality improvements, and participated in clinical committees. From October 2023 to May 2025, she served as a member of Dr. Marc Stern's court-appointed monitor team in Arizona, in which she was responsible for reviewing patient medical records to opine on the adequacy of care and conducting mortality reviews for reports to the

district court. She has served as a consultant to correctional entities such as Sacramento County and an expert witness on healthcare delivery in correctional settings for both plaintiffs and defense. She is currently retained by Cook County as a defense side medical care expert.

## II.    OBJECTIONS TO DEFENDANTS' PROPOSED MONITORS

In contrast to Plaintiffs' candidates, who have served as neutral Court-appointed medical monitors or on monitoring teams, none of Defendants' candidates appear to have experience as a Court-appointed medical monitor. Although they have experience as retained experts, almost exclusively for defendants, in litigation against correctional facilities and private correctional health care corporations, the role of a medical monitor—a neutral factfinder and an agent of the Court—is distinct. While an expert retained by a party takes substantial direction from that litigant, the role of the Court-appointed medical monitor in this case is to interpret the requirements of the Preliminary Injunction; independently find the facts regarding Defendants' compliance or noncompliance in a neutral and unbiased manner; analyze and reconcile information received from the parties; and provide accurate and reliable reports to the Court. Plaintiffs' candidates Dr. Stern and Dr. Anandkumar have ample experience as court-appointed, neutral medical experts themselves, and Dr. Kariko has served as a member of a court-appointed medical monitor team. As far as Plaintiffs can tell, Defendants' candidates have never served as neutral medical monitors in any capacity.

Moreover, in analyzing their work as retained defense experts, federal courts across the country have found Defendants' candidates not credible and questioned their methodologies when providing expert testimony. Below are a few examples.

***Dr. David Thomas***. In *Coleman v. Schwarzenegger*, the well-known California prison overcrowding case, the three-judge panel noted that "some of the testimony by Dr. Thomas was both internally inconsistent and patently incredible," such as testifying that medical treatment could be provided to patients in restrooms or in closets. 922 F. Supp. 2d 882, 945-46 (E.D. Cal. 2009). The Court found "the testimony of [defense expert] Dr. Thomas to be unpersuasive for several reasons," including that he "formed his opinions and drafted his initial report before visiting even a single prison in California" and when he actually conducted such visits, "he took

no notes during or after those tours; did not make any audio or video recordings during the tours; reviewed fewer than ten medical records at each prison and could not recall any details of any of the medical files he reviewed; and did not recall how many staff members he talked to at each prison or whether he asked the staff members at each prison any of the same questions." *Id.* The three-judge panel ultimately found an Eighth Amendment violation, a conclusion that was upheld on appeal by the U.S. Supreme Court in *Brown v. Plata*, 563 U.S. 493 (2011).

Similarly, in *Lewis v. Cain*, Louisiana prison officials presented Dr. Thomas' testimony that health care at the notorious Angola prison was not inadequate. *See* 2017 WL 4782653, at *1 (M.D. La. Oct. 23, 2017). The court found that, in his report, "Dr. Thomas relies on fact, without identifying the source of the fact or providing any foundational support for the fact," noted that "careful review of his report and deposition leads the Court to view Dr. Thomas' opinions as largely unsupported assertions, mere *ipse dixit*," and generally concluded that "the Court has serious concerns about the reliability of the foundations for Dr. Thomas' opinions." *Id.* at *2, 6; *see also Scarim v. Ryan*, 2013 WL 12096528, at *2 (D. Ariz. Apr. 16, 2013) (finding *inter alia* that Dr. Thomas' affidavit largely recited the contents of the medical records and offered improper legal conclusions).

Dr. Thomas has done almost exclusively defense-side expert work. Plaintiffs identified just a few cases in which he had served as a plaintiffs-side expert, and none since 2009. His *curriculum vitae* as provided by Defendants lists "recent cases," none of which appear to be plaintiff-side.[3] Dr. Thomas has not served as a medical monitor or special master for healthcare issues. Although his *curriculum vitae* states that he was a "Special Monitor" in *Southern Poverty Law Center v. U.S. Department of Homeland Security*, it omits a critical fact: that case was not about medical care and the monitor was tasked with overseeing attorney access, not evaluating health care delivery.[4]

---

[3] Only seven of the listed cases could be identified through a Westlaw search. In each, Dr Thomas served as an expert for the defendant.

[4] Pursuant to the Temporary Restraining Order in that case, the limited-role "Special Monitor" oversaw increased access to telephones, training staff how to schedule remote legal visits, etc. during the COVID-19 pandemic. No. 1:18-cv-00760 (D.D.C.), Dkt. No. 124 (June 17, 2020).

**Dr. Carl James Keldie**. In *Voice of the Experienced v. Leblanc*, the court concluded that defense-expert Dr. Keldie "was wholly uncredible." No. CV 23-01304-BAJ-EWD, Ruling and Order, Dkt. No. 253 at 25 (M.D. La. May 23, 2025). Among other reasons, the court noted that "Dr. Keldie has no current Board certifications," "has not published any articles, books, chapters, or scientific studies on any topic," "has not participated in peer review of any scientific articles, nor does he know what a peer reviewed file is," and that "Dr. Keldie formed his opinion that there have been no heat-related deaths on the Farm Line at [Louisiana State Penitentiary] on the sole basis that someone at LSP told him so." *Id.* at 25-26. In another case, *Braggs v. Dunn*, Alabama prison officials opposed plaintiffs' motion for on-site expert inspections, presenting testimony by Dr. Keldie on the subject. The court rejected his testimony, finding it "not credible or reliable," noting that "Dr. Keldie's testimony revealed that he was not sufficiently aware of the specific purpose and goals of the plaintiffs' expert's proposed inspection, or what [that expert] would need to determine during the course of the inspection." 2020 WL 5909086, at *1 (M.D. Ala. Oct. 1, 2020). Dr. Keldie does not appear to have served as a medical monitor, special master, or plaintiff-side expert.

**Dr. David M. Mathis**. In addition to Dr. Thomas' testimony, Louisiana prison officials presented Dr. Mathis' testimony in *Lewis v. Cain* that health care at the Louisiana prison was not inadequate. *See* 701 F. Supp. 3d 361 (M.D. La. 2023). After noting that, with a single exception, "Dr. Mathis has never been tasked with evaluating the overall delivery of medical care at a prison; he has evaluated one jail," *id.* at 385, the court found Dr. Mathis' opinions "uncredible," "ill-supported and unpersuasive," noting that his chart review consisted of "a verbatim copy of [the prison's] mortality reviews with no independent analysis or comment by Dr. Mathis." *Id.* at 385-86, 404, 407 (footnotes omitted). Dr. Mathis' *curriculum vitae* as provided by Defendants does not contain a list of expert service. He does not appear to have served as a medical monitor or special master.

**Dr. Jane E. Leonardson**. Dr. Leonardson was identified by the defense expert in *Jensen v. Thornell* as having assisted the expert in chart review in that matter. The court noted that the chart reviews contained "several errors," ultimately finding the expert to be "generally

unpersuasive" due in part to "problems with [the expert's] methods and conclusion." No. CV-12-00601-PHX-ROS, Dkt. No. 4335, at 17, 60, 64 (D. Az.). Dr. Leonardson was hired as a consultant by the Illinois Department of Corrections to serve as its project manager in implementing compliance with the court-ordered settlement in *Lippert v. Ghosh*, a case concerning the delivery of medical care in Illinois prisons. No. 10-CV-4603, Defendants' Response Brief, Dkt. No. 1538 at 6 (N.D. Ill. Mar. 8, 2022). During her tenure, the court found defendants in contempt for their failure to implement the court-ordered remedies. No. 10-CV-4603, Notice of Docket Entry, Dkt. 1577 at 1 (N.D. Ill. Aug. 5, 2022). Dr. Leonardson's *curriculum vitae* as provided by Defendants does not contain a list of expert service other than *Lippert*. She does not appear to have ever served as a medical monitor or special master.

**Dr. Randall R. Stoltz**. Dr. Stoltz was retained as a defense expert in *Estate of Majors v. Gerlach*, a case concerning a four-year lapse in patient monitoring and treatment of an incarcerated person with multiple sclerosis (MS), leading to such severe progressive brain damage that the individual eventually died of MS complications. 821 F. App'x 533 (6th Cir. 2020). On appeal, the Sixth Circuit panel rejected Dr. Stoltz and other defense expert reports as "conclusory." *Id*. at 545 n.10. The panel described numerous deficiencies with Dr. Stoltz's report, including its failure to explain why the lack of patient monitoring and treatment was justified and its failure to consider all of the decedent's complaints of relapse and requests for treatment. *Id.*

Moreover, Dr. Stoltz has ventured opinions "that far exceed the bounds of appropriate expert testimony" and his own expertise, including on constitutional standards, the credibility of sexual assault victims, and on whether alleged conduct at the center of litigation did or did not occur. Order, *Emery v. Burtch*, No. 2:15-cv-1113-SEC-DRG, Doc 70 at 6 (E.D. Mich. July 7, 2017); *see also* Report of Randall R. Stoltz, *Emery*, No. 2:15-cv-1113-SEC-DRG, Doc 61-3 at 4, 5 ("[I]t becomes obvious that both [plaintiffs] had mental health problems . . . . This past history and the fact that they both spoke together before any complaint was filed (8 days after the incident) makes one suspicious of their legal intentions. In my expert opinion, the alleged [sexual assault] did not occur.")

Dr. Stoltz's *curriculum vitae* as provided by Defendants does not contain a list of expert service. He does not appear to have ever served as a medical monitor or special master.

## III.    PROPOSED ORDER OF APPOINTMENT

It is critical that the External Monitor have sufficient access to materials, systems, and people in Defendants' custody to ensure the monitor can competently and completely fulfill his or her duties. This Court has already ordered Defendants provide access to the External Monitor to review medical records and conduct on-site inspection and interviews with patients and staff. Dkt. No. 72. Given the short 120-day monitoring period, Plaintiffs ask this Court to enumerate core components of the monitor's access now. Without such guidance, it is likely that the first weeks of the monitoring period will be taken up with disputes about the monitor's entitlement to records and that the parties will have to seek the Court's assistance to settle such disputes. In the interest of judicial economy and given the likely irreparable harm that this Court's February 10 Order was meant to prevent, Plaintiffs submit the attached proposed order of appointment.

Because counsel for Defendants has refused to engage in a telephonic meet and confer, comment on the proposed order, or provide a copy of a competing proposed order, Plaintiffs do not know which, if any, of the provisions Defendants will contest. Plaintiffs' counsel remains available to discuss any and all provisions at a status conference, should the Court wish. For now, we note the following.

Perhaps most critically, the External Monitor cannot meaningfully assess compliance unless this Court orders Defendants to provide remote access to Defendants' electronic health record system ("EHRS"). *See* Proposed Order ¶ 3. Defendants' own declarant, CoreCivic Regional Medical Director Dr. Susan Tiona, noted that CoreCivic's EHRS "is designed to be used . . . from a computer display" and that, by contrast, when printed records are relied upon instead "certain information may not be included, and certain information may be misleading to those who do not have a familiarity with the system". Dkt. No. 38-2 ¶ 11; *see also id.* ¶¶ 12-18 (discussing electronic health record). In cases involving court-appointed medical monitors, it is standard for the monitor to receive access to the electronic health record. *See e.g. Jensen v. Thornell*, 2023 WL 2838040, at *3 (D. Ariz. Apr. 7, 2023) ("To ensure accurate monitoring,

1  Defendants shall provide the monitors and additional staff remote access to the electronic health

2  record and other electronic records (e.g., EOMS) that are available by remote access and

3  necessary for monitoring."); *Cal. Coal. for Women Prisoners et al. v. United States et al.*, No.

4  4:23-cv-04155-YGR (N.D. Cal. January 23, 2026), Dkt. No. 533 at 5.2 (Monitor issued a Federal

5  Bureau of Prisons laptop and email address to access protected material, including health and

6  custody records); *see also* Mendelson Decl. ¶¶ 2–4 (electronic health record access for medical

7  monitors in Prison Law Office's five county jail cases and cases involving California Department

8  of Corrections and Rehabilitation and Arizona Department of Corrections, Rehabilitation, and

9  Reentry).

10     The monitor must also be able to request and receive patient lists from Defendants, so that

11  he or she can identify which patient records to review. *See* Proposed Order ¶ 4(b). He or she must

12  be able to review Defendants' healthcare policies and procedures and other documents, including

13  those necessary to assess compliance with paragraphs 1(a) through 1(h) of the Court's February

14  10 Order. *See id.* ¶ 4(a), (c)-(g) (regarding staffing, prescription medication, specialty

15  appointments, information related to emergencies including self-harm, and the sick call process).

16     To ensure the External Monitor has adequate access to information and to minimize the

17  burden on this and a future Court, Plaintiffs have also proposed a role for the parties, including *ex*

18  *parte* communications with the External Monitor and an opportunity for counsel for the parties to

19  review and comment on the External Monitor's draft report.[5] *See* Proposed Order ¶¶ 6, 7. Both of

20  these provisions are standard in court-appointed medical monitoring cases. Mendelson Decl. ¶¶

21  5–6. Plaintiffs propose that the final monitoring report be filed on the public docket, without

22  identifying patient information, because it may be the subject of subsequent motion practice and

23  relevant in dispositive motions and at trial, in addition to being a matter of significant public

24  interest. *See* Ex. A (Proposed Order) ¶ 7. Court-appointed experts' monitoring reports are

25  frequently filed on the docket and/or publicly available, without identifying patient information.

26  *See, e.g.*, *California Coalition for Women Prisoners v. U.S. Bureau of Prisons*, No. 4:23-cv-

27

28

---

[5] While the External Monitor's eventual report(s) were not described in the Court's February 10 Order, the Court clearly contemplated during the hearing that the monitor would report on his or her findings. Tr. 160:4-21 (Feb. 6, 2026).

PLAINTIFFS' PROPOSAL RE COURT APPOINTED MONITOR
Case No. 3:25-cv-09757-MMC

4126259

1    04155-YGR (N.D. Cal 2023); *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 3:20-cv-00406-

2    AJB-DDL (S.D. Cal 2020); *Mays v. Cnty. of Sacramento*, No. 2:18-cv-02081-TLN-CSK (E.D.

3    Cal. 2018); *Babu v. Cnty. of Alameda*, No. 5:18-CV-07677 (N.D. Cal 2018*); Murray v. Cnty. of*

4    *Santa Barbara*, No. 2:17-cv-08805 (C.D. Cal 2017); *Hernandez v. Cnty. of Monterey*, No. 5:13-

5    cv-02354-BLF (N.D. Cal. 2013); *Jensen v. Thornell*, CV-12-00601-PHX-ROS (D. Ariz. 2012);

6    *Armstrong v. Newsom*, No. 4:94-cv-02307-CW (N.D. Cal. 1994) (Court Expert reports); *Coleman*

7    *v. Newsom*, No. 2:90-cv-00520-KJM-DB (E.D. Cal. 1990) (Special Master reports).

8

9    Dated: February 24, 2026

10

11   Respectfully submitted,

12   /s/ Steven P. Ragland                           /s/ Margot Mendelson
     KEKER, VAN NEST & PETERS LLP                     PRISON LAW OFFICE
13   STEVEN P. RAGLAND                                MARGOT MENDELSON
     CODY S. HARRIS                                   TESS BORDEN
14   CARLOS C. MARTINEZ                               PATRICK BOOTH
     LISA C. LU                                       ALISON HARDY
15                                                    RANA ANABTAWI
     CALIFORNIA COLLABORATIVE FOR
16   IMMIGRANT JUSTICE                                AMERICAN CIVIL LIBERTIES UNION
     PRIYA ARVIND PATEL                               FOUNDATION
17   MARIEL VILLARREAL                                KYLE VIRGIEN
                                                      FELIPE HERNANDEZ
18                                                    MARISOL DOMINGUEZ-RUIZ
                                                      CARMEN IGUINA GONZALEZ
19
20                                                    *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

# Exhibit A

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS | Case No. 3:25-cv-09757-MMC <br><br> **[PROPOSED] ORDER APPOINTING MARC STERN AS COURT EXPERT PURSUANT TO FRE 706** <br><br> Judge:     Hon. Maxine M. Chesney <br><br> Date Filed: November 12, 2025 |

1    ENFORCEMENT; TODD M. LYONS,
     Acting Director, U.S. Immigration and
2    Customs Enforcement; SERGIO
     ALBARRAN, Acting Director of San
3    Francisco Field Office, Enforcement and
     Removal Operations, U.S. Immigration and
4    Customs Enforcement; U.S. DEPARTMENT
     OF HOMELAND SECURITY; KRISTI
5    NOEM, Secretary, U.S. Department of
     Homeland Security,
6
                          Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **[PROPOSED] ORDER APPOINTING MARC STERN AS EXTERNAL MONITOR**

2         At a hearing on February 6, 2026, the Court found evidence of systemwide failures in

3    Defendants' delivery of health care services at California City Detention Facility in the areas of

4    health care staffing, intake procedures and assessments, access to medical specialists and

5    emergency services, continuity of care, access to prescribed medications, and the "sick call"

6    system. The Court concluded that Plaintiffs would suffer irreparable harm if the Court did not

7    issue relief, that harm to some of the Named Plaintiffs and putative class members had already

8    occurred, and that the balance of the equities and public interest favored a preliminary injunction.

9    Accordingly, the Court granted in part Plaintiffs' Motion for Preliminary Injunction and

10   provisionally certified the Class. *See* ECF No. 71. On February 10, 2026, the Court enumerated

11   the specific relief ordered, including eight basic components of a functional health care system,

12   and ordered Defendants to provide access to an External Monitor to ensure compliance with those

13   basic components and the provision of constitutionally adequate health care. ECF No. 72

14   ("February 10 Order"). The February 10, 2026 Order required the parties to meet and confer

15   regarding the selection of the External Monitor and to present their proposal(s) to the Court, after

16   which the Court would enter a further Order of appointment. *Id.*

17        The parties presented their proposals for appointment to the Court. Having reviewed those

18   submissions, the Court hereby **ORDERS**:

19   1.  Pursuant to Rule 706 of the Federal Rules of Evidence, Marc Stern, M.D., is appointed as

20       the Court's expert and External Monitor to monitor compliance with the Court's

21       February 10, 2026 Order and the provision of constitutionally adequate health care.

22       Dr. Stern's *curriculum vitae* is attached as Exhibit B to Plaintiffs' proposal. Dr. Stern's

23       review of patient-specific information described in this Order shall be subject to protective

24       order.[1]

25   2.  The External Monitor's appointment is for a period of 120 days from the date of this

26       Order (the "Term of Appointment"), subject to renewal by court order.

---

[1] If the parties do not stipulate to a protective order in time, the External Monitor and his team member shall indicate assent to the Model Protective Order for Highly Sensitive Confidential Information available on the U.S. District Court for the Northern District of California's website.

To ensure the External Monitor can monitor compliance with the Court's February 10, 2026 Order and can render complete reports to the Court, it is further **ORDERED**:

3.  The External Monitor will be granted remote read-only access to California City Detention Facility's electronic health record system ("EHRS") for the full term of appointment. The External Monitor may select up to one team member to assist with medical record reviews. That team member shall be granted remote read-only access to the EHRS, subject to protective order, but shall not be permitted to attend the site visit described below.

4.  Upon request at any point during the Term of Appointment, Defendants shall provide the following documents to the External Monitor in electronic format:

    a.  health care policies and procedures;

    b.  detainee lists, including but not limited to full population lists with relevant health information and patient lists related to particular diagnoses, high-risk or chronic care needs, prescriptions, medical housing, pending orders, emergency room, specialty care, and off-site visits and returns;

    c.  lists related to health care staffing, including but not limited to positions and schedules;

    d.  the facility's medication/drug formulary and documentation of non-formulary requests and approvals/denials;

    e.  the tool or criteria used to approve or deny referrals to specialists and utilization management logs or other records documenting approval, denials, and deferrals (including alternative treatment plans);

    f.  logs of suicide watch placements, attempted suicides, and self-harm incidents;

    g.  sick call requests and health care grievances/appeals, and the facility's responses, including tablet and paper submissions, for all patients during a 30-day period, and for specific patients, upon the External Monitor's request, when the relevant documents are not in the EHRS; and,

    h.  any other documents or information that the External Monitor determines in his

expertise he needs to assess compliance, which he shall identify for the parties. If there is a dispute about his entitlement to records, the parties shall meet and confer in an attempt to resolve the dispute and then seek the Court's assistance as needed.

5. The External Monitor shall be permitted one in-person inspection lasting up to three full days at the facility, to be scheduled with at least 48 hours' notice. Counsel for Defendants and counsel for Plaintiffs may attend the site visit, in a reasonable number to not disrupt facility operations. On site, the External Monitor shall be permitted to:

   a. inspect any area of the facility and grounds;

   b. interview custody and medical staff, whether full-time or contract employees. If key health care staff are not available on the date(s) of the site visit, they will be made available to the External Monitor via videoconferencing within one week of its conclusion;

   c. interview patients of his choosing, provided they consent, in a confidential room with sound privacy from any facility staff. Should the External Monitor wish, the room shall allow for contact, *i.e.* not include a glass partition. Confidential in-person language interpretation services shall be provided, or compensated by Defendants at a reasonable rate should the External Monitor arrange interpretation;

   d. review and receive a demonstration of the facility's health care scheduling system and relevant electronic databases or dashboards, including but not limited to system(s) that display pending appointments for specialists and clinic operations;

   e. review any facility video relevant to health care, including but not limited to emergency responses, and any business, budgetary, and/or operational documents relevant to health care;

   f. observe any institutional meetings, proceedings, and programs to the extent the External Monitor determines such access is needed to fulfill his obligations; and,

   g. bring necessary materials and equipment into the facility, including one cellphone and one laptop.

6. The External Monitor shall be permitted to communicate *ex parte* with counsel for the

---

3

parties as needed to perform his duties.

7. By the conclusion of the Term of Appointment, the External Monitor shall produce a report assessing Defendants' compliance with the February 10, 2026 Order and the provision of constitutionally adequate health care and making recommendations for remedial actions. The report shall be filed on the docket but shall contain no personal identifiers of patients. Individual patients shall be identified in a separate confidential appendix provided to counsel for the parties and to the Court under seal. Before filing, the External Monitor shall serve the parties with the report and appendix, and the parties shall have 14 days from the date of service to submit written comments to the External Monitor. In his discretion, the External Monitor may modify the report in any manner suggested by a party before filing it with the Court.

8. The External Monitor and his team member shall be paid at a rate of $500/hour. They shall submit their reasonable fees and expenses to the Court and shall be paid by Defendants upon order of the Court, without requirement of any additional contract with Defendants or the federal government.

Because the External Monitor cannot begin his work without access to items 3 and 4 above, he will jointly alert the parties to issues in their timely provision. The parties may bring any such concerns to the Court's attention. An undue delay in compliance with any portion of this Order, to the extent it prevents the External Monitor from timely or effectively completing his work, may be cause to extend the term of appointment

**IT IS SO ORDERED.**

Dated:

_____
Hon. Maxine M. Chesney
United States District Judge

# Exhibit B

**MARC F. STERN, M.D., M.P.H., F.A.C.P.**
marcstern@live.com

February, 2026

---

## CURRICULUM VITAE

**CORRECTIONAL HEALTH CARE CONSULTANT**                                           **2009 – PRESENT**

Consultant in the design, management, and operation of health services in a correctional setting to assist in evaluating, monitoring, or providing evidence-based, cost-effective care consistent with constitutional mandates of quality.

Current activities include:
- Court-appointed Federal Rule 706 Expert to assist the Court in crafting of, and then Lead Monitor for monitoring of, Injunctive Order, US District Court for the District of Arizona, in the matter of Jensen v. Thornell (2022 – )
- Member, working group creating an open-source model Request for Proposal for use by correctional facilities soliciting bids from health care vendors to provide health care to residents, the goal of which is resultant contracts that improve patient safety and quality of health care (2022 - )
- Co-Chair, Re-Entry Workgroup commissioned by Washington State Legislature pursuant to Bill SB5304, Washington State Health Care Authority (Medicaid Agency) (2021 - )
- Senior Medical Advisor, National Sheriffs Association (2020 - )
- Medical Director and Member, Board of Directors, American Jail Association (2022 - )
- Medical Advisor, Washington Association of Sheriffs and Police Chiefs, and to various jails in Washington State on patient safety, health systems, and related health care and custody staff activities and operations, and RFP and contract generation (2014 - )
- Consultant to the US Department of Justice, Civil Rights Division, Special Litigation Section. Providing investigative support and expert medical services pursuant to complaints regarding care delivered in any US jail, prison, or detention facility. (2010 - ) (no current open cases)
- Physician prescriber/trainer for administration of naloxone by law enforcement officers for the Olympia, Tumwater, Lacey, Yelm, and Evergreen College Police Departments (2017 - )
- Member, Training and Technical Assistance team of the University of Washington, providing consultation to Washington State Health Care Authority and individual jails to implement Medication for Opioid Use Disorder treatment programs under state-legislated funding (2022 - )

Previous activities include:
- Member, Committee on Advancing the Field of Forensic Pathology: Lessons Learned from Death in Custody Investigations. National Academies of Sciences, Engineering, and Medicine (2024 – 2025 )
- Consultant to Broward County Sheriff to help develop and evaluate responses to a request for proposals (2017 – 2018; 2023 - 2024)
- Member, Jail Standards Task Force commissioned by the Washington State Legislature pursuant to Bill SB5902 (2022 - 2024)
- Member, Expert Advisory Committee for development of national guidelines for jails on management of substance use withdrawal, National Commission on Correctional Health Care & American Society for Addiction Medicine, under COSSAP grant of U.S. Bureau of Justice Assistance (2021 - 2024 )
- Project Director, COVID-19 Vaccination Acceptance Project for Correctional Populations (2020 - 2021)
- Biden-Harris campaign Health Policy Committee volunteer (2020)
- Court-Appointed Federal Rule 706 Expert to the Court, US District Court for the District of Arizona, in the matter of Parsons v. Ryan (2018-2019)
- Consultant to Human Rights Watch to evaluate medical care of immigrants in Homeland Security detention (2016 - 2018)

- Consultant to the Civil Rights Enforcement Section, Office of the Attorney General of California, under SB 29, to review the healthcare-related conditions of confinement of detainees confined by Immigration and Customs Enforcement in California facilities. (2017 - 2019)

- Member of monitoring team (medical expert) pursuant to Consent Agreement between US Department of Justice and Miami-Dade County (Unites States of America v. Miami-Dade County, *et al.*) regarding unconstitutional medical care. (2013 - 2016)

- Jointly appointed Consultant to the parties in Flynn v. Walker (formerly Flynn v. Doyle), a class action lawsuit before the US Federal District Court (Eastern District of Wisconsin) regarding Eighth Amendment violations of the health care provided to women at the Taycheedah Correctional Institute. Responsible for monitoring compliance with the medical component of the settlement. (2010 - 2015)

- Consultant on "Drug-related Death after Prison Release," a research grant continuing work with Dr. Ingrid Binswanger, University of Colorado, Denver, examining the causes of, and methods of reducing deaths after release from prison to the community. National Institutes of Health Grant R21 DA031041-01. (2011 - 2016)

- Consultant to the US Department of Homeland Security, Office for Civil Rights and Civil Liberties. Provided investigative support and expert medical services pursuant to concerns about patient safety and deaths among immigration detainees in the custody of U.S. Immigration and Customs Enforcement. Contributed to the revision of the 2009 Performance Based ICE Detention Standards. (2009 - 2014)

- Special Master for the US Federal District Court (District of Idaho) in Balla v Idaho State Board of Correction, et al., a class action lawsuit alleging Eighth Amendment violations in provision of health care at the Idaho State Correctional Institution. (2011 - 2012)

- Facilitator/Consultant to the US Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, providing assistance and input for the development of the first National Survey of Prisoner Health. (2010-2011 )

- Project lead and primary author of National Institute of Corrections' project entitled "Correctional Health Care Executive Curriculum Development," in collaboration with National Commission on Correctional Health Care. NIC commissioned this curriculum for its use to train executive leaders from jails and prisons across the nation to better manage the health care missions of their facilities. Cooperative Agreement 11AD11GK18, US Department of Justice, National Institute of Corrections. (2011 - 2015 )

- Co-teacher, with Jaye Anno, Ph.D., for the National Commission on Correctional Health Care, of the Commission's standing course, *An In-Depth Look at NCCHC's 2008 Standards for Health Services in Prisons and Jails* taught at its national meetings. (2010 - 2013)

- Contributor to 2014 Editions of Standards for Health Services in Jails and Standards for Health Services in Prisons, National Commission on Correctional Health Care. (2013)

- Consultant to the California Department of Corrections and Rehabilitation court-appointed Receiver for medical operations. Projects included:
  - Assessing the Receiver's progress in completing its goal of bringing medical care delivered in the Department to a constitutionally mandated level. (2009)
  - Providing physician leadership to the Telemedicine Program Manager tasked with improving and expanding the statewide use of telemedicine. (2009)

- Conceived, co-designed, led, and instructed in American College of Correctional Physicians and National Commission on Correctional Health Care's Medical Directors Boot Camp (now called Leadership Institute), a national training program for new (Track "101") and more experienced (Track "201") prison and jail medical directors. (2009 - 2012)

- Participated as a member of a nine-person Delphi expert consensus panel convened by Rand Corporation to create a set of correctional health care quality standards. (2009)

- Convened a coalition of jails, Federally Qualified Health Centers, and community mental health centers in ten counties in Washington State to apply for a federal grant to create an electronic network among the participants that will share prescription information for the correctional population as they move among these three venues. (2009 - 2010)

- Participated as a clinical expert in comprehensive assessment of Michigan Department of Corrections as part of a team from the National Commission on Correctional Health Care. (2007)

- Provided consultation to Correctional Medical Services, Inc., St. Louis (now Corizon), on issues related to development of an electronic health record. (2001)

- Reviewed cases of possible professional misconduct for the Office of Professional Medical Conduct of the New York State Department of Health. (1999 – 2001)
- Advised Deputy Commissioner, Indiana State Board of Health, on developing plan to reduce morbidity from chronic diseases using available databases. (1992)
- Provided consultation to Division of General Medicine, University of Nevada at Reno, to help develop a new clinical practice site combining a faculty practice and a supervised resident clinic. (1991)

**OLYMPIA FREE CLINIC, OLYMPIA, WASHINGTON**                                      **2017 - PRESENT**

Volunteer practitioner providing episodic care at a neighborhood clinic which provides free care to individuals without health insurance until they can find a permanent medical home.

**OLYMPIA BUPRENORPHINE CLINIC, OLYMPIA, WASHINGTON**                         **2019 - 2021**

Volunteer practitioner at a low-barrier clinic to providing Medication Assisted Treatment (buprenorphine) to opioid dependent individuals wishing to begin treatment, until they can transition to a long-term treatment provider.

**OLYMPIA UNION GOSPEL MISSION CLINIC, OLYMPIA, WASHINGTON**                  **2009 – 2014**

Volunteer practitioner providing primary care at a neighborhood clinic which provides free care to individuals without health insurance until they can find a permanent medical home; my own patient panel within the practice focuses on individuals recently released jail and prison.

**WASHINGTON STATE DEPARTMENT OF CORRECTIONS**                                  **2002 – 2008**

Assistant Secretary for Health Services/Health Services Director, 2005 – 2008
Associate Deputy Secretary for Health Care, 2002 – 2005

Responsible for the medical, mental health, chemical dependency (transiently), and dental care of 15,000 offenders in total confinement. Oversaw an annual operating budget of $110 million and 700 health care staff.

- As the first incumbent ever in this position, ushered the health services division from an operation of 12 staff in headquarters, providing only consultative services to the Department, to an operation with direct authority and responsibility for all departmental health care staff and budget. As part of new organizational structure, created and filled statewide positions of Directors of Nursing, Medicine, Dental, Behavioral Health, Mental Health, Psychiatry, Pharmacy, Operations, and Utilization Management.
- Significantly changed the culture of the practice of correctional health care and the morale of staff by a variety of structural and functional changes, including: ensuring that high ethical standards and excellence in clinical practice were of primordial importance during hiring of professional and supervisory staff; supporting disciplining or career counseling of existing staff where appropriate; implementing an organizational structure such that patient care decisions were under the final direct authority of a clinician and were designed to ensure that patient needs were met, while respecting and operating within the confines of a custodial system.
- Improved quality of care by centralizing and standardizing health care operations, including: authoring a new Offender Health Plan defining patient benefits based on the Eighth Amendment, case law, and evidence-based medicine; implementing a novel system of utilization management in medical, dental, and mental health, using the medical staffs as real-time peer reviewers; developing a pharmacy procedures manual and creating a Pharmacy and Therapeutics Committee; achieving initial American Correctional Association accreditation for 13 facilities (all with almost perfect scores on first audit); migrating the eight individual pharmacy databases to a single central database.
- Blunted the growth in health care spending without compromising quality of care by a number of interventions, including: better coordination and centralization of contracting with external vendors, including new statewide contracts for hospitalization, laboratory, drug purchasing, radiology, physician recruitment, and agency nursing; implementing a statewide formulary; issuing quarterly operational reports at the state and facility levels.
- Piloted the following projects: direct issuance of over-the-counter medications on demand through inmates stores (commissary), obviating the need for a practitioner visit and prescription; computerized practitioner order entry (CPOE); pill splitting; ER telemedicine.
- Oversaw the health services team that participated variously in pre-design, design, or build phases of five capital projects to build complete new health units.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES**                    **2001 – 2002**

Regional Medical Director, Northeast Region, 2001 – 2002

Responsible for clinical oversight of medical services for 14,000 offenders in 14 prisons, including one (already) under court monitoring.

- Oversaw contract with vendor to manage 60-bed regional infirmary and hospice.
- Coordinated activities among the Regional Medical Unit outpatient clinic, the Albany Medical College, and the 13 feeder prisons to provide most of the specialty care for the region.
- Worked with contracting specialists and Emergency Departments to improve access and decrease medical out-trips by increasing the proportion of scheduled and emergency services provided by telemedicine.
- Provided training, advice, and counseling to practitioners and facility health administrators in the region to improve the quality of care delivered.

**CORRECTIONAL MEDICAL SERVICES, INC. (now YesCare)**                    **2000 – 2001**

Regional Medical Director, New York Region, 2000 – 2001

Responsible for clinical management of managed care contract with New York State Department of Correctional Services to provide utilization management services for the northeast and northern regions of New York State and supervision of the 60-bed regional infirmary and hospice.

- Migrated the utilization approval function from one of an anonymous rule-based "black box" to a collaborative evidence-based decision making process between the vendor and front-line clinicians.

**MERCY INTERNAL MEDICINE, ALBANY, NEW YORK**                    **1999 – 2000**

Neighborhood three-physician internal medicine group practice.

Primary Care Physician, 1999 – 2000 (6 months)

Provided direct primary care to a panel of community patients during a period of staff shortage.

**ALBANY COUNTY CORRECTIONAL FACILITY, ALBANY, NEW YORK**                    **1998 – 1999**

Acting Facility Medical Director, 1998 – 1999

Directed the medical staff  of an 800 bed jail and provided direct patient care following the sudden loss of the Medical Director, pending hiring of a permanent replacement. Coordinated care of jail patients in local hospitals. Provided consultation to the Superintendent on improvements to operation and staffing of medical unit and need for privatization.

**VETERANS ADMINISTRATION MEDICAL CENTER, ALBANY, NY**                    **1992 – 1998**

Assistant Chief, Medical Service, 1995 – 1998
Chief, Section of General Internal Medicine and Emergency Services, 1992 – 1998

Responsible for operation of the general internal medicine clinics and the Emergency Department.

- Designed and implemented an organizational and physical plant makeover of the general medicine ambulatory care clinic from an episodic-care driven model with practitioners functioning independently supported by minimal nursing involvement, to a continuity-of-care model with integrated physician/mid-level practitioner/registered nurse/licensed practice nurse/practice manager teams.
- Led the design and opening of a new Emergency Department.
- As the VA Section Chief of Albany Medical College's Division of General Internal Medicine, coordinated academic activities of the Division at the VA, including oversight of, and direct teaching in, ambulatory care and inpatient internal medicine rotations for medical students, residents, and fellows. Incorporated medical residents as part of the general internal medicine clinics. Awarded $786,000 Veterans Administration grant ("PRIME I") over four years for development and operation of educational programs for medicine residents and students in allied health professions (management, pharmacy, social work, physician extenders) wishing to study primary care delivery.

Marc F. Stern, M.D.                                                                                             Page 5

**ERIE COUNTY HEALTH DEPARTMENT, BUFFALO, NY**                                    **1988 – 1990**

Director of Sexually Transmitted Diseases (STD) Services, 1989 – 1990
Staff Physician, STD Clinic, 1988 – 1989
Staff Physician, Lackawanna Community Health Center, 1988 – 1990

Provided leadership and patient care services in the evaluation and treatment of STDs. Successfully reorganized the county's STD services which were suffering from mismanagement and were under public scrutiny. Provided direct patient care services in primary care clinic for underserved neighborhood.

**UNION OCCUPATIONAL HEALTH CENTER, BUFFALO, NY**                        **1988 – 1990**

Staff Physician, 1988 – 1990

Provided direct patient care for the evaluation of occupationally-related health disorders.

**VETERANS ADMINISTRATION MEDICAL CENTER, BUFFALO, NY**              **1985 – 1990**

Chief Outpatient Medical Section and Primary Care Clinic, 1986 – 1988
VA Section Head, Division of General Internal Medicine, University of Buffalo, 1986 – 1988

- Developed and implemented a major restructuring of the general medicine ambulatory care clinic to reduce fragmentation of care by introduction of a continuity-of-care model with a physician/nurse team approach.

Medical Director, Anticoagulation Clinic 1986 – 1990
Staff Physician, Emergency Department, 1985 – 1986

## FACULTY APPOINTMENTS

| | |
|---|---|
| 2020 – present | Faculty Associate, Center for Human Rights, University of Washington |
| 2007 – present | Affiliate Assistant Professor, Department of Health Services, School of Public Health, University of Washington |
| 1999 – present | Clinical Professor, Fellowship in Applied Public Health (previously Volunteer Faculty, Preventive Medicine Residency), University at Albany School of Public Health |
| 1996 – 2002 | Volunteer Faculty, Office of the Dean of Students, University at Albany |
| 1992 – 2002 | Associate Clinical/Associate/Assistant Professor of Medicine, Albany Medical College |
| 1993 – 1997 | Clinical Associate Faculty, Graduate Program in Nursing, Sage Graduate School |
| 1990 – 1992 | Instructor of Medicine, Indiana University |
| 1985 – 1990 | Clinical Assistant Professor of Medicine, University of Buffalo |
| 1982 – 1985 | Clinical Assistant Instructor of Medicine, University of Buffalo |

## OTHER PROFESSIONAL ACTIVITIES

| | |
|---|---|
| 2016 – present | Chair, Education Committee, Academic Consortium on Criminal Justice Health |
| 2016 – present | Washington State Institutional Review Board ("Prisoner Advocate" member) |
| 2016 – 2017 | Mortality Reduction Workgroup, American Jail Association |
| 2013 – present | Conference Planning Committee – Medical/Mental Health Track, American Jail Association |
| 2013 – 2016 | "Health in Prisons" course, Bloomberg School of Public Health, Johns Hopkins University/International Committee of the Red Cross |
| 2013 – present | Institutional Review Board, University of Washington ("Prisoner Advocate" member), |
| 2011 – 2012 | Education Committee, National Commission on Correctional Health Care |
| 2007 – present | National Advisory Committee, COCHS (Community–Oriented Correctional Health Services) |
| 2004 – 2006 | Fellow's Advisory Committee, University of Washington Robert Wood Johnson Clinical Scholar Program |
| 2004 | External Expert Panel to the Surgeon General on the "Call to Action on Correctional Health Care" |

Marc F. Stern, M.D.                                                                                                  Page 6

| | |
|---|---|
| 2003 – present | Faculty Instructor, Critical Appraisal of the Literature Course, Family Practice Residency Program, Providence St. Peter Hospital, Olympia, Washington |
| 2001 – present | Chair/Co-Chair, Education Committee, American College of Correctional Physicians |
| 1999 – present | Critical Appraisal of the Literature Course, Preventive Medicine Residency Program, New York State Department of Health/University at Albany School of Public Health |
| 1999 | Co–Chairperson, Education Subcommittee, Workshop Submission Review Committee, Annual Meeting, Society of General Internal Medicine |
| 1997 – 1998 | Northeast US Representative, National Association of VA Ambulatory Managers |
| 1996 – 2002 | Faculty Mentor, Journal Club, Internal Medicine Residency Program, Albany Medical College |
| 1996 – 2002 | Faculty Advisor and Medical Control, 5 Quad Volunteer Ambulance Service, University at Albany |
| 1995 – 1998 | Preceptor, MBA Internship, Union College |
| 1995 | Quality Assurance/Patient Satisfaction Subcommittee, VA National Curriculum Development Committee for Implementation of Primary Care Practices, Veterans Administration |
| 1994 – 1998 | Residency Advisory Committee, Preventive Medicine Residency, New York State Department of Health/School of Public Health, University at Albany |
| 1993 | Chairperson, Dean's Task Force on Primary Care, Albany Medical College |
| 1993 | Task Group to develop curriculum for Comprehensive Care Case Study Course for Years 1 through 4, Albany Medical College |
| 1988 – 1989 | Teaching Effectiveness Program for New Housestaff, Graduate Medical Dental Education Consortium of Buffalo |
| 1987 – 1990 | Human Studies Review Committee, School of Allied Health Professions, University of Buffalo |
| 1987 – 1989 | Chairman, Subcommittee on Hospital Management Issues and Member, Subcommittee on Teaching of Ad Hoc Committee to Plan Incoming Residents Training Week, Graduate Medical Dental Education Consortium of Buffalo |
| 1987 – 1988 | Dean's Ad Hoc Committee to Reorganize "Introduction to Clinical Medicine" Course |
| 1987 | Preceptor, Nurse Practitioner Training Program, School of Nursing, University of Buffalo |
| 1986 – 1988 | Course Coordinator, Simulation Models Section of Physical Diagnosis Course, University of Buffalo |
| 1986 – 1988 | Chairman, Service Chiefs' Continuity of Care Task Force, Veterans Administration Medical Center, Buffalo, New York |
| 1979 – 1980 | Laboratory Teaching Assistant in Gross Anatomy, Université Libre de Bruxelles, Brussels, Belgium |
| 1973 – 1975 | Instructor and Instructor Trainer of First Aid, American National Red Cross |
| 1972 – 1975 | Chief of Service or Assistant Chief of Operations, 5 Quad Volunteer Ambulance Service, University at Albany. |
| 1972 – 1975 | Emergency Medical Technician Instructor and Course Coordinator, New York State Department of Health, Bureau of Emergency Medical Services |

## REVIEWER/EDITOR

| | |
|---|---|
| 2019 – present | Reviewer, Criminal Justice Review |
| 2015 – present | Reviewer, PLOS ONE |
| 2015 – present | Founding Editorial Board Member and Reviewer, Journal for Evidence-based Practice in Correctional Health, Center for Correctional Health Networks, University of Connecticut |
| 2011 – present | Reviewer, American Journal of Public Health |
| 2010 – 2023 | International Advisory Board Member and Reviewer, International Journal of Prison Health |
| 2010 – present | Grant reviewer, Langeloth Foundation |
| 2001 – present | Reviewer and Editorial Board Member (2009 – present), Journal of Correctional Health Care |
| 2010 – 2023 | International Advisory Board Member and Reviewer, International Journal of Prison Health |
| 2001 – 2004 | Reviewer, Journal of General Internal Medicine |
| 1996 | Reviewer, Abstract Committee, Health Services Research Subcommittee, Annual Meeting, Society of General Internal Medicine |

Marc F. Stern, M.D.                                                                                                              Page 7

1990 – 1992        Reviewer, Medical Care

## EDUCATION

University at Albany, College of Arts and Sciences, Albany; B.S., 1975 (Biology)

University at Albany, School of Education, Albany; AMST (Albany Math and Science Teachers) Teacher Education Program, 1975

Université Libre de Bruxelles, Faculté de Medecine, Brussels, Belgium; Candidature en Sciences Medicales, 1980

University at Buffalo, School of Medicine, Buffalo; M.D., 1982

University at Buffalo Affiliated Hospitals, Buffalo; Residency in Internal Medicine, 1985

Regenstrief Institute of Indiana University, and Richard L. Roudebush Veterans Administration Medical Center; VA/NIH Fellowship in Primary Care Medicine and Health Services Research, 1992

Indiana University, School of Health, Physical Education, and Recreation, Bloomington; M.P.H., 1992

New York Academy of Medicine, New York; Mini-fellowship Teaching Evidence-Based Medicine, 1999

## CERTIFICATIONS

Provisional Teaching Certification for Biology, Chemistry, Physics, Grades 7–12, New York State Department of Education (expired), 1975

Diplomate, National Board of Medical Examiners, 1983

Diplomate, American Board of Internal Medicine, 1985

Fellow, American College of Physicians, 1991

License: Washington (#MD00041843, active); New York (#158327, inactive); Indiana (#01038490, inactive)

"X" Waiver (buprenorphine), Department of Health & Human Services, 2018

## MEMBERSHIPS

2019 – present    Washington Association of Sheriffs and Police Chiefs
2005 – 2016       American Correctional Association/Washington Correctional Association
2000 – present    American College of Correctional Physicians

## RECOGNITIONS

B. Jaye Anno Award for Excellence in Communication, National Commission on Correctional Health Care. 2019

Award of Appreciation, Washington Association of Sheriffs and Police Chiefs. 2018

Armond Start Award of Excellence, American College of Correctional Physicians. 2010

(First) Annual Preventive Medicine Faculty Excellence Award, New York State Preventive Medicine Residency Program, University at Albany School of Public Health/New York State Department of Health. 2010

Excellence in Education Award for excellence in clinical teaching, Family Practice Residency Program, Providence St. Peter Hospital, Olympia, Washington. 2004

Special Recognition for High Quality Workshop Presentation at Annual Meeting, Society of General Internal Medicine. 1996

Letter of Commendation, House Staff Teaching, University of Buffalo. 1986

## WORKSHOPS, SEMINARS, PRESENTATIONS, INVITED LECTURES - Examples

*Carceral Health is Public Health.* Keynote Speech, 19th Annual HIV Care in the Correctional Setting Conference. AIDS Education and Training Program (AETC) Mountain West, Spokane, Washington. 2025

*It's the 21st Century – Time to Bid Farewell to "Sick Call" and "Chronic Care Clinic."* Annual Conference, National Commission on Correctional Health Care. Fort Lauderdale, Florida. 2019

*HIV and Ethics – Navigating Medical Ethical Dilemmas in Corrections.* Keynote Speech, 14th Annual HIV Care in the Correctional Setting Conference. AIDS Education and Training Program (AETC) Mountain West, Olympia, Washington. 2019

*Honing Nursing Skills to Keep Patients Safe in Jail.* Orange County Jail Special Training Session (including San Bernardino and San Diego Jail Staffs), Theo Lacy Jail, Orange, California. 2019

*What Would You Do? Navigating Medical Ethical Dilemmas.* Leadership Training Academy, National Commission on Correctional Health Care. San Diego, California. 2019

*Preventing Jail Deaths.* Jail Death Review and Investigations: Best Practices Training Program, American Jail Association, Arlington, Virginia. 2018

*How to Investigate Jail Deaths.* Jail Death Review and Investigations: Best Practices Training Program, American Jail Association, Arlington, Virginia. 2018

*Executive Manager Program in Correctional Health.* 4-day training for custody/health care teams from jails and prisons on designing safe and efficient health care systems. National Institute for Corrections Training Facility, Aurora, Colorado, and other venues in Washington State. Periodically. 2014 – present

*Medical Ethics in Corrections.* Criminal Justice 441 – Professionalism and Ethical Issues in Criminal Justice. University of Washington, Tacoma. Recurring seminar. 2012 – present

*Medical Aspects of Deaths in ICE Custody.* Briefing for U.S. Senate staffers, Human Rights Watch. Washington, D.C. 2018

*Jails' Role in Managing the Opioid Epidemic.* Panelist. Washington Association of Sheriffs and Police Chiefs Annual Conference. Spokane, Washington. 2018

*Contract Prisons and Contract Health Care: What Do We Know?* Behind Bars: Ethics and Human Rights in U.S. Prisons Conference. Center for Bioethics – Harvard Medical School/Human Rights Program – Harvard Law School. Boston, Massachusetts. 2017

*Health Care Workers in Prisons.* (With Dr. J. Wesley Boyd) Behind Bars: Ethics and Human Rights in U.S. Prisons Conference. Center for Bioethics – Harvard Medical School/Human Rights Program – Harvard Law School. Boston, Massachusetts. 2017

*Prisons, Jails and Medical Ethics: Rubber, Meet Road.* Grand Rounds. Touro Medical College. New York, New York. 2017

*Jail Medical Doesn't Have to Keep You Up at Night – National Standards, Risks, and Remedies.* Washington Association of Counties. SeaTac, Washington. 2017

*Prison and Jail Health Care: What do you need to know?* Grand Rounds. Providence/St. Peters Medical Center. Olympia, Washington. 2017

*Prison Health Leadership Conference.* 2-Day workshop. International Corrections and Prisons Association/African Correctional Services Association/Namibian Corrections Service. Omaruru, Namibia. 2016; 2018

*What Would YOU Do? Navigating Medical Ethical Dilemmas.* Spring Conference. National Commission on Correctional Health Care. Nashville, Tennessee. 2016

*Improving Patient Safety.* Spring Provider Meeting. Oregon Department of Corrections. Salem, Oregon 2016

*A View from the Inside: The Challenges and Opportunities Conducting Cardiovascular Research in Jails and Prisons.* Workshop on Cardiovascular Diseases in the Inmate and Released Prison Population. The National Heart, Lung, and Blood Institute. Bethesda, Maryland. 2016

*Why it Matters: Advocacy and Policies to Support Health Communities after Incarceration.* At the Nexus of Correctional Health and Public Health: Policies and Practice session. Panelist. American Public Health Association Annual Meeting. Chicago, Illinois. 2015

*Hot Topics in Correctional Health Care.* Presented with Dr. Donald Kern. American Jail Association Annual Meeting. Charlotte, North Carolina. 2015

*Turning Sick Call Upside Down.* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas, 2015.

*Diagnostic Maneuvers You May Have Missed in Nursing School.* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas. 2015

*The Challenges of Hunger Strikes: What Should We Do? What Shouldn't We Do?* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas. 2015

Practical and Ethical Approaches to Managing Hunger Strikes. Annual Practitioners' Conference. Washington Department of Corrections. Tacoma, Washington. 2015

*Contracting for Health Services: Should I, and if so, how?* American Jail Association Annual Meeting. Dallas, Texas. 2014

*Hunger Strikes: What should the Society of Correctional Physician's position be?* With Allen S, May J, Ritter S. American College of Correctional Physicians (Formerly Society of Correctional Physicians) Annual Meeting. Nashville, Tennessee. 2013

*Addressing Conflict between Medical and Security: an Ethics Perspective.* International Corrections and Prison Association Annual Meeting. Colorado Springs, Colorado. 2013

*Patient Safety and 'Right Using' Nurses.* Keynote address. Annual Conference. American Correctional Health Services Association. Philadelphia, Pennsylvania. 2013

*Patient Safety: Overuse, underuse, and misuse…of nurses.* Keynote address. Essentials of Correctional Health Care conference. Salt Lake City, Utah. 2012

*The ethics of providing healthcare to prisoners-An International Perspective.* Global Health Seminar Series. Department of Global Health, University of Washington, Seattle, Washington. 2012

*Recovery, Not Recidivism: Strategies for Helping People Who are Incarcerated.* Panelist. NAMI Annual Meeting, Seattle, Washington, 2012

*Ethics and HIV Workshop.* HIV/AIDS Care in the Correctional Setting Conference, Northwest AIDS Education and Training Center. Salem, Oregon. 2011

*Ethics and HIV Workshop.* HIV/AIDS Care in the Correctional Setting Conference, Northwest AIDS Education and Training Center. Spokane, Washington. 2011

*Patient Safety: Raising the Bar in Correctional Health Care.* With Dr. Sharen Barboza. National Commission on Correctional Health Care Mid-Year Meeting, Nashville, Tennessee. 2010

*Patient Safety: Raising the Bar in Correctional Health Care.* American Correctional Health Services Association, Annual Meeting, Portland, Oregon. 2010

*Achieving Quality Care in a Tough Economy.* National Commission on Correctional Health Care Mid-Year Meeting, Nashville, Tennessee, 2010 (Co-presented with Rick Morse and Helena Kim, PharmD.)

*Involuntary Psychotropic Administration: The Harper Solution.* With Dr. Bruce Gage. American Correctional Health Services Association, Annual Meeting, Portland, Oregon. 2010

*Evidence Based Decision Making for Non-Clinical Correctional Administrators.* American Correctional Association 139th Congress, Nashville, Tennessee. 2009

*Death Penalty Debate.* Panelist. Seattle University School of Law, Seattle, Washington. 2009

*The Patient Handoff – From Custody to the Community.* Washington Free Clinic Association, Annual Meeting, Olympia, Washington. Lacey, Washington. 2009

*Balancing Patient Advocacy with Fiscal Restraint and Patient Litigation.* National Commission on Correctional Health Care and American College of Correctional Physicians "Medical Directors Boot Camp," Seattle, Washington. 2009

*Staff Management.* National Commission on Correctional Health Care and American College of Correctional Physicians "Medical Directors Boot Camp," Seattle, Washington. 2009

*Management Dilemmas in Corrections: Boots and Bottom Bunks.* Annual Meeting, American College of Correctional Physicians, Chicago, Illinois. 2008

*Public Health and Correctional Health Care.* Masters Program in community–based population focused management – Populations at risk, Washington State University, Spokane, Washington. 2008

*Managing the Geriatric Population.* Panelist. State Medical Directors' Meeting, American Corrections Association, Alexandria, Virginia. 2007

*I Want to do my own Skin Biopsies.* Annual Meeting, American College of Correctional Physicians, New Orleans, Louisiana. 2005

*Corrections Quick Topics*. Annual Meeting, American College of Correctional Physicians. Austin, Texas. 2003

*Evidence Based Medicine in Correctional Health Care*. Annual Meeting, National Commission on Correctional Health Care. Austin, Texas. 2003

*Evidence Based Medicine*. Excellence at Work Conference, Empire State Advantage. Albany, New York. 2002

*Evidence Based Medicine, Outcomes Research, and Health Care Organizations*. National Clinical Advisory Group, Integrail, Inc., Albany, New York. 2002

*Evidence Based Medicine*. With Dr. LK Hohmann. The Empire State Advantage, Annual Excellence at Work Conference: Leading and Managing for Organizational Excellence, Albany, New York. 2002

*Taking the Mystery out of Evidence Based Medicine: Providing Useful Answers for Clinicians and Patients*. Breakfast Series, Institute for the Advancement of Health Care Management, School of Business, University at Albany, Albany, New York. 2001

*Diagnosis and Management of Male Erectile Dysfunction – A Goal–Oriented Approach.* Society of General Internal Medicine National Meeting, San Francisco, California. 1999

*Study Design and Critical Appraisal of the Literature*. Graduate Medical Education Lecture Series for all housestaff, Albany Medical College, Albany, New York. 1999

*Male Impotence: Its Diagnosis and Treatment in the Era of Sildenafil.* 4th Annual CME Day, Alumni Association of the Albany–Hudson Valley Physician Assistant Program, Albany, New York. 1998

*Models For Measuring Physician Productivity*. Panelist. National Association of VA Ambulatory Managers National Meeting, Memphis, Tennessee. 1997

*Introduction to Male Erectile Dysfunction and the Role of Sildenafil in Treatment*. Northeast Regional Meeting Pfizer Sales Representatives, Manchester Center, Vermont. 1997

*Male Erectile Dysfunction.* Topics in Urology, A Seminar for Primary Healthcare Providers, Bassett Healthcare, Cooperstown, New York. 1997

*Evaluation and Treatment of the Patient with Impotence: A Practical Primer for General Internists*. Society of General Internal Medicine National Meeting, Washington D.C. 1996

*Impotence: An Update.* Department of Medicine Grand Rounds, Albany Medical College, Albany, New York. 1996

*Diabetes for the EMT First–Responder.* Five Quad Volunteer Ambulance, University at Albany. Albany, New York. 1996

*Impotence: An Approach for Internists*. Medicine Grand Rounds, St. Mary's Hospital, Rochester, New York. 1994

*Male Impotence.* Common Problems in Primary Care Precourse. American College of Physicians National Meeting, Miami, Florida. 1994

*Patient Motivation: A Key to Success.* Tuberculosis and HIV: A Time for Teamwork. AIDS Program, Bureau of Tuberculosis Control – New York State Department of Health and Albany Medical College, Albany, New York. 1994

*Recognizing and Treating Impotence.* Department of Medicine Grand Rounds, Albany Medical College, Albany, New York. 1992

*Medical Decision Making: A Primer on Decision Analysis.* Faculty Research Seminar, Department of Family Practice, Indiana University, Indianapolis, Indiana. 1992

*Effective Presentation of Public Health Data.* Bureau of Communicable Diseases, Indiana State Board of Health, Indianapolis, Indiana. 1991

*Impotence: An Approach for Internists.* Housestaff Conference, Department of Medicine, Indiana University, Indianapolis, Indiana. 1991

*Using Electronic Databases to Search the Medical Literature*. NIH/VA Fellows Program, Indiana University, Indianapolis, Indiana. 1991

*Study Designs Used in Epidemiology.* Ambulatory Care Block Rotation. Department of Medicine, Indiana University, Indianapolis, Indiana. 1991

*Effective Use of Slides in a Short Scientific Presentation.* Housestaff Conference, Department of Medicine, Indiana University, Indianapolis, Indiana. 1991

Marc F. Stern, M.D.                                                                                             Page 11

*Impotence: A Rational and Practical Approach to Diagnosis and Treatment for the General Internist.* Society of General Internal Medicine National Meeting, Washington D.C. 1991

*Nirvana and Audio–Visual Aids.* With Dr. RM Lubitz. Society of General Internal Medicine, Midwest Regional Meeting, Chicago. 1991

*New Perspectives in the Management of Hypercholesterolemia.* Medical Staff, West Seneca Developmental Center, West Seneca, New York. 1989

*Effective Use of Audio–Visual Aids.* Nurse Educators, American Diabetes Association, Western New York Chapter, Buffalo, New York. 1989

*Management of Diabetics in the Custodial Care Setting.* Medical Staff, West Seneca Developmental Center, West Seneca, New York, 1989

*Effective Use of Audio–Visuals in Diabetes Peer and Patient Education.* American Association of Diabetic Educators, Western New York Chapter, Buffalo, New York. 1989

*Pathophysiology, Diagnosis and Care of Diabetes.* Nurse Practitioner Training Program, School of Nursing, University of Buffalo, Buffalo, New York. 1989

*Techniques of Large Group Presentations to Medical Audiences – Use of Audio–Visuals.*  New Housestaff Training Program,  Graduate Medical Dental Education Consortium of Buffalo, Buffalo, New York. 1988

## PUBLICATIONS/ABSTRACTS

**Stern M.**, Weyrauch D. *Sources of information for investigating deaths in carceral facilities.* Forensic Science, Medicine and Pathology. 2026 Jan. e-posted ahead of publication

Lohier R, Rich J, …**Stern M**. *Strengthening the U.S. Medicolegal Death Investigation System: Lessons from Deaths in Custody.* National Academies of Sciences, Engineering, and Medicine. 2025. Washington, DC: The National Academies Press. https://doi.org/10.17226/29232.

Strick L, Ramaswamy M, **Stern M**. *A public health framework for carceral health.* Lancet December 2024 404(10469):2234-2237

Borschmann R, Kinner SA, ….**Stern, MF**. *Rates and causes of death after release from incarceration among 1 471 526 people in eight high-income and middle-income countries: an individual participant data meta-analysis.* Lancet 2024 Apr 10:S0140-6736(24)00344-1

**Stern M**, Piasecki AM, Strick LB, Rajeshwar P, Tyagi E, Dolovich S, Patel PR, Fukunaga L, Furukawa NW. *Willingness to Receive a COVID-19 Vaccination Among Incarcerated or Detained Persons in Correctional and Detention Facilities — Four States, September–December 2020*. Mortality and Morbidity Weekly Report. US Department of Health and Human Services/Centers for Disease Control and Prevention April 2, 2021 70(13):473-476

Borschmann, R, Tibble, H, Spittal, MJ, … **Stern, MF**, Viner, KM, Wang, N, Willoughby, M, Zhao, B, and Kinner, SA. *The Mortality After Release from Incarceration Consortium (MARIC): Protocol for a multi-national, individual participant data meta-analysis.* Int. J of Population Data Science 2019 5(1):6

Binswanger IA, Maruschak LM, Mueller SR, **Stern MF**, Kinner SA. *Principles to Guide National Data Collection on the Health of Persons in the Criminal Justice System.* Public Health Reports 2019 134(1):34S-45S

**Stern M.** *Hunger Strike: The Inside Medicine Scoop.*  American Jails 2018 32(4):17-21

Grande L, **Stern M.** *Providing Medication to Treat Opioid Use Disorder in Washington State Jails.* Study conducted for Washington State Department of Social and Health Services under Contract 1731-18409. 2018.

**Stern MF**, Newlin N. *Epicenter of the Epidemic: Opioids and Jails.* American Jails 2018 32(2):16-18

**Stern MF**. *A nurse is a nurse is a nurse…NOT!* Guest Editorial, American Jails 2018 32(2):4,68

Wang EA, Redmond N, Dennison Himmelfarb CR, Pettit B, **Stern M**, Chen J, Shero S, Iturriaga E, Sorlie P, Diez Roux AV. *Cardiovascular Disease in Incarcerated Populations*. Journal of the American College of Cardiology 2017 69(24):2967-76

Mitchell A, Reichberg T, Randall J, Aziz-Bose R, Ferguson W, **Stern M.** *Criminal Justice Health Digital Curriculum*. Poster, Annual Academic and Health Policy Conference on Correctional Health, Atlanta, Georgia, March, 2017

**Stern MF**. *Patient Safety (White Paper)*. Guidelines, Management Tools, White Papers, National Commission on Correctional Health Care. http://www.ncchc.org/filebin/Resources/Patient-Safety-2016.pdf. June, 2016

Binswanger IA, **Stern MF**, Yamashita TE, Mueller SR, Baggett TP, Blatchford PJ. *Clinical risk factors for death after release from prison in Washington State: a nested case control study*. Addiction 2015 Oct 17

**Stern MF.** Op-Ed on Lethal Injections. The Guardian 2014 Aug 6

**Stern MF.** *American College of Correctional Physicians Calls for Caution Placing Mentally Ill in Segregation: An Important Band-Aid.* Guest Editorial. Journal of Correctional Health Care 2014 Apr; 20(2):92-94

Binswanger I, Blatchford PJ, Mueller SR, **Stern MF**. *Mortality After Prison Release: Opioid Overdose and Other Causes of Death, Risk Factors, and Time Trends From 1999 to 2009.* Annals of Internal Medicine 2013 Nov; 159(9):592-600

Williams B,  **Stern MF,** Mellow J, Safer M, Greifinger RB. *Aging in Correctional Custody: Setting a policy agenda for older prisoner health care.* American Journal of Public Health 2012 Aug; 102(8):1475-1481

Binswanger I, Blatchford PJ, Yamashita TE, **Stern MF.** *Drug-Related Risk Factors for Death after Release from Prison: A Nested Case Control Study.* Oral Presentation, University of Massachusetts 4th Annual Academic and Health Policy Conference on Correctional Healthcare, Boston, Massachusetts, March, 2011

Binswanger I, Blatchford PJ, Forsyth S, **Stern MF**, Kinner SA. *Death Related to Infectious Disease in Ex-Prisoners: An International Comparative Study*. Oral Presentation, University of Massachusetts 4th Annual Academic and Health Policy Conference on Correctional Healthcare, Boston, Massachusetts, March, 2011

Binswanger I, Lindsay R, **Stern MF**, Blatchford P. *Risk Factors for All-Cause, Overdose and Early Deaths after Release from Prison in Washington State Drug and Alcohol Dependence*. Drug and Alcohol Dependence Aug 1 2011;117(1):1-6

**Stern MF**, Greifinger RB, Mellow J. *Patient Safety: Moving the Bar in Prison Health Care Standards.* American Journal of Public Health November  2010;100(11):2103-2110

Strick LB, Saucerman G, Schlatter C, Newsom L, **Stern MF**. *Implementation of Opt-Out HIV testing in the Washington State Department of Corrections*. Poster Presentation, National Commission on Correctional Health Care Annual Meeting, Orlando, Florida, October, 2009

Binswanger IA, Blatchford P, **Stern MF**. *Risk Factors for Death After Release from Prison*. Society for General Internal Medicine 32nd Annual Meeting; Miami: Journal of General Internal Medicine; April 2009. p. S164-S95

**Stern MF**. Force Feeding for Hunger Strikes – One More Step. CorrDocs Winter 2009;12(1):2

Binswanger I, **Stern MF**, Deyo RA, Heagerty PJ, Cheadle A, Elmore JG, Koepsell TD. *Release from Prison – A High Risk of Death for Former Inmates*. New England Journal of Medicine 2007 Jan 11;356(2):157–165

**Stern MF**, Hilliard T, Kelm C, Anderson E. *Epidemiology of Hepatitis C Infection in the Washington State Department of Corrections.* Poster Presentation, CDC/NIH *ad hoc* Conference on Management of Hepatitis C in Prisons, San Antonio, Texas, January, 2003

Phelps KR, **Stern M**, Slingerland A, Heravi M, Strogatz DS, Haqqie SS. *Metabolic and skeletal effects of low and high doses of calcium acetate in patients with preterminal chronic renal failure.* Am J Nephrol 2002 Sep–Dec;22(5–6):445–54

Goldberg L, **Stern MF,** Posner DS. *Comparative Epidemiology of Erectile Dysfunction in Gay Men*. Oral Presentation, International Society for Impotence Research Meeting,  Amsterdam, The Netherlands, August 1998. Int J Impot Res. 1998;10(S3):S41 [also presented as oral abstract Annual Meeting, Society for the Study of Impotence, Boston, Massachusetts, October, 1999. Int J Impot Res. 1999;10(S1):S65]

**Stern MF.** *Erectile Dysfunction in Older Men.*  Topics in Geriatric Rehab 12(4):40–52, 1997. [republished in Geriatric Patient Education Resource Manual, Supplement. Aspen Reference Group, Eds. Aspen Publishers, Inc., 1998]

**Stern MF**, Wulfert E, Barada J, Mulchahy JJ, Korenman SG. *An Outcomes–Oriented Approach to the Primary Care Evaluation and Management of Erectile Dysfunction.*  J Clin Outcomes Management  5(2):36–56, 1998

Fihn SD, Callahan CM, Martin D, et al.; for the **National Consortium of Anticoagulation Clinics**.* *The Risk for and Severity of Bleeding Complications in Elderly Patients Treated with Warfarin*. Ann Int Med. 1996;124:970–979

Fihn SD, McDonell M, Martin D, et al.; for the **Warfarin Optimized Outpatient Follow–up Study Group**.* *Risk Factors for Complications of Chronic Anticoagulation*. Ann Int Med. 1993;118:511–520. (*While involved in the original proposal development and project execution, I was no longer part of the group at the time of this publication)

**Stern MF**, Dittus RS, Birkhead G, Huber R, Schwartz J, Morse D. *Cost–Effectiveness of Hepatitis B Immunization Strategies for High Risk People*. Oral Presentation, Society of General Internal Medicine National Meeting, Washington, D.C., May 1992. Clin Res 1992

Fihn SD, McDonell MB, Vermes D, Martin D, Kent DL, Henikoff JG, and the **Warfarin Outpatient Follow–up Study Group**. *Optimal Scheduling of Patients Taking Warfarin. A Multicenter Randomized Trial.* Oral Presentation, Society of General Internal Medicine National Meeting, Washington, D.C., May 1992. Clin Res 1992

Fihn SD, McDonnell MB, Vermes D, Kent DL, Henikoff JG, and the **Warfarin Anticoagulation Study Group**. *Risk Factors for Complications During Chronic Anticoagulation*. Poster Presentation, Society of General Internal Medicine National Meeting, Seattle, May 1991

Pristach CA, Donoghue GD, Sarkin R, Wargula C, Doerr R, Opila D, **Stern M**, Single G. *A Multidisciplinary Program to Improve the Teaching Skills of Incoming Housestaff.* Acad Med. 1991;66(3):172–174

**Stern MF**. *Diagnosing Chlamydia trachomatis and Neisseria gonorrhea Infections.* (letter) J Gen Intern Med. 1991;6:183

**Stern MF**, Fitzgerald JF, Dittus RS, Tierney WM, Overhage JM. *Office Visits and Outcomes of Care: Does Frequency Matter?* Poster Presentation, Society of General Internal Medicine Annual Meeting, Seattle, May 1991. Clin Res 1991;39:610A

**Stern MF**. *Cobalamin Deficiency and Red Blood Cell Volume Distribution Width*. (letter) Arch Intern Med. 1990;150:910

**Stern M**, Steinbach B. *Hypodermic Needle Embolization to the Heart*. NY State J Med. 1990;90(7):368–371

**Stern MF**, Birkhead G, Huber R, Schwartz J, Morse D. *Feasibility of Hepatitis B Immunization in an STD Clinic*. Oral Presentation,  American Public Health Association Annual Meeting, Atlanta, November 1990

# Exhibit C

# Muthusamy Anandkumar MD, MBA, CHCQM, FABQAURP, CCHP

*Board Certified in Family Medicine | Board Certified Physician Adviser |*
*Certified Correctional Health Professional | Certified in Healthcare Quality &*
*Management | Certified in Patient Safety & Risk Management | Healthcare Analytics*

## PHYSICIAN LEADER AND SENIOR MEDICAL EXPERT

*Building People and Processes to deliver reliable and sustainable results to improve*
*Quality & Safety, Cost of Care, and Patient Experience*

An inspiring healthcare leader and champion of successful initiatives to redesign care delivery, improving safety and costs of care while ensuring exceptional patient care and experience.

- Physician Education and Support
- Care Management/ Utilization Review
- Clinical Documentation Improvement
- Coordination of Care- ED, Inpatient, Clinic
- Physician Engagement & Patient Experience
- Multi-disciplinary Care Management
- Operational & Clinical Dashboards
- Credentialing and Privileging
- Clinical and Operational Policy and Procedures

- ED High Utilizer Management
- Clinical Quality Metrics
- Virtual Care /eConsult
- PCMH/1115/ PQRS/MACRA-MIPS
- Social Determinants of Health
- Regulatory Compliance
- Cross-Functional Team Leader
- LEAN Six Sigma /Workflow Optimization
- Clinical Care Pathways

## PROFESSIONAL EXPERIENCE

**Correctional Health Medical Expert:**
Serve as a medical expert for DOJ, DHS/CRCL, and Counties.
Past and current work include:
- Illinois Department of Corrections 2025- 2026 (active)
- Baltimore Jail, Baltimore, Maryland 2025- 2026 (active)
- Cook County Jail, Chicago, Illinois – Medical Monitor 2014 - 2018
- Miami-Dade County Jail, Florida – Medical Monitor – 2024 - 2025
- Metropolitan Detention Center – Albuquerque, NM – Medical Monitor 2021 – 2026 (active)
- St. Croix Correctional Facility, Virgin Island – Medical Monitor 2019 – 2025
- Oklahoma County Jail, Oklahoma – Medical Expert (auditor) for DOJ 2022
- Erie County Jail, New York – Medical Expert (auditor) for DOJ 2023
- Lake County Jail, Indiana – Medical Monitor 2021 – 2026 (active)
- Chatham County Jail, Georgia – Medical Monitor 2020 – 2026 (active)
- 30+ Detention Centers across the county – Medical Expert (auditor) for DHS – 2018 - 2025

**Staff Physician**
August 2006–Oct 2009| Parkland Health and Hospital System Dallas, Tx
- Dallas County **Correctional Health** – served as a Physician

**Assoc. Med Director Performance Improvement**
Oct 2009–March 2011| Dallas County **Correctional Health** (adult and Juvenile), Parkland Health and Hospital System Dallas, Tx
- Developed quality assurance metrics dashboard to monitor program performance.
- Implemented programs to improve timely access to medical care.

**Medical Director Performance Improvement**
March 2011– June 2016 | Dallas County **Correctional Health** (adult and Juvenile), Parkland Health and Hospital System Dallas, Tx
- **Regulatory Compliance:** Developed and implemented actions plans to address audit findings to meet CMS compliance.
- **Credential and Privileges:** Optimized the workflow for medical affairs team to reduce turnaround time for processing applications.
- **Physician Supervision:** Lead Physicians and Advanced Level Practitioners.
- **EMR Implementation:** Lead a successful multi-disciplinary EMR implementation team.
- **Patient Safety:** Lead the Patient quality/safety and Utilization sub-committee.
- 

**Physician/ Vice President of Performance Excellence for Population Health**
June 2016 – May 2017 | Parkland Health and Hospital System Dallas, Tx
Led Performance Improvement programs for Population Health and **Correctional Health Programs**. Established programs to transition care from the Inpatient and Emergency Department to the Ambulatory setting. Develop and implemented transformational programs to improve quality of care, reduce cost of care and improve patient experience.
- **Transition of Care:** Implemented workflows to transition of care from the Inpatient Service and Emergency Department to the clinics
- **Utilization Management:** Reduced inpatient bed days and readmission rates.
- **Care Delivery:** Developed a care pathway to manage high risk patients to reduce hospital readmission.
- **Multi-Disciplinary Teams:** Implemented multi-disciplinary care teams at each clinic to manage high acuity patients.
- **Scorecard** I **Analytics:** Created performance balance scorecard and established a Quality and Safety committee to periodically review and continuously improve the programs.
- **LEAN Process:** Optimized clinic workflow and eliminated unnecessary steps to reduce dwell times.
- **Optimize Technology:** Create Clinical care Pathways to standardize care and reduce variability.

**Physician/ Vice President - Community Health Institute**
May 2017 – Nov 2020 | Parkland Health and Hospital System Dallas, Tx
Built and led a new health system program focused on keeping individuals healthy in the community and reducing avoidable ED visits and in-patient admissions. Directed four departments including Disease Prevention and Health Promotion; Office of Social Determinants of Health; Injury Prevention and Community Development; and Population Health Analytics.
- **Clinical Transformation:** Led a high risk, high utilizer committee to review cases and identify opportunities to address clinical and social determinants of health (SDoH) and connect them to care in an ambulatory clinic. Implemented a Nurse led clinic and care pathways to create a improve access to clinical care for high-risk patients.
- **Innovation:** Physician champion at hospitals' Center for Innovation to develop non-traditional programs to improve quality, cost, and access to care.
- **Community Health:** Developed and implemented a community health workers program to manage high risk and high utilizer patients in the community to reduce length of stay and hospital readmission.
- **Collaborative Care:** Established partnership with community-based organizations and other hospitals to coordinate care Conducted health screening events in the community and connect them to care.

**Utilization Management - Physician Advisor**
Dec 2021 – Present | Texashealth, Dallas, Tx
Physician Advisor focused on utilization and quality management. Serves as physician and hospital healthcare liaison for safe and efficient patient care. Develop strategic objectives for the Care Management. Programs. Engage in utilization review committees and contribute to their accomplishments—lead efforts to resolve identified barriers to patient flow and efficient resource resolution.

**Utilization Management Physician/ Assoc. Medical Director - Parkland Community Health Plan**
Aug 2021 – Dec 2021 | Parkland Health and Hospital System Dallas, Tx
Oversee medical coordination required for effective utilization and quality management. Performing admission status reviews and concurrent reviews; denial/appeal management; clinical policies, CMS compliance, technology assessment, credentialing, and population health management. Ensuring comprehensive, high quality health care.
Conducting peer to peer reviews, requests for prior authorization, and compliance metrics/ data analytics for trends and performance improvement. Monitoring clinical care needed to produce optimal health outcomes and cost-effective care.

## PROJECT EXPERIENCE - PHYSICIAN CHAMPION

- **Reduced Adult Heart Failure Inpatient Admission Rate** (Admissions with a principal diagnosis of heart failure per 100,000 population, ages 18 years and older)
- **Reduce ED utilization** for patients with CHF, Angina, and Hypertension
- **Coordinated Care Management -** Integrated solution to identify patients with clinical and social care gaps, link them to clinical care and community-based organizations and allow closed-loop referral information to integrate with Epic.
- **eConsultation:** Establish a virtual consultation program with each specialty service to enable Leverage Technology to expand the reach and convenience of specialty services.
- **Virtual Visits:** Reduce ED utilization for ambulatory sensitive conditions by providing access via video/telephone visits with nurses and providers.
- **Clinical Care Pathways:** Improve quality and safety by reducing variability and streamline care delivery.
- **Opioid Clinical Practice Work group:** Create system-wide standardization surrounding the practices around prescribing opioids, treating acute and chronic pain.
- **EPIC Healthy Planet** – Implementation of healthy planet to drive more effective decision support, risk stratification, analytics, and proactive outreach campaigns.
- **Tumor marker SafetyNet Program**: Identify patients with abnormal tumor markers and ensure warm handoff to the care team.
- **Radiology SafetyNet program**: Surveillance of radiology results that require follow-up testing and intervene if the cases that are past due.
- **Automated referral of suspected lung mass**: Refer patients with suspected lung mass to oncology lung diagnostic clinic for follow-up.
- **Medication Management**: Optimize the medication refill and renewal process to ensure continuity of chronic medications. Automation of refill process through phone calls and text messaging
- **After Visit Summary Optimization** (AVS): Enhance the way in which this document can be easy to understand and effectively engage patients in their care.
- **Patient Portal**: Increase use of patient portal/mychart for refills, appt requests, test results and other communications.
- **Management of High-Risk Patients**: Risk stratification using validated criteria to identify high risk patients and do focused intervention using care management strategies to reduce risk.

## COMMITTEE EXPERIENCE

- Medical Executive Committee
- Quality of Care and Patient Safety Committee
- Utilization Review Committee
- Medical and Quality of Care expert for DHS and DOJ
- Coordination of Care Committee
- Post-Acute Network
- High Utilizer Committee
- Center for Healthcare Innovation and Value

# EDUCATION

- Master of Business Administration | University of Tennessee Knoxville, Tennessee - Hybrid 2006
- Healthcare Informatics AMIA 10x10 | University of Alabama -2008
- Family Medicine Residency | Forest Park Hospital St. Louis, Missouri -2005
- General Medicine Residency | SRMC, Chennai. 2000
- Medicine Bachelor/Bachelor of Surgery (Medical School - MD equivalent) | RMMC, Chennai - 1997
- Population Health Essentials | Thomas Jefferson University
- Toyota U.S. Lean Leadership | Lean Enterprise Institute & Toyota Production System - 2018
- Virginia Mason - Lean Principles – Creating flow in the Ambulatory Setting
- Clinical Safety & Effectiveness | UT Southwestern - 2012
- Artificial Intelligence in Health Care| MIT Sloan School of Management Online - 2024

# LEADERSHIP TRAINING

Situational Leadership |Leading at the Speed of Trust |Executive competencies of Foster Engagement | Strategic Problem Solving and Decision Making | Systematic Approach to Getting Things Done | Executive Communication and Influence | Onstage Leadership | Physician Leadership

# PRESENTATIONS AND PUBLICATIONS

- Book Chapter: Electronic Health Records in Public Health Behind Bars - From Prisons to Communities, 2nd Ed. 2021
- Dallas-Fort Worth Region High ED Utilizers Exploratory Analysis Using Multi-Organizational Data - America's Essential Hospitals (AEH) VITAL 2019
- Leveraging Technology to Improve Access to Specialty Care (Oral Presentation -Vizient Deep Dive Conference) - American Journal of Medical Quality May 15, 2019
- Collaborative Coalition for Collective Community Health Impact (Poster Presentation -Vizient Deep Dive Conference) - American Journal of Medical Quality, May 15, 2019
- Value Based Care (vCare) Model Demonstration Project. Vizient Value Based Care Symposium, March 23, 2017

# Exhibit D

# Sara Susana Kariko, M.D., MPH
sarassmith@yahoo.com

## POST-DOCTORAL TRAINING

| | |
|---|---|
| 2006-2009 | **Montefiore Medical Center, Bronx, NY**<br>Internal Medicine Residency<br>Albert Einstein College of Medicine |
| December 2009 | **HIV Mini-Residency, University of Miami, FL**<br>One-week program that provided extensive HIV clinical training affiliated with the Florida/Caribbean AETC. |

## EDUCATION

| | |
|---|---|
| 2018-2021 | **Johns Hopkins University School of Public Health**<br>MPH Degree |
| 2002-2006 | **Michigan State University College of Human Medicine**<br>MD Degree |
| 1993-2000 | **Michigan State University**<br>BS with Honors, Zoology |

## LICENSURE AND CERTIFICATIONS

**ABIM Certification** (August 2009) (May 2019)
**HIV Specialist** (American Academy of HIV Medicine-December 2010)
**WA State License** MD 60080613 (Expires 6/27/2026)
**CA State License** C172508 (Expires 5/31/2027)
**DEA License** (Expires 12/31/2028)

## EMPLOYMENT EXPERIENCE

| | |
|---|---|
| 6/1/2022-current | **Correctional Health Care Consultant**<br>Providing litigation support on correctional healthcare issues via expert witness reports and testimony.<br><br>Recent case and consultant work include:<br>• *Jacob Spencer Frey v. Centurion Health et al.* (Case No. 1:23-cv-00141) |

- *Azor-El et al. v. New York City Dept. of Corrections* (Case No.1:20-cv-03650-KPF)
- Consultant to Municipal Resource Group, LLC in connection with provision of medical care at Sacramento County Jail. Reviewed and opined on medical care provided to incarcerated patients.
- *Johnson v. Wexford et al.* (Case No. 1:21-cv-01234-CSB-EIL). Provided expert report and testimony.
- *Beppler v. Wexfor, et al.* (Case No. 22-3052). Provided expert report.
- *Steven Baylock v. Oregon Department of Corrections* (Case No. 6:23-cv-00500-CL). Provided opinion and expert report.
- *Mansoori v. Armadore* (Case No. 22-cv-1642). Retained by Cook County for expert report and testimony.
- *Mansoori v. Squires et al.* (Case No. 21-cv-5881). Retained by Cook County for expert report and testimony.

| | |
|---|---|
| 10/1/2023-5/18/25 | **Court Monitor for the State of Arizona**<br>Performed monthly reviews of medical records and conducted mortality reviews to ensure clinical care to the incarcerated population in the state of Arizona was clinically appropriate and met the measures set forth in the injunction. Submitted findings to the court on the sufficiency of care provided. |
| 5/29/23-4/23/24 | **International Health Care Consultant**<br>Worked as an independent Health Care Consultant at Welwitschia Private Hospital in Namibia, creating and revising hospital policies and guidelines. |
| 3/1/2022-6/1/2022 | **Washington State Department of Corrections**<br>Remote Contract Position<br>**Title: Physician 3**<br>After resigning from the Chief Medical Officer position due to international relocation, I offered to assist as a consultant for 3 months to assist with writing Department policies and procedures. |
| 10/1/2018-2/28/22 | **Washington State Department of Corrections**<br>Full time position, 40+hours per week<br>Location: Tumwater, Washington<br>**Title: Chief Medical Officer**<br>This role had the overall responsibility and authority for establishing, monitoring and evaluating standards of clinical care and practice within the Department of Corrections. Additional responsibilities included: |

influencing both internal and external stakeholders; developing and implementing systemic processes to assess quality of delivered services; chairing the Department Coordinated Quality Improvement Program; partnering with other state agencies and participating in state-wide medical director group meetings; establishing staff development and training needs and leading training implementation programs; monitoring expenditures and implementing cost-containment strategies; managing and monitoring clinical staffing needs. This position required patience, flexibility, strategic thinking and long-term vision to create culture change throughout the agency. It also required team building and cross discipline appreciation as well as understanding potential conflicts involving health care goals in a custody environment and managing those conflicts in a productive and respectful way.
**Directly supervised**: Deputy Chief Medical Officer (1), Facility Medical Directors (8), Chief Quality Officer (1), Chief of Dentistry (1), Chief of Pharmacy (1), Chief of Nursing (1), Infectious Disease Physician (1), Addiction Specialist (1).

1/16/2017-9/30/2018   **Washington State Department of Corrections**
Full time position, 40+hours per week
Location: Tumwater, Washington
**Title: Deputy Chief Medical Officer**
Primary responsibilities included: oversight of health care services for all incarcerated individuals within the Department; develop and implement policies, protocols, procedures and guidelines to provide effective and evidence-based care; promote timely access to appropriate community health care services; manage and lead state-wide quality improvement projects.
**Directly Supervised**: State ADA Coordinator (1), State Dietician (1), Specialty Physician Consultants (2), Physical Therapy Manager (1), State Optometrists (2).

9/4/2014-1/15/2017   **Washington State Department of Corrections**
Full time position, 40+hours per week
Location: Aberdeen, Washington
**Title: Facility Medical Director**
Provided clinical and administrative direction and oversight to all medical providers at the facility; planned health care delivery; lead quality improvements; participated in clinical committees.
**Directly supervised**: Facility practitioners (physician and advanced practitioners) (4).

10/1/2013-9/3/2014   **University of Washington Neighborhood Clinics**
Full time position, 40+hours per week
Locations: Kent, Washington and Seattle, Washington
**Titles: Internal Medicine Physician, Chief of Belltown Neighborhood Clinic**
Provided leadership and management oversight in partnership with the clinic manager by overseeing all aspects of clinical operations. Ensured that the highest standards of patient care were delivered by the physicians, advanced practitioners, and staff.
**Directly supervised**: Approximately 10 Providers (Physicians and Advanced Practitioners)

7/1/2011-9/30/2013   **Washington State Department of Corrections**
Full time position, 40 hours per week
Location: Aberdeen, Washington
**Title: Facility Medical Director**
Medical director at Stafford Creek Correctional Center. Provided oversight of outpatient and inpatient clinical care, including supervision of advanced practitioners and physician providers. Responsible for implementing quality improvement measures, running weekly provider and utilization review meetings. In charge of provider education and management of patients with Hepatitis C.
**Directly supervised**: facility practitioners (physician and advanced practitioners) (4)

8/1/2009-6/10/2011   **St. Thomas East End Medical Center**
Full time position, 40 hours per week
Location: St. Thomas, Virgin Islands
**Title: Internal Medicine Physician, HIV Specialist**
Started an Internal Medicine practice within an established underserved outpatient FQHC. Provided routine medical and HIV care to adults and adolescents.
**Directly supervised**: none

10/1/2009-6/10/2011  **Queen Louise Home for the Aged**
Contract Part time position
Location: St. Thomas, Virgin Islands
**Title: Medical Director**
Medical director at a nursing home facility. Managed and coordinated medical and urgent care for elderly patients. Also involved in reviewing health care plans, evaluating nursing care and implementing changes for improvement.

## PUBLICATIONS

| | |
|---|---|
| 2020 | Wallace M, Hagan L, Curran KG, et al. COVID-19 in Correctional and Detention Facilities-United States, February-April 2020. CDC MMWR Morbidity and Mortality Weekly Report 2020; 69:587-590. |

## PRESENTATIONS

| | |
|---|---|
| 2020 | **"Contact Tracing Washington State Department of Corrections: Lessons Learned during the COVID-19 Pandemic,"** National Academies of Sciences, Engineering, Medicine. August 20, 2020. |
| 2020 | **"Exploring the Social Determinants of Health,"** Gage Health Institute. November 19, 2020. |
| 2020 | **"The Physician Leader,"** Gage Health Institute. November 20, 2020. |

## PROFESSIONAL MEMBERSHIPS

American College of Physicians
American College of Correctional Physicians

# Exhibit E

1   KEKER, VAN NEST & PETERS LLP
    STEVEN P. RAGLAND - # 221076
2   sragland@keker.com
    CODY S. HARRIS - # 255302
3   charris@keker.com
    CARLOS C. MARTINEZ - # 354616
4   cmartinez@keker.com
    LISA C. LU - # 364259
5   llu@keker.com
    633 Battery Street
6   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
7   Facsimile:    415 397 7188

8   CALIFORNIA COLLABORATIVE FOR
    IMMIGRANT JUSTICE
9   PRIYA ARVIND PATEL - # 295602
    priya@ccijustice.org
10  MARIEL VILLARREAL - # 317048
    mariel@ccijustice.org
11  1999 Harrison Street #1800
    Oakland, California 94612
12  Tel: (650) 762-8990

    PRISON LAW OFFICE
    MARGOT MENDELSON - # 268583
    mmendelson@prisonlaw.com
    TESS BORDEN - MJP # 805022, pro hac vice
    tess@prisonlaw.com
    PATRICK BOOTH - # 328783
    patrick@prisonlaw.com
    ALISON HARDY - # 135966
    ahardy@prisonlaw.com
    RANA ANABTAWI - # 267073
    rana@prisonlaw.com
    1917 Fifth Street
    Berkeley, California 94710-1916
    Tel.: (510) 280-2621

    AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
    KYLE VIRGIEN - # 278747
    kvirgien@aclu.org
    FELIPE HERNANDEZ - # 338468
    npp_fhernandez@aclu.org
    MARISOL DOMINGUEZ-RUIZ - # 345416
    mdominguez-ruiz@aclu.org
    425 California Street, 7th Floor
    San Francisco, CA 94104
    Tel.: (415) 343-0770

    CARMEN IGUINA GONZALEZ - # 277369
    ciguinagonzalez@aclu.org
    915 15th Street, NW, 7th Floor
    Washington, DC 20005
    Tel.: (202) 393-4930

18  *Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri*
19  *Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia*
    *and all others similarly situated*

20              UNITED STATES DISTRICT COURT

21            NORTHERN DISTRICT OF CALIFORNIA

22  FERNANDO GOMEZ RUIZ; FERNANDO          Case No. 3:25-cv-09757-MMC
    VIERA REYES; JOSE RUIZ CANIZALES;
23  YURI ALEXANDER ROQUE CAMPOS;           **DECLARATION OF MARGOT**
    SOKHEAN KEO; GUSTAVO GUEVARA           **MENDELSON IN SUPPORT OF**
24  ALARCON; and ALEJANDRO MENDIOLA        **PLAINTIFFS' PROPOSAL RE: COURT-**
    ESCUTIA, on behalf of themselves and all   **APPOINTED MONITOR**
25  others similarly situated,
                                           Judge:      Hon. Maxine M. Chesney
26                          Plaintiffs,
                                           Date Filed:  November 12, 2025
27          v.

28

1  U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; TODD M. LYONS,

2  Acting Director, U.S. Immigration and
Customs Enforcement; SERGIO

3  ALBARRAN, Acting Director of San
Francisco Field Office, Enforcement and

4  Removal Operations, U.S. Immigration and
Customs Enforcement; U.S. DEPARTMENT

5  OF HOMELAND SECURITY; KRISTI
NOEM, Secretary, U.S. Department of

6  Homeland Security,

7                  Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARGOT MENDELSON IN SUPPORT OF PLAINTIFFS' PROPOSAL RE:
COURT-APPOINTED MONITOR
Case No. 3:25-cv-09757-MMC

6011760

I, Margot Mendelson, declare as follows:

1.      I am an attorney licensed to practice in the State of California. I am the Executive Director of the Prison Law Office, and I represent the Plaintiffs in this action. I submit this declaration in support of the Plaintiffs' Proposal re Court Appointed Monitor. I have personal knowledge of the facts set forth herein, and if called to testify as a witness thereto under oath, I could competently do so.

**Standard Terms of Medical Monitoring**

2.      The Prison Law Office has been counsel for the plaintiff class in active litigation regarding conditions of confinement in five county jails in California. *Young et al. v. Cnty. of Contra Costa*, No. 5:20-cv-06848-NC (N.D. Cal. 2020); *Mays v. Cnty. of Sacramento*, No. 2:18-cv-02081-TLN-CSK (E.D. Cal. 2018); *Chavez et al. v. Cnty. of Santa Clara*, No. 5:15-cv-05277-NC (N.D. Cal. 2015); *Gray et al. v. Cnty. of Riverside*, No. 5:13-cv-00444 (C.D. Cal. 2013); *Hall et al. v. Cnty. of Fresno*, No. 1:11-cv-02047-JLT-BAM (E.D. Cal. 2011). In each of these cases, the district court appointed a monitoring team to assess compliance with respect to the delivery of medical care. In each of these cases, the medical monitor has remote access to the county jail's electronic medical record, subject to a protective order.

3.      The Prison Law Office is also counsel for the plaintiff class in litigation regarding the delivery of health care in statewide class actions in California prisons and Arizona prisons. In each of these cases, the court-appointed medical monitoring team has remote access to the prison system's electronic medical record, subject to a protective order. *See Jensen v. Thornell*, No. 2:12-cv-00601-ROS (D. Ariz. 2012) (remote electronic medical record access for court-appointed monitoring team); *Plata v. Newsom*, No. 4:01-cv-01351-JST (N.D. Cal 2001) (remote electronic medical record access for court-appointed receiver); *Coleman v. Newsom*, No. 2:90-cv-00520-TLN-SCR (E.D. Cal. 1990) (same).

4.      In my experience, it is standard for court-appointed medical experts to have remote access to a correctional system's electronic medical records. Without remote access, it is very difficult to comprehensively review large quantities of medical records. I know this because Plaintiffs' counsel frequently reviews medical records in PDF versions in the early stages of case

1

DECLARATION OF MARGOT MENDELSON IN SUPPORT OF PLAINTIFFS' PROPOSAL RE:
COURT-APPOINTED MONITOR
Case No. 3:25-cv-09757-MMC

6011760

development. This is labor intensive and inefficient and often requires reading duplicate records because of the manner in which they are converted to PDF files. Indeed, for that reason, Plaintiffs' counsel also has remote electronic access to medical records in many of our cases. *See Mays v. Cnty. of Sacramento*, No. 2:18-cv-02081-TLN-CSK (E.D. Cal. 2018); *Gray et al. v. Cnty. of Riverside*, No, 5:13-cv-00444 (C.D. Cal. 2013); *Jensen v. Thornell*, No. 2:12-cv-00601-ROS (D. Ariz. 2012); *Hall et al. v. Cnty. of Fresno*, No. 1:11-cv-02047-JLT-BAM (E.D. Cal. 2011); *Armstrong v. Newsom*, No. 4:94-cv-02307-CW (N.D. Cal. 1994); *Coleman v. Newsom*, No. 2:90-cv-00520-TLN-SCR (E.D. Cal. 1990).

5.    In each of the Prison Law Office cases described in paragraphs 2-4 above, the parties are permitted to engage in *ex parte* communications with the court-appointed medical monitors. In my experience, this is critical to ensure that the medical monitor can ask Defendants about their healthcare system and that Defendants can respond with candor. It also enables counsel for Plaintiffs to refer patients of concern to the External Monitor when those patients may not want their names disclosed to Defendants for fear of retaliation.

6.    In my experience, it is standard for medical monitors and other court-appointed experts in my field to submit written reports to the Court; that is the principal way they share their findings with the Court and the parties. It is also standard for the parties to have an opportunity to review and provide comment on the draft reports before the reports are finalized, which the monitor or expert then has discretion to incorporate or reject as they like. In each of the Prison Law Office cases identified in paragraph 2 above, this is the standard practice.

7.    In my experience, clarity about the terms of an order appointing an expert monitor leads to more efficient and effective monitoring. Lawyers at my office often spend weeks negotiating the precise terms of a court-appointed monitor's access, including physical access to the facility, access to patient records, and access to the correctional entity's staffing records, systems, and internal audits. Even in cases where the parties have a robust and productive relationship, questions frequently arise about the scope of the court-appointed monitor's access.

////

////

DECLARATION OF MARGOT MENDELSON IN SUPPORT OF PLAINTIFFS' PROPOSAL RE: COURT-APPOINTED MONITOR
Case No. 3:25-cv-09757-MMC

6011760

**Inability to Meet and Confer**

8.      Plaintiffs have attempted in good faith to meet and confer to reach agreement on an External Monitor candidate and on a joint proposal regarding the External Monitor's access. On February 18, 2026, Plaintiffs' counsel wrote to counsel for Defendants, Savith Iyengar, to inform him that proposed Dr. Marc Stern, MD, MPH, FACP, attached his CV, and alerted him that they were preparing a proposed order regarding Mr. Stern's appointment, which they would share with him shortly. Plaintiffs proposed scheduling the court-ordered meet-and-confer for Monday, February 23, and asked Mr. Iyengar to provide comments on the draft proposed order before then. On February 19, Plaintiffs' counsel provided Mr. Iyengar their draft proposed order.

9.      Despite requests for confirmation of receipt and scheduling, Plaintiffs' counsel did not hear from Mr. Iyengar until Friday, February 20 at 3:00 p.m. At that time, Mr. Iyengar informed Plaintiffs' counsel that Defendants would not consent to the appointment of Dr. Stern, would not join in a proposed order with Plaintiffs, and would not engage in any live meet and confer, insisting instead on conducting all communications in writing. Mr. Iyengar proposed the names of five other doctors for the External Monitor position.

10.      On Saturday, February 21, Plaintiffs' counsel provided Mr. Iyengar three alternate candidates, in an attempt to reach agreement on the monitor. They informed him that they would provide a final response on his five candidates by Monday but were offering these additional names in the interim given the time sensitivity. On Monday, February 23, Plaintiffs' counsel informed Mr. Iyengar they could not consent to his proposed candidates. Plaintiffs' counsel asked Mr. Iyengar to provide his proposed order by Tuesday morning, as Plaintiffs had done the previous week, so that Plaintiffs could prepare a response. Mr. Iyengar did not provide a proposed order for Plaintiffs review before filing and did not indicate whether Defendants would substantively oppose any of the terms of proposed order Plaintiffs sent him on February 19.

11.      Attached as **Exhibit 1** is a true and correct copy of the relevant correspondence between counsel regarding the appointment of the External Monitor since the Court's February 10 Order.

////

1    Executed on February 24, 2026, at Berkeley, California.  I declare under penalty of

2  perjury under the laws of the United States that the foregoing is true and correct.

3

4                                    /s/ Margot Mendelson
                                     _____
5                                    MARGOT MENDELSON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARGOT MENDELSON IN SUPPORT OF PLAINTIFFS' PROPOSAL RE:
COURT-APPOINTED MONITOR
Case No. 3:25-cv-09757-MMC

6011760

EXHIBIT 1

| From: | Tess Borden |
|---|---|
| To: | Iyengar, Savith (USACAN) |
| Cc: | Cody S. Harris; Steven Ragland; Margot Mendelson; Patrick Booth; Lisa C. Lu; Carlos C. Martinez; Carmen Iguina Gonzalez; Priya Patel; Laura Lind |
| Subject: | RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor |
| Date: | Tuesday, February 24, 2026 2:11:27 PM |
| Attachments: | Stern CV.pdf |
| | Kariko CV.pdf |

[EXTERNAL]



Hi Savith,

Thank you for providing the explanations in your email yesterday evening. We're following up now on your request for information about our objections to your candidates. We have also been guided by the Court's direction and have sought candidates who can act as a "qualified, independent, third-party[.]" We object to your five candidates because they appear to have served almost exclusively as experts retained by corrections entities/defendants.

We previously shared CVs with you for four doctors. Dr. Stern and Dr. Kariko have subsequently provided slightly updated resumes. We wanted you to have those updates and are attaching here the versions we intend to file at 5pm.
Please let us know if you'd like to discuss anything further.
Tess

**Tess Borden**
Supervising Staff Attorney*
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710
(510) 280-2623
tess@prisonlaw.com
*Pronouns: she/her*
*Registered Legal Aid Attorney; MJP No. 805022

---

**From:** Cody S. Harris <CHarris@keker.com>
**Sent:** Tuesday, February 24, 2026 11:31 AM
**To:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>; Tess Borden <tess@prisonlaw.com>; Laura Lind <LLind@keker.com>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Savith,

A 5:00 PM filing is fine with us.

Regards,
Cody

---

**Cody S. Harris**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2294 direct | 415 391 5400 main
charris@keker.com | vcard | keker.com

---

**From:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Sent:** Tuesday, February 24, 2026 9:33 AM
**To:** Cody S. Harris <CHarris@keker.com>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>; Tess Borden <tess@prisonlaw.com>; Laura Lind <LLind@keker.com>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

[EXTERNAL]

---

Cody and Team:

Confirming that filing our proposals at the same time today works for Defendants, although the parties would need to do so one hour later than you proposed, at 5:00 p.m. PT.  Please let me know if that works for you.

Thanks,
Savith

Savith Iyengar | Assistant U.S. Attorney
450 Golden Gate Avenue, Ninth Floor
San Francisco, CA 94102
savith.iyengar@usdoj.gov
(415) 436-7018 (office)
(415) 912-6455 (cell)

---

**From:** Iyengar, Savith (USACAN)
**Sent:** Monday, February 23, 2026 6:38 PM

**To:** 'Cody S. Harris' <CHarris@keker.com>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>;
Patrick Booth <patrick@prisonlaw.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez
<CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel
<priya@ccijustice.org>; Tess Borden <tess@prisonlaw.com>; Laura Lind <LLind@keker.com>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Hi Cody,

Defendants have been meeting and conferring in good faith about the candidates, and
proposed their five candidates as alternatives to the one candidate Plaintiffs proposed
with the understanding that Plaintiffs would let us know if there's any further information
we can provide to help us reach a consensus.  To that end, we promptly responded with
contact information for one of our candidates when Plaintiffs requested it.

With respect to each candidate, we've been guided by the Court's direction in the order
requiring a "qualified, independent, third-party monitor."  For that reason, Defendants
have concerns about Dr. Stern having been retained by plaintiffs or adverse to
government defendants in most of the cases in which he's served as an expert.  Of
significance, in one of those cases, a district court discounted Dr. Stern's methodology
as both based on a limited sample size and not based on accepted national detention
standards.  *See Dockery v. Hall*, 443 F. Supp. 3d 726, 738–39 (S.D. Miss. 2019).  With
respect to Plaintiffs' additional three candidates, Defendants have been working in good
faith to evaluate them, but Plaintiffs only proposed them over the weekend.  Defendants
share similar concerns, though, as Dr. Anandkumar appears to have limited experience,
which is also primarily plaintiff-side or adverse to government defendants, and Dr.
Sadacharan and Dr. Kariko appear to have little or no experience serving as monitors.
Dr. Sadacharan also appears to have limited experience as a medical expert, and was
also cited as being retained to contribute to a recent report alleging "Preventable Deaths
in U.S. Immigration Detention."  For these reasons, Defendants have not been able to
agree that these candidates are consistent with the Court's order for a "qualified,
independent, third-party monitor."

With respect to Defendants' proposed order, which has not yet been finalized, we expect
that — barring agreement on a candidate — it will list Defendants' candidates and mirror
the terms of the Court's order defining the scope of the external monitor (i.e., that
Defendants will provide access to the External Monitor for a period of 120 days, subject
to renewal by court order, to ensure compliance with Paragraph (1) of the Order and the
provision of constitutionally adequate health care; the External Monitor will ensure
compliance with the Order and will monitor its implementation, including through review
of medical records and on-site inspection and interviews with patients and staff; and

Defendants will pay the External Monitor's reasonable rate).

With respect to our meet-and-confer process, we disagree with your continued characterization of the Court's directions at the February 6 hearing, but in any event, the Court's order resolves all doubt as to that issue. *See* ECF No. 72 at 3:9–12. We also disagree that our request for a written meet-and-confer process is driven by an isolated incident, and believe that a written record will help the parties avoid multiple disputes here and in the future. Indeed, there are often challenges where only one counsel attends for one side, and multiple counsel attend for the other. Even counsel acting in good faith can have "different memories and recollections" of the same discussions. For example, Plaintiffs' counsel here submitted a declaration conveying an impression of the parties' last telephonic discussion that Defendants' counsel expressly disputes (i.e., whether Defendants' counsel ever mentioned a potential motion to transfer on that call). As another example, Plaintiffs' counsel emailed Plaintiffs' proposed order to the Court without mentioning that Defendants' counsel had <u>not</u> approved it as to form, apparently based on Plaintiffs' misimpression that the Court had orally permitted Plaintiffs to "not make a representation about your agreement as to the form of the proposed order because we did not know the extent of any outstanding disagreement," as stated in your separate email to me. In fact, the Court required Plaintiffs to "make sure" Defendants' counsel approved the proposed order as to form "before you submit it to me," which meant — at the very least — to state that it had <u>not</u> been approved as to form at the time of submission. *See* Tr. 171:14–18 ("That requires you to submit to me a revised form of order, show it to Mr. Iyengar before you submit it to me to make sure — and this is only for his approval as to form, not as to content, but as to form, that it matches what I said I was going to do.").

All that said, we're happy to continue meeting and conferring here if it would be helpful in reaching a consensus about one of our proposed candidates, and also welcome any information you can provide about your objections to our candidates. And finally, with respect to filing our proposals at the same time tomorrow — 4:00 p.m. PT — I think it's generally fine for the parties to file at the same time, but I'll need to confirm that the specific time you proposed works for Defendants, and not a later one.

Thanks,
Savith

Savith Iyengar | Assistant U.S. Attorney
450 Golden Gate Avenue, Ninth Floor
San Francisco, CA 94102
savith.iyengar@usdoj.gov

(415) 436-7018 (office)

(415) 912-6455 (cell)

---

**From:** Cody S. Harris <CHarris@keker.com>
**Sent:** Monday, February 23, 2026 1:16 PM
**To:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>; Tess Borden <tess@prisonlaw.com>; Laura Lind <LLind@keker.com>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Savith:

I write to follow up on your candidates and discuss next steps.

First, Plaintiffs do not consent to the five individuals you identified in your February 20 email. Although we would ordinarily propose a call to discuss our reasons, you have refused to hold telephonic meet-and-confer calls with us, and your written correspondence provided no reasons whatsoever for Defendants' rejection of Dr. Marc Stern. In light of Defendants' refusal to consent to Dr. Stern's appointment, we provided three additional candidates for Defendants' consideration on February 21. As Tess Borden wrote, we ask that you provide a response on those three additional candidates by tomorrow at 9:00 AM.

Second, you stated that you will not be "submitting a proposed order jointly with plaintiffs." Please confirm whether Defendants will be submitting their own proposed order. If you will be, we request that Defendants share that proposed order with us by COB today. As you know, in accordance with the Court's understanding that the parties would meet and confer in good faith, *see* Hr'g Tr. at 52:21-53:3, 62:17-25 (Feb. 6, 2026), Plaintiffs provided you with a draft proposed order on February 19. We request the same courtesy.

Third, I want to make clear that your refusal to meet and confer by telephone is counterproductive and, we believe, contrary to the Court's expectations. The parties have previously conducted productive meet-and-confer calls over the phone. Your email's reference to "different memories and recollections" quotes an email that I sent on February 9 about the parties' different recollections of the Court's ruling regarding when the parties should hold a Rule 26(f) conference. The parties could not discuss those recollections because you refused to telephonically meet-and-confer with us

about that proposed order. Having differing recollections of a single point in a 4.5-hour hearing, without the benefit of a transcript, is hardly grounds to refuse to speak to opposing counsel from that point forward. And it bears noting that Plaintiffs' recollection of that hearing was correct. *See* Hr'g Tr. at 174:16-176:10.

Finally, for the convenience of the Court, **we propose that the parties file their respective proposals tomorrow at 4:00 PM Pacific**. The Court has appreciated earlier filings, and it would give the parties time to provide the Court with courtesy printed copies as well. Please let us know if you are amenable to that schedule.

Regards,

Cody

**Cody S. Harris**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2294 direct | 415 391 5400 main
charris@keker.com | vcard | keker.com

---

**From:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Sent:** Monday, February 23, 2026 7:00 AM
**To:** Tess Borden <tess@prisonlaw.com>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Cody S. Harris <CHarris@keker.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>
**Subject:** Re: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

[EXTERNAL]

---

Thank you Tess. Here's Dr. Thomas's contact information:

    **DAVID L. THOMAS, MD, JD, EDD**
    5938 Tidewood Avenue
    Sarasota. FL. 34231
    Telephone: 954-732-0294
    Facsimile: 954-262-2250
    Email: DThomasmdjdedd@gmail.com

Thanks,
Savith

**From:** Tess Borden <tess@prisonlaw.com>
**Sent:** Saturday, February 21, 2026 7:00:26 PM
**To:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Cody S. Harris <CHarris@keker.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Savith,

In addition to Dr. Stern, we have three proposed monitors for your consideration:

- Dr. Sara Kariko, MD, MPH
- Dr. Muthusamy Anandkumar, MD, MBA, CHCQM, FABQAURP, CCHP
- Dr. Radha Sadacharan, MD, MPH, FAAFP

Please find their CVs attached.

We will provide you our final position on your proposed candidates by Monday morning. Given the time sensitivity, we are providing you these additional candidate names now. We ask that you let us know by Tuesday at 9am if you will consent to any of these three. We remain available to discuss our proposals Monday or this weekend.

Best,
Tess

**Tess Borden**
Supervising Staff Attorney*
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710
(510) 280-2623
tess@prisonlaw.com
*Pronouns: she/her*
*Registered Legal Aid Attorney; MJP No. 805022

**From:** Tess Borden <tess@prisonlaw.com>
**Sent:** Friday, February 20, 2026 3:50 PM
**To:** 'Iyengar, Savith (USACAN)' <Savith.Iyengar@usdoj.gov>

**Cc:** 'Steven Ragland' <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; 'Cody S. Harris' <CHarris@keker.com>; 'Lisa C. Lu' <LLu@keker.com>; 'Carlos C. Martinez' <CMartinez@keker.com>; 'Carmen Iguina Gonzalez' <ciguinagonzalez@aclu.org>; 'Priya Patel' <priya@ccijustice.org>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Savith,

I'm confirming receipt of your email.

The CV for Dr. Thomas does not contain contact information. Would you please send that as soon as possible?

Tess

---

**From:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Sent:** Friday, February 20, 2026 3:02 PM
**To:** Tess Borden <tess@prisonlaw.com>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Cody S. Harris <CHarris@keker.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>
**Subject:** RE: [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Hi Tess,

Thank you for your message, and thanks to you and Steven for participating in this meet and confer process regarding the selection of the external monitor.

Defendants do not agree with Dr. Stern's selection, and instead propose the following five individuals for discussion:

- Dr. David L. Thomas, MD, JD, EdD
- Dr. Jane Leonardson, MD, CCHP
- Dr. Carl Keldie, MD, CCHP
- Dr. Randall Stoltz, MD, CPI, CCHP
- Dr. David Mathis, MD, CCHP-P, FAAFP

Their CVs are attached.  Please let me know by Monday at noon whether plaintiffs consent to any of these individuals instead of Dr. Stern.

Thereafter, the parties can separately present their proposal(s) to the Court on Tuesday, including attaching the CV(s) of their proposed candidate(s) and submitting an appropriate proposed order with their candidate(s).  Defendants will not be submitting a proposed order jointly with plaintiffs.  And as before, given the importance of having a clear record of what the parties' respective positions are (and prior history of "different memories and recollections" of oral discussions), we require that meet and confers occur in writing (to the extent necessary beyond determining whether plaintiffs agree to any of defendants' five proposed candidates).

Thanks,
Savith

Savith Iyengar | Assistant U.S. Attorney
450 Golden Gate Avenue, Ninth Floor
San Francisco, CA 94102
savith.iyengar@usdoj.gov
(415) 436-7018 (office)
(415) 912-6455 (cell)

---

**From:** Tess Borden <tess@prisonlaw.com>
**Sent:** Thursday, February 19, 2026 7:27 PM
**To:** Iyengar, Savith (USACAN) <Savith.Iyengar@usdoj.gov>
**Cc:** Steven Ragland <SRagland@keker.com>; Margot Mendelson <mmendelson@prisonlaw.com>; Patrick Booth <patrick@prisonlaw.com>; Cody S. Harris <CHarris@keker.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>
**Subject:** [EXTERNAL] RE: Ruiz v. ICE - appointment of monitor

Savith,

As Steven noted, we have prepared a proposed order of appointment for the external monitor, which I attach here.

Would you please confirm receipt of this email and let us know if you will provide your position as to Dr. Stern by COB tomorrow and your comments on the proposed order by noon Monday, as Steven requested below? So we can arrange our schedules, please let us know when you are available Monday to conduct the meet and confer required by the Court's February 10 order.

Thank you,
Tess

**Tess Borden**
Supervising Staff Attorney*
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710
(510) 280-2623
tess@prisonlaw.com
*Pronouns: she/her*
*Registered Legal Aid Attorney; MJP No. 805022

---

**From:** Steven Ragland <SRagland@keker.com>
**Sent:** Wednesday, February 18, 2026 5:19 PM
**To:** Iyengar, Savith (USACAN) <savith.iyengar@usdoj.gov>
**Cc:** Margot Mendelson <mmendelson@prisonlaw.com>; tess@prisonlaw.com; Patrick Booth <patrick@prisonlaw.com>; Cody S. Harris <CHarris@keker.com>; Lisa C. Lu <LLu@keker.com>; Carlos C. Martinez <CMartinez@keker.com>; Carmen Iguina Gonzalez <ciguinagonzalez@aclu.org>; Priya Patel <priya@ccijustice.org>
**Subject:** Ruiz v. ICE - appointment of monitor

Savith:

As you know, we need to present our proposal regarding selection of the external monitor to the Court by Tuesday of next week.  To that end, we propose that Dr. Marc Stern be appointed as the monitor in this matter.  His c.v. is attached.  Please let us know no later than close of business this Friday, February 20, if you consent to Dr. Stern. If not, by COB Friday, please tell us why, whether you plan to propose any other candidates for the role, and, if so, who that will be.

We are preparing a proposed order of appointment for the external monitor to accompany the recommendation of the particular individual to serve.  We will provide that to you by this Friday morning and ask that you provide us any comments by noon on Monday, February 23 and that we schedule a meet and confer call for that afternoon so we can discuss and try to work through any issues.  We suggest 3 pm or thereafter but can also be available that morning if you can provide us comments before noon.

Thank you for your attention to this matter.

Regards,

--Steven

---

**Steven P. Ragland**
Keker, Van Nest & Peters LLP

633 Battery Street
San Francisco, CA 94111-1890
+14157736604 direct | 415 391 5400 main
sragland@keker.com | vcard | keker.com