Dana M. Keene, CA Bar #324993
Shannon L. Knorr, CA Bar #300399
STRUCK LOVE ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dkeene@strucklove.com
sknorr@strucklove.com

Nicholas H. Rasmussen, Bar #285736
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & SMITH, LLP
7647 North Fresno Street
Fresno, CA  93720
Tel: (559) 433-1300
Fax: (559) 433-2300
nrasmussen@mccormickbarstow.com

Attorneys for Intervenor CoreCivic, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FERNANDO GOMEZ RUIZ, et al., | Case No. 3:25-cv-09757-MMC |
| Plaintiffs, | **CORECIVIC, INC.'S EMERGENCY MOTION TO INTERVENE** |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | Date:    April 10, 2026<br>Time:   9:00 a.m.<br>Dept:   Courtroom 7<br>Judge:  Honorable Maxine M. Chesney |
| Defendants, | |
| CORECIVIC, INC., | |
| Intervenor. | |

## <u>NOTICE OF MOTION AND MOTION</u>

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on April 10, 2026 at 9:00 a.m., or soon as may be heard

before the Honorable Maxine M. Chesney in Courtroom 7 of the United States District Court for

the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94103, Intervenor

CoreCivic, Inc. moves the Court to intervene in this action for the limited purposes of appealing

the Court's February 10, 2026 Order and seeking an emergency stay of the Order pending final resolution of the appeal.  CoreCivic agrees that this case should be transferred to the Eastern District of California, where the case should have been filed in the first place.  CoreCivic is not requesting to stay the transfer.

This Emergency Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, and the accompanying declaration and attachments thereto, as well as the papers, evidence, and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court.

DATED this 3rd day of March 2026.

STRUCK LOVE ACEDO, PLC


By /s/ Shannon L. Knorr
Dana M. Keene
Shannon L. Knorr

Nicholas H. Rasmussen
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

*Attorneys for Intervenor CoreCivic, Inc.*

CORECIVIC'S EMERGENCY MOTION TO INTERVENE                    3:25-CV-09757-MMC

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.  Background .......................................................................................... 1

  A.  The Complaint .......................................................................... 1

  B.  Plaintiffs' Motions for Class Certification and a Preliminary Injunction .................................................................................. 2

  C.  February 6, 2026 Hearing ........................................................ 2

  D.  February 10, 2026 Order .......................................................... 4

II.  Legal Standard .................................................................................... 6

  A.  CoreCivic's Motion to Intervene Is Timely ............................. 6

  B.  CoreCivic Has a Right to Intervene to Seek Appellate Review of the Court's Order and to Move for an Emergency Stay of the Order Pending Appeal .................................................................... 8

    1.  CoreCivic Has Significant Protectable Interests that Will Be Practically Impaired by the Court's Order ................... 9

    2.  CoreCivic Is Not Adequately Represented by the Parties ........... 12

  C.  Alternatively, CoreCivic Should Be Permitted to Intervene.................... 14

III.  Conclusion ....................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdurahman v. Alltran Fin., LP,*
    330 F.R.D. 276 (S.D. Cal. 2018) ............................................................................. 8

*Acosta v. Huppenthal,*
    No. 10-cv-623, 2012 WL 1282994 (D. Ariz. Feb. 6, 2012) ...................................... 9

*Alameda Newspapers, Inc. v. City of Oakland,*
    95 F.3d 1406 (9th Cir. 1996) ..................................................................................... 8

*Alaska Airlines, Inc. v. Schurke,*
    No. 11-cv-0616, 2013 WL 12250544 (W.D. Wash. Feb. 25, 2013) ........................ 7

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ................................................................................. 12

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ................................................................................... 14

*Bennett v. Ponce,*
    No. LACV1804996VBFAS, 2019 WL 8589408 (C.D. Cal. Jan. 24, 2019) ............ 10

*Calif. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
    29 F.4th 468 (9th Cir. 2022) .................................................................................... 14

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006) ............................................................................ 10, 11

*Danmark v. CMI USA, Inc.,*
    No. 13-CV-00457-JST, 2016 WL 31674 (N.D. Cal. Jan. 4, 2016) ......................... 10

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) ................................................................................... 14

*Fresno County v. Andrus,*
    622 F.2d 436 (9th Cir. 1980) .......................................................................... 8, 10, 13

*Issa v. Newsom,*
    No. 2:20-cv-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ........................... 10

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
    941 F.2d 970 (9th Cir. 1991) ................................................................................... 11

CORECIVIC'S EMERGENCY MOTION TO INTERVENE         3:25-CV-09757-MMC

*Legal Aid Soc. of Alameda Cnty. v. Brennan*,
608 F.2d 1319 (9th Cir. 1979) ............................................................................ 8, 15

*Montana Wildlife Fed'n v. Haaland*,
127 F.4th 1 (9th Cir. 2025) ........................................................................................ 6

*Nat. Res. Def. Council v. McCarthy*,
No. 16-CV-02184-JST, 2016 WL 3880702 (N.D. Cal. July 18, 2016) ............................ 12, 14

*Pellegrino v. Nesbit*,
203 F.2d 463 (9th Cir. 1953) ................................................................................ 6, 9

*Portland Gen. Elec. Co. v. State by & through Oregon Dep't of State Lands*,
No. 3:22-CV-533-SI, 2022 WL 2527758 (D. Or. July 7, 2022)................................. 13

*S. Yuba River Citizens League and Friends of the River v. Nat'l Marine Fisheries Svc.*,
No. CIV. S–06–2845 LKK/JFM. 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) .................... 7

*Samsung Elecs. Co. v. Panasonic Corp.*, No.,
10-CV-03098-JSW, 2016 WL 11781870 (N.D. Cal. Sept. 26, 2016) ...................................... 10

*SFR Invs. Pool 1, LLC v. Newrez LLC*,
No. 222CV00626GMNEJY, 2023 WL 3341918 (D. Nev. May 10, 2023) .................... 7

*Smith v. Los Angeles Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ........................................................................ 6, 7, 8

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ........................................................... 9, 10, 11, 12

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972)............................................................................................ 12

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977)....................................................................................... 6, 8

*United States ex rel. Killingsworth v. Northrop Corp.*,
24 F.3d 715 (9th Cir. 1994) ................................................................................ 6

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ............................................................................. 7

*United States v. AMC Ent., Inc.*,
549 F.3d 760 (9th Cir. 2008) ........................................................................ 11

*United States v. BNS Inc.*,
858 F.2d 456 (9th Cir. 1988) ........................................................................ 11

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ............................................................... 8, 10

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) ...................................................................... 13

*United States v. State of Oregon*,
   745 F.2d 550 (9th Cir. 1984) ........................................................................ 8

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ............................................................... 12, 13

*Wilderness Soc'y v. United States Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ............................................................. 9, 10

**Rules**

Fed. R. Civ. P. 23(f) .......................................................................................... 6

Fed. R. Civ. P. 24(a)(2) ..................................................................................... 6

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................... 6

Fed. R. Civ. P. 24(b)(3) ................................................................................... 14

Fed. R. Civ. P. 65 ............................................................................................ 10

Fed. R. Civ. P. 71 ............................................................................................ 10

FRAP 4(a)(1) ..................................................................................................... 6

CORECIVIC'S EMERGENCY MOTION TO INTERVENE                    3:25-CV-09757-MMC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

CoreCivic, Inc. moves to intervene in this case for the limited purposes of appealing the Court's February 10, 2026 Order and seeking an emergency stay of the Order pending the appeal. CoreCivic has a right to intervene for these limited purposes to protect its constitutional and contractual rights. Alternatively, CoreCivic should be granted permission to intervene because its participation does not enlarge or defeat the Court's subject matter jurisdiction and the interests CoreCivic seeks to protect share common issues of fact and law with the claims and defenses in this case. As the owner and operator of the Facility that is the subject of the preliminary injunction, CoreCivic has an undisputed interest in the outcome of this litigation.

## I.    Background.

### A.    The Complaint.

Plaintiffs are seven former and current immigration detainees who filed this putative class action on November 12, 2025, challenging their conditions of confinement at the California City Detention Facility ("Facility") in California City. (Dkt. 1, ¶¶ 4–8, 13–24.) Defendants are United States agencies and officials sued in their official capacities, including: (1) U.S. Immigration and Customs Enforcement ("ICE"); (2) U.S. Citizenship and Immigration Services ("USCIS") Acting Director Todd M. Lyons; (3) Enforcement and Removal Operations ("ERO"), San Francisco Field Office Acting Director Sergio Albarran; (4) the Department of Homeland Security ("DHS"); and (5) DHS Secretary Kristi Noem. (*Id.*, ¶¶ 20–24.)

CoreCivic owns the Facility and currently operates it under an agreement with ICE.[1] (Dkt. 45-1, ¶ 3.) Plaintiffs allege that "ICE has contracted with CoreCivic … to run and manage the California City facility," and that "CoreCivic facility administration, staff, and other personnel are agents of Defendant ICE." (Dkt. 1, ¶ 20.) CoreCivic is referenced throughout the Complaint in that capacity. (*Id.*, ¶¶ 3, 20, 25, 26, 27, 28, 29, 30, 31, 32, 33 & nn. 2, 9 16.) Plaintiffs allege that they are subject to unlawful conditions of confinement and provided inadequate health care and

---

[1] CoreCivic was founded in 1983 as Corrections Corporation of America. Its first contract was to house Immigration and Naturalization Service ("INS") detainees. (Exhibit 1, Decl. Warden Chestnut, ¶ 10.) Since 2008, CoreCivic has housed civil immigration detainees at 28 facilities nationwide with more than 1.3 million ICE detainee bookings. (*Id.*, ¶¶ 10–11.)

legal access at the Facility.[2]  (*Id.*, ¶¶ 4–5.)  Plaintiffs bring the following five claims:

- First Claim: Fifth Amendment due process right to non-punitive conditions of confinement.
- Second Claim: Fifth Amendment due process right to adequate medical care.
- Third Claim: First Amendment right to hire and consult with counsel.
- Fourth Claim: Fifth Amendment right to hire and consult with counsel.
- Fifth Claim: Section 504 of the Rehabilitation Act right to disability accommodation.

(*Id.*, ¶¶ 268–294.)  For the First, Second, Third, and Fourth Claims, Plaintiffs sought to certify a class of "[a]ll persons who are now, or in the future will be, in the legal custody of [ICE] and detained at the [Facility]."  (*Id.*, ¶ 254.)  For the Fifth Claim, Plaintiffs sought to certify a subclass of "[a]ll persons who are now, or in the future will be, in the legal custody of [ICE] and detained at California City Detention Facility who have disabilities within the meaning of the Rehabilitation Act."  (*Id.*, ¶ 255.)

**B.    Plaintiffs' Motions for Class Certification and a Preliminary Injunction.**

On December 1, 2025, Plaintiffs moved for class certification and a preliminary injunction. (Dkt. 21; Dkt. 22.)  On January 2, 2026, Defendants moved to transfer venue to the Eastern District of California, where the Facility and virtually all witnesses and evidence are located and where Plaintiffs' claims arose.  (Dkt. 37; Dkt. 56.)  Defendants opposed class certification, arguing that Plaintiffs failed to satisfy Rule 23.  (Dkt. 39; Dkt. 49.)  Defendants also objected to a preliminary injunction, arguing that Plaintiffs failed to establish that they are likely to succeed on the merits of their claims and will be irreparably harmed without a preliminary injunction, and that the balance of equities do not favor a preliminary injunction.  (Dkt. 38; Dkt. 46.)

**C.    February 6, 2026 Hearing.**

At the hearing on Plaintiffs' motions, the Court stated that it was inclined to grant Defendants' motion to transfer the case to the Eastern District of California, noting there was "not

---

[2] CoreCivic vehemently disputes these allegations.

CORECIVIC'S EMERGENCY MOTION TO INTERVENE                    3:25-CV-09757-MMC

really a practical basis for bringing [the lawsuit] here."  (Dkt. 75, R.T. 2/6/26, at 46:10–47:16.)

But the Court was concerned that transferring the case might "sideline" emergency matters, even

though, in a related case pending against CoreCivic in the Eastern District of California, the judge

was familiar with the conditions at the Facility, found that the conditions were improving, and

denied a temporary restraining order expeditiously:

> [W]e know that Judge Thurston has looked at a case that comes out of [the Facility] … She did not necessarily find that the complaints they made were unfounded, but what she said is you haven't shown they're going to get any worse by more people coming in and, a lot of these appear to be just they really weren't set up to start up when they did and now they're --they say they're doing better, and she didn't really address, however, the specific issue, but she clearly was made familiar with the fact of what's going on down there.
>
> She ruled expeditiously.  It's not like the case would just be put on a back burner.

(*Id.* at 32:19–33:8, referring to *Dignity Not Detention, et al. v. City of California, et al.*, 1:25-cv-

01292-KES-CDB (E.D. Cal.).)

      The Court asked Plaintiffs' counsel to identify what relief it could grant if it "transferred

the case, just so that these things are not left dangling even for a limited period of time."  (*Id.* at

49:1–4.)   Among other things, Plaintiffs' counsel suggested appointing, at the Government's

expense, a monitor to enforce compliance with any preliminary injunctive relief the Court orders.

(*Id.* at 51:16–52:17.)

      When the Court reviewed Plaintiffs' proposed order, it was stunned by their sweeping

request:

> [W]ell, I can't do this.  I mean, it's got all kinds of generic things well beyond what you were doing on the medical to start with.  You have things like timely and responsive medical services.  There's no way I can make an order that's just general like that.
>
> How is anybody going to know what they have to comply with? You told me there were a couple of things at the outset that you would deal with on the medical.

(*Id.* at 61:9–19.)  Plaintiffs' counsel stated that the purpose of the monitor was to delegate the

authority to determine whether Defendants have complied with any ordered injunctive relief.  (*Id.*

at 61:20–62:14.)

1    After further discussion, the Court stated that Plaintiffs' proposal was "too loosey goosey"

2    to grant, but that it still wanted to "give them some immediate relief that they can start using," and

3    that "the only way item one is workable is with a monitor and the fastest way is for me to appoint

4    one." (*Id.* at 163:6–25.)

5    During the hearing, the Court did not address the merits of Plaintiffs' motions for class

6    certification or a preliminary injunction.  It did not address whether Plaintiffs were likely to succeed

7    on the merits of their claims, demonstrated irreparable harm absent a preliminary injunction, or

8    showed that the balance of equities tipped in their favor.  Nor did the Court determine whether

9    Plaintiffs established Rule 23's requirements for class certification.  Indeed, Plaintiffs' counsel

10   argued that it was unnecessary to certify a class.  (*Id.* at 49:1–21.)  After a break, however,

11   Plaintiffs' counsel changed his mind and asked the Court to provisionally certify a class because

12   he wanted to avoid having to respond to a "mischievous motion" that the Court's Order was

13   "meaningless" *if* the Government were to release or deport Plaintiffs before the case was

14   transferred. (*Id.* at 70:1–23.)

15   **D.    February 10, 2026 Order.**

16   On February 10, 2026, the Court entered an Order granting in part Plaintiffs' motion for a

17   preliminary injunction and certifying a provisional class.  (Dkt. 72.)  The Order made no factual

18   findings.  Instead, it adopted the following conclusory statement that Plaintiffs proposed in their

19   draft order:

20
21   > Pursuant to Federal Rules of Civil Procedure 65 and 23, and having
     > reviewed the Parties' filings and the argument of counsel, the Court
22   > finds that Plaintiffs have demonstrated that they are likely to prevail
     > on the merits of their claims; that they will suffer irreparable harm
     > if the Court does not issue relief; that the balance of equities tips in
23   > their favor; that the public interest lies in issuing a preliminary
     > injunction; and that all the requirements of Rule 23(a) and 23(b)(2)
24   > have been satisfied.

25   (*Compare* Dkt. 72 at 4, *with* Dkt. 66 at 8.)

26   The Court then ordered Defendants to "ensure" the following:

27   > a.  adequate health care staffing;
     > b.  comprehensive,  documented  medical  intake  screening,
28   >     performed by a qualified medical provider within 12 hours of a
     >     person's arrival;

4

      c.   thorough Initial Appraisals performed timely by a primary care provider;
      d.   timely approval and access to medical specialists;
      e.   timely and responsive emergency services;
      f.   continuity of medical care upon intake and thereafter, including timely completion of active medical orders, access to scheduled provider appointments, and consistent provision of medication;
      g.   timely access to prescribed medications; and
      h.   a responsive "sick call" request system.

(Dkt. 72 at 3.)  To "ensure compliance" with the above, the Court ordered Defendants "to provide access to a qualified, independent, third-party monitor ("External Monitor") for a period of 120 days, subject to renewal by court order":

> The External Monitor will ensure compliance with this Order and will monitor its implementation, including through review of medical records and on-site inspection and interviews with patients and staff. The parties will meet and confer regarding the selection of the External Monitor and will present their proposal(s) to the Court within 14 days of this Order. If the Parties are unable to agree upon the selection, the Court will resolve the dispute and appoint the External Monitor. Defendants are ordered to pay the External Monitor's reasonable rate.

(*Id.* at 3–4.)  The Court then ordered Defendants to "to ensure that detained individuals have timely and confidential access to attorneys, including but not limited to by allowing" the following:

      a.   in-person legal visitation seven days per week from 8:00 a.m. to 8:00 p.m., in private and confidential settings, with each legal visit lasting up to three (3) hours in length;
      b.   contact attorney visits that do not take place through a pane of glass, absent documented security grounds to deny such contact;
      c.   scheduling of confidential legal calls with legal representatives of up to 90 minutes each, to take place within two (2) business days of a request; and
      d.   provision of written information regarding protocols for attorney-client communication to all individuals detained at California City.

(*Id.* at 4.)  The Court further ordered Defendants to "ensure" that detained individuals are provided the following, with limited exceptions:

      a.   Temperature-appropriate clothing and blankets free of charge;
      b.   Reasonable, consistent, and adequate access to adequate outdoor recreation spaces, for at least 1 hour per day, 7 days per week.

(*Id.* at 4.)  The Court waived Plaintiffs' requirement to post a bond.  (*Id.*)

      The Court also provisionally certified a class defined as: "All persons who are now, or in the future will be, in the legal custody of [ICE] and detained at [the Facility]."  (*Id.*)  It stated that

1  "[t]he Provisional Class is certified as to the practices and relief identified in this Order." (*Id.*)

2  Lastly, the Court vacated the deadlines to conduct a Rule 26(f) Conference and to file the

3  Alternative Dispute Resolution ("ADR") Certification and vacated and removed from the calendar

4  the Case Management Conference. (*Id.*)

5  **II.    Legal Standard.**

6  Upon a timely motion, the Court "must permit anyone to intervene who … claims an interest

7  relating to the property or transaction that is the subject of the action, and is so situated that

8  disposing of the action may as a practical matter impair or impede the movant's ability to protect

9  its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

10  Additionally, the Court "may permit anyone to intervene who … has a claim or defense that shares

11  with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

12  **A.    CoreCivic's Motion to Intervene Is Timely.**

13  Where, as here, the purpose of intervention is to seek appellate review, a motion to intervene

14  is "timely if filed within the time limitations for filing an appeal." *United States ex rel.*

15  *Killingsworth v. Northrop Corp.*, 24 F.3d 715, 719 (9th Cir. 1994); *see, e.g.*, *United Airlines, Inc.*

16  *v. McDonald*, 432 U.S. 385, 395–96 (1977) (motion to intervene to appeal denial of class

17  certification timely filed within 30 days after entry of the final judgment); *Pellegrino v. Nesbit*, 203

18  F.2d 463, 466 (9th Cir. 1953) (motion to intervene to appeal timely filed 12 days after learning that

19  party would not appeal).

20  Because the United States and its officers are parties in this case, CoreCivic's Motion is

21  timely filed both within the 45-day period to file a petition for permission to appeal the Court's

22  February 10, 2025 Order granting provisional class certification, *see* Fed. R. Civ. P. 23(f), and the

23  60-day period to file a notice of appeal from that Order's grant of preliminary injunctive relief, *see*

24  FRAP 4(a)(1). *See Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 34 (9th Cir. 2025).

25  CoreCivic's Motion is also timely for the purpose of seeking an emergency stay of the

26  Court's Order pending an appeal. To determine timeliness, courts typically consider three factors:

27  (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the reason for and

28  length of the delay; and (3) the prejudice to other parties. *Smith v. Los Angeles Unified Sch. Dist.*,

No. 830 F.3d 843, 854 (9th Cir. 2016).  "The Ninth Circuit has characterized the timeliness factor as "a flexible concept" left to the discretion of district courts.  *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted).  If there is any doubt, "the requirements for intervention are [to be] broadly interpreted in favor of intervention."  *Smith*, 830 F.3d at 853, 863 (alteration in original and citation omitted).  All three factors support the timeliness of CoreCivic's motion to intervene.

First, this case is still in its infancy.  Plaintiffs filed their Complaint on November 12, 2025, and a responsive pleading is not yet due.  Although the Court has granted a preliminary injunction, it did so only as prophylactic measure in case serious medical issues were to arise before the case is transferred.  The Court did so without determining the merits of Plaintiffs' claims or Defendants' defenses.  And it has vacated the deadlines to conduct a Rule 26(f) Conference and file the ADR Certification and vacated and removed from the calendar the initial Case Management Conference.  Thus, no discovery has been conducted.

Courts have consistently found motions for intervention timely filed at even later stages of a case where, unlike here, discovery had been conducted and a dispositive motion had been filed.  *See, e.g.*, *Acosta v. Huppenthal*, No. 10-cv-623, 2012 WL 1282994, at *2 (D. Ariz. Feb. 6, 2012) (intervention timely filed after court ruled on the plaintiffs' motion for preliminary injunction and defendant's motion to dismiss); *see also, e.g., SFR Invs. Pool 1, LLC v. Newrez LLC*, No. 222CV00626GMNEJY, 2023 WL 3341918, at *2 (D. Nev. May 10, 2023) ("While the Court has ruled on SFR's Motion for Preliminary Injunction and Motion to Dismiss, it has not substantively and substantially engaged the issues in the case."); *Alaska Airlines, Inc. v. Schurke*, No. 11-cv-0616, 2013 WL 12250544, at *2 (W.D. Wash. Feb. 25, 2013) ("[T]he court has only decided a preliminary issue of ripeness, dismissed the complaint once, and allowed Alaska to file an amended complaint. Since then, the parties have engaged in discovery but the court has not decided any major issue."); *S. Yuba River Citizens League and Friends of the River v. Nat'l Marine Fisheries Svc.*, No. CIV. S–06–2845 LKK/JFM. 2007 WL 3034887, at *12 (E.D. Cal. Oct. 16, 2007) (intervention timely where motion to dismiss had been filed, no discovery had been conducted, and the motion to intervene was filed before dispositive motion deadline).

Second, CoreCivic did not delay in bringing this Motion. The Court issued its February 10, 2026 Order just three weeks ago and has yet to appoint a monitor. Although Defendants have additional time to decide whether they will appeal, CoreCivic cannot afford to wait any longer to intervene and seek an emergency stay pending appeal.

As discussed below, CoreCivic must intervene now because the Court's imposition of a class-wide preliminary injunction impairs its legal and contractual interests, and CoreCivic will be irreparably harmed absent a stay. *See Smith*, 830 F.3d at 854 (stating "the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties[,]" not the date the proposed intervenor learned of the litigation); *see, e.g.*, *Abdurahman v. Alltran Fin., LP*, 330 F.R.D. 276, 280 (S.D. Cal. 2018) (finding a four-month delay after intervenor learned of class certification motion was reasonable to review plaintiff's case, collect documents, and discuss options, before deciding to file the motion).

Third, there is no prejudice to the parties. The only relevant consideration is whether any delay by CoreCivic in bringing this Motion has caused them prejudice. *See Smith*, 830 F.3d at 857 ("[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult.'") (quoting *United States v. State of Oregon*, 745 F.2d 550, 552-53 (9th Cir. 1984)). Because CoreCivic did not delay in bringing this Motion, there is no prejudice to the parties.

**B.    CoreCivic Has a Right to Intervene to Seek Appellate Review of the Court's Order and to Move for an Emergency Stay of the Order Pending Appeal.**

The "right to intervene for the purpose of appealing is well established" in the Ninth Circuit. *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1412 n.8 (9th Cir. 1996). The Ninth Circuit has consistently held that mandatory intervention is appropriate to appeal orders that impair the intervenor's rights. *See McDonald*, 432 U.S. at 395–96 (intervention to appeal class certification order); *Legal Aid Soc. of Alameda Cnty. v. Brennan*, 608 F.2d 1319, 1328 (9th Cir.

1979) (intervention to appeal order that affected intervenor's contractual rights); *Pellegrino*, 203 F.2d at 466 (intervention to appeal order that affected shareholder's rights). This right is so important that the denial of a motion to intervene as of right is treated as a final appealable order. *Fresno County v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). "If the district court has abused its discretion in denying permissive intervention, then appellate jurisdiction also exists to review the district court's decision to deny permissive intervention." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).

To establish a right to intervention, the applicant must show:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Id.* (internal quotation omitted). "In evaluating whether these requirements are met, courts are guided primarily by practical and equitable considerations" and "generally construe Rule 24 broadly in favor of proposed intervenors." *Id.* (citation modified). The Court must "take all well-pleaded, nonconclusory allegations in the motion to intervene … and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Here, CoreCivic's Motion is timely for the reasons above. *See supra* § II.A. CoreCivic also meets the remaining three requirements for intervention because it has significant protectable interests that are practically impaired by the Court's Order, and the parties may not adequately represent CoreCivic's interests.

### 1.    CoreCivic Has Significant Protectable Interests that Will Be Practically Impaired by the Court's Order.

Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). "Rather, 'it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'" *Id.* (citation omitted). The Ninth Circuit has explained that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many

9

1    apparently concerned persons as is compatible with efficiency and due process." *Fresno County*,

2    622 F.2d at 438 (citation omitted).   "The relationship requirement is met if the resolution of the

3    plaintiff's claims actually will affect the applicant."  *City of Los Angeles*, 288 F.3d at 398 (citation

4    modified).   Thus, "a prospective intervenor 'has a sufficient interest for intervention purposes if it

5    will suffer a practical impairment of its interests as a result of the pending litigation.'"  *Wilderness*,

6    630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir.

7    2006)).   This practical test of the intervenor's interest furthers the Ninth Circuit's "traditionally

8    liberal policy in favor of intervention."  *Id.*

9         Here, CoreCivic has significant contractual interests under its agreement with ICE to

10   operate and manage the Facility according to the terms of their agreement.  *See Berg*, 268 F.3d at

11   820 ("Contract rights are traditionally protectable interests."); *see also, e.g.*, *City of Los Angeles*,

12   288 F.3d at 401 (intervenor had significant protectable interest in continuing to protect and enforce

13   its contractual provisions that might be impaired by parties' consent decree); *Samsung Elecs. Co.*

14   *v. Panasonic Corp.*, No. 10-CV-03098-JSW, 2016 WL 11781870, at *4 (N.D. Cal. Sept. 26, 2016)

15   (granting intervention to protect intervenor's contractual rights); *Danmark v. CMI USA, Inc.*, No.

16   13-CV-00457-JST, 2016 WL 31674, at *3 (N.D. Cal. Jan. 4, 2016) (granting third party enjoined

17   by the court's permanent injunction to intervene as of right to appeal).   These terms include

18   CoreCivic's agreement to comply with the 2025 National Detention Standards ("NDS"), as well as

19   applicable standards promulgated by the National Commission on Correctional Health Care

20   ("NCCHC") and the American Correctional Association ("ACA") in the operation and

21   management of the Facility.  (Exhibit 1, ¶ 20.)

22        CoreCivic also has a protectable constitutional right to due process before it can be enjoined

23   as a non-party.  *See* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or may be

24   enforced against a nonparty, the procedure for enforcing the order is the same as for a party."); Fed.

25   R. Civ. P. 65 ("The court may issue a preliminary injunction only on notice to the adverse party.").

26   CoreCivic has a due process right to intervene to protect those interests.  *See, e.g.*, *Bennett v. Ponce*,

27   No. LACV1804996VBFAS, 2019 WL 8589408, at *3 (C.D. Cal. Jan. 24, 2019) ("Plaintiff presents

28   no legal argument for the notion that this Court could issue a binding injunction, under the

1   circumstances, against people who are not named as parties in the Third Amended Complaint.").

2       Where, as here, a proposed intervenor demonstrates significant protectable interests, courts

3   often "have little difficulty concluding that the disposition of this case may, as a practical matter,

4   affect it." *California*, 450 F.3d at 442; *accord Berg*, 268 F.3d at 822 (following Rule 24's advisory

5   committee's note to the 1966 amendment that provides if "an absentee would be substantially

6   affected in a practical sense by the determination made in an action, he should, as a general rule,

7   be entitled to intervene.").

8       That the Order practically impairs CoreCivic's contractual and due process interests is

9   beyond debate.  The Order imposes a class-wide preliminary injunction that enjoins CoreCivic to

10  implement changes to its operations and management of the Facility.  Worse, it subjects

11  CoreCivic's operation and management of the Facility to supervision by an external monitor.  This

12  frustrates CoreCivic's contractual expectations because nothing in CoreCivic's agreement with ICE

13  contemplates supervision and micromanagement by an external monitor with unfettered discretion

14  to come up with standards that likely exceed the 2025 NDS, NCCHC, ACA, and other CoreCivic

15  policies that the Facility must follow.  (Exhibit 1, ¶¶ 20–23.)

16      The Order also infringes upon CoreCivic's due process rights because the terms of the

17  preliminary injunction are overbroad and vague.  *See United States v. AMC Ent., Inc.*, 549 F.3d

18  760, 768 (9th Cir. 2008) (holding that "a trial court abuses its discretion by fashioning an injunction

19  which is overly broad"); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir.

20  1991) ("Injunctive relief … must be tailored to remedy the specific harm alleged."); *United States

21  v. BNS Inc.*, 858 F.2d 456, 460 (9th Cir. 1988) (holding that "the district court's [preliminary

22  injunction] order was overbroad under the circumstances and, to that extent, constituted an abuse

23  of discretion.").  As the Court recognized when Plaintiffs handed over their revised proposed order,

24  the language was so generic that it fails to give anyone notice of what is required or prohibited.

25  (Dkt. 75, R.T. 2/6/26, at 61:9–19.)  Appointment of an external monitor to supervise CoreCivic's

26  operation of the Facility does not cure that constitutional defect.  Rather, it compounds the Court's

27  error by delegating to the monitor unfettered discretion to interpret the Court's overbroad and vague

28  terms and determine whether the conditions comply with the Court's Order.  Subjecting

1    CoreCivic's operation and management of the Facility to the whims of an external monitor without

2    any guardrails can hardly be said to satisfy due process under these circumstances.

3    Accordingly, the preliminary injunction not only deprives CoreCivic of its liberty and

4    property interests in operating and managing the Facility according to the terms of its agreement

5    with ICE, but it fails to provide adequate notice of what is required to comply with the Court's

6    Order. CoreCivic must be allowed to intervene to protect against the violation of its rights. *See*

7    *Berg*, 268 F.3d at 822 (finding impairment of city's third-party contractor's legal and contractual

8    interests absent intervention); *see also, e.g.*, *Nat. Res. Def. Council v. McCarthy*, No. 16-CV-02184-

9    JST, 2016 WL 3880702, at *3 (N.D. Cal. July 18, 2016) (finding water districts had protectable

10   interests "in their contractual agreements with the United States" that would be impaired absent

11   intervention).

12                    **2.      CoreCivic Is Not Adequately Represented by the Parties.**

13   In determining adequacy of representation, courts consider whether: (1) the interest of a

14   present party is such that it will undoubtedly make all of the proposed intervenor's arguments;

15   (2) the present party is capable and willing to make such arguments; and (3) the proposed intervenor

16   would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v.*

17   *Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). This burden is minimal and is satisfied if the

18   proposed intervenor demonstrates that representation of its interests "may be" inadequate. *Id.*

19   (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "Any doubt as to

20   whether the existing parties will adequately represent the intervenor should be resolved in favor of

21   intervention." *Issa v. Newsom*, No. 2:20-cv-1044, 2020 WL 3074351, at *3 (E.D. Cal. June 10,

22   2020) (citation omitted).

23   CoreCivic and Defendants' interests are not completely aligned such that Defendants can

24   and will "undoubtedly" make CoreCivic's arguments. *See W. Watersheds Project v. Haaland*, 22

25   F.4th 828, 841 (9th Cir. 2022) ("Although Chesapeake and WEA may share the same ultimate

26   objective in this litigation, Chesapeake has identified several colorable arguments that WEA did

27   not seek to raise in the proceedings below."). First, Defendants cannot adequately represent

28   CoreCivic because they do not have the same contractual and due process interests in seeking an

*immediate* appeal of the Court's Order and an emergency stay pending appeal.  *See Fresno County*, 622 F.2d at 439 ("NLP's arguments in opposition to the motion for a preliminary injunction were virtually identical to the Department of the Interior's arguments, but the Department did not pursue these arguments, as NLP would have, by taking an appeal.  This unwillingness indicates that the Department does not represent NLP fully. Moreover, we observe that there is further reason to doubt that the Department will fully protect NLP's interest in the expeditious promulgation of the regulations, in light of the fact that the Department began its rulemaking only reluctantly after NLP brought a law suit against it.").

Second, CoreCivic has colorable defenses that Defendants cannot or will not make.  As a private contractor, CoreCivic has legally protected contractual and due process rights that Defendants do not have.  *See, e.g.*, *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (holding that although residents shared a common goal with the United States, they were entitled to intervene because the United States was "not adequately representing the [private constitutional] interests applicants wish to protect."); *see also, e.g.*, *Portland Gen. Elec. Co. v. State by & through Oregon Dep't of State Lands*, No. 3:22-CV-533-SI, 2022 WL 2527758, at *3 (D. Or. July 7, 2022) ("[T]he Tribe's distinct private interests favor intervention.  The Tribe seeks to protect its ceremonial fishing practices, whereas [Department of State Lands] advances broader public interests held by the State.").  For example, CoreCivic is compensated only for its compliance with the contract, and to the extent compliance with the Court's Order requires CoreCivic to make physical plant changes to its Facility and to increase staffing beyond the contractually agreed staffing plan, these costs—which are substantial—will likely be incurred by CoreCivic.  Likewise, to the extent the external monitor requires additional documentation or information which distracts health services staff from completing their contractual responsibilities or results in staff incurring overtime, these costs would be born only by CoreCivic.  CoreCivic will also incur legal costs to protect its interests during the duration of any preliminary injunction.

Third, "as a party with a legally protected interest in contract rights with the federal government," and due process rights against being enjoined as a non-party, CoreCivic would offer necessary elements that other parties would neglect.  *Haaland*, 22 F.4th at 842.  CoreCivic's "due

1    process interest in the outcome of this litigation by virtue of its contract with an existing party"

2    alone provides a necessary element that would otherwise be absent from the appellate and the

3    emergency stay proceedings. *See id.* (analogizing necessary element factor under Rule 24(a)(2) to

4    the analogous context of an indispensable party to a contract action under Rule 19).

5         Additionally, as the operator and manager of the Facility, CoreCivic has first-hand

6    knowledge of the facts and circumstances necessary for determining the preliminary injunction and

7    class certification issues. Absent intervention, CoreCivic's interests will not be adequately

8    represented by the parties. *See McCarthy*, 2016 WL 3880702, at *4.

9         **C.    Alternatively, CoreCivic Should Be Permitted to Intervene.**

10        Permissive intervention should be granted if the intervenor establishes: (1) a timely motion;

11   (2) an independent ground for subject matter jurisdiction; and (3) a common question of law or fact

12   exists between the prospective intervenor's claim or defense and the main action. *Beckman Indus.,*

13   *Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). In exercising its discretion, courts consider

14   "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original

15   parties." Fed. R. Civ. P. 24(b)(3).

16        CoreCivic meets all three requirements for permissive intervention. First, CoreCivic's

17   Motion is timely for the reasons above. *See supra* § II.A. Second, CoreCivic does not need to

18   establish an independent ground for subject matter jurisdiction because this case raises only federal

19   questions, and CoreCivic is not raising any counter- or cross-claims. *See Freedom from Religion*

20   *Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (clarifying "that the independent

21   jurisdictional grounds requirement does not apply to proposed intervenors in federal question cases

22   when the proposed intervenor is not raising new claims"). Nonetheless, CoreCivic has Article III

23   standing to seek appellate review of the Court's Order and an emergency stay pending appeal,

24   because the Order has caused CoreCivic actual injury in implementing the class-wide preliminary

25   injunction, and the court can redress that injury with a favorable ruling. *See, e.g.*, *Calif. Chamber*

26   *of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 476–77 (9th Cir. 2022) (finding

27   intervenor injured by preliminary injunction had Article III standing to appeal the order).

28        Third, CoreCivic satisfies the common questions of law and fact requirement for permissive

1   intervention because Plaintiffs' claims arise out of the alleged conditions at the Facility, CoreCivic

2   shares common defenses as Defendants to those claims, and the Court's Order granting a class-

3   wide preliminary injunction based on Plaintiffs' allegations substantially impairs CoreCivic's

4   operation and management of the Facility.[3] Indeed, this is why it is imperative that the Court grant

5   CoreCivic permission to intervene to appeal the Court's Order and file an emergency motion to

6   stay the Order pending appeal.

7   **III.    Conclusion.**

8       For these reasons, this Court should grant CoreCivic's Emergency Motion to Intervene.

9       DATED this 3rd day of March 2026.

10                  STRUCK LOVE ACEDO, PLC

11

12              By /s/ Shannon L. Knorr
13                 Dana M. Keene
                   Shannon L. Knorr

14                 Nicholas H. Rasmussen
15                 McCORMICK, BARSTOW, SHEPPARD,
                   WAYTE & CARRUTH LLP

16                 *Attorneys for Intervenor CoreCivic, Inc.*

17

18

19

20

21

22

23

24

25

26

27
    _____

28      [3] CoreCivic is not required to show that its stake in the case could not be fully protected elsewhere for permissive intervention. *Brennan*, 608 F.2d at 1328 n.11.