CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
SAVITH IYENGAR (CABN 268342)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: 415-436-7200
    Facsimile: 415-436-6748
    savith.iyengar@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FERNANDO GOMEZ RUIZ, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-09757-MMC<br><br>**DEFENDANTS' PROPOSAL REGARDING FORM OF APPOINTMENT ORDER** |

      On March 5, 2026, the Court appointed Plaintiffs' candidate Dr. Muthusamy Anandkumar as "External Monitor" over Defendants' objections and ordered the parties to (i) meet and confer regarding the "form of [the] appointment order" and (ii) submit their proposed orders to the Court by 4:00 p.m. on March 13, 2026. ECF No. 96. Defendants maintain that the Court need not enter any further appointment order given that its prior orders have already (i) appointed Dr. Anandkumar as External Monitor, *id.*, and (ii) defined his scope, ECF No. 72 ¶¶ 1–2 ("PI Order"). However, if the Court is inclined to enter a further appointment order, Defendants respectfully request that the Court adopt their version attached hereto as **Exhibit 1**, and not Plaintiffs', for the reasons discussed below.

      By submitting this proposed appointment order, Defendants are not waiving their right to appeal any order that the Court enters, or the Court's prior orders in this matter, and expressly reserve their right to do so.

DEFS.' PROPOSAL REGARDING FORM OF APPOINTMENT ORDER
3:25-cv-09757-MMC                             1

## I. THE PARTIES' MEET AND CONFER EFFORTS

Notwithstanding their objection to a further appointment order, Defendants met and conferred with Plaintiffs in good faith, including working from Plaintiffs' draft proposed appointment order at their request. Defendants have attached a true and correct copy of the email threads reflecting the parties' meet and confer efforts hereto as **Exhibit 2**. As those efforts reflect, Plaintiffs sent Defendants a Word version of the same proposed order they had previously filed with the Court, ECF No. 77 at 17–22, with only two changes: updating the name of the monitor from Dr. Marc Stern to Dr. Anandkumar, and updating his hourly rate. Ex. 2 at 8. Plaintiffs did not update their proposed appointment order to reflect the various modifications they made during the parties' status conference on March 5, 2026. *See, e.g.*, Hr'g Tr. 72:8–16 Mar. 5, 2026 ("Mar. 5 Tr.") (agreeing to remove provision requiring monitor to be able to "observe any institutional meetings, proceedings and programs"); *id.* 66:16–21 (agreeing to limit sick call requests to only "those entered via tablet," and not paper submissions, which "are already in the patient record").

Accordingly, Defendants carefully reviewed Plaintiffs' proposed appointment order to incorporate those modifications, and made several further changes that are necessary to (i) address Defendants' specific safety, security, and operational concerns, and (ii) focus the appointment order on the sole issue presented — the External Monitor's access to the facility — and remove language that improperly seeks to augment the Court's prior PI Order. *See* ECF No. 72 ¶¶ 1–2; Mar. 5 Tr. 89:20–90:3 (Court explaining that the appointment order would set forth the monitor's "rights and obligations").

Defendants' cover email attaching their modified appointment order detailed the basis for each of these changes. Ex. 2 at 6–7. The following day, Plaintiffs responded to Defendants' email, rejecting most of Defendants' changes. *Id.* at 3–5. Plaintiffs later provided an updated proposed appointment order reflecting the changes they had accepted. *Id.* at 1. Accordingly, Defendants have attached hereto as **Exhibit 3** a true and correct copy of a redline reflecting their tracked changes to Plaintiffs' updated proposed appointment order, which reflects the current scope of the parties' disagreement. Defendants discuss below the necessity of each of their proposed changes, which appear as tracked changes in Exhibit 3.

## II. DEFENDANTS' MODIFICATIONS TO PLAINTIFFS' PROPOSED APPOINTMENT ORDER

### A. Caption and Footer

Defendants object to Plaintiffs' characterization of the proposed appointment order in the document caption and footer as appointing Dr. Anandkumar as a "court expert pursuant to FRE 706." The Court has already appointed Dr. Anandkumar as External Monitor pursuant to the PI Order, not Rule 706. ECF Nos. 72, 96. The appointment of a court-appointed expert witness under Rule 706 is subject to a separate process that was not (and will not be) followed here. *See* Fed. R. Evid. 706 (requiring that "[o]n a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed"); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) ("The district court followed the dictates of Rule 706(a) by issuing an order to show cause why an expert should not be appointed, ordering briefing, holding a hearing and then appointing an expert of its own selection."); *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-CV-05541-JST, 2019 WL 5458022, at *4 (N.D. Cal. Oct. 24, 2019) (ordering parties to show cause why an expert witness should not be appointed pursuant to Rule 706).

Here, Plaintiffs did not move the Court for an order to show cause why expert witnesses should not be appointed, nor did the Court issue one. Plaintiffs instead moved only for a preliminary injunction. *See* ECF No. 22. Their motion made no mention of seeking a court-appointed expert witness under Rule 706, or even an external monitor. *See generally id.* Their only mention of an "external monitor" appeared in their proposed order, which neither sought an order to show cause under Rule 706 nor even mentioned Rule 706. ECF No. 22-38. The Court did not order the parties to show cause why expert witnesses should not be appointed under Rule 706, and instead issued the PI Order requiring Defendants "to provide access to a[n External Monitor]" and present candidates to the Court. ECF No. 72 ¶ 2. As a result, Plaintiffs' attempt to recast the "External Monitor" created by the PI Order as a "court-appointed expert witness" under Rule 706 would constitute a modification of the PI Order that requires a motion for leave to file a motion for reconsideration under Federal Rule of Civil Procedure 60 and Civil Local Rule 7-9. It is also barred without leave of the Ninth Circuit because an appeal of the PI Order has been docketed. *See* ECF No. 91; Fed. R. Civ. P. 60; *see also infra* Part II.B.

### B. Introductory Paragraph

Defendants respectfully request that the Court adopt their modification to the introductory paragraph for the same reason. Once an appeal of a district court's decision is docketed with the Ninth Circuit, the district court loses jurisdiction to amend that order. *See* Fed. R. Civ. P. 60(a) ("[A]fter an appeal has been docketed in the appellate court and while it is pending, such a mistake [clerical or arising from oversight or omission] may be corrected only with the appellate court's leave."); Fed. R. Civ. P. 62.1 advisory committee notes ("After an appeal has been docketed and while it remains pending, the district court cannot grant a Rule 60(b) motion without a remand."); *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (holding that filing a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 932 (9th Cir. 1999) ("When [appellant]'s appeal of the district court's decision was docketed with the Ninth Circuit on October 22, 1997, the district court lost jurisdiction to review its October 6 entry of judgment."); *Hoffer v. Inch*, No. 4:17CV214-MW/CAS, 2019 WL 10589567, at *1 (N.D. Fla. Aug. 28, 2019) ("Rule 60(a) allows a district court to supplement a prior order or judgment to accurately reflect the decision it actually made in said order or judgment, but not to correct mistakes of law or otherwise change the substance of its decision.").

The language that Defendants have struck from the introductory paragraph consists of numerous substantive findings that this Court did not make in the PI Order or otherwise, and would constitute either a change to the substance of that decision or an amendment of an order under appeal that is prohibited without leave of the appellate court. It would also exceed the scope of this Court's order requesting an "appointment order" to define Dr. Anandkumar's "rights and obligations" — not to further clarify the Court's prior PI Order. Mar. 5 Tr. 89:20–90:3. Defendants thus respectfully request that the Court adopt the language that they have proposed, including deleting Plaintiffs' proposed language, as reflected in Exhibit 3.

### C. Paragraph 1

Defendants object to the first sentence of Paragraph 1 for the reasons noted in Part II.A, above: the Court did not appoint Dr. Anandkumar as a court expert pursuant to FRE 706. It is also unnecessary,

as the Court has already appointed Dr. Anandkumar and does not need to do so again in this paragraph. *See* ECF No. 96.

### D. Paragraph 3 and Footnote 1

As Defendants explained to the Court during the March 5, 2026 status conference and again during the parties' meet and confer efforts, Defendants object to giving the External Monitor "remote" read-only access to the facility's electronic health records system ("EHRS") due to network security issues involved in giving an external user unfettered remote access to facility records, Mar. 5 Tr. 52:11–20; Ex. 2 at 6, as well as additional burdens associated with facilitating an external user's remote access and providing ongoing technical support. Defendants note that the EHRS is optimized for on-site users, and remote access may be slow, inefficient, and operationally burdensome. Defendants have thus proposed the same level of access that Plaintiffs have requested — albeit *on-site* at the facility — for up to seven business days during the term of appointment.

If the Court is nonetheless inclined to order *remote* read-only access despite Defendants' objections, the monitor should be required to comply fully with all of Defendants' and CoreCivic's applicable security protocols and system configurations. Specifically, the monitor must satisfy all requirements for identity verification, background investigation, and multi-factor authentication ("MFA"). The monitor must enroll the device it will use for authentication while physically present on the network. MFA will be required each time the monitor accesses the network from outside a trusted onsite location. In addition, the monitor must complete all required information security trainings and comply with system use and data protection requirements before an account may be issued for the monitor to access the EHRS.

Defendants also object to the addition of a team member to assist the External Monitor with medical record reviews, as it exceeds the scope of the PI Order, which requires access for one individual: "a qualified, independent, third party monitor." ECF No. 72 ¶ 2; *see also, e.g.*, Hr'g Tr. 159:24–160:2, 160:10–11, 160:16–18, 163:6–15 Feb. 6, 2026 ("Feb. 6 Tr.") (repeatedly referring to a single monitor, not a team of monitors); *id.* 163:18–24 ("I am going to give them some immediate relief that they can start using, the only way item one is workable is with a monitor and the fastest way is for me to appoint one . . . ."). Defendants thus respectfully request that the Court adopt their edits to this

paragraph, including the deletion of the two sentences in this paragraph that reference an additional team member, and the reference to a "team member" in the footnote.

### E. Paragraph 4.e

Defendants have removed this paragraph as redundant with prior paragraphs, including Paragraph 4.a, and patients' medical records. Defendants note that Plaintiffs objected to this deletion because "[t]he provision about specialty care logs is not redundant," Ex. 2 at 4, however this paragraph does not contain any reference to such logs.

### F. Paragraph 4.f

Defendants have modified this paragraph based on changes Plaintiffs made during the March 5, 2026 status conference, after Defendants raised concerns about collecting paper sick call requests. Mar. 5 Tr. 66:9–21. During the parties' meet and confer efforts, Plaintiffs rejected this change, claiming that "Plaintiffs did not modify this provision at the hearing." Ex. 2 at 4. Yet Plaintiffs did, in fact, limit this provision during the hearing to sick call requests and grievances "entered via tablet" and not paper submissions, which — as Plaintiffs conceded — "are already in the patient record." Mar. 5 Tr. 65:15–66:21. Defendants thus respectfully request that the Court adopt their version of this paragraph, which is both consistent with Plaintiffs' modifications during the hearing and would avoid unnecessary and burdensome efforts in collecting paper records that are already reflected in patients' electronic records.

### G. Paragraph 5

Defendants respectfully request that the Court delete the phrase "and/or intervenors or proposed intervenors." Proposed intervenor CoreCivic is not a party to this litigation at present, and indeed the Court permitted only Plaintiffs and Defendants to appear regarding the proposed appointment order — not CoreCivic. The phrase proposed by Defendants — which precludes "counsel for the parties" from attending the site visit — is thus sufficient to ensure the monitor's neutrality.

### H. Paragraph 5.a

Defendants believe this paragraph should include the phrase "including intake and the medical unit" to avoid disputes that could arise if, for example, the monitor interprets this provision as permitting inspection of *all* areas of the facility (e.g., based on the position that all areas are "related to the provision of health care").

### I. Paragraph 5.b

Defendants have removed the language permitting the monitor to observe "the collection of sick call slips" due to operational challenges in facilitating the monitor's observation of this process. The collection of sick call slips is done during the night shift at approximately midnight. If the External Monitor wishes to observe the collection of the sick call slips, the facility is open to reasonable suggestions from the External Monitor about how to accommodate that request.

### J. Paragraph 5.d

Defendants cannot agree to compensating an in-person Spanish language interpreter to accompany the External Monitor for patient interviews, as Plaintiffs have proposed. Such a requirement would significantly increase the costs associated with the PI Order, which requires Defendants to compensate only the External Monitor. It is also impractical given that there are approximately 20 different languages spoken by detainees at the facility at any given time. Defendants' proposal to provide "[c]onfidential language interpretation services . . . using contracted remote language interpretation services (VOYCE)" is reasonable given that it provides interpretation services in over 250 languages, including Spanish, through a handheld device that can be provided to the External Monitor.

### K. Paragraph 5.f

Defendants object to providing "any business, budgetary, and/or operational documents relevant to health care" as exceeding the scope of the External Monitor's appointment. Any such documents are irrelevant to the monitor's "review of medical records and on-site inspection and interviews with patients and staff," ECF No. 72 ¶ 2, and will not inform the monitor's report on Defendants' compliance with the PI Order through the provision of adequate health care at the facility. Indeed, Defendants have agreed that the monitor may conduct the three-day on-site inspection Plaintiffs have requested and access rosters of health care staff and current schedules, which, alongside the other records, will be sufficient for the monitor to prepare its report.

### L. Paragraph 5.g

Defendants require the phrase "Defendants and CoreCivic" to make clear who will conduct the security review, and to avoid disputes about whether it may be conducted by the External Monitor,

Plaintiffs, or a third party, none of whom have the institutional and operational experience to make such determinations.

### M. Paragraph 6

Defendants require that the External Monitor be prohibited from communicating *ex parte* with counsel for the parties for the reasons explained at the March 5, 2026 status conference. Tr. 77:15–78:8. Permitting Plaintiffs' counsel to communicate *ex parte* with a monitor *who they proposed* would destroy the independence and neutrality of the position. *Id.* It is also inconsistent with the very case Plaintiffs relied upon during the parties' February 6, 2026 hearing as the model for an external monitor here. *Id.*; Feb. 6 Tr. 103:5–19 (Plaintiffs' counsel stating that "there's a case called *Hernandez* that we cited where the parties agreed to exactly this process. . . . And the defendants and the plaintiffs got together and they agreed on . . . three monitors . . . to see, okay, what's going on with our medical system, is it working, how can it be improved and report back and then the Court made some orders. Frankly, we think that ought to be happening here."); *id.* 53:1–3. In *Hernandez*, the parties *agreed* on the monitors, and yet the order appointing them still expressly proscribed them from engaging in *ex parte* communications with counsel for either party. *See Hernandez v. Cnty. of Monterey*, No. 2:13-cv-02354-BLF, ECF No. 563 (Aug. 11, 2016) ("The Monitors shall not engage in *ex parte* communications, verbal or written with counsel for either party. All written communications, emails, and document productions to or from the Monitors shall be copied to counsel for all parties."). Defendants respectfully request that the Court adopt their version of this paragraph, which contains the same limitation to promote neutrality.

### N. Paragraph 7

Defendants respectfully request that the Court adopt their modifications to this paragraph for the same reason of ensuring the monitor's neutrality, which Defendants also noted during the status conference. *See* Mar. 5 Tr. 83:17–84:25. In order to maintain the monitor's neutrality — especially where it was proposed by Plaintiffs and opposed by Defendants — the Court cannot allow it to submit a draft report to the parties and allow them to influence it prior to its filing, including through the *ex parte* communications Plaintiffs are also seeking to permit.

Indeed, Plaintiffs' proposed language exceeds their representation to the Court that this process would be limited to correcting "very small errors." *Id.* 86:22–87:3. Plaintiffs' proposed language

allows the monitor to modify the report "in any manner," and file only that modified version. Defendants respectfully request that the Court instead adopt their proposed language, which would require these discussions to occur on the record — with the monitor first filing its report, the parties filing written comments, and the monitor having the discretion to file a modified version thereafter.

Defendants also respectfully request that the Court delete the phrase "and the provision of constitutionally adequate health care and making recommendations for remedial actions" in the first sentence of this paragraph. The External Monitor's report will assess compliance with the PI Order, which already sets forth the monitor's objectives, and the inclusion of the phrase "recommendations for remedial actions" is unnecessary and speculative, as it assumes that issues at the facility will exist during the monitor's term of appointment.

### O.  Paragraph 8

Defendants object to the references to a "team member" in this paragraph for the reasons noted in Part II.D, above.

### P.  Final Paragraph

Defendants respectfully request 14 days, not 7 days, to provide the monitor with access to the items it requests given challenges involved in collecting and facilitating access to the breadth of records referenced in the proposed appointment order. Defendants also request that only the monitor — and not the parties — be permitted to bring concerns about access to records to the Court's attention. Plaintiffs' request to litigate the monitor's concerns on its behalf — especially alongside their desire to engage in *ex parte* communications with the monitor — raises serious impartiality concerns. Defendants respectfully request that the Court adopt their modifications to this paragraph to promote the monitor's neutrality.

\*    \*    \*    \*    \*

For all of these reasons, Defendants respectfully request that the Court adopt the appointment order they have submitted as **Exhibit 1**.

|  |  |  |
|---|---|---|
|  | Respectfully submitted, |  |
|  | CRAIG H. MISSAKIAN<br>United States Attorney |  |
| Dated: March 13, 2026 | By: | */s/ Savith Iyengar*<br>SAVITH IYENGAR<br>Assistant United States Attorney |