KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS | Case No. 3:25-cv-09757-MMC<br><br>**DECLARATION OF DR. TODD WILCOX IN SUPPORT OF PROPOSED ORDER OF APPOINTMENT**<br><br>Judge:       Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

| | |
|---|---|
| 1 | ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and |
| 2 | Customs Enforcement; SERGIO ALBARRAN, Acting Director of San |
| 3 | Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and |
| 4 | Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI |
| 5 | NOEM, Secretary, U.S. Department of Homeland Security, |
| 6 | Defendants. |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

DECLARATION OF DR. TODD WILCOX IN SUPPORT OF PROPOSED ORDER OF APPOINTMENT
Case No. 3:25-cv-09757-MMC
6054894

I, Todd Randall Wilcox, M.D., hereby declare:

1. I have been retained by Plaintiffs' counsel in this matter to assess the adequacy of health care provided to people who are detained at the U.S. Immigration and Customs Enforcement ("ICE") facility in California City ("California City Detention Facility"). I previously submitted a declaration in support of Plaintiffs' Motion for Preliminary Injunction (ECF No. 22-3) ("initial declaration"), a declaration in support of Plaintiffs' Motion for Temporary Restraining Order regarding denial of medical care to two specific patients (ECF No. 27-2) ("TRO declaration"), and a declaration in support of Plaintiffs' Reply to Motion for Preliminary Injunction (ECF No. 49-3) ("reply declaration"). I presented my medical background and expert qualifications, which include over 30 years working as a physician in jails and prisons, in those prior declarations.

2. For the past 29 years, I have served as the medical director of the Salt Lake County Jail system, which uses an electronic health record system ("EHRS"). All patient encounters with providers, medication records, laboratory tests, and specialty care records are noted in the EHRS. All of our providers in the jail system have access to the EHRS with remote capabilities.

3. As medical director, I do most of my patient chart reviews remotely and not while at the jail. There are several reasons for this including prioritizing other day-to-day operations that require an in-person presence and having a better internet connection when working remotely from my community office. Another major reason for doing record review off site is the actual computer setup. Chart review is greatly assisted and tremendously more efficient if you can utilize two large computer monitors side by side. This type of setup is different and more advanced from an equipment standpoint than the usual computer configuration in correctional facilities. A significant part of my job as medical director includes accessing the EHRS remotely.

4. Providers, including telehealth providers, contract providers, and medical students, access the EHRS remotely as well. I often work with medical students who engage in research at the jail, and after completing the proper background checks and confidentiality agreements, we are able to give them read-only access to the EHRS.

5. Recently, the jail was audited by the National Commission on Correctional Health Care ("NCCHC"). In order for the NCCHC to complete their audit, the County granted their auditors remote, read-only access to the EHRS for a period of a few days then terminated their access once the audit was complete. There were no network security issues associated with their access, and this practice is a standard part of operating a jail correctional system in my view.

6. In my experience working as a medical consultant and expert, I have also seen other correctional healthcare systems provide remote access to their EHRS. For example, I received remote, read-only access as a plaintiffs' expert in the Arizona state prison system. I also received access to the EHRS in the Maricopa County correctional healthcare system as a defense-side consultant.

7. I have also served as a court-appointed neutral medical expert pursuant to Federal Rule of Evidence 706(b) in the San Bernardino County Jails system. When I first started as an expert in that case, the jail did not have an EHRS. By the time my engagement with the case reached its conclusion, the county had moved towards an EHRS and granted me access and the ability to use a virtual private network ("VPN") to remotely access their EHRS.

8. Based on my past experience with remote, read-only access to EHRS, systems that give remote access to EHRS are also able to view and track what users are viewing. In other words, these systems generally allow for monitoring of individual users to address any possible security concerns.

9. In my experience as a court-appointed medical monitor and as an expert or consultant retained by parties, and my familiarity with standard practice in this field, it is my experience and opinion that a monitor or expert will want to look at specific patient records several times and return to records as needed. This is particularly true when an expert is following a case and the healthcare plan is evolving for individual patients. In those cases, you have to check in with the medical record to obtain periodic updates on the progress of the care and the condition of the patient. That type of monitoring is greatly assisted by having remote access to the medical record. Additionally, a preset, limited number of days onsite does not provide the time or flexibility needed to perform a thorough review of patient care and compliance. Based on

1  my experience, it is slow and labor intensive to review all the information contained in the
2  healthcare records. I frequently returned to the records in the course of developing and writing
3  my expert opinions.
4      10.   In my professional opinion, most of the monitor's work in this case will need to
5  involve reviewing patient healthcare records. Over the course of my work in this case, I have
6  reviewed 29 patient records. Doing these reviews without remote access was incredibly labor
7  intensive. I would expect the monitor to look at more records than I have so far in this case, and it
8  is my professional opinion that the monitor's review would be significantly hindered by limited
9  onsite days.
10     11.   When I served as a court-appointed medical monitor in the San Bernardino County
11 Jail system, I relied on at least two nurses to assist with medical record review as part of my
12 monitoring duties. In my current role as jail medical director, I frequently rely on nurses, medical
13 students, and other assistants to support quality oversight and operational monitoring with chart
14 review.
15 ////
16 ////
17 ////
18 ////
19 ////
20 ////
21 ////
22 ////
23 ////
24 ////
25 ////
26 ////
27 ////
28 ////

1   Executed on March 12, 2026, at Salt Lake City (city), UT (state).
2   I declare under penalty of perjury under the laws of the United States that the foregoing is
3   true and correct.

*/s/ Dr. Todd Wilcox*
Dr. Todd Wilcox