KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v. | Case No. 3:25-cv-09757-MMC<br><br>**PLAINTIFFS' SUBMISSION RE REVISED PROPOSED ORDER OF APPOINTMENT FOR RULE 706 MONITOR**<br><br>Judge:     Hon. Maxine M. Chesney<br><br>Date Filed:  November 12, 2025 |

1  U.S. IMMIGRATION AND CUSTOMS
   ENFORCEMENT; TODD M. LYONS,
2  Acting Director, U.S. Immigration and
   Customs Enforcement; SERGIO
3  ALBARRAN, Acting Director of San
   Francisco Field Office, Enforcement and
4  Removal Operations, U.S. Immigration and
   Customs Enforcement; U.S. DEPARTMENT
5  OF HOMELAND SECURITY; KRISTI
   NOEM, Secretary, U.S. Department of
6  Homeland Security,

7                          Defendants.

At the conclusion of a hearing held on March 5, 2026, the Court directed the parties to meet and confer regarding the terms of the order appointing Dr. Muthusamy Anandkumar to monitor compliance with the Court's February 10, 2026 Order. Defendants declined to communicate by phone or in person with Plaintiffs on this matter; the parties instead exchanged emails regarding the terms of appointment. Plaintiffs agreed to several of Defendants' proposed terms but are unable to agree to proposed changes that would substantially hinder the monitor from fulfilling his obligations to the Court, as laid out below.

**Rule 706 Appointment:**

Defendants propose to remove all references to Federal Rule of Evidence 706 in the order of appointment. But appointment pursuant to Rule 706 serves the important function of setting forth the monitor's role in the litigation, *i.e.,* to advise the transferee court regarding Defendants' compliance with the Court's order. Appointment of Rule 706 medical experts is standard in cases regarding the provision of health care in correctional facilities, including federal facilities. *See, e.g.*, *Wilson v. Ponce*, No. 2:20-cv-04451-MWF (C.D. Cal. July 14, 2020), Dkt. 58 at 12-13 (appointing a FRE 706 expert to monitor and report on medical care and conditions at a Bureau of Prisons correctional facility); *Torres v. Milusnic*, No. 2:20-cv-04450-CBM (C.D. Cal. July 20, 2020), Dkt. 48 (same); *Mays v. Cnty. of Sacramento*, No. 2:18-cv-02081-TLN (E.D. Cal. March 10, 2020), Dkt. 117 (appointing FRE 706 experts to monitor and report on medical care and conditions in county jail); *Young et al. v. Cnty. of Contra Costa*, No. 5:20-cv-06848-NC (N.D. Cal. April 19, 2021), Dkt. 41 (same); *Gray et al. v. Cnty. of Riverside*, No. 5:13-cv-00444-VAP (C.D. Cal. June 7, 2016), Dkt. 173 at 5-7 (same). Defendants have offered no justification for denying Dr. Anandkumar the standard duties and obligations of a Rule 706 expert.

**Access to Patient Health Records:**

Defendants propose to deny the monitor remote access to the electronic medical record system and instead to require him to access patient health records only on-site and for only seven days during the 120-day monitoring period. These restrictions serve no purpose but to limit the scope and effectiveness of the monitor's assessment and would directly undermine his ability to conduct his court-appointed duties. The proposed restrictions sharply diverge from the standard of

1 practice and must be rejected by this Court.

2       Defendants claim the remote access restriction is necessary due to "network security

3 issues" but have not identified what a single one of those "issues" may be.[1] Decl. of Margot

4 Mendelson in Support of Revised Proposed Order of Appointment for Rule 706 Monitor

5 ("Mendelson Decl."), filed herewith, at Ex. 1. In reality, there is no basis for refusing remote

6 access, remote access is commonplace in correctional settings, and Defendants' reasons are pure

7 pretense. Court-appointed monitors are widely and routinely granted remote access to electronic

8 health records in order to conduct their court-appointed duties. This is true in correctional systems

9 with private health care vendors, *see Jensen v. Thornell*, No. 2:12-cv-00601-ROS (D. Ariz. 2012),

10 Dkt. 4410 (court-appointed medical monitors have remote access to electronic health care records

11 of state's private health care provider, Centurion), as well as facilities operated by state, local, and

12 federal entities, *see* Decl. of Margot Mendelson, Dkt. 77 at Ex. E ¶¶ 2-3; *see also Cal. Coal. for*

13 *Women Prisoners v. U.S. Bureau of Prisons*, No. 4:23-cv-04155-YGR (N.D. Cal. Jan. 23, 2026),

14 Dkt. 533 at 5.2 (remote access to federal Bureau of Prisons electronic health record for court-

15 appointed monitor). In fact, court-appointed monitors in cases brought by the Department of

16 Justice against correctional facilities also routinely have remote access to electronic medical

17 records to conduct their assessments. *See United States v. Cumberland Cnty.*, No. 1:23-cv-02655-

18 ESK (D.N.J. Feb. 28, 2025), Dkt. 29-1 at 3 ("CCJ and their health vendor . . . have provided

19 remote access for both monitors to the electronic medical record (EMR) utilized by CFG."); *see*

20 *also* Massachusetts Department of Correction, Compliance Report #1 at 16 (Sept. 18, 2023)

21 ("MDOC provided the [expert] team with access to Wellpath's electronic health record, the

22 Electronic Records Management Application (ERMA), to review medical charts remotely.").[2]

23 This access is both routine and critical for fulfilling the duties of a court-appointed medical

24 monitor.

25

26 [1] Defendants failed to identify any specific security concerns at the March 5, 2026 hearing and failed to respond to an email from counsel requesting information about the nature of those

27 purported concerns during the court-ordered meet and confer period. Mendelson Decl., filed herewith, at Ex. 1.

28 [2] Available at https://www.justice.gov/crt/media/1389311/dl.

Facilitating remote access to electronic medical records is standard practice for correctional medical systems. As explained in the accompanying declaration of Dr. Todd Wilcox, remote access to electronic medical records is regularly granted to health care providers, including telehealth providers, contract staff, and medical students. Decl. of Dr. Todd Wilcox in Support of Revised Proposed Order of Appointment for Rule 706 Monitor ("Wilcox Decl.") ¶ 4, filed herewith. Professional organizations like the National Commission on Correctional Health Care (NCCHC) rely on correctional systems to grant their auditors remote, read-only access to medical records in the course of their professional reviews. *Id.* ¶ 5. Jails, prisons, and detention centers routinely facilitate this form of access in compliance with their internal security protocols. *Id.* Adherence to protective orders addresses concerns related to the security and confidentiality of health and legal information, which are standard expectations of a court-appointed monitor.

There is simply no justification for requiring Dr. Anandkumar to review patient files only while on-site at the facility. California City is in a remote location, not easily accessible via major airports. Requiring the monitor to travel to the Mojave Desert to review patient records will only serve to delay access, limit the monitor's ability to access essential information, and increase the cost to Defendants. This would "create complexit[ies] and inefficiencies in the coordination and management" of the case which is what Defendants purportedly aimed to avoid when they filed their motion to transfer. Dkt. 37 at 23. To the extent Defendants argue that such a limitation is needed for network security purposes, the fact that remote access is standard in these cases easily rebuts that assertion. If the states of California and Arizona can provide remote access to court-appointed monitoring teams to access medical records throughout the entire state while maintaining their systems' security, surely Defendants can do the same as to access to this single facility.

Defendants' desire to impose an arbitrary limitation of only seven days for access to medical records in any form is baseless and fundamentally undermines the purpose and function of a monitor. The vast majority of the work that the monitor will do is review patient health care records. As Dr. Wilcox notes, "it is slow and labor intensive to review all the information contained in healthcare records." Wilcox Decl. ¶ 9. In Dr. Wilcox's opinion, "a preset, limited

PLAINTIFFS' SUBMISSION RE REVISED PROPOSED ORDER OF APPOINTMENT FOR RULE 706 MONITOR
Case No. 3:25-cv-09757-MMC

6055074

number of days onsite does not provide the time or flexibility needed to perform a thorough review of patient care and compliance." *Id*. And Defendants cannot reasonably cure this deficiency by providing more days on site, even if they were willing to facilitate and pay for those additional visits. As a medical professional, Dr. Anandkumar cannot be asked to fly from Texas to the Mojave Desert every time he wants to check a medical record during the course of his appointment.

Importantly, patient care is not static. To the extent the monitor is assessing the care provided to particular patients, it will be critical to assess that care over time. Mr. Viera Reyes' case alone demonstrates the necessity of access to patient health records throughout the appointment period. It has required Plaintiffs' counsel's ongoing monitoring throughout several months to identify Defendants' noncompliance with the stipulated order resolving Plaintiffs' motion for a temporary restraining order. Plaintiffs have had to request paper medical records each time they wished to confirm the care Mr. Viera Reyes had received or was scheduled to receive. Requiring Dr. Anandkumar to travel to the facility to see if a patient such as Mr. Viera Reyes received appropriate follow-up after a specialty appointment, and to limit his ability to review those records to only seven arbitrary days during the monitoring period, is absurd. Defendants' proposal effectively prevents the monitor from reviewing patient records throughout the term of appointment. It would drastically strip the monitor of any real authority to reach conclusions and hinder his ability to provide the Court with a thorough and accurate report about the provision of health care at California City.

Plaintiffs' counsel is unaware of *any* appointment order in which a court-appointed monitor's access to the very topic they are to assess for the Court has been so severely and arbitrarily curtailed as Defendants propose here, and the Defendants provide no precedent for such drastic restrictions. Such restrictions subvert the purpose of the appointment and the Court should reject them.

**Limited Assistance for the Monitor:**

Plaintiffs' proposed order of appointment permits the monitor to enlist assistance from one team member, who will support with record review. Defendants want to prohibit this, too,

without any sound reason to do so. The task of assessing the provision of health care at California City within a 120-day period is substantial, and it is entirely standard for a monitor to have authority to appoint a team member to support their review. *See, e.g., Cal. Coal. for Women Prisoners v. U.S. Bureau of Prisons*, No. 4:23-cv-04155-YGR (N.D. Cal Feb. 27, 2025), Dkt. 473-1 at 20 ("The Monitor shall be permitted to hire a reasonable number of staff to assist the Monitor in performing the duties outlined in this Agreement."); *Jensen v. Thornell*, No. 2:12-cv-00601-ROS (D. Ariz. April 7, 2023), Dkt. 4410 at 6 (noting that the court-appointed monitor was granted authority to identify additional staff needed to assist in monitoring); *Franco-Gonzalez v. Holder*, No. 2:10-cv-02211-DMG (C.D. Cal March 2, 2015), Dkt. 810 at 16 ("The Monitor may, as she deems necessary to carry out her monitoring functions, seek assistance from others, including but not limited to independent experts or specialists whose advice or assistance the Monitor deems important to resolving questions concerning compliance with the Implementation Documents."); Wilcox Decl. ¶ 11 (describing assistance from nurses in the course of evaluating medical care as a court-appointed monitor over medical care in the San Bernardino County Jails).

Here, the proposed term is narrow. The team member need not join the monitor onsite or make independent document requests. Their role is simply to assist the appointed monitor in reviewing patient records in order to fulfill the monitor's obligation to the Court in light of the relatively short duration of the monitoring term.

**Access to Health Care Documentation:**

Defendants propose drastically limiting the scope of health care documents produced to the monitor. In an effort to narrow disputes, Plaintiffs have agreed to many of Defendants' proposed revisions, but do not and cannot agree to Defendants' proposed removal of two essential categories of documents: those related to specialty medical care (Plaintiffs' proposed order ¶ 4(e)) and those related to sick call requests and responses (Plaintiffs' proposed order ¶ 4(g)).

The monitor must have access to documentation related to the provision of specialty care at California City, as Mr. Viera Reyes's situation has clearly demonstrated. Defendants proposed striking all language requiring production of information about the criteria and processes for facilitating access to specialty care. Doing so would prevent the monitor from meaningfully

1   assessing whether Defendants are providing "timely approval and access to medical specialists,"

2   as the Court's February 10 order expressly directs. Dkt. 72 ¶ 1(d). Defendants have asserted that

3   this information is redundant with patient medical records and patient lists related to specialty

4   care visits. Mendelson Decl., filed herewith, at Ex. 1. It is not. Patient medical records and lists of

5   patients do not inform the monitor of the process by which Defendants approve or deny specialty

6   care requests, which is critical for the monitor's court-directed assessment.

7          The failure to provide adequate specialty care to patients at California City is a core issue

8   in this litigation. As the Court is well aware, Plaintiffs sought a temporary restraining order on

9   behalf of two named plaintiffs because Defendants failed to provide these individuals with critical

10  specialty care. *See* Dkt. 27; Dkt. 34 (joint stipulation resolving TRO). These failures persist. *See,*

11  *e.g.,* Dkt. 62 (notice of noncompliance with TRO detailing ongoing issues with a Named

12  Plaintiff's access to specialty care); Dkt. 80 (second notice of noncompliance). Defendants' own

13  declarant, CoreCivic regional medical director, acknowledged that access to specialists was an

14  ongoing issue at California City. Declaration of Susan Tiona, M.D., Dkt. 40-7 ("Tiona Decl.") ¶

15  47. The documents relating to the management of specialty care are essential for the monitor to

16  determine how Defendants evaluate requests for specialty care, in what circumstances Defendants

17  approve requests for specialty care, and whether the process appropriately facilitates timely

18  patient access to medically necessary specialty care.

19         The monitor also must have access to detained people's own requests for medical care,

20  which typically occur by submission of "sick call" requests. The Court's February 10 order

21  requires the External Monitor to assess whether Defendants have "a responsive 'sick call' request

22  system." Dkt. 72 ¶ 1(h). It is axiomatic that to do so, the monitor must review submitted sick call

23  requests and assess the timeliness and substance of the responses provided. At California City,

24  detained people can submit sick call requests electronically through communal tablets or in hard

25  copy paper forms. Defendants' own evidence suggests paper sick call slips are the preferred or

26  more common method. *See* Tiona Decl. ¶ 34 (explaining "[d]etainees at the facility can access

27  health services by submitting a paper Sick Call Request form"). Defendants' proposal to produce

28  only sick call requests "produced by tablet, as opposed to paper submissions" would exclude a

6

significant percentage of sick call slips and undermine the monitor's ability to assess this

provision of the Court's order. Under that formulation, the monitor would be unable to determine,

for example, if the facility were failing to respond to all sick call requests submitted in paper

form. This would be essential information to report to the Court.

**Monitor's Onsite Inspection:**

Plaintiffs have agreed to forego attendance at the monitor's on-site inspection so long as

counsel for Defendants, intervenors, and/or proposed intervenors also are not present. Plaintiffs

also agree to Defendants' proposed language with respect to the physical plant inspection

provided that Defendants agree that spaces used for medical housing (including patients under

medical observation) are "related to the provision of health care."

Plaintiffs cannot, however, agree to Defendants' proposal that the monitor rely solely on

Defendants' remote language interpretation service when communicating with patients at the

facility. The monitor must have use of an independent interpreter; the use of ICE's agent for

language interpretation will almost certainly chill patient participation. In an effort to narrow the

disputes here, Plaintiffs instead propose that the monitor be permitted to bring an in-person

Spanish interpreter, who will be subject to the same protective order as the monitor, and that

Defendants facilitate access to an external phone line during patient interviews that require

interpretation for other languages. This will allow the monitor to conduct his duties with the

necessary level of independence, while maintaining confidentiality and not chilling patient

participation.

***Ex Parte*** **Communication:**

Plaintiffs cannot agree to prohibit the monitor from *ex parte* communications with counsel

for the parties because the prohibition would hinder the monitor's work and effectiveness, and

makes absolutely no sense. *Ex parte* communications are standard in cases with court-appointed

medical monitors. Decl. of Margot Mendelson, Dkt. 77 at Ex. E ¶ 5 (citing cases). *Ex parte*

communication allows the medical monitor to ask questions of the parties and receive candid

responses, which is crucial for any fair, independent assessment. It also allows counsel for

Plaintiffs to refer patients of concern to the External Monitor when those patients may not want

their names disclosed to Defendants for fear of retaliation. Both parties benefit from the candid exchange of relevant information with the court-appointed monitor. Above all, the Court benefits from the reports of a fully informed monitor.

**Recommendations to the Court:**

Defendants propose to strike language directing the monitor to make recommendations for remedial actions in the course of his duties. This proposed deletion undercuts the very purpose of the monitor's role. At the February 6 hearing, the Court indicated that the role of the monitor is to assess and report on Defendants' healthcare system, and if issues were identified, make recommendations to address those problems. *See* Feb. 6, 2026 Hr'g Tr. at 63:10-22, 102:19-25.

**Process for Commenting on Draft Reports:**

Finally, Plaintiffs do not agree to Defendants' proposed language providing that the parties can provide comments on the monitor's proposed report only after the report is filed on the docket. Plaintiffs have proposed language clarifying that all parties must be copied on written comments by the parties in advance of filing to address any concerns about transparency. Giving the parties the opportunity to correct errors or make clarifications is respectful to the court-appointed monitor, especially here, where he will be working under significant time pressure and has only one scheduled site visit. This is a standard provision in orders appointing court experts, even without such significant time pressures. *See, e.g., Mays v. Cnty. of Sacramento*, No. 2:18-cv-02081-TLN (E.D. Cal. March 10, 2020), Dkt. 117 (providing the parties an opportunity to comment on the Court Expert's draft report before filing). Of course, the monitor is under no obligation to accept any of the proposed changes from the parties or to update his report in any way following those submissions.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order attached at Exhibit A.

1

2

Dated: March 13, 2026

3

Respectfully submitted,

4

5

| /s/ Steven P. Ragland | /s/ Margot Mendelson |
|---|---|
| KEKER, VAN NEST & PETERS LLP | PRISON LAW OFFICE |
| STEVEN P. RAGLAND | MARGOT MENDELSON |
| CODY S. HARRIS | TESS BORDEN |
| CARLOS C. MARTINEZ | PATRICK BOOTH |
| LISA C. LU | ALISON HARDY |
|  | RANA ANABTAWI |
| CALIFORNIA COLLABORATIVE FOR |  |
| IMMIGRANT JUSTICE | AMERICAN CIVIL LIBERTIES UNION |
| PRIYA ARVIND PATEL | FOUNDATION |
| MARIEL VILLARREAL | KYLE VIRGIEN |
|  | FELIPE HERNANDEZ |
|  | MARISOL DOMINGUEZ-RUIZ |
|  | CARMEN IGUINA GONZALEZ |

*Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

# EXHIBIT A

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v. | Case No. 3:25-cv-09757-MMC<br><br>**[PROPOSED] ORDER APPOINTING MUTHUSAMY ANANDKUMAR AS COURT EXPERT PURSUANT TO FRE 706**<br><br>Judge:     Hon. Maxine M. Chesney<br><br>Date Filed:  November 12, 2025 |

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; TODD M. LYONS,
Acting Director, U.S. Immigration and
Customs Enforcement; SERGIO
ALBARRAN, Acting Director of San
Francisco Field Office, Enforcement and
Removal Operations, U.S. Immigration and
Customs Enforcement; U.S. DEPARTMENT
OF HOMELAND SECURITY; KRISTI
NOEM, Secretary, U.S. Department of
Homeland Security,

                    Defendants.

**[PROPOSED] ORDER APPOINTING MUTHUSAMY ANANDKUMAR AS EXTERNAL MONITOR**

At a hearing on February 6, 2026, the Court found evidence of systemwide failures in Defendants' delivery of health care services at California City Detention Facility in the areas of health care staffing, intake procedures and assessments, access to medical specialists and emergency services, continuity of care, access to prescribed medications, and the "sick call" system. The Court concluded that Plaintiffs would suffer irreparable harm if the Court did not issue relief, that harm to some of the Named Plaintiffs and putative class members had already occurred, and that the balance of the equities and public interest favored a preliminary injunction. Accordingly, the Court granted in part Plaintiffs' Motion for Preliminary Injunction and provisionally certified the Class. *See* ECF No. 71. On February 10, 2026, the Court enumerated the specific relief ordered, including eight basic components of a functional health care system, and ordered Defendants to provide access to an External Monitor to ensure compliance with those basic components and the provision of constitutionally adequate health care. ECF No. 72 ("February 10 Order"). The February 10 Order required the parties to meet and confer regarding the selection of the External Monitor and to present their proposal(s) to the Court, after which the Court would enter a further Order of appointment. *Id.* Following the parties' status conference regarding the appointment of the monitor on March 5, 2026, the Court appointed Dr. Muthusamy Anandkumar as External Monitor. ECF No. 96. The Court further ordered the parties to meet and confer with respect to the form of the appointment order. *Id.*

The parties have presented their proposals for the form of the appointment order to the Court. Having reviewed those submissions, the Court hereby **ORDERS**:

1. Pursuant to Rule 706 of the Federal Rules of Evidence, Muthusamy Anandkumar, M.D., is appointed as the Court's expert and External Monitor to monitor compliance with the Court's February 10, 2026 Order and the provision of constitutionally adequate health care. Dr. Anandkumar's *curriculum vitae* is attached as Exhibit 1. Dr. Anandkumar's review of patient-specific information described in this Order shall be subject to protective

order.[1]

2. The External Monitor's appointment is for a period of 120 days from the date of this Order (the "Term of Appointment"), subject to renewal by court order.

To ensure the External Monitor can monitor compliance with the February 10 Order and render a complete report to the Court, it is further **ORDERED**:

3. The External Monitor will be granted remote read-only access to California City Detention Facility's electronic health record system ("EHRS") for the full term of appointment. The External Monitor may select up to one team member to assist with medical record reviews. That team member shall be granted remote read-only access to the EHRS, subject to protective order, but shall not be permitted to attend the site visit described below.

4. Upon request at any point during the Term of Appointment, Defendants shall provide the following documents to the External Monitor in electronic format, to the extent such documents exist:

   a.  health care policies and procedures;

   b.  patient lists related to particular diagnoses, detainees enrolled in chronic care clinics, prescriptions, detainees in medical observation/housing, pending orders, emergency room visits, specialty care visits, and off-site visits and returns;

   c.  rosters of health care staff and current schedules, by position;

   d.  the facility's medication/drug formulary and documentation of non-formulary requests and approvals/denials;

   e.  the tool or criteria used to approve or deny referrals to specialists and utilization management logs or other records documenting approval, denials, and deferrals (including alternative treatment plans);

   f.  logs of suicide watch placements, attempted suicides, and self-harm incidents;

---

[1] If the parties do not stipulate to a protective order in time, the External Monitor and his team member shall indicate assent to the Model Protective Order for Highly Sensitive Confidential Information available on the U.S. District Court for the Northern District of California's website.

g.  sick call requests and health care grievances/appeals, and the facility's responses, including tablet and paper submissions, for all patients during a 30-day period, and for specific patients, upon the External Monitor's request, when the relevant documents are not in the EHRS; and,

h.  any other documents or information that the External Monitor determines in his expertise he needs to assess compliance, which he shall jointly identify for the parties. If there is a dispute about his entitlement to records, the parties shall meet and confer in an attempt to resolve the dispute and then seek the Court's assistance as needed.

5.  The External Monitor shall be permitted one in-person inspection lasting up to three full days at the facility, to be scheduled on business days (Monday through Friday) with at least one week's notice. Counsel for the parties and/or intervenors or proposed intervenors may not attend the site visit. On site, the External Monitor shall be permitted to:

a.  inspect any area of the facility and grounds related to the provision of health care;

b.  observe pill call and the collection of sick call slips in up to four housing pods of his selection;

c.  interview custody and medical staff, whether full-time or contract employees. If key health care staff are not available on the date(s) of the site visit, they will be made available to the External Monitor via videoconferencing within two weeks of the site visit's conclusion, subject to availability due to scheduled leave;

d.  interview patients of his choosing, provided they and class counsel consent, in a confidential room with sound privacy from any facility staff. Should the External Monitor wish and the facility approve it based on safety and security, the room shall allow for contact, *i.e.* not include a glass partition. Defendants will compensate an in-person Spanish language interpreter to accompany the External Monitor for patient interviews and will facilitate access to an external phone line for patient interviews that require interpretation for other languages. All interpreters will be subject to protective order.

3

6033798

e. review and receive a demonstration of the facility's health care scheduling system and relevant electronic databases or dashboards, including but not limited to system(s) that display pending appointments for specialists and clinic operations;

f. review any facility video relevant to health care, including but not limited to emergency responses, unless upon review by the Warden or his designee, disclosure of the video would implicate safety or security concerns, and any business, budgetary, and/or operational documents relevant to health care; and,

g. bring necessary materials and equipment into the facility, including one laptop, but the External Monitor may not take photographs or make audio or video recordings given safety and security concerns. Should the External Monitor wish to have photographs or video recordings taken, a designated staff member will take the photograph and/or video recording requested by the External Monitor using a facility camera and confirm with the External Monitor that the photograph or video recording captures the intended subject(s). Any photographs or video recordings taken during the inspection will be subject to a security review, and all photographs and video recordings approved for disclosure will be provided to the External Monitor.

6. The External Monitor shall be permitted to communicate *ex parte* with counsel for the parties as needed to perform his duties.

7. By the conclusion of the Term of Appointment, the External Monitor shall produce a report assessing Defendants' compliance with the February 10 Order and the provision of constitutionally adequate health care and making recommendations for remedial actions. The report shall be filed on the docket but shall contain no personal identifiers of patients. Individual patients shall be identified in a separate confidential appendix provided to counsel for the parties and to the Court under seal. Before filing, the External Monitor shall serve the parties with the report and appendix, copying all parties, and the parties shall have 14 days from the date of service to submit written comments to the External Monitor, with all parties copied. In his discretion, the External Monitor may modify the

1    report in any manner suggested by a party before filing it with the Court.

2    8.  The External Monitor and his team member shall be paid at a rate of $425/hour. They

3        shall submit their reasonable fees and expenses to the Court and shall be paid by

4        Defendants upon order of the Court.

5    Defendants shall provide access to items requested by the External Monitor within seven

6    days of the request. The External Monitor shall jointly alert the parties to issues in the timely

7    provision of such items. The External Monitor and/or the parties may bring any concerns about

8    access to the Court's attention. An undue delay in compliance with any portion of this Order, to

9    the extent it prevents the External Monitor from timely or effectively completing his work, may

10   be cause to extend the term of appointment.

11       **IT IS SO ORDERED.**

12

13   Dated:

14                                              _____
                                                Hon. Maxine M. Chesney
15                                              United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER APPOINTING MUTHUSAMY ANANDKUMAR AS COURT EXPERT
PURSUANT TO FRE 706
Case No. 3:25-cv-09757-MMC

6033798

EXHIBIT 1

# Muthusamy Anandkumar MD, MBA, CHCQM, FABQAURP, CCHP

*Board Certified in Family Medicine | Board Certified Physician Adviser |
Certified Correctional Health Professional | Certified in Healthcare Quality &
Management | Certified in Patient Safety & Risk Management | Healthcare Analytics*

## PHYSICIAN LEADER AND SENIOR MEDICAL EXPERT

*Building People and Processes to deliver reliable and sustainable results to improve
Quality & Safety, Cost of Care, and Patient Experience*

An inspiring healthcare leader and champion of successful initiatives to redesign care delivery,
improving safety and costs of care while ensuring exceptional patient care and experience.

- Physician Education and Support
- Care Management/ Utilization Review
- Clinical Documentation Improvement
- Coordination of Care- ED, Inpatient, Clinic
- Physician Engagement & Patient Experience
- Multi-disciplinary Care Management
- Operational & Clinical Dashboards
- Credentialing and Privileging
- Clinical and Operational Policy and Procedures
- ED High Utilizer Management
- Clinical Quality Metrics
- Virtual Care /eConsult
- PCMH/1115/ PQRS/MACRA-MIPS
- Social Determinants of Health
- Regulatory Compliance
- Cross-Functional Team Leader
- LEAN Six Sigma /Workflow Optimization
- Clinical Care Pathways

## PROFESSIONAL EXPERIENCE

### Correctional Health Medical Expert:
Serve as a medical expert for DOJ, DHS/CRCL, and Counties.
Past and current work include:
- Illinois Department of Corrections 2025- 2026 (active)
- Baltimore Jail, Baltimore, Maryland 2025- 2026 (active)
- Cook County Jail, Chicago, Illinois – Medical Monitor 2014 - 2018
- Miami-Dade County Jail, Florida – Medical Monitor – 2024 - 2025
- Metropolitan Detention Center – Albuquerque, NM – Medical Monitor 2021 – 2026 (active)
- St. Croix Correctional Facility, Virgin Island – Medical Monitor 2019 – 2025
- Oklahoma County Jail, Oklahoma – Medical Expert (auditor) for DOJ 2022
- Erie County Jail, New York – Medical Expert (auditor) for DOJ 2023
- Lake County Jail, Indiana – Medical Monitor 2021 – 2026 (active)
- Chatham County Jail, Georgia – Medical Monitor 2020 – 2026 (active)
- 30+ Detention Centers across the county – Medical Expert (auditor) for DHS – 2018 - 2025

### Staff Physician
August 2006–Oct 2009| Parkland Health and Hospital System Dallas, Tx
- Dallas County **Correctional Health** – served as a Physician

### Assoc. Med Director Performance Improvement
Oct 2009–March 2011| Dallas County **Correctional Health** (adult and Juvenile), Parkland Health and Hospital
System Dallas, Tx
- Developed quality assurance metrics dashboard to monitor program performance.
- Implemented programs to improve timely access to medical care.

## Medical Director Performance Improvement
March 2011– June 2016 | Dallas County **Correctional Health** (adult and Juvenile), Parkland Health and Hospital System Dallas, Tx
- **Regulatory Compliance:** Developed and implemented actions plans to address audit findings to meet CMS compliance.
- **Credential and Privileges:** Optimized the workflow for medical affairs team to reduce turnaround time for processing applications.
- **Physician Supervision:** Lead Physicians and Advanced Level Practitioners.
- **EMR Implementation:** Lead a successful multi-disciplinary EMR implementation team.
- **Patient Safety:** Lead the Patient quality/safety and Utilization sub-committee.
-

## Physician/ Vice President of Performance Excellence for Population Health
June 2016 – May 2017 | Parkland Health and Hospital System Dallas, Tx
Led Performance Improvement programs for Population Health and **Correctional Health Programs**. Established programs to transition care from the Inpatient and Emergency Department to the Ambulatory setting. Develop and implemented transformational programs to improve quality of care, reduce cost of care and improve patient experience.
- **Transition of Care:** Implemented workflows to transition of care from the Inpatient Service and Emergency Department to the clinics
- **Utilization Management:** Reduced inpatient bed days and readmission rates.
- **Care Delivery:** Developed a care pathway to manage high risk patients to reduce hospital readmission.
- **Multi-Disciplinary Teams:** Implemented multi-disciplinary care teams at each clinic to manage high acuity patients.
- **Scorecard** I **Analytics:** Created performance balance scorecard and established a Quality and Safety committee to periodically review and continuously improve the programs.
- **LEAN Process:** Optimized clinic workflow and eliminated unnecessary steps to reduce dwell times.
- **Optimize Technology:** Create Clinical care Pathways to standardize care and reduce variability.

## Physician/ Vice President - Community Health Institute
May 2017 – Nov 2020 | Parkland Health and Hospital System Dallas, Tx
Built and led a new health system program focused on keeping individuals healthy in the community and reducing avoidable ED visits and in-patient admissions. Directed four departments including Disease Prevention and Health Promotion; Office of Social Determinants of Health; Injury Prevention and Community Development; and Population Health Analytics.
- **Clinical Transformation:**  Led a high risk, high utilizer committee to review cases and identify opportunities to address clinical and social determinants of health (SDoH) and connect them to care in an ambulatory clinic. Implemented a Nurse led clinic and care pathways to create a improve access to clinical care for high-risk patients.
- **Innovation:** Physician champion at hospitals' Center for Innovation to develop non-traditional programs to improve quality, cost, and access to care.
- **Community Health:**  Developed and implemented a community health workers program to manage high risk and high utilizer patients in the community to reduce length of stay and hospital readmission.
- **Collaborative Care:** Established partnership with community-based organizations and other hospitals to coordinate care Conducted health screening events in the community and connect them to care.

## Utilization Management - Physician Advisor
Dec 2021 – Present | Texashealth, Dallas, Tx
Physician Advisor focused on utilization and quality management. Serves as physician and hospital healthcare liaison for safe and efficient patient care. Develop strategic objectives for the Care Management. Programs. Engage in utilization review committees and contribute to their accomplishments—lead efforts to resolve identified barriers to patient flow and efficient resource resolution.

**Utilization Management Physician/ Assoc. Medical Director - Parkland Community Health Plan**
Aug 2021 – Dec 2021 | Parkland Health and Hospital System Dallas, Tx
Oversee medical coordination required for effective utilization and quality management. Performing admission status reviews and concurrent reviews; denial/appeal management; clinical policies, CMS compliance, technology assessment, credentialing, and population health management. Ensuring comprehensive, high quality health care.
Conducting peer to peer reviews, requests for prior authorization, and compliance metrics/ data analytics for trends and performance improvement. Monitoring clinical care needed to produce optimal health outcomes and cost-effective care.

## PROJECT EXPERIENCE - PHYSICIAN CHAMPION

- **Reduced Adult Heart Failure Inpatient Admission Rate** (Admissions with a principal diagnosis of heart failure per 100,000 population, ages 18 years and older)
- **Reduce ED utilization** for patients with CHF, Angina, and Hypertension
- **Coordinated Care Management -** Integrated solution to identify patients with clinical and social care gaps, link them to clinical care and community-based organizations and allow closed-loop referral information to integrate with Epic.
- **eConsultation:** Establish a virtual consultation program with each specialty service to enable Leverage Technology to expand the reach and convenience of specialty services.
- **Virtual Visits:** Reduce ED utilization for ambulatory sensitive conditions by providing access via video/telephone visits with nurses and providers.
- **Clinical Care Pathways:** Improve quality and safety by reducing variability and streamline care delivery.
- **Opioid Clinical Practice Work group:** Create system-wide standardization surrounding the practices around prescribing opioids, treating acute and chronic pain.
- **EPIC Healthy Planet** – Implementation of healthy planet to drive more effective decision support, risk stratification, analytics, and proactive outreach campaigns.
- **Tumor marker SafetyNet Program**: Identify patients with abnormal tumor markers and ensure warm handoff to the care team.
- **Radiology SafetyNet program**: Surveillance of radiology results that require follow-up testing and intervene if the cases that are past due.
- **Automated referral of suspected lung mass**: Refer patients with suspected lung mass to oncology lung diagnostic clinic for follow-up.
- **Medication Management**: Optimize the medication refill and renewal process to ensure continuity of chronic medications. Automation of refill process through phone calls and text messaging
- **After Visit Summary Optimization** (AVS): Enhance the way in which this document can be easy to understand and effectively engage patients in their care.
- **Patient Portal**: Increase use of patient portal/mychart for refills, appt requests, test results and other communications.
- **Management of High-Risk Patients**: Risk stratification using validated criteria to identify high risk patients and do focused intervention using care management strategies to reduce risk.

## COMMITTEE EXPERIENCE

- Medical Executive Committee
- Quality of Care and Patient Safety Committee
- Utilization Review Committee
- Medical and Quality of Care expert for DHS and DOJ

- Coordination of Care Committee
- Post-Acute Network
- High Utilizer Committee
- Center for Healthcare Innovation and Value

# EDUCATION

- Master of Business Administration | University of Tennessee Knoxville, Tennessee - Hybrid 2006
- Healthcare Informatics AMIA 10x10 | University of Alabama -2008
- Family Medicine Residency | Forest Park Hospital St. Louis, Missouri -2005
- General Medicine Residency | SRMC, Chennai. 2000
- Medicine Bachelor/Bachelor of Surgery (Medical School - MD equivalent) | RMMC, Chennai - 1997
- Population Health Essentials | Thomas Jefferson University
- Toyota U.S. Lean Leadership | Lean Enterprise Institute & Toyota Production System - 2018
- Virginia Mason - Lean Principles – Creating flow in the Ambulatory Setting
- Clinical Safety & Effectiveness | UT Southwestern - 2012
- Artificial Intelligence in Health Care| MIT Sloan School of Management Online - 2024

# LEADERSHIP TRAINING

Situational Leadership |Leading at the Speed of Trust |Executive competencies of Foster Engagement | Strategic Problem Solving and Decision Making | Systematic Approach to Getting Things Done | Executive Communication and Influence | Onstage Leadership | Physician Leadership

# PRESENTATIONS AND PUBLICATIONS

- Book Chapter: Electronic Health Records in Public Health Behind Bars - From Prisons to Communities, 2nd Ed. 2021
- Dallas-Fort Worth Region High ED Utilizers Exploratory Analysis Using Multi-Organizational Data - America's Essential Hospitals (AEH) VITAL 2019
- Leveraging Technology to Improve Access to Specialty Care (Oral Presentation -Vizient Deep Dive Conference) - American Journal of Medical Quality May 15, 2019
- Collaborative Coalition for Collective Community Health Impact (Poster Presentation -Vizient Deep Dive Conference) - American Journal of Medical Quality, May 15, 2019
- Value Based Care (vCare) Model Demonstration Project. Vizient Value Based Care Symposium, March 23, 2017