KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

        v.

U.S. IMMIGRATION AND CUSTOMS

Case No. 3:25-cv-09757-MMC

**PROPOSED FACTUAL FINDINGS AND CONCLUSIONS OF LAW**

Judge:      Hon. Maxine M. Chesney

Date Filed:  November 12, 2025

ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security,

Defendants.

1    Following full briefing and a lengthy hearing on February 6, 2026, the Court issued an

2    Order Granting in Part Plaintiffs' Motions for Preliminary Injunction and Class Certification

3    ("February 10 Order") on February 10, 2026. *See* ECF No. 72.

4    Due to the extremely urgent nature of the relief requested, the February 10 Order was

5    brief. During a subsequent conference with the parties on March 5, 2026, the Court noted that it

6    had considered the evidence presented and ruled on those issues on which it had determined that

7    Plaintiffs were likely to prevail. Mar. 5, 2026 Hr'g Tr. at 29:21–30:12, 52:21–54:1. As the Court

8    told the parties during the March 5 conference, the Court's ruling was based on ample evidentiary

9    support. *Id.* at 53:15–55:6, 101:21–102:10. But the Court also invited Plaintiffs to file a

10   "proposed form of memorandum" in support of the Court's oral ruling on the preliminary

11   injunction motion. *See id.* at 55:7–11, 101:3–102:16. To further clarify the record, and to aid in

12   any appellate court's review to the extent necessary, that proposed form of memorandum is

13   attached hereto as **Exhibit A**.

14

15   Dated: March 13, 2026

16

17   Respectfully submitted,

18   /s/ *Cody S. Harris*                          /s/ *Margot Mendelson*
     KEKER, VAN NEST & PETERS LLP                  PRISON LAW OFFICE
19   STEVEN P. RAGLAND                             MARGOT MENDELSON
     CODY S. HARRIS                                TESS BORDEN
20   CARLOS C. MARTINEZ                            PATRICK BOOTH
     LISA C. LU                                    ALISON HARDY
21                                                 RANA ANABTAWI
     CALIFORNIA COLLABORATIVE FOR
22   IMMIGRANT JUSTICE                             AMERICAN CIVIL LIBERTIES UNION
     PRIYA ARVIND PATEL                            FOUNDATION
23   MARIEL VILLARREAL                             KYLE VIRGIEN
                                                   FELIPE HERNANDEZ
24                                                 MARISOL DOMINGUEZ-RUIZ
                                                   CARMEN IGUINA GONZALEZ
25
                                                   *Attorneys for Plaintiffs*
26

27

28

# EXHIBIT A

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v. | Case No. 3:25-cv-09757-MMC<br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION**<br><br>Judge:    Hon. Maxine M. Chesney<br><br>Date Filed:  November 12, 2025 |

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; TODD M. LYONS,
Acting Director, U.S. Immigration and
Customs Enforcement; SERGIO
ALBARRAN, Acting Director of San
Francisco Field Office, Enforcement and
Removal Operations, U.S. Immigration and
Customs Enforcement; U.S. DEPARTMENT
OF HOMELAND SECURITY; KRISTI
NOEM, Secretary, U.S. Department of
Homeland Security,

                    Defendants.

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

Having considered Plaintiffs' Motion for Preliminary Injunction, ECF No. 22; Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF Nos. 38, 40, 45; Plaintiffs' Reply in Support of the Motion for Preliminary Injunction, ECF Nos. 48–49; the declarations and exhibits submitted in support thereof; the Notice of Noncompliance with Court Order Plaintiffs filed on February 5, 2026, ECF Nos. 61–62; Plaintiffs' Motion for Class Certification, ECF No. 21; Defendants' Opposition to Plaintiffs' Motion for Class Certification, ECF Nos. 39–40; Plaintiffs' Reply in Support of the Motion for Class Certification, ECF No. 46; the declarations and exhibits submitted in support thereof; the hearing held on February 6, 2026; and the record in this matter, the Court GRANTED in part Plaintiffs' Motions for Preliminary Injunction and Class Certification and provisionally certified the Class. ECF No. 72 ("February 10 Order"). The Court now enters the following findings of fact and conclusions of law with respect to that ruling.

## I.     PROCEDURAL BACKGROUND

Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia (collectively, "Plaintiffs") are or have been individuals held in civil detention at the California City Detention Facility ("California City"). On November 12, 2025, Plaintiffs sued U.S. Immigration and Customs Enforcement ("ICE"); ICE officials Todd Lyons and Sergio Albarran; the U.S. Department of Homeland Security; and its then-Secretary, Kristi Noem (collectively, "Defendants"). Plaintiffs challenge the conditions of confinement at California City, asserting, among other things, that the health care system is constitutionally inadequate, that the conditions are unconstitutionally punitive, and that attorney access is insufficient to comport with constitutional standards. *See* ECF Nos. 1, 15. On December 1, 2025, Plaintiffs moved for a preliminary injunction and for provisional class certification. *See* ECF Nos. 21–22. Seeking to represent a class of all persons detained at California City, Plaintiffs requested an order requiring a constitutionally adequate health care system, the appointment of an independent and neutral "External Monitor" to assess and report on that system, certain changes to California City's attorney access policies, and changes to policies relating to allegedly punitive conditions of confinement. *See* ECF No. 22-38 (Plaintiffs' Proposed Order). Defendants opposed the motions and also moved

1

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

to transfer the action to the Eastern District of California. *See* ECF Nos. 37–40, 45.

As part of their moving papers, Plaintiffs filed opening and rebuttal expert declarations from Dr. Todd Wilcox, a practicing medical doctor and expert in the field of correctional health care who had reviewed a subset of patient records from California City; opening and rebuttal expert declarations from Dan Pacholke, an expert in the field of adult institutional corrections; more than two dozen sworn declarations from individuals detained at California City; and eleven attorney or paralegal declarations concerning client communications and access. For their part, Defendants submitted declarations from California City's warden, Christopher Chestnut, as well as Dr. Susan Tiona, who is a regional medical director for CoreCivic, the private prison company that operates California City at Defendants' direction. Defendants presented no expert testimony.

Separately but relatedly, Plaintiffs filed a motion for a temporary restraining order ("TRO") on December 16, 2025, seeking urgent medical care for two Named Plaintiffs, Fernando Viera Reyes and Yuri Alexander Roque Campos. ECF No. 27. Mr. Fernando Viera Reyes appeared to be suffering from prostate cancer but had been unable to see a urologist, receive confirmation of a cancer diagnosis, or begin treatment. *Id.* Mr. Roque Campos was suffering from a congenital heart disease that required immediate attention from a cardiologist. *Id.* The Court held an emergency conference on December 17, during which the Court urged the parties to meet and confer in hopes of reaching an acceptable resolution to the urgent issues presented in the TRO motion. The parties presented a stipulated order to the Court requiring prompt treatment for both individuals, and the Court signed and issued the order on December 22. ECF No. 36 ("TRO Order").

On February 5, 2026, Plaintiffs filed a Notice of Noncompliance with Court Order, which asserted that Defendants had failed to comply with the TRO Order with respect to Mr. Viera Reyes, who had still been unable to receive confirmation of his prostate cancer diagnosis or begin treatment. *See* ECF No. 62. Defendants' counsel later confirmed that Mr. Viera Reyes had missed a critical specialty appointment due to an "internal scheduling error" at the facility. Feb. 6, 2026 Hr'g Tr. ("Hr'g Tr.") at 8:14–15.

The Court held a lengthy hearing on February 6, 2026 on the parties' pending motions for preliminary injunctive relief, class certification, and transfer. After reviewing the record and

2

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

hearing arguments of counsel, the Court decided to transfer the matter to the Eastern District. Before the transfer, however, the Court decided that it would grant partial relief to Plaintiffs given the urgency of the situation. The Court therefore discussed a proposed order with the parties at the hearing and later modified and issued its Order on February 10, 2026. *See* February 10 Order. As set forth in that February 10 Order, the Court provisionally certified the proposed class and granted Plaintiffs' motion for a preliminary injunction in part, finding that "Plaintiffs have demonstrated that they are likely to prevail on the merits of their claims; that they will suffer irreparable harm if the Court does not issue relief; that the balance of equities tips in their favor; that the public interest lies in issuing a preliminary injunction; and that all the requirements of Rule 23(a) and 23(b)(2) have been satisfied." *Id.* at 1. The Court declined, at that time, to grant Plaintiffs all of the relief sought in their motion, instead holding in abeyance their additional requests for preliminary injunctive relief and class certification until after transfer to the Eastern District. *Id.* at 3. In its February 10 Order, the Court directed Defendants to: (1) ensure constitutionally adequate medical care, *id.* ¶ 1; (2) provide access to an independent, third-party "External Monitor" for a period of 120 days, *id.* ¶ 2; (3) ensure that detained individuals have timely and confidential access to attorneys through in-person, contact legal visits and calls, *id.* ¶ 3; and (4) provide free temperature-appropriate clothing and at least one hour of outdoor recreation time per day, *id.* ¶ 4.

For the reasons set forth herein, the Court's February 10 Order finds ample support in the evidentiary record and legal arguments presented.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PRELIMINARY INJUNCTION MOTION

### A. Findings of Fact

California City is a former California state prison located in the Mojave Desert. ECF No. 45-1, Am. Decl. of Christopher Chestnut ("Chestnut Decl.") ¶¶ 2, 32. The facility houses federal immigration detainees pursuant to a contract between Defendant ICE and CoreCivic. *Id.* ¶ 3. Defendants began housing people at California City in late August 2025. *Id.* ¶ 35. According to Defendants' publicly available statistics, most of the people detained at California City have no criminal record. ECF No. 49-2, Suppl. Decl. of Dan Pacholke ("Suppl. Pacholke Decl.") ¶¶ 34–38.

3
[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

1

### 1.     Medical Care at California City

2      In support of their preliminary injunction motion, Plaintiffs have proffered two declarations

3   from a medical expert, Dr. Todd Wilcox. *See* ECF No. 22-3, Decl. of Dr. Todd Randall Wilcox

4   ("Wilcox Decl."); ECF No. 48-5, Reply Decl. of Dr. Todd Randall Wilcox ("Wilcox Reply Decl."),

5   which were based on Dr. Wilcox's review of Defendants' patient medical records. Dr. Wilcox has

6   more than three decades of experience working as a physician in correctional facilities. Wilcox

7   Decl. ¶ 1. He is the Medical Director of the Salt Lake County Jail System and has served as a

8   consultant for a variety of correctional systems in California, Arizona, Utah, and Washington State.

9   *Id.* Dr. Wilcox served as President of the American College of Correctional Physicians, is a board-

10  certified physician, and holds certifications in correctional health. *Id.* ¶¶ 2–3. Defendants neither

11  challenged Dr. Wilcox's credentials or qualifications, nor did they proffer a medical expert of their

12  own to rebut or refute his opinions or conclusions. Instead, they submitted a declaration from Dr.

13  Susan Tiona, a regional medical director for CoreCivic. Having reviewed the relevant declarations,

14  the Court concludes that Dr. Wilcox's opinions and conclusions are credible and are supported by

15  substantial record evidence, including Defendants' own records, which revealed the deficiencies,

16  omissions, and failures Dr. Wilcox identified and discussed. The Court rejects Defendants'

17  argument that Dr. Wilcox reviewed an insufficient subset of patient records to allow him to reach

18  his conclusions. *See* Wilcox Reply Decl. ¶¶ 10–13; Mar. 5, 2026 Hr'g Tr. at 53:20–22 ("[T]his was

19  not simply a couple of people here or there. It was, [according to Plaintiffs'] expert, across the

20  board, and he made it very clear that the concerns were not simply individual.").

21      Dr. Wilcox concluded that Defendants "struggle to deliver standard of care for common

22  uncomplicated problems." Wilcox Decl. ¶ 9. The patient intake process is incomplete and

23  haphazard. *Id.* ¶¶ 18, 26–68; Wilcox Reply Decl. ¶ 34–45. Licensed Vocational Nurses typically

24  perform the initial screenings, and referrals to medical providers are delayed, even for urgent

25  medical needs. Wilcox Decl. ¶ 30; Wilcox Reply Decl. ¶ 37; *see also* ECF No. 22-4, Decl. of

26  Esteban Alvarez-Mora ("Alvarez-Mora Decl.") ¶¶ 7–8. Patients who arrive with medications or

27  prescriptions for medications experience dangerous lapses in the provision of that medication.

28  Wilcox Decl. ¶¶ 47, 51; Wilcox Reply Decl. ¶¶ 29, 44.

The "sick call" system that detained persons must use at California City, Chestnut Decl. ¶ 145, suffers from systematic delays and failures, Wilcox Decl. ¶¶ 71–78; Wilcox Reply Decl. ¶¶ 51–56. Medical records show shortages of necessary medications. Wilcox Decl. ¶ 109. When care is provided, it is often deficient. Dr. Wilcox's review of clinical notes revealed multiple instances of "poor clinical judgment," inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care. *Id.* ¶¶ 49, 63, 81–85, 90; Wilcox Reply Decl. ¶¶ 19–20, 24, 46, 59. Specialty care is all but non-existent at California City; of thirteen orders for specialty care Dr. Wilcox reviewed, none had been completed or authorized other than the two Named Plaintiffs specifically at issue in the TRO Order. Wilcox Decl. ¶ 114; Wilcox Reply Decl. ¶ 75, 79, 82. Given the facility's remote location, the nearest hospital is nearly an hour away, making emergency treatment exceedingly challenging. *Id.* ¶ 127.

Dozens of detained individuals have reported receiving inadequate medical care.[1] Three of the Named Plaintiffs, for example, were suffering from acute medical conditions that required urgent and sustained attention. Mr. Gomez Ruiz was suffering from a foot ulcer that was exhibiting blood and pus, leaving him at risk for gangrene or amputation. Wilcox Decl. ¶ 90. Mr. Viera Reyes was exhibiting symptoms and blood levels consistent with prostate cancer yet could not see a urologist or get a biopsy he could begin cancer treatment. *Id.* ¶ 116. Even after the Court ordered Defendants to ensure that Mr. Viera Reyes received prompt attention from specialists and necessary

---

[1] *See* ECF No. 22-6, Decl. of Yuri Alexander Roque Campos ("Roque Campos Decl.") ¶¶ 15-35; ECF No. 22-24, Decl. of Fernando Viera Reyes ("Viera Reyes Decl.") ¶¶ 11-21; ECF No. 22-8, Decl. of Fernando Gomez Ruiz ("Gomez Ruiz Decl.") ¶¶ 5–16; ECF No. 22-13, Decl. of Alfonso Leyva ("Leyva Decl.") ¶¶ 13–29; ECF No. 22-36, Decl. of Masuma Khan ("Khan Decl.") ¶¶ 45–56; Alvarez-Mora Decl. ¶¶ 6-14; ECF No. 22-5, Decl. of Daniel Elias Benavides Zamora ("Benavides Zamora Decl.")¶¶ 12, 17; ECF No. 22-7, Decl. of Gustavo Guevara Alarcon ("Guevara Alarcon Decl.") ¶¶ 19–20, 23–34; ECF No. 22-9, Decl. of Oneil Guthrie ("Guthrie Decl.") ¶¶ 13–25, 28–29; ECF No. 22-10, Decl. of Alejo Juarez Ruiz ¶¶ 6, 9–15; ECF No. 22-12, Decl. of Sokhean Keo ("Keo Decl.") ¶¶ 13, 20–32; ECF No. 22-15, Decl. of Alejandro Mendiola Escutia ("Mendiola Escutia Decl.") ¶ 11, 23; ECF No. 22-16, Decl. of Jonathan Jair Montes-Diaz ("Montes-Diaz Decl.") ¶¶ 15, 21–23; ECF No. 22-17, Decl. of Hilario Montes Regalado ¶¶ 11, 13–19, 21-22; ECF No. 22-18, Decl. of Edgar Giovanni Neri Valdez ("Neri Valdez Decl.") ¶¶ 6–10; ECF No. 22-19, Decl. of Camilo Orejuela Gutierrez ¶¶ 2, 6–10; ECF No. 22-21, Decl. of Jose Ruiz Canizales ¶¶ 51, 61, 65-68; ECF No. 22-22, Decl. of Julio Santos Avalos ¶¶ 10–12; ECF No. 22-23, Decl. of Daler Singh ¶¶ 5–23; ECF No. 22-25, Decl. of Vishal ¶ 8; ECF No. 22-33, Decl. of Julio Armenta ("Armenta Decl.") ¶¶ 9-12; ECF No. 22-37, Decl. of Veronica Garcia Romero ("Garcia Romero Decl.") ¶ 4; ECF No. 49-7, Decl. of "Patient A" ¶¶ 6–16.

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

1  follow-up care, Defendants proved unable to comply with that order in a timely fashion. *See* ECF
2  No. 62; Hr'g Tr. at 7:4–9:7. Mr. Roque Campos had a life-threatening congenital heart condition,
3  placing him at risk of sudden cardiac death, yet could not see a cardiologist absent court
4  intervention. Wilcox Decl. ¶¶ 86–89. For all these reasons and others, Dr. Wilcox concluded that
5  "it is not safe to be sick at [] California City." *Id.* ¶ 9.

6         As noted above, Defendants did not offer their own medical expert to rebut or refute
7  Dr. Wilcox's opinions, leaving his declarations unrebutted. Instead, Defendants' declarant,
8  Dr. Tiona, submitted a declaration that in many ways supported Dr. Wilcox's findings. For
9  example, after reviewing medical records for the same patients Dr. Wilcox had reviewed, Dr. Tiona
10 agreed with several of his observations and made recommendations to improve their care and
11 treatment. ECF No. 40-7, Decl. of Dr. Susan Tiona ("Tiona Decl.") ¶¶ 56–57. Dr. Tiona
12 acknowledged delays in "offsite appointment scheduling" and issues related to renewing
13 medications, adjusting dosing, scheduling follow-up appointments, establishing chronic care
14 appointments, ordering labs, ordering medical diets, and scheduling evaluations for possible
15 accommodations related to eleven patients. *Id.* ¶ 57. As of the date of the hearing, more than a
16 month after her declaration was filed, none of those recommendations had been implemented.
17 Wilcox Reply Decl. ¶¶ 6, 63; Hr'g Tr. at 99:11–17. Dr. Tiona also confirmed substantial delays in
18 patient intake screening at California City, with roughly half of the patients reviewed taking longer
19 than two weeks to receive an initial appraisal from a medical provider. Tiona Decl. ¶ 31. Dr. Tiona
20 identified nursing errors and the need for remedial training in three additional patient cases, *id*. ¶¶
21 59, 62, 64, 65, 68, and conceded, systemwide, ongoing "difficulties in scheduling specialty
22 appointments due to the lack of ICE-contracted specialists near the facility," *id.* ¶ 47.

23        Despite identifying these errors and delays in patient care, Dr. Tiona asserted that none
24 "resulted in adverse patient outcomes." *Id*. ¶ 53. But Dr. Wilcox's response demonstrates that "there
25 have been many adverse outcomes for patients at California City as a result of poor medical care."
26 Wilcox Reply Decl. ¶ 24; *see, e.g.*, *id.* ¶ 25 (dangerously high blood glucose levels), ¶ 28 ("ongoing
27 and progressive organ damage"), ¶¶ 60–61 ("kidney damage"), ¶¶ 72–73 (increased "risk of a
28 stroke"). Although Dr. Tiona attempted to explain or dispute some of Dr. Wilcox's observations

6

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

and conclusions with respect to limited issues and four patients, the Court finds those explanations neither persuasive nor credible, and Dr. Wilcox effectively countered Dr. Tiona's observations in his reply declaration. *See* Wilcox Reply Decl. ¶¶ 17, 20, 24–85 & Appx A. The Court further finds Warden Chestnut's declaration as to medical care unpersuasive, as it contains only general assertions regarding medical policies, with no evidence that those policies have been implemented and have resulted in adequate patient care. *See* Chestnut Decl. ¶¶ 51–56.

## 2.    Attorney Access at California City

Given the facility's remote location, many legal visits take place over the phone or through Virtual Attorney Visits ("VAVs"). Chestnut Decl. ¶¶ 187, 190–95. Close to a dozen legal representatives reported difficulties communicating with their clients held at California City.[2] Scheduling proved difficult, with some attorneys waiting weeks to have a call with their clients. *See* Kyle Decl. ¶ 5, Quintero Decl. ¶¶ 6–7, 9. Warden Chestnut conceded that there had been some scheduling issues but claimed to be rolling out an updated system that would address the volume of legal requests coming into the facility. Chestnut Decl. ¶ 195.  California City limited the duration of calls to 60 minutes, which many attorneys found too short to allow meaningful consultation with their clients. *Id.* ¶¶ 190–91; Kazim Decl. ¶¶ 16, 19; Kyle Decl. ¶ 12.

Attorneys may also visit their clients in person at the facility. Chestnut Decl. ¶ 189. But all attorney visits took place in a non-contact setting, with attorneys on one side of a pane of glass, the client on the other, and a small opening at the bottom. *See, e.g.*, Goss Decl. ¶ 15, Narayanan Decl. ¶ 8, Valenzuela Decl. ¶ 5. Attorneys reported difficulty hearing and speaking to their clients in this setting. *See, e.g.*, Goss Decl. ¶ 16, Narayanan Decl. ¶ 10; ECF No. 49-1, Decl. of Cody Harris ("Harris Decl.") ¶ 9. Despite the fact that Warden Chestnut said that legal contact visits "may be permitted upon request with facility approval," Chestnut Decl. ¶ 189, all in-person attorney visits had been non-contact, regardless of a detained person's security status, and Defendants indicated

---

[2] *See, e.g.*, ECF No. 22-26, Decl. of Genesis Fabian ("Fabian Decl."); ECF No. 22-27, Decl. of Lee Ann Felder-Heim ("Felder-Heim Decl."); ECF No. 22-28, Decl. of Nicole Gorney; ECF No. 22-29, Decl. of Sarah Goss; ECF No. 22-30, Decl. of Hannah Kazim ("Kazim Decl."); ECF No. 22-31, Decl. of Hudson Kyle ("Kyle Decl."); ECF No. 22-32, Decl. of Stephanie Quintero ("Quintero Decl."); ECF No. 22-34, Decl. of Madhavi Narayanan ("Narayanan Decl."); ECF No. 22-35, Decl. of Mario Valenzuela (Valenzuela Decl.").

1   that allowing contact visits would require "changes to existing regulations at the facility." *See*

2   Harris Decl. ¶¶ 10–11.

3                    **3.        Punitive Conditions at California City**

4          Conditions of confinement at California City are unduly harsh and punitive in many

5   respects, as established by dozens of sworn declarations from detained individuals, as well as Dan

6   Pacholke, Plaintiffs' proffered expert in the field of adult institutional corrections. Mr. Pacholke

7   has more than 35 years of experience in the field, including holding leadership positions in the

8   Washington State Department of Corrections and serving as a consultant and expert on correctional

9   practices in several jurisdictions. ECF No. 22-2, Decl. of Dan Pacholke ("Pacholke Decl.") ¶¶ 1–

10  3. Defendants did not offer their own expert to rebut Mr. Pacholke's findings, relying instead on

11  Warden Chestnut's declaration. Having reviewed the relevant declarations, the Court concludes

12  that Mr. Pacholke's opinions and conclusions are credible and are supported by substantial record

13  evidence.

14         Detained people reported it being very cold in the facility. *See, e.g.*, Gomez Ruiz Decl. ¶

15  17; Garcia Romero Decl. ¶ 5; Benavides Zamora Decl. ¶ 20; Leyva Decl. ¶ 34; Khan Decl. ¶ 63.

16  Some detained people resorted to fashioning their socks into sleeves or beanies to keep warm.

17  Guevara Alarcon Decl. ¶ 8; Garcia Romero Decl. ¶¶ 5, 15; Khan Decl. ¶ 67; ECF No. 49-6, Decl.

18  of Anbhav Mann ("Mann Decl.") ¶ 13. Defendants provided no sweatshirts, sweatpants, or other

19  temperature-appropriate clothing. Chestnut Decl. ¶ 74. Many detainees reported that they could not

20  afford buying sweatshirts at the commissary. Gomez Ruiz Decl. ¶ 17; ECF No. 22-14, Decl. of

21  Yuniel Llufrio ("Llufrio Decl.") ¶ 20. Mr. Pacholke explained that "[w]eather-appropriate clothing

22  should be standard issue, as part of the cost of detaining people," and that requiring "detainees to

23  purchase items to stay warm is inhumane," especially given the "high" prices at California City's

24  commissary. Pacholke Decl. ¶ 22–23.

25         Warden Chestnut stated that, at some point, the facility began providing "jackets" to

26  detained people. Chestnut Decl. ¶ 73. But these jackets are very thin and provide no warmth. *See*

27  ECF No. 49-5, Suppl. Decl. of Gustavo Guevara Alarcon ("Suppl. Guevara Alarcon Decl.") ¶ 6

28  ("The windbreakers are very thin, have no hood, and do not retain heat. They do not provide

8

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

warmth."); Mann Decl. ¶ 13 ("The jackets are very thin and unlined, have no hood, and do not keep me warm."). Defendants offered no rebuttal to those descriptions.

According to sworn declarations of detained individuals, they have been offered between four and seven hours of outdoor recreation per week. *See* ECF No. 22-20, Decl. of Dennis Rivera-Trigueros ("Rivera-Trigueros Decl.") ¶ 13; Viera Reyes Decl. ¶ 23; Keo Decl. ¶ 8, Armenta Decl. ¶ 14; Llufrio Decl. ¶¶ 13, 20; ECF No. 22-11, Decl. of Julio F.V. ¶19; Garcia Romero Decl. ¶ 11. This is less than incarcerated prisoners regularly receive. Pacholke Decl. ¶ 26. Warden Chestnut confirmed that the facility had needed "to cancel or curtail recreation periods" at various times. Chestnut Decl. ¶ 91. He further stated that the facility's policy was to allow "at least one hour per day, five or more days a week" outdoors, with a "goal of seven days a week weather permitting." *Id.*

## B.    Conclusions of Law

The Court will grant a preliminary injunction if Plaintiffs establish that (1) they are "likely to succeed on the merits" of their claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A stronger showing on one element may offset a weaker showing on another. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, if Plaintiffs satisfy the irreparable harm and public interest factors, they need only raise "serious questions going to the merits" and show that the "balance of hardships tips sharply in [their] favor." *Id.* at 1135.

### 1.    Plaintiffs are likely to succeed on their Fifth Amendment claim for inadequate medical care.

Plaintiffs have established that they are likely to succeed on their claim that medical care at California City violates the Fifth Amendment or, at the very least, they have raised serious questions going to the merits of that claim. Federal immigration detainees are entitled to adequate medical care. *Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017). Because Plaintiffs are civil detainees rather than convicted prisoners, the Fifth Amendment governs the analysis rather than the Eighth Amendment, and the Court employs an objective standard to determine whether medical care is

9

adequate. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120, 1122–25 (9th Cir. 2018). Conduct that would violate the higher Eighth Amendment standard for inadequate medical care necessarily violates the lower Fifth Amendment standard. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016).

Correctional facilities must "provide a system of ready access to adequate medical care," in which patients can alert medical staff to their problems and the staff is competent enough to diagnose and treat those problems or refer the patients "to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). To comply with the constitution, correctional institutions must conduct adequate medical screenings to identify individuals' health needs and risk factors; ensure that their health care systems support continuity of care, including by providing patients with necessary medications and medical devices; timely respond to routine or emergent health care needs; and have adequate and qualified staff to deliver medical services to patients. *See, e.g.*, *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995) (intake screening); *Madrid v. Gomez*, 889 F. Supp. 1146, 1205 (N.D. Cal. 1995) (intake screening); *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (timely providing medications); *Coleman*, 912 F. Supp. at 1309-10 (timely providing medications); *Hoptowit*, 682 F.2d at 1253 (functional sick call system); *Madrid*, 889 F. Supp. at 1206-07, 1257 (functional sick call system); *Plata v. Schwarzenegger*, 2005 WL 2932253, at *5-12 (N.D. Cal. Oct. 3, 2005) (adequate and qualified staff); *Madrid*, 889 F. Supp. at 1257 (same); *Jensen v. Shinn*, 609 F. Supp. 3d 789, 864 (D. Ariz. 2022) (same). Where the facility's medical staff cannot meet certain medical needs, they must refer patients to those who can on a "reasonably speedy" basis. *Casey v. Lewis*, 834 F. Supp. 1477, 1544 (D. Ariz. 1993).[3]

As set forth above, Plaintiffs are likely to prevail on their claim that Defendants are failing to meet their constitutional obligations at California City. The intake process is deeply flawed and inadequate. Wilcox Decl. ¶¶ 16–68; Wilcox Reply Decl. ¶¶ 7, 18, 29, 34–45; *see also* Roque Campos Decl. ¶¶ 16–17; Viera Reyes Decl. ¶¶ 11–13; Benavides Zamora Decl. ¶¶ 10–12; Montes-

---

[3] Because the Court finds that California City's medical system violates the Eighth Amendment standard, the Court need not assess it under the more lenient Fifth Amendment standard. But Plaintiffs would meet the four factors courts employ in the civil detention context as well. *See Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020); *Castro*, 833 F.3d at 1071.

6055175

Diaz Decl. ¶¶ 15, 21. Continuity of care is spotty at best and often completely lacking. Wilcox Decl. ¶¶ 10, 14, 28, 73, 96–109; Wilcox Reply Decl. ¶¶ 18, 29 ("This grave mismanagement of an HIV patient's continuity of care by California City, including lapses in critical medications, places Patient A at risk of treatment failure."), 44, 77. The sick-call system is broken and failing to provide timely and responsive care to medical needs. Wilcox Decl. ¶¶ 69–78; Wilcox Reply Decl. ¶¶ 51–56 (describing untimely responses to sick call requests filed by multiple patients, including a patient with uncontrolled diabetes at risk of developing an ulcer). The staff is unable to perform basic functions, and specialist appointments are nearly non-existent. Wilcox Decl. ¶¶ 9, 15, 110–121; Wilcox Reply Decl. ¶¶ 75–85. In short, the Court agrees with Dr. Wilcox's conclusion that "California City is not equipped to handle patients with complex medical care needs," and that medical staff "even struggle to deliver standard of care for common uncomplicated problems." Wilcox Decl. ¶ 9.

As set forth in its February 10 Order, the Court therefore finds that Defendants must provide adequate health care under the Fifth Amendment. The February 10 Order sets out reasonable expectations with which the Defendants can hardly take issue. *See* Hr'g Tr. at 79:7–80:21. The Court further concludes that it would benefit from an independent, third-party monitor to assess the provision of constitutionally adequate health care at the facility and report to the Court on the extent of its failures and potential remedies. Such independent monitors are regularly employed in detention settings. *See, e.g.*, *Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 937 (N.D. Cal. 2015); *Cal. Coal. for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 719 (N.D. Cal. 2024); *Jensen v. Thornell*, 2026 WL 472338 at *1 (D. Ariz. Feb. 19, 2026).

### 2.    Plaintiffs are likely to succeed on their First and Fifth Amendment claims regarding attorney access.

Plaintiffs are also likely to succeed on their claim that Defendants' overly restrictive policies regarding attorney visits and legal calls violate their First Amendment rights. Detained individuals retain their First Amendment rights. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). These rights include the "right to hire and consult an attorney," *Eng v. Cooley*, 552 F.3d 1062, 1069 (9th Cir. 2009). "[O]verly restrictive" policies that hinder detained people's ability to "hire and

11

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

consult with an attorney" violate their First Amendment right to "communicate with the outside world." *Torres v. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1067–68 (C.D. Cal. 2019).

Defendants employ a blanket policy preventing in-person, contact visits between detained people and their lawyers. *See* ECF No. 49-1 ¶¶ 10–11. There is no justification for such a blanket restriction, which fails to consider individualized security needs. *See* Pacholke Suppl. Decl. ¶¶ 6–11. Attorneys have reported significant difficulties hearing and communicating with their clients across a pane of glass. *See, e.g.*, Goss Decl. ¶ 16; Harris Decl. ¶ 9. Defendants also limited attorney calls to 60 minutes, which several attorneys stated is too short to overcome technical issues on the calls and to advise and counsel their clients. *See* Chestnut Decl. ¶¶ 190–91; Kyle Decl. ¶ 12; Kazim Decl. ¶ 16; Fabian Decl. ¶ 7. Attorneys have also uniformly reported delays and difficulties in scheduling legal calls and conducting in-person legal visits. *See, e.g.*, Fabian Decl. ¶¶ 4–6, Kazim Decl. ¶¶ 6, 11; Quintero Decl. ¶¶ 6, 9; Kyle Decl. ¶ 5; Goss Decl. ¶¶ 4–5, 13. Outgoing calls made from a phone bank are not private or confidential. *See* Chestnut Decl. ¶¶ 167–68; Hr'g Tr. at 126:5–14. These policies are "overly restrictive" and violate Plaintiffs' ability to consult with their lawyers. *Torres*, 411 F. Supp. 3d at 1067. The Court therefore included in its February 10 Order changes to Defendants' attorney access policies, including in-person contact visits, greater availability of legal calls, and longer duration of calls and visits.

### 3. Plaintiffs are likely to succeed in part on their punitive conditions of confinement claim.

Plaintiffs argue that, in several respects, individuals housed pursuant to civil detention at California City endure harsher conditions of confinement than incarcerated prisoners, and that this violates the Fifth Amendment. With respect to certain of the challenged conduct—namely the lack of temperature-appropriate clothing and meager time outdoors—the Court agrees at this stage. The Court makes no ruling on Plaintiffs' other challenges regarding freedom of movement, the number of daily counts performed, and the policy forbidding all social contact visits.

The parties agree that the individuals detained at California City are subject to civil, rather than criminal, detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (holding that immigration detention is civil in nature and must be "nonpunitive in purpose and effect"). Plaintiffs

1  invoke the presumption set forth in *Jones v. Blanas*, which presumes punitive conditions when a

2  civilly detained person is "confined in conditions identical to, similar to, or more restrictive than,

3  those in which his criminal counterparts are held." 393 F.3d 918, 932 (9th Cir. 2004). Defendants

4  dispute the presumption's applicability, arguing that civil immigration detention is exempt from

5  this presumption. The Court need not settle this dispute at this juncture, however, because Plaintiffs

6  have shown that they are likely to prevail on the two aspects of their claim covered by the Court's

7  order even without relying on the *Jones* presumption. Absent the presumption, a condition of

8  confinement is unconstitutionally punitive where it is "intended to punish," "excessive in relation

9  to its non-punitive purpose," or is "employed to achieve objectives that could be accomplished in

10  so many alternative and less harsh methods." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th

11  613, 647 (9th Cir. 2021).

12       Plaintiffs have shown that the lack of temperature-appropriate clothing and insufficient

13  outdoor recreation time are both excessive in relation to any non-punitive purpose and employed

14  to achieve objectives that could be achieved in other, less harsh methods. There is no legitimate,

15  non-punitive reason to deny temperature-appropriate clothing, and other facilities, including other

16  ICE detention facilities, provide sweatshirts and sweatpants free of charge. Pacholke Decl. ¶ 22;

17  Suppl. Pacholke Decl. ¶¶ 21–22; Rivera-Trigueros Decl. ¶ 15; Guevara Alarcon Decl. ¶ 8.

18  Defendants claim that they have provided "jackets," but unrebutted evidence shows that these

19  jackets are paper thin and provide no warmth. *See* Suppl. Guevara Alarcon Decl. ¶ 6; Mann Decl.

20  ¶ 13. As the Court noted during the hearing, this complaint—a request for basic clothing—is easy

21  to solve. *See* Hr'g Tr. at 13:2–5 ("THE COURT: "If somebody says we are getting flimsy jackets,

22  we're not getting good, you know, sweatshirts and it's cold here, . . . that can be remedied with a

23  simple order, give it to them."). The Court also finds that, at a bare minimum, Plaintiffs should

24  receive at least one hour of outdoor recreation time per day, which Defendants stated was their

25  "goal." Chestnut Decl. ¶ 91. The Court notes that this amount of time outdoors is, according to Mr.

26  Pacholke, less than prisoners typically receive. Pacholke Decl. ¶ 26.

27       **4.     Plaintiffs have shown that they are suffering irreparable harm.**

28       Based on the factual findings set forth above, the Court concludes that Plaintiffs have

13

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

adequately shown that they are suffering irreparable harm at California City. The deprivation of constitutional rights alone "unquestionably constitutes irreparable injury." *Melendres v. Arapaio*, 695 F.3d 990, 1002 (9th Cir. 2012). In addition, the deprivation of adequate medical care in ICE detention facilities constitutes irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017). Several plaintiffs, declarants, and Dr. Wilcox have established that people detained at California City are facing acute medical issues, some with life-threatening implications. Punitive civil detention also irreparably harms Plaintiffs, *see Johnson v. Wetzel*, 209 F. Supp. 3d 766, 781 (M.D. Pa. 2016), as does denial of meaningful access to counsel in light of "the enormity of the interests at stake," *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991).

### 5.    The balance of equities and the public interest favor an injunction.

The final two factors of the *Winter* test merge when the government is the opposing party. *See Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025). The Court concludes that it serves the public interest to vindicate and protect Plaintiffs' constitutional rights. *See Melendres*, 699 F.3d at 1002. Furthermore, avoiding "preventable human suffering" outweighs any administrative or financial concerns that Defendants may have. *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004). Fundamentally, "[o]ur society as a whole suffers when we neglect" the most vulnerable people in our community, "or when we deprive them of their rights or privileges." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

For the foregoing reasons, the Court issued its February 10 Order granting in part Plaintiffs' motion for preliminary injunction.[4]

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CLASS CERTIFICATION

### A.    Plaintiffs have satisfied the requirements of Rule 23(a).

*First*, the proposed class is sufficiently numerous. Fed. R. Civ. P. 23(a)(1). The record

---

[4] The Court rejects Defendants' argument that 8 U.S.C. § 1252(f)(1) strips the Court of subject matter jurisdiction in this case. *See Jimenez v. U.S. Immigr. & Customs Enf't*, 2024 WL 2306281, at *4 (N.D. Cal. May 20, 2024). The same is true for section 1252(b)(9), as Plaintiffs in no way challenge issues arising from class members' removal proceedings; their claims concern access to counsel for purposes of bond, habeas, and conditions of confinement, which are "collateral to, or independent of, the removal process" and are properly heard in district court. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).

demonstrates that, at the time that Plaintiffs filed for class certification, there were at least 800 individuals detained at California City. *See* Pls.' Mot. for Class Cert. at 17; Pls.' Reply Mot. for Class Cert. at 4; *Thakur v. Trump*, 787 F. Supp. 3d 955, 1000 (N.D. Cal. 2025) (holding that "numerosity requirements satisfied when a class includes at least 40 members") (cleaned up). Defendants do not oppose this showing. Accordingly, joinder of all class members would therefore be impracticable.

   *Second*, Plaintiffs have demonstrated commonality. Plaintiffs challenge systemic policies and practices governing conditions of confinement, medical care, and access to counsel at California City that apply to all detainees. *See* Pls.' Mot. for Class Cert. at 9–14. These claims present common questions capable of classwide resolution "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs submitted numerous declarations by individuals detained at the facility showing that Defendants operate California City in a manner that subjects civil immigration detainees to punitive, prison-like conditions, including insufficient clothing and inadequate, unreasonable, inconsistent outdoor recreation. *See, e.g.*, Rivera-Trigueros Decl. ¶¶ 13, 15; Armenta Decl. ¶ 14; Llufrio Decl. ¶ 13; Mendiola Escutia Decl. ¶ 20; Neri Valdez Decl. ¶ 15; Viera Reyes Decl. ¶ 23; Guthrie Decl. ¶ 31; Moreover, Plaintiffs' expert, Mr. Pacholke, concluded that "many of the security measures undertaken at the facility are unnecessary, excessive, and potentially harmful to the people who are detained there [and that] [t]he practices in many cases are more extreme and restrictive than those employed in prisons, where the population is detained subject to criminal law." Pacholke Decl. ¶ 7. In response, Defendants argue that there are variations in the specific facts that each Named Plaintiff includes in his declaration about their conditions of confinement. Defs' Opp. to Pls.' Mot. for Class Cert (ECF No. 40-5), at 15. But, as the Ninth Circuit explained, individual differences in how the Named Plaintiffs experience the impacts of the challenged policies does not matter, because the "policies and practices are the 'glue' that holds together the putative class." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014).

   With respect to Plaintiffs' challenge to the adequacy of Defendants' policies and practices governing the provision of healthcare, Plaintiffs' expert evidence and detainee declarations describe facility-wide deficiencies in intake screening, continuity of care, specialty care systems, and

15

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

staffing that apply to all detainees processed through the same systems. *See* Wilcox Decl. ¶¶ 9–15 (providing a summary of findings); 68 (finding that the medical intake is "dangerously ineffective"), 78 (California City's "sick call system is broken"), 95 (facility "does not provide appropriate medical care to patients with chronic conditions"), 109 (describing inconsistent medication delivery system), 121 (finding a broken specialty care system), 129 (finding inadequate emergency services), 133 (concluding that the medical observation housing does not provide an "elevated level of care"), 141 (finding "inadequate" mental health care); *see also* Chestnut Decl. at ¶¶ 140–51 (describing medical and mental health policies), 152–57 (describing disability accommodation policies). In their opposition, Defendants merely pointed to California City's system-wide policies and procedures confirming that they apply to all detainees. *See* Tiona Decl. ¶¶ 30–51. As the Court noted in the motion hearing, with respect to medical care deficiencies, "what we're dealing with" "is a systemic problem." Hr'g Tr. at 82:2–3 (Feb. 6, 2026); *see also id.* at 90:1–3 (noting that Dr. Wilcox sensibly explained that the cases analyzed were representative); Hr'g Tr. at 53:20–22 (Mar. 5, 2026) ("[T]his was not simply a couple of people here or there. It was, [according to Plaintiffs'] expert, across the board, and he made it very clear that the concerns were not simply individual."). As the Ninth Circuit has held, systemic challenges to deficient medical care present common questions because every detainee faces a substantial risk of harm from constitutionally inadequate policies governing medical, dental, and mental health care. *See Parsons*, 754 F.3d at 678–79; *see also Brown v. Plata*, 563 U.S. 493, 531–32 (2011).

With respect to Plaintiffs' challenge to Defendants' policies governing access to counsel, the record contains ample evidence of delays in scheduling confidential legal calls, frequent technical disruptions, lack of confidential spaces for outgoing legal calls, and requirements that legal visits occur behind glass after lengthy waits. *See* Quintero Decl. ¶¶ 4–6, 9; Fabian Decl. ¶¶ 5–7; Kazim Decl. ¶ 6; Decl. of Hudson Kyle ("Kyle Decl."), ECF No. 22-31, ¶¶ 5, 7; Felder-Heim Decl. ¶ 5; Armenta Decl. ¶ 15; Garcia Romero Decl. ¶ 6; Mann Decl. ¶ 7. Indeed, it does not make sense to this Court "why [] any one detainee be treated differently than another with respect to speaking to counsel[.]" Hr'g Tr. at 113:9–11.

The legality of these policies and practices presents common questions capable of classwide

16

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

resolution, including whether Defendants' policies expose detainees to unconstitutional conditions or otherwise violate federal law. This type of case is particularly suited to classwide treatment because "every [putative class member] suffers exactly the same constitutional injury when he is exposed to a single [facility-wide] policy or practice that creates a substantial risk of serious harm." *Parsons*, 754 F.3d at 678.

**Third**, Plaintiffs have also established typicality. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where class members "have the same or similar injury," where the claims arise from conduct "not unique to the named plaintiffs," and where the class members "have been injured by the same course of conduct." *Parsons*, 754 F.3d at 685. The injuries need only be similar, not identical. *Id.* at 685–86; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Here, as the Court has already concluded, the Named Plaintiffs' claims arise from facility-wide policies and practices governing conditions of confinement, medical care, and access to counsel at California City. Like the rest of the class, the Named Plaintiffs are exposed to the same allegedly unlawful policies and to "a substantial risk of serious harm" resulting from those practices. *Parsons*, 754 F.3d at 685. The record further reflects that the Named Plaintiffs experience the same conditions alleged by the class, including restrictive confinement conditions, barriers to adequate medical care, and obstacles to confidential communication with counsel. *See, e.g.*, Roque Campos Decl. ¶¶ 39, 44–48; Mendiola Escutia Decl. ¶¶ 13–17. Accordingly, the Court finds that the Named Plaintiffs' claims are reasonably coextensive with those of the class and arise from the same challenged course of conduct.

**Fourth**, the Court also finds that the adequacy requirement is satisfied. Plaintiffs have set forth the factual basis supporting adequacy in their motion. *See* ECF No. 21 at 23–25. For this reason, the Court's February 10 Order appointed Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, and Alejandro Mendiola Escutia as the named representatives of the Provisional Class.

**Fifth**, Defendants do not oppose the adequacy of class counsel. *Id*. The Court finds that counsel will fairly and adequately protect the interests of the class. For this reason, the Court's February 10 Order appointed Plaintiffs' counsel, from the Prison Law Office, Keker, Van Nest &

17

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175

Peters LLP, the American Civil Liberties Union, and the California Collaborative for Immigrant Justice as counsel for the Provisional Class pursuant to Federal Rule of Civil Procedure 23(g).

### B.     Plaintiffs have satisfied the requirements of Rule 23(b).

Certification is also appropriate under Rules 23(b)(1) and 23(b)(2). Rule 23(b)(2) applies where plaintiffs seek declaratory or injunctive relief from policies or practices that are generally applicable to the class as a whole. *See Parsons*, 754 F.3d at 688. Here, Plaintiffs challenge facility-wide policies and practices governing conditions of confinement, medical care, and access to counsel at California City. The alleged injuries arise from the same policies affecting all detainees, and those injuries may be addressed through uniform injunctive and declaratory relief directed at Defendants' practices. *See id.* at 689 (explaining that where class members suffer similar injuries from systemic practices, those injuries may be alleviated through uniform changes to policy and practice). Certification is also proper under Rule 23(b)(1), as adjudicating these claims in separate actions would create a significant risk of inconsistent judgments regarding the legality of the same detention policies and practices. *See Ashker v. Governor of Cal.*, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014); *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995); *Gray v. Cnty. of Riverside*, 2014 WL 5304915, at *38 (C.D. Cal. Sept. 2, 2014). Because Defendants' alleged conduct is generally applicable to the class and the relief sought is uniform injunctive and declaratory relief, certification under Rules 23(b)(1) and 23(b)(2) is warranted.

Accordingly, as set forth in these findings of fact and conclusions of law, the record and the law support the Court's ruling provisionally certifying the following Class: "All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at California City Detention Facility."

### IV.     ORDER

For the foregoing reasons and based on the record evidence presented, the Court issued the relief set forth in its February 10 Order. Nothing in the foregoing is intended to alter, expand, or limit the Court's previous ruling.

////

////

6055175

1    Dated:

2                                        _____
                                         Hon. Maxine M. Chesney
3                                        United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFFS' MOTIONS FOR
PRELIMINARY INJUNCTION AND CLASS CERTIFICATION
Case No. 3:25-cv-09757-MMC

6055175