KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. IMMIGRATION AND CUSTOMS | Case No. 3:25-cv-09757-MMC<br><br>**OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION**<br><br>Judge:　　Hon. Maxine M. Chesney<br><br>Date Filed: November 12, 2025 |

ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security,

Defendants.

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARD ..................................................................................... 3

A. CoreCivic fails to make a strong showing that its appeal is likely to succeed. ........................................................................................... 4

1. Plaintiffs are likely to succeed on the merits of their claims. ..................... 4

a. Inadequate medical care under the Fifth Amendment. .................. 4

b. Insufficient attorney access under the First and Fifth Amendments. .................................................................... 9

c. Punitive conditions of confinement under the Fifth Amendment ................................................................... 10

2. CoreCivic's additional arguments fail. ................................................. 11

3. The Preliminary Injunction Order is clear. ............................................ 12

4. The Court properly granted provisional class certification. ..................... 15

B. CoreCivic will face no irreparable injury absent a stay pending appeal. ............. 18

C. A stay would substantially injure class members and conflict with the public interest. ......................................................................... 21

III. CONCLUSION.............................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
284 F.3d 1091 (9th Cir. 2002) ...................................................................................12, 13

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ....................................................................................18, 20

*B.K. by next friend Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ......................................................................................... 17

*Cal. Coal. for Women Prisoners v. United States*,
723 F. Supp. 3d 712 (N.D. Cal. 2024) ........................................................................... 8

*Casey v. Lewis*,
834 F. Supp. 1477 (D. Ariz. 1993) ................................................................................. 5

*Castro v. Cnty. of L.A.*,
833 F.3d 1060 (9th Cir. 2016) ....................................................................................... 4

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ....................................................................................15, 18

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025) ....................................................................................18, 20

*Coleman v. Wilson*,
912 F. Supp. 1282 (E.D. Cal. 1995) ........................................................................... 5, 13

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ....................................................................................... 18

*Doe v. Kelly*,
878 F.3d 710 (9th Cir. 2017) .......................................................................................... 4

*Doe v. Noem*,
783 F. Supp. 3d 907 (W.D. Va. 2025) ........................................................................... 20

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ....................................................................................3, 18, 19

*In re Excel Innovations, Inc.*,
502 F.3d 1086 (9th Cir. 2007) ........................................................................................ 19

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) ........................................................................................ 14

ii

*FTC v. Enforma Natural Prods.*,
  362 F.3d 1204 (9th Cir. 2004)......................................................................................... 8

*Gen. Tel. Co. of the S.W. v. Falcon*,
  457 U.S. 147 (1982)........................................................................................................ 15

*Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*,
  739 F.2d 466 (9th Cir. 1984)........................................................................................ 20

*Gordon v. Cnty. of Orange*,
  888 F.3d 1118 (9th Cir. 2018)........................................................................................ 4

*Helling v. McKinney*,
  509 U.S. 25 (1993)........................................................................................................... 13

*Hernandez v. Cnty. of Monterey*,
  110 F. Supp. 3d 929 (N.D. Cal. 2015) ........................................................................ 8

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999)...................................................................................... 17

*Hoptowit v. Ray*,
  682 F.2d 1237 (9th Cir. 1982)................................................................................. 5, 13

*Jensen v. Shinn*,
  609 F. Supp. 3d 789 (D. Ariz. 2022) ................................................................ 5, 7, 13

*Jensen v. Thornell*,
  2026 WL 472338 (D. Ariz. Feb. 19, 2026)............................................................... 8

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980)...................................................................................... 19

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011).................................................................................. 4, 18

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000)................................................................................. 5, 13

*Madrid v. Gomez*,
  889 F. Supp. 1146 (N.D. Cal. 1995).................................................................. 5, 7, 13

*Mansor v. U.S. Citizenship & Immigr. Servs.*,
  345 F.R.D. 193 (W.D. Wash. 2023) .......................................................................... 16

*Mayweathers v. Newland*,
  258 F.3d 930 (9th Cir. 2001)......................................................................................... 8

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012)........................................................................................ 21

iii

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024) ................................................................................. 14

*Mercado v. Noem*,
800 F. Supp. 3d 526 (S.D.N.Y. 2025) ..................................................................... 21

*Mercado v. Noem*,
Case No. 1:25-cv-06568-LAK (S.D.N.Y. Sept. 17, 2025) ...................................... 13

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................ 4, 18

*Pablo Sequen v. Albarran*,
2025 WL 3283283 (N.D. Cal. Nov. 25, 2025) ....................................................... 13

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ...................................................................... 15, 16, 17

*Plata v. Schwarzenegger*,
2005 WL 2932253 (N.D. Cal. Oct. 3, 2005) ....................................................... 5, 13

*Reno Air Racing Ass'n., Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006) ........................................................................... 12, 13

*Roe v. Critchfield*,
137 F.4th 921 (9th Cir. 2025) ................................................................................. 21

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) .................................................................................. 15

*Sampson v. Murray*,
415 U.S. 61 (1974) .................................................................................................. 19

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025) .................................................................... 17

*Turner v. Safley*,
482 U.S. 78 (1987) .................................................................................................. 10

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .................................................................................. 20

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ................................................................................... 4

*Youngberg v. Romeo*,
457 U.S. 307 (1982) ................................................................................................ 10

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ................................................................................................ 10

iv

*Zepeda v. U.S. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) ......................................................................................... 3, 20

**Federal Statutes**

28 U.S.C.A. § 1491 ............................................................................................................... 20

5 U.S.C. § 702 ...................................................................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................................................15, 16, 17

Fed. R. Civ. P. 65 ..........................................................................................................12, 14, 15

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC
6081543

## I.    INTRODUCTION[1]

On February 10, 2026, with the benefit of full briefing, a voluminous evidentiary record, and hours of oral argument, the Court granted preliminary relief to individuals held in civil immigration detention at California City Detention Facility ("California City"), a previously shuttered state prison located in the Mojave Desert. While the parties take steps to implement and effectuate that order, non-party and prospective intervenor CoreCivic, Inc. ("CoreCivic")—a private prison corporation that U.S. Immigration and Customs Enforcement ("ICE") pays $130 million annually to operate—now seeks to stay the preliminary injunction pending its appeal to the Ninth Circuit. In essence, CoreCivic asks the Court to allow it to deny constitutionally adequate healthcare, unconstitutionally restrict attorney access, and to continue letting detained people freeze in their cells unless they can afford overpriced sweatshirts from the commissary, all to purportedly protect its bottom line. CoreCivic's motion should be denied.

Plaintiffs are or have been individuals housed at California City. As has been reported in the press, by the California Attorney General's Office, and by federal government officials who have toured the remote facility, conditions in California City are grim. On November 12, 2025, Plaintiffs sought to vindicate their rights in federal district court, bringing constitutional and statutory claims against ICE, ICE officials Todd Lyons and Sergio Albarran, the U.S. Department of Homeland Security, and its then-Secretary, Kristi Noem (collectively, "Defendants"). Seeking to represent a class of all people detained at California City, Plaintiffs alleged, among other things, that the health care system is dangerously and constitutionally inadequate, that the conditions of confinement are unconstitutionally punitive, and that attorney access is so limited that it fails to meet basic constitutional standards. *See* ECF Nos. 1, 15.

On December 1, 2025, Plaintiffs moved for a preliminary injunction and sought to provisionally certify a class of all persons detained at California City who, axiomatically, are subject to the facilities' policies, procedures, and conditions. *See* ECF Nos. 21–22. Defendants opposed both motions and moved to transfer the case to the Eastern District. *See* ECF Nos. 37–

---

[1] In all quotations, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless noted.

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

6081543

40, 43, 45. The parties fully briefed the motions, assembling a robust and voluminous evidentiary record. Plaintiffs submitted extensive and largely unrebutted evidence concerning these issues, including sworn declarations from more than two dozen detained individuals who had experienced inadequate medical care and punitive conditions that were harsher than those in prison; attorneys and paralegals who had experienced difficulties accessing their clients; and unrebutted expert declarations from a medical professional (Dr. Todd Wilcox) and a former corrections official (Dan Pacholke). For their part, Defendants submitted declarations from California City's warden, a regional medical director, and a mid-level ICE official. The Court then scheduled and held a nearly day-long, in-person hearing on February 6, 2026.

During the hearing, the Court marched through every item of injunctive relief Plaintiffs sought and pared the relief down significantly, holding the rest in abeyance pending an order to transfer the case to the Eastern District of California. Following consideration of dueling proposed orders from the parties, the Court issued an order granting in part Plaintiffs' motions for a preliminary injunction and class certification on February 10, 2026. *See* ECF No. 72 ("PI Order"). The PI Order concluded that Plaintiffs had met each of the requirements for injunctive relief and provisional class certification and required Defendants to (1) ensure constitutionally adequate medical care; (2) allow an independent medical monitor to access California City and relevant records for 120 days to monitor compliance with the Order; (3) enhance attorney access in various respects, including by allowing in-person, contact legal visits; and (4) provide free temperature-appropriate clothing and at least one hour of outdoor recreation time per day. *Id.* As the Court explained at a later hearing to select the external monitor that the PI Order had mandated, there was evidence in the record to support the relief the Court granted, Plaintiffs were likely to succeed on their claims, the harm was incontrovertible, and the public interest supported the injunction. *See* ECF No. 99, March 5, 2026 Hr'g Tr. ("Conf. Tr.") at 52:21–55:11, 101:14–102:10.

In short, it was not a close call. Indeed, Plaintiffs presented an overwhelming evidentiary record that Defendants' proffered evidence not only failed to rebut, but actually *confirmed*. For example, Plaintiffs' medical expert explained in great detail how the healthcare system was

2

dangerously substandard, pointing to numerous patient case studies and Defendants' own medical records to support his conclusions. In response, Defendants' declarant, CoreCivic's regional medical director, reviewed the same records, agreed that the system was falling short, and recommended changes—changes that the facility then failed to implement. And the record amply supported the Court's finding of irreparable harm. As the Court explained, the lack of "decent medical care" is "not a no harm, no foul situation." *Id.* at 54:2–7. On the contrary, Plaintiffs "are suffering the most immediate kind of personal injury and that that would go on unless somebody said fix this up." *Id.* The PI Order does just that.

For the reasons set forth below, CoreCivic does not—and cannot—sustain its burden to justify a stay. CoreCivic has failed to make the required strong showing that it is likely to prevail on an appeal of the PI Order. It also has no cognizable irreparable harm to speak of, which itself dooms its request for a stay. Its claimed harms amount to economic injuries and, apparently, a desire to operate California City in a manner that would violate the U.S. Constitution. Neither asserted injury qualifies as irreparable harm sufficient to justify a stay. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("Economic harm is not generally considered irreparable."); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). And the balance of hardships and public interest weigh strongly in favor of leaving the PI undisturbed. The health and wellbeing of people housed in unlawful conditions, and the public interest in seeing their rights protected, outweighs whatever administrative or monetary interests CoreCivic has articulated.

This Court should not change the current status quo mandated by the PI Order, which requires nothing more than what the constitution mandates in terms of health care and attorney access, and appoints a neutral monitor for a very limited period of time to look at records and make a single visit to the facility in order to determine whether the law is being followed. CoreCivic's motion should be denied.

## II.    LEGAL STANDARD

"A stay [pending appeal] is not a matter of right, even if irreparable injury might

3

otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Instead, it is "an exercise of judicial discretion and the propriety of its issue is dependent on the circumstances of the particular case." *Id.* The "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. Courts consider the four *Nken* factors in deciding whether to grant a stay pending appeal. *Vasquez Perdomo v. Noem*, 148 F.4th 656, 678 (9th Cir. 2025). There is "substantial overlap" between the *Nken* factors and "the factors governing preliminary injunctions." *Nken*, 556 U.S. at 434. They are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.*

## I.    ARGUMENT

### A.    CoreCivic fails to make a strong showing that its appeal is likely to succeed.

#### 1.    Plaintiffs are likely to succeed on the merits of their claims.

##### a.    Inadequate medical care under the Fifth Amendment

As the Court correctly concluded, Plaintiffs are likely to prevail on their claim that Defendants are failing to provide constitutionally adequate medical care at California City. The evidentiary record that supports that finding is voluminous and unequivocal, and the law is straightforward. Having failed to rebut or dispute the mountain of evidence Plaintiffs presented and that undergirds the Court's PI Order, CoreCivic has failed to make the required "strong showing that [it] is likely to succeed on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

Federal immigration detainees are entitled to adequate medical care. *Doe v. Kelly*, 878 F.3d 710, 722 (9th Cir. 2017). Because Plaintiffs are civil detainees rather than convicted prisoners, the Fifth Amendment governs the analysis rather than the Eighth Amendment, and the Court employs an objective standard to determine whether medical care is adequate. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120, 1122–25 (9th Cir. 2018). Conduct that would violate the higher Eighth Amendment standard for inadequate medical care necessarily violates the lower Fifth Amendment standard. *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016).

4

Correctional facilities must "provide a system of ready access to adequate medical care," in which patients can alert medical staff to their problems and the staff is competent enough to diagnose and treat those problems or refer the patients "to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). To comply with the constitution, correctional institutions must conduct adequate medical screenings to identify individuals' health needs and risk factors; ensure that their health care systems support continuity of care, including by providing patients with necessary medications and medical devices; timely respond to routine or emergent health care needs; and have adequate and qualified staff to deliver medical services to patients. *See, e.g.*, *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995) (intake screening); *Madrid v. Gomez*, 889 F. Supp. 1146, 1205 (N.D. Cal. 1995) (intake screening); *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (timely providing medications); *Coleman*, 912 F. Supp. at 1309–10 (timely providing medications); *Hoptowit*, 682 F.2d at 1253 (functional sick call system); *Madrid*, 889 F. Supp. at 1206–07, 1257 (functional sick call system); *Plata v. Schwarzenegger*, 2005 WL 2932253, at *5–12 (N.D. Cal. Oct. 3, 2005) (adequate and qualified staff); *Madrid*, 889 F. Supp. at 1257 (same); *Jensen v. Shinn*, 609 F. Supp. 3d 789, 864 (D. Ariz. 2022) (same). Where the facility's medical staff cannot meet certain medical needs, they must refer patients to those who can on a "reasonably speedy" basis. *Casey v. Lewis*, 834 F. Supp. 1477, 1544 (D. Ariz. 1993).

On every metric, Plaintiffs presented evidence that Defendants are failing to meet their constitutional obligations. Plaintiffs presented the expert opinion of Dr. Todd Wilcox,[2] a board-certified physician with more than three decades of experience working as a doctor in correctional facilities. *See* ECF No. 22-3, Decl. of Dr. Todd Randall Wilcox ("Wilcox Decl.") ¶¶ 1–3; ECF No. 48-5, Reply Decl. of Dr. Todd Randall Wilcox ("Wilcox Reply Decl."). Dr. Wilcox reviewed thousands of pages of California City medical records and concluded that the system is in crisis and failing to meet patients' medical needs in even the most basic ways. Dr. Wilcox identified serious and systemic deficiencies in nearly every aspect of health care delivery: intake procedures

---

[2] Dr. Wilcox is the Medical Director of the Salt Lake County Jail System and has served as President of the American College of Correctional Physicians as well as a consultant for correctional systems in California, Arizona, Utah, and Washington State. Wilcox Decl. ¶¶ 2–3.

(Wilcox Decl. ¶¶ 18, 26–68; Wilcox Reply Decl. ¶ 34–45), medication administration (Wilcox Decl. ¶¶ 47, 51, 109; Wilcox Reply Decl. ¶¶ 29, 44), specialty care (Wilcox Decl. ¶ 114; Wilcox Reply Decl. ¶¶ 75, 79, 82), emergency care (Wilcox Decl. ¶ 127), access to care (Wilcox Decl. ¶¶ 71–78; Wilcox Reply Decl. ¶¶ 51–56), and quality of care (Wilcox Decl. ¶¶ 49, 63, 81–85, 90; Wilcox Reply Decl. ¶¶ 19–20, 24, 46, 59), among other flaws.

Plaintiffs also presented sworn declarations from dozens of patients describing desperate efforts to obtain medical care at California City. *See* ECF No. 22-1 (summarizing declarants' statements).[3] Three of the Named Plaintiffs, for example, were suffering from acute medical conditions that required urgent and sustained attention. Mr. Gomez Ruiz was suffering from a foot ulcer that was oozing blood and pus, leaving him at risk for gangrene or amputation. Wilcox Decl. ¶ 90. Mr. Viera Reyes was exhibiting symptoms and blood levels consistent with prostate cancer yet could not see a urologist or get a biopsy so he could begin cancer treatment. *Id.* ¶ 116. Mr. Roque Campos had a life-threatening congenital heart condition, placing him at risk of sudden cardiac death, yet could not see a cardiologist. Wilcox Decl. ¶¶ 86–89. All of this was before the Court when it issued the PI Order. In fact, the Court had already issued a TRO Order requiring Defendants to provide specialty and follow-up care for Messrs. Viera Reyes and Roque Campos and had learned that California City admitted its failure to comply with that order the day before the PI hearing. *See* ECF Nos. 27 (TRO Motion), 36 (TRO Order), 62 (Pls.' Notice of Noncompliance with TRO Order).

---

[3] *See* ECF No. 22-6, Decl. of Yuri Alexander Roque Campos ("Roque Campos Decl.") ¶¶ 15–35; ECF No. 22-24, Decl. of Fernando Viera Reyes ("Viera Reyes Decl.") ¶¶ 11–21; ECF No. 22-8, Decl. of Fernando Gomez Ruiz ("Gomez Ruiz Decl.") ¶¶ 5–16; ECF No. 22-13, Decl. of Alfonso Leyva ("Leyva Decl.") ¶¶ 13–29; ECF No. 22-36, Decl. of Masuma Khan ("Khan Decl.") ¶¶ 45–56; Alvarez-Mora Decl. ¶¶ 6–14; ECF No. 22-5, Decl. of Daniel Elias Benavides Zamora ("Benavides Zamora Decl.")¶¶ 12, 17; ECF No. 22-7, Decl. of Gustavo Guevara Alarcon ("Guevara Alarcon Decl.") ¶¶ 19–20, 23–34; ECF No. 22-9, Decl. of Oneil Guthrie ("Guthrie Decl.") ¶¶ 13–25, 28–29; ECF No. 22-10, Decl. of Alejo Juarez Ruiz ¶¶ 6, 9–15; ECF No. 22-12, Decl. of Sokhean Keo ("Keo Decl.") ¶¶ 13, 20–32; ECF No. 22-15, Decl. of Alejandro Mendiola Escutia ("Mendiola Escutia Decl.") ¶ 11, 23; ECF No. 22-16, Decl. of Jonathan Jair Montes-Diaz ("Montes-Diaz Decl.") ¶¶ 15, 21–23; ECF No. 22-17, Decl. of Hilario Montes Regalado ¶¶ 11, 13–19, 21–22; ECF No. 22-18, Decl. of Edgar Giovanni Neri Valdez ("Neri Valdez Decl.") ¶¶ 6– 10; ECF No. 22-19, Decl. of Camilo Orejuela Gutierrez ¶¶ 2, 6–10; ECF No. 22-21, Decl. of Jose Ruiz Canizales ¶¶ 51, 61, 65-68; ECF No. 22-22, Decl. of Julio Santos Avalos ¶¶ 10–12; ECF No. 22-23, Decl. of Daler Singh ¶¶ 5–23; ECF No. 22-25, Decl. of Vishal ¶ 8; ECF No. 22-33, Decl. of Julio Armenta ("Armenta Decl.") ¶¶ 9–12; ECF No. 22-37, Decl. of Veronica Garcia Romero ("Garcia Romero Decl.") ¶ 4; ECF No. 49-7, Decl. of "Patient A" ¶¶ 6–16.

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

6081543

This robust evidentiary record—consisting of expert testimony, medical records, and first-hand accounts from individuals detained at California City—documents in detail Defendants' systemic failure to ensure constitutionally adequate care at California City. And where, as here, a facility fails to provide such basic healthcare requirements on a systemic level, courts in this Circuit have no trouble finding violations of the constitution. *See, e.g.*, *Madrid*, 889 F. Supp. at 1256–57; *Jensen*, 609 F. Supp. 3d at 864.

Neither Defendants nor CoreCivic refuted this evidence. As to medical care, Defendants submitted a single declaration from Dr. Susan Tiona, a regional medical director for CoreCivic. ECF No. 40-7, Decl. of Dr. Susan Tiona ("Tiona Decl.").[4] Notably, Dr. Tiona's declaration actually *supported* many of Dr. Wilcox's findings. In her declaration, after reviewing medical records for the same patients Dr. Wilcox had reviewed, Dr. Tiona agreed with several of Dr. Wilcox's observations and made recommendations to improve their care and treatment. *Id.* ¶¶ 56–57. She specifically acknowledged critical failures like delays in "offsite appointment scheduling" and issues related to renewing medications, adjusting dosing, scheduling follow-up appointments, establishing chronic care appointments, ordering labs, ordering medical diets, and scheduling evaluations for possible accommodations related to eleven patients. *Id.* ¶ 57. Dr. Tiona also confirmed substantial delays in patient intake screening, with roughly half of the patients reviewed taking longer than two weeks to receive an initial appraisal from a medical provider. *Id.* ¶ 31. Dr. Tiona identified nursing errors and the need for remedial training in three additional patient cases, *id.* ¶¶ 59, 62, 64, 65, 68, and conceded, systemwide, ongoing "difficulties in scheduling specialty appointments due to the lack of ICE-contracted specialists near the facility," *id.* ¶ 47. At bottom, the undisputed record supports Dr. Wilcox's conclusion that "it is not safe to be sick at [] California City," where medical staff "struggle to deliver standard of care for common uncomplicated problems," let alone "patients with complex medical care needs." Wilcox Decl. ¶ 9.

Accordingly, as the Court explained, the PI Order set out reasonable expectations for

---

[4] Warden Chestnut's declaration contained only general assertions regarding medical policies, with no evidence that those policies had been implemented and had resulted in adequate patient care. *See* Chestnut Decl. ¶¶ 51–56.

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

6081543

health care delivery with which the Defendants can hardly take issue. *See* ECF No. 75, February 6, 2026 Hr'g Tr. ("Hr'g Tr.") at 79:7–80:21. To ensure compliance with those expectations and the provision of constitutionally adequate health care, the Court concluded that it would benefit from a time-limited independent, third-party monitor. Such independent monitors are regularly employed in detention settings. *See, e.g.*, *Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 937 (N.D. Cal. 2015); *Cal. Coal. for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 719 (N.D. Cal. 2024); *Jensen v. Thornell*, 2026 WL 472338, at *1 (D. Ariz. Feb. 19, 2026).

Despite requesting extraordinary relief to disrupt the provision of these vital interim measures, CoreCivic's motion for a stay utterly fails to engage with the substantial record before the Court. Instead, CoreCivic focuses on various statements made during the PI hearing which was, to be sure, lengthy and freewheeling. CoreCivic fixates on stray remarks that, it feels, supports its argument, while ignoring those remarks that eviscerate it. But the Court undisputedly recognized that Plaintiffs were likely to succeed on the merits of their medical claim. *See* Conf. Tr. at 53:15–54:1; *id.* at 30:8–23 (noting that the Court granted only those aspects of the motion for which it determined Plaintiffs were likely to prevail). As the Court emphatically stated during the March 5 conference, "[t]he record clearly supports the Court's summary finding that the Plaintiff was likely to prevail on the record as to their position that the detainees, as a group, were not getting adequate medical care as required by the Constitution or, frankly, really anybody else's test." *Id.* at 53:15–19.[5]

Ignoring the mountain of evidence that defeats its argument, CoreCivic instead claims that the Court applied the wrong legal standard. Mot. at 14–15. But there is no basis to conclude that. The standard CoreCivic adverts to regarding reckless disregard of medical needs, *see id.*, is precisely the same one Plaintiffs briefed and argued in the PI motion, *see* ECF No. 22 at 20. As

---

[5] To the extent CoreCivic asserts that the Court's comments at the March 5 conference should be disregarded because CoreCivic filed a notice of appeal the day before, that would be wrong. As the Ninth Circuit has explained, district courts are free to elucidate further findings in support of injunctive relief while an appeal is pending. *See FTC v. Enforma Natural Prods.*, 362 F.3d 1204, 1215 n.11 (9th Cir. 2004) ("[a]dditional findings that merely set the target in place" are acceptable while appeal pending); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (district court may exercise jurisdiction during pendency of an appeal so along as it does not change the "status quo" or "materially alter" the status of the appeal).

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

6081543

set forth above, the evidence shows that Defendants made (and continue to make) intentional decisions that place detained people at a substantial risk of serious harm.

Finally, CoreCivic argues that the Court failed to make an irreparable harm finding and instead only found "the mere possibility" of harm. Mot. at 15. Not so. The Court stated that the facility houses "a lot of people who are ill, and a number of them very seriously," yet was "not set up to care for them." Hr'g Tr. at 10:25–11:2. Indeed, the hearing began with the Court focusing on one Named Plaintiff, Mr. Viera Reyes, who, the Court said, was on his way to having "incurable cancer" absent treatment. *Id.* at 8:8. Defendants' counsel admitted that Mr. Viera Reyes had missed an "absolutely critical" appointment—despite the presence of a TRO governing Mr. Viera Reyes' follow-up care, ECF No. 36—due to an "internal scheduling error." *Id.* at 8:10–16. As the Court later remarked when deciding to appoint an external monitor, it had concluded that Plaintiffs "are suffering the most immediate kind of personal injury and that that would go on" unless enjoined. Conf. Tr. at 54:5–6. "The harm," the Court explained, "was just so obvious, and there's no real counterbalance to that." *Id.* at 102:4–5.

### b.    Insufficient attorney access under the First and Fifth Amendments

CoreCivic spends two sentences challenging the PI Order's command to provide constitutionally adequate access to counsel. *See* Mot. at 15. This tepid attack fails. When the Court decided Plaintiffs' preliminary injunction motion, it had at its disposal nearly a dozen declarations from legal representatives reporting difficulties communicating with their clients held at California City. *See, e.g.*, ECF No. 22-26, Decl. of Genesis Fabian; ECF No. 22-27, Decl. of Lee Ann Felder-Heim; ECF No. 22-28, Decl. of Nicole Gorney; ECF No. 22-29, Decl. of Sarah Goss; ECF No. 22-30, Decl. of Hannah Kazim; ECF No. 22-31, Decl. of Hudson Kyle; ECF No. 22-32, Decl. of Stephanie Quintero; ECF No. 22-34, Decl. of Madhavi Narayanan; ECF No. 22-35, Decl. of Mario Valenzuela. It also had the declaration of Plaintiffs' corrections expert, Dan Pacholke, who opined that consistent and confidential communication with counsel is "critical for institutional safety or order." ECF No. 22-2 Decl. of Dan Pacholke ¶ 12. As the Court explained at the March 5 conference, detained individuals "weren't getting the legal advice they

9

needed, and these are people that may any minute get deported and they couldn't contact their lawyers, again, because the system wasn't set up well enough to deal with the volume and the nature of the population." Conf. Tr. at 54:14–19. Defendants mounted no serious effort to rebut Plaintiffs' evidence. Plaintiffs therefore established that they are likely to succeed on their claim that the lack of access to counsel at California City violates their First and Fifth Amendment rights.

CoreCivic asserts, without analysis, that the Court did not consider any of the factors from *Turner v. Safley*, 482 U.S. 78 (1987). But *Turner*, which concerned the rights of convicted prisoners, does not apply in the civil immigration detention context. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (immigration detention is civil in nature); *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). In any event, Plaintiffs have demonstrated that they are likely to succeed on the merits of their First Amendment claim even under *Turner*. Their voluminous record shows that no legitimate government interest supports the extensive attorney access restrictions imposed by Defendants at California City, nor can Defendants show a "rational connection" between the restrictions and any legitimate interest; the conditions at California City make it impossible for detained people to consult attorneys in a timely and confidential manner, such that Plaintiffs lack "alternative means" to exercise their First Amendment rights; obvious alternatives exist, as shown by Defendants' own National Detention Standards (which Plaintiffs showed that CoreCivic does not fully comply with here) and practices at other ICE detention facilities; and these alternatives would negligibly impact resource allocation. The Court's access to counsel injunctive relief is appropriate.

c.    **Punitive conditions of confinement under the Fifth Amendment**

CoreCivic's stay motion nowhere argues that it is likely to prevail with respect to Plaintiffs' Fifth Amendment punitive conditions claim—namely, the Court's order that Defendants provide temperature-appropriate clothing and at least one hour of outdoor recreation per day. Instead, CoreCivic takes aim at Plaintiffs' Rehabilitation Act claim—a claim that is not

10

at issue in the Court's PI Order. *See* Mot. at 15. CoreCivic has therefore forfeited any argument concerning the propriety of preliminary injunctive relief as to Plaintiffs' Fifth Amendment punitive conditions claims that are the subject of the Court's PI Order.  And, forfeiture aside, the record clearly supports the PI Order's provision of these basic remedies.

### 2. CoreCivic's additional arguments fail.

CoreCivic presents four other brief, vague, and conclusory arguments, all of which are easily rebutted. ***First***, CoreCivic claims that Plaintiffs relied solely on "isolated and sporadic incidents" of constitutional harm. Mot. at 16. That is incorrect. To begin with, Plaintiffs' claims concerning attorney access and punitive conditions of confinement challenged Defendants' own undisputed, facility-wide policies and practices. And with respect to the deficiencies in medical care, Dr. Wilcox opined extensively on the systematic nature of the harm at issue. *See*, *e.g.*, Wilcox Reply Decl. ¶¶ 10–13, 86 (finding "substantial, systemic, and ongoing deficiencies in the provision of health care at California City"). Accordingly, the Court concluded at the hearing that "there is a systemic problem, let's say—because that's what we're dealing with." Hr'g Tr. at 82:2–3; *id.* at 86:17–19 ("But there are enough people there who at least may need some type of help. It can be acute, it can be chronic, and that's what the harm is, if you will, as I see it."). As the Court subsequently made clear, "this was not simply a couple of people here or there." Conf. Tr. at 53:20. As Dr. Wilcox had explained, "the concerns were not simply individual," and "certainly, the Court did rely on that in making the findings that the Court did." *Id.* at 53:21–54:1.

***Second***, CoreCivic asserts that the Court relied on speculative or hypothetical harm. Mot. at 16. But CoreCivic leaves the basis for this assertion entirely unexplained. And for good reason; it is wrong and belied by the record. Harm associated with failing to treat prostate cancer, provide essential, daily HIV medications, and facilitate access to a cardiologist for advanced heart disease is real, urgent, and severe. There is also nothing speculative about the harm of being left freezing cold for days on end while detained in the Mojave Desert unable to access legal counsel.

***Third***, CoreCivic is wrong that the Court failed to balance the equities. Mot. at 16. The Court recognized that Plaintiffs were at desperate risk of constitutional deprivations and that Plaintiffs' requested relief was reasonable. *See, e.g.*, Hr'g Tr. at 171:3–4 ("Keeping in mind I am

11

doing this with an effort to get as much of what's immediately needed ordered."); *id.* at 46:22–23 ("I don't want to see someone's health jeopardized by even a short delay."); *id.* at 79:9 ("So what you are asking for is not unreasonable here."). The Court confirmed the same at the March 5 conference. *See* Conf. Tr. at 102:4–7 ("[T]he public certainly doesn't have an interest in people not getting humane treatment.").

*Fourth*, CoreCivic states that "[t]he Court's ruling is especially problematic because it failed to consider Defendants' arguments that it lacked authority to grant the preliminary injunction that Plaintiffs requested." Mot. at 16. CoreCivic seemingly references Defendants' faulty jurisdictional arguments, but Defendants' counsel at no point tried to press those arguments—which were only half-heartedly made in their briefing—during the hearing. That is not surprising, as such jurisdictional arguments are meritless and have been rejected by court after court throughout the country. *See* ECF No. 49 at 19–20 (citing and discussing extensive caselaw that forecloses jurisdictional challenges presented here).

### 3.     The Preliminary Injunction Order is clear.

CoreCivic wrongly claims that the PI Order lacks specificity. Federal Rule of Civil Procedure 65(d)(1) requires that any injunction or TRO be "specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained." Such specificity is a "context-specific" inquiry, and courts must consider "the circumstances surrounding [the order's] entry." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1133 (9th Cir. 2006). Critically, the Ninth Circuit "do[es] not set aside injunctions under this rule unless they are so vague that they have no reasonably specific meaning." *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091, 1097 (9th Cir. 2002). That is not the case here.

At the outset, CoreCivic nowhere disputes the specificity of the Court's PI Order regarding attorney access, temperature-appropriate clothing and blankets, or outdoor recreation. *See* Mot. at 16–17. CoreCivic focuses solely on the Court's requirement that Defendants must ensure constitutionally adequate medical care at California City to protect Plaintiffs from immediate danger to their health and safety. CoreCivic's argument fails.

The Court's injunction is unambiguous. When the government takes a person into

12

custody, it has a constitutional obligation to provide adequate medical care. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). The PI Order commands the government, "in no vague terms, to do exactly that." *Napster*, 284 F.3d at 1097. As the Court explained at the preliminary injunction hearing:

> [W]hat [Plaintiffs] are asking for is not unreasonable here. In other words, people should get appropriate medical care, that's kind of the heading, and then here is how you do it, you see people in intake, you make sure they're seen by somebody who is qualified, you get to them—get them to the doctor they're supposed to see in a timely fashion, don't take their medicines away and make sure they get whatever is prescribed that they don't have yet, and if somebody has a sick call request and if it looks legitimate, that you get to it in some reasonable amount of time.

Hr'g Tr. at 79:9–18. The PI Order implements this common-sense analysis as to specific categories of medical care. It requires, for example, that Defendants ensure comprehensive intake screenings to occur within 12 hours of a person's arrival; access to a primary care provider; access to medical specialists in a timely manner; responsive emergency services; the consistent provision of prescribed medications; and a responsive system for "sick call" requests. *See* ECF No. 72 at 3 ¶ 1.

None of this is rocket science. Indeed, decades of case law have detailed the benchmarks and standards of compliance for constitutionally adequate healthcare. *See, e.g.*, *Coleman*, 912 F. Supp. at 1298 n.10 (intake screening); *Madrid*, 889 F. Supp. at 1205 (intake screening); *Lopez*, 203 F.3d at 1132 (timely providing medications); *Coleman*, 912 F. Supp. at 1309–10 (timely providing medications); *Hoptowit*, 682 F.2d at 1253 (functional sick call system); *Madrid*, 889 F. Supp. at 1206–07, 1257 (functional sick call system); *Plata*, 2005 WL 2932253, at *5–12 (adequate and qualified staff); *Madrid*, 889 F. Supp. at 1257 (same); *Jensen*, 609 F. Supp. 3d at 864 (same). The Court's instructions are written in plain English, suitable for "the lay person, who is the target of the injunction." *Reno Air Racing Ass'n.*, 452 F.3d at 1134. And the PI Order mirrors analogous injunctions entered against other ICE detention facilities. *See, e.g.*, *Pablo Sequen v. Albarran*, 2025 WL 3283283, at *29 (N.D. Cal. Nov. 25, 2025) (requiring ICE provide "prompt" access to pain medication, prescriptions, and medical care via a "licensed medical personnel"); *Mercado v. Noem*, Case No. 1:25-cv-06568-LAK (S.D.N.Y. Sept. 17, 2025), ECF

No. 97 (requiring that ICE provide "prompt" access to prescribed medications for detainees). Indeed, "it can hardly be said that the injunction's terms are too vague to be understood," because Defendants are already complying with multiple similar injunctions. *Melendres v. Skinner*, 113 F.4th 1126, 1140 (9th Cir. 2024).

CoreCivic's additional objection that the PI Order is not "narrowly tailored," Mot. at 17, again ignores the voluminous and unrebutted record before the Court. Each item in the PI Order seeks to remedy a specific deficiency documented in Plaintiffs' voluminous and unrebutted evidence, including Plaintiffs' expert declarations and the sworn declarations submitted by people detained at California City and their legal representatives, as detailed above. Not only that, but the specific deficiencies that CoreCivic identified in its motion as not supporting the terms of the PI Order were explicitly addressed, on the record, by the Court during the hearing. For example, the Court explicitly addressed Defendants' deficiencies as to adequate staffing. Hr'g Tr. at 84:23, 94:6–13 (explaining "it really would require more staffing"). Likewise, the Court identified that California City's distance from a medical center—an hour—put Plaintiffs at grave risk during serious emergencies because "an hour is pretty far away" for those with serious emergencies. Hr'g Tr. at 75:16. CoreCivic is just wrong that the PI Order here is not narrowly tailored to the specific harms documented in the record.

Finally, CoreCivic's demands for objective benchmarks "is grounded upon the misconception that the district court must also elucidate *how* to enforce the injunction." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004) (emphasis in original). "Rule 65(d) does not require this of the district court." *Id.* To the contrary, the Ninth Circuit has expressly approved of appointing a monitor to review compliance with such an order and to make similar logistical determinations regarding an order's implementation. *See Melendres*, 113 F.4th at 1131–32, 1139. The PI Order did just that; it is clear as to the basic healthcare practices required—from the provision of timely initial evaluations through specialty care and emergency services. ECF No. 72 at 3 ¶ 1. And it requires Defendants to allow access to a qualified, independent, third-party monitor for 120 days to evaluate compliance and monitor implementation. *Id.* at ¶ 2. Rule 65(d) requires no more.

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

6081543

### 4.    The Court properly granted provisional class certification.

CoreCivic is unlikely to succeed on the merits of its appeal of the Court's grant of class certification. The Ninth Circuit reviews a district court's decision to certify a class for abuse of discretion, and any findings of fact upon which the district court relied in its certification order are reviewed for clear error. *Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014). The Ninth Circuit accords a district court "noticeably more deference" when reviewing a grant of class certification as opposed to a denial. *Id.* As CoreCivic identifies neither an abuse of discretion nor clear error, it cannot demonstrate a likelihood of success on the merits of its appeal.

Ultimately, CoreCivic's argument reduces to a misstatement of what Rule 23 requires. The Court's PI Order found "that all the requirements of Rule 23(a) and 23(b)(2) have been satisfied." ECF No. 72. CoreCivic argues that this statement falls short of the Court's obligation to conduct a "rigorous analysis," because the Court did not make findings with respect to the Rule 23(a) and 23(b)(2) requirements, and therefore failed to apply the legal standard governing class certification. *See* Mot. at 18–19. But the Supreme Court recognized decades ago that a "rigorous analysis does not always result in a lengthy explanation or in-depth review of the record." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (citing *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160–61 (1982)); *see also Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) ("For practical reasons, we have never equated a district court's 'rigorous analysis' at the class certification stage with conducting a mini-trial."). In some cases, the issues may be "so plain and the analytical framework so clear" that conclusory or self-evident findings are permissible, and "no further explanation is required to justify the district court's decision." *Chamberlan*, 402 F.3d at 961–62. Put simply, "[i]t has long been established that some cases simply require more explication than others." *Id.* at 961. This case—being so squarely controlled by Ninth Circuit precedent addressing nearly identical class claims, *see Parsons*, 754 F.3d 657—does not require elaborate explication.

Plaintiffs supported each Rule 23 requirement with substantial evidence beyond the pleadings, such that further explication from the Court would prove unnecessary. As detailed above, the numerous detainee and expert declarations Plaintiffs submitted illustrate systemic

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC
6081543

deficiencies in medical care and attorney access. And, as also detailed herein, Defendants' own declarations confirmed the challenged policies and practices were facility-wide, applying across the putative class, regardless of housing unit or custody classification.

With respect to medical care, Plaintiffs' expert evidence and detainee declarations cited and discussed herein detailed systemic deficiencies in intake screening, continuity of care, specialty care systems, staffing, and the sick call process that apply to all detainees. The Court agreed that the record reflected systemic problems with medical care at California City, as noted *supra*. *See also* Conf. Tr. at 53:20–22.

With respect to access to counsel, as noted herein, Plaintiffs challenged facility-wide policies and practices and submitted ample evidence of poor access to counsel across the class. And the Court on March 5 observed that the detained individuals "as a group" had insufficient access to counsel. *Id.* Plaintiffs thus put forth ample evidence of facility-wide policies, practices, and deficiencies sufficient to satisfy commonality under Rule 23(a)(2). *See Parsons*, 754 F.3d at 676; *Mansor v. U.S. Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 204 (W.D. Wash. 2023) (commonality standard is "readily met" where plaintiffs seek prospective relief challenging a system-wide practice or policy affecting all putative class members).

The evidence supporting commonality also supports typicality and adequacy. Because the challenged policies, practices, and conditions are systemic and facility-wide, "each of the [N]amed [P]laintiffs is similarly positioned to all other [putative class members] with respect to a substantial risk of serious harm resulting from exposure to [those] policies and practices." *Parsons*, 754 F.3d at 686. For the same reason, Named Plaintiffs and "every [putative class member] suffers exactly the same constitutional injury when he is exposed to a single [facility-wide] policy or practice that creates a substantial risk of serious harm." *Id.* at 678. The record thus showed that Named Plaintiffs are typical of the class and adequately protect the interests of the class, which rise and fall together based on the legality of Defendants' facility-wide policies, practices, and conditions.

That same evidence also supports certification under Rule 23(b)(2). The 23(b)(2) requirements "are unquestionably satisfied when members of a putative class seek uniform

16

injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Id.* at 688. As the record shows, Named Plaintiffs seek a uniform injunction against policies, practices, and conditions that affect the Class as a whole. The record also shows that Rule 23(b)(2) is satisfied. *See* ECF No. 22-38.

Finally, the record cited and discussed above plainly shows that, at the time Plaintiffs filed for class certification, there were hundreds of individuals detained at California City, satisfying numerosity under Rule 23(a)(1). *See Thakur v. Trump*, 787 F. Supp. 3d 955, 1000 (N.D. Cal. 2025) (holding that "numerosity requirements satisfied when a class includes at least 40 members").

With Rule 23's requirements so obviously satisfied, CoreCivic resorts to misstating two cases and one portion of the hearing transcript. ***First***, CoreCivic mischaracterizes the holding in *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019). There, the Ninth Circuit vacated and remanded the district court's certification of a subclass because its analysis rested on a misunderstanding of the Medicaid Act, which constituted a legal error and thus an abuse of discretion. *See id.* at 975–76. Notwithstanding that legal error, the plaintiffs asked the Ninth Circuit to affirm certification on a different theory, but the Ninth Circuit declined because the district court had neither based its decision nor made factual findings on that theory. *See id.* at 976–77. The remand therefore followed from the district court's reliance on an incorrect legal framework and in no way reflects any bright-line requirement that the court make express findings addressing each Rule 23 requirement. Nor does the case support CoreCivic's contention that an absence of explicit factual findings equates to a failure to conduct the "rigorous analysis" required by Rule 23.

***Second***, CoreCivic's reliance on *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999), is misplaced. That case was about standing and held that only named plaintiffs entitled to seek injunctive relief could represent a class seeking that relief. *Id.* at 1045. The plaintiffs there lacked such entitlement because they failed to show a real and immediate threat of future injury from the conduct challenged. *Id.* at 1044. In contrast, here, the record shows that Named Plaintiffs are exposed to the same, facility-wide policies, practices, and conditions as the rest of the class.

*See* ECF No. 46 at 7–9. And the record plainly shows the injury Named Plaintiffs have faced and continue to face, rendering further explanation by the Court unnecessary. *See* Conf. Tr. at 102:4–5 ("[T]he harm was just so obvious."); ECF No. 22 at 29; ECF No. 62.

***Third***, CoreCivic wrongly asserts that "Plaintiffs' counsel believed certification was a mere formality." Mot. at 19. To the contrary, Plaintiffs' counsel explained to the Court that provisional class certification was necessary to ensure that the preliminary relief ordered runs to the entire class, *i.e.*, everyone in the facility, not just Named Plaintiffs. *See* Hr'g Tr. at 70:4–23. That Plaintiffs' counsel believed the class certification question to be an easy one for the Court (which it was), does not mean that certification was a mere formality.

In short, the evidence Plaintiffs put forth in the record rendered the issues "readily apparent," and the governing precedent is so on point, such that "[r]equiring the district court to expand its analysis would produce nothing more than a lengthy explanation of the obvious." *Chamberlan*, 402 F.3d at 962.

### B.    CoreCivic will face no irreparable injury absent a stay pending appeal.

CoreCivic has also failed to show it "will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. Unless the movant has "made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the [movant]'s proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965. "[S]imply showing some possibility of irreparable injury is insufficient." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 942 (9th Cir. 2025). Rather, "[t]he minimum threshold showing for a stay pending appeal requires that irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Leiva-Perez*, 640 F.3d at 968). Critically, "[e]conomic harm is not generally considered irreparable." *E. Bay Sanctuary Covenant*, 993 F.3d at 677; *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) ("[M]onetary injury is not normally considered irreparable.").

Here, CoreCivic complains primarily of supposed economic harm. Specifically, CoreCivic complains that the PI Order requiring it to provide constitutionally adequate healthcare and conditions of confinement to the people detained at California City will hurt its bottom line. For

6081543

example, CoreCivic cites the basic costs of hiring five nurse practitioners, modifying spaces to allow for in-person attorney visits, or hiring additional staff. Mot. at 25–26. Likewise, CoreCivic cites various difficulties it has experienced implementing the required attorney conferencing system. *Id.* Even if one were to put aside the fact that these are basic services that any immigration facility should be prepared to provide, these concerns amount to mere "[e]conomic harm," which "is not generally considered irreparable." *E. Bay Sanctuary Covenant*, 993 F.3d at 677. CoreCivic, which secured a $130 million annual contract to operate California City, has made no attempt to show that complying with the U.S. Constitution will result in any irreparable, or even cognizable, harm.

Nor has CoreCivic attempted to explain why any such costs would be *irreparable*. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). CoreCivic claims that the PI Order requires CoreCivic to perform work "without compensation under its agreement with ICE." Mot. at 26. Likewise, CoreCivic asserts that it "likely cannot recover [costs] at the conclusion of this litigation." *Id.* at 28. But both claims amount to unsupported speculation. In its request for a stay, CoreCivic provides no details regarding its agreement with ICE. It does not provide the contract at issue, or even detail a single supposedly impaired contractual term.  CoreCivic therefore fails to show why any purported economic injury could not be remedied through contractual means. *Cf. L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980) (finding lost revenues insufficient to warrant a preliminary injunction where no showing was made that the loss would drive the movant out of business). In other words, CoreCivic's mere assertion that recovery is not "likely" is insufficient because "[s]peculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

Because CoreCivic has a contractual relationship with the government, CoreCivic's citations to cases concerning the government's sovereign immunity or the availability of money damages under the Administrative Procedure Act are inapposite. *Compare* Mot. at 22 (collecting cases) *with* 28 U.S.C.A. § 1491 (providing a limited waiver of sovereign immunity for cases

sounding in contract against the federal government). Unlike in the cited cases, there is no absolute barrier to CoreCivic's recovery from the government here. *Cf. Doe v. Noem*, 783 F. Supp. 3d 907, 927 n.10 (W.D. Va. 2025) (explaining that money damages are not recoverable for claims brought under 5 U.S.C. § 702).

CoreCivic's additional claimed harms are both cursorily asserted and unpersuasive. First, CoreCivic remarkably claims that it will *harm* CoreCivic merely to allow a neutral external monitor to review health care at the facility and report findings to the Court. Sunshine is the best disinfectant. *See* L. Brandeis, Other People's Money 62 (National Home Library Foundation ed. 1933) ("Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."). Although CoreCivic would no doubt prefer to operate California City in the dark, it cites no compelling authority to explain why allowing some modicum of transparency by way of a neutral expert to review its processes and procedures—as is often done in correctional and detention settings—will harm CoreCivic, let alone irreparably so. *Cf. United States v. California*, 921 F.3d 865, 894 (9th Cir. 2019) (explaining the government "did not present compelling evidence" that "inspections conducted by the California Attorney General harmed facilities' detention operations"). Likewise, CoreCivic's brief assertion that its constitutional rights have been violated rings hollow. *See Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (explaining a purported constitutional claim was "too tenuous" to constitute irreparable harm). CoreCivic has long been on notice of this litigation given that its current declarant *also* participated in the preliminary injunction stages of the litigation. *See* ECF Nos. 40-6, 82-1. CoreCivic's after-the-fact objection on due process grounds is unpersuasive.

At bottom, though CoreCivic claims it must make operational changes following the Court's order that the government ensure constitutionally adequate healthcare, "self-inflicted wounds are not irreparable injury." *Al Otro Lado*, 952 F.3d at 1008. As with the government, CoreCivic "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda*, 753 F.2d at 727; *see also Cmty. Legal Servs. in E. Palo Alto*, 137 F.4th at 943 (explaining that the government "cannot suffer harm from an

20

OPPOSITION TO NON-PARTY CORECIVIC'S MOTION FOR STAY OF PRELIMINARY INJUNCTION
Case No. 3:25-cv-09757-MMC

6081543

injunction that merely ends an unlawful practice"). Because CoreCivic fails to show irreparable injury, this factor too weighs against a stay.

### C. A stay would substantially injure class members and conflict with the public interest.

The third and fourth factors—the balance of hardships and the public interest—"merge when the Government is the opposing party." *Roe v. Critchfield*, 137 F.4th 921, 922 (9th Cir. 2025). Analysis of this factor begins with a foundational point that CoreCivic ignores: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). As the court stated in a similar case pending in New York, "however inconvenient compliance may be," a party "suffers no harm from an injunction that merely ends unconstitutional practices or ensures that constitutional standards are implemented," and this is doubly true "where any claimed operational burden on defendants would be self-inflicted." *Mercado v. Noem*, 800 F. Supp. 3d 526, 579 (S.D.N.Y. 2025).

Rather than make a serious effort to explain why a stay could possibly be justified under these factors, CoreCivic merely parrots Defendants' previously failed arguments with respect to this balancing test. *See* Mot. at 23–24. But Defendants' interest in immigration enforcement is significantly outweighed by the grave risks and harm Plaintiffs face due to Defendants' unconstitutional practices. *See Mercado*, 800 F. Supp. 3d at 579 ("[D]eference [to executive judgments in detention administration] is not permissible in the face of continuing constitutional violations."). Here, the Court recognized the same. *See* Hr'g Tr. at 171:3–4 ("Keeping in mind I am doing this with an effort to get as much of what's immediately needed ordered."); *id.* at 46:22–23 ("I don't want to see someone's health jeopardized by even a short delay."). The Court rightly concluded that there is no public interest in inhumane treatment. *See* Conf. Tr. at 102:5–7.

Indeed, when one balances the extreme—even life-threatening—hardships Plaintiffs would face if California City's healthcare system is permitted to continue unchecked on its current trajectory to CoreCivic's pecuniary and administrative complaints about the burden of providing constitutionally adequate care, CoreCivic's position is simply indefensible. To take just a few examples from Dr. Wilcox's analysis of CoreCivic's own medical records: Jesus Contreras Jimenez suffers from malignant hypertension and is at serious risk of organ damage due to

California City's meticulously chronicled failure to provide the most basic treatment for this well understood disease, causing the patient to suffer blackouts and seizures. *See* Wilcox Reply Decl. ¶¶ 72–74. Jesus Alcides Banegas arrived at California City with his diabetes managed and stable, only to see California City discontinue his insulin and allow his condition to rapidly deteriorate, placing "his life in jeopardy," with a provider appointment set months in the future. *Id.* ¶¶ 25, 54, 67–70. Alejo Juarez Ruiz suffers from uncontrolled hypertension and diabetes, causing kidney damage. *Id.* ¶¶ 27–28, 62. And Mr. Viera Reyes—the Named Plaintiff who was the subject of the Court's TRO Order—is still awaiting a PET scan so that he can receive treatment for prostate cancer, a condition that California City should have addressed the moment he arrived at the facility in August 2025 with an urgent recommendation for a biopsy. ECF Nos. 22-24, 80, 80-2; Conf. Tr. at 90:23–91:16. These hardships and interests outweigh CoreCivic's unsubstantiated worries about its profit margin. They concern life and death.

In sum, the balance of harms and the public interest strongly favor leaving the status quo in place and declining to stay an order designed to provide some relief to the provisional class.

## III.    CONCLUSION

For the foregoing reasons, CoreCivic's Motion for Stay of Preliminary Injunction should be denied.

Dated: March 17, 2026

Respectfully submitted,

| /s/ *Steven P. Ragland* | /s/ *Margot Mendelson* |
|---|---|
| KEKER, VAN NEST & PETERS LLP | PRISON LAW OFFICE |
| STEVEN P. RAGLAND | MARGOT MENDELSON |
| CODY S. HARRIS | TESS BORDEN |
| CARLOS C. MARTINEZ | PATRICK BOOTH |
| LISA C. LU | ALISON HARDY |
| | RANA ANABTAWI |
| CALIFORNIA COLLABORATIVE FOR | |
| IMMIGRANT JUSTICE | AMERICAN CIVIL LIBERTIES UNION |
| PRIYA ARVIND PATEL | FOUNDATION |
| MARIEL VILLARREAL | KYLE VIRGIEN |
| | FELIPE HERNANDEZ |
| | MARISOL DOMINGUEZ-RUIZ |
| | CARMEN IGUINA GONZALEZ |

*Attorneys for Plaintiffs*

22