KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022, *pro hac vice*
tess@prisonlaw.com
PATRICK BOOTH - # 328783
patrick@prisonlaw.com
ALISON HARDY - # 135966
ahardy@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS | Case No. 3:25-cv-09757-MMC<br><br>**PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE**<br><br>Judge:     Hon. Maxine M. Chesney<br><br>Date Filed:  November 12, 2025 |

ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, Secretary, U.S. Department of Homeland Security,

Defendants.

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 3

III.    LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 6

    A.    CoreCivic fails to satisfy Rule 24(a)'s requirements for intervention as of
        right ........................................................................................................... 6

        1.    CoreCivic's motion is untimely ..................................................... 6

            a.    CoreCivic provides no justification for its delay, and none
                exists. ................................................................................. 6

            b.    Intervention would prejudice Plaintiffs. ..................................... 10

            c.    CoreCivic's motion comes after significant proceedings in
                this case. .......................................................................... 11

        2.    CoreCivic has not sufficiently identified a protectable interest
            impaired by this action. ............................................................. 13

        3.    CoreCivic has insufficiently identified inadequate representation
            justifying its limited intervention at this stage. ............................. 15

    B.    Permissive intervention would be improper under Rule 24(b) and the
        *Spangler* factors ....................................................................................... 17

        1.    CoreCivic's motion is untimely .................................................... 17

        2.    CoreCivic's assertion of common questions is conclusory and
            unspecific .......................................................................... 17

        3.    The Court should exercise its discretion to deny CoreCivic's
            attempts to delay vital relief under *Spangler* and related case law ........... 18

V.    CONCLUSION ................................................................................................... 20

6032771

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Acosta v. Huppenthal*,
2012 WL 12829994 (D. Ariz. Feb. 6, 2012) ................................................................ 12

*Alaniz v. Tille Lewis Foods*,
572 F.2d 657 (9th Cir. 1978) ..................................................................................... 9

*Alaska Airlines, Inc. v. Schurke*,
2013 WL 12250544 (W.D. Wash. Feb. 25, 2013) ........................................................ 12

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) ............................................................................... 5, 15

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*,
309 F.3d 1113 (9th Cir. 2022) ............................................................................... 9, 10

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022) ................................................................................... 17

*Callahan v. Brookdale Senior Living Comtys, Inc.*,
42 F.4th 1013 (9th Cir. 2022) ............................................................................... 6, 18

*Chavez v. PVH Corp.*,
2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ............................................................. 9

*Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*,
335 F.R.D. 316 (E.D. Cal. 2020) .............................................................................. 10

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ................................................................................... 15

*Cooper v. Newsom*,
13 F.4th 857 (9th Cir. 2021) ...................................................................................... 5

*Ctr. for Investigative Reporting v. U.S. Dep't of Labor*,
2020 WL 554001 (N.D. Cal. Feb. 4, 2020) ................................................................ 11

*Danmark v. CMI USA, Inc.*,
2016 WL 31674 (N.D. Cal. Jan. 4, 2016) .................................................................. 14

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) ............................................................................... 6, 19

*E&B Nat. Res. Mgmt. Corp. v. Cnty. of Alameda*,
2019 WL 5697912 (N.D. Cal. Nov. 4, 2019) .............................................................. 11

*EEOC v. Ga.-Pac. Corrugated LLC*,
  2008 WL 11388687 (N.D. Cal. Apr. 9, 2008)........................................................................ 11

*Est. of Dixon v. Comm'r*,
  666 F.2d 386 (9th Cir. 1982)................................................................................................ 19

*Jensen v. Thornell*,
  2024 WL 5643162 (D. Ariz. May 1, 2024)........................................................................... 18

*U.S. ex rel. Killingsworth v. Northrop Corp.*,
  25 F.3d 715 (9th Cir. 1994).................................................................................................. 12

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997)...............................................................................9, 11, 12, 17

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
  2016 WL 324015 (N.D. Cal. Jan. 27, 2016) ........................................................................ 13

*McDonald v. Means*,
  309 F.3d 530 (9th Cir. 2002).................................................................................................. 5

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  722 F. App'x 644 (9th Cir. 2018)......................................................................................... 19

*NAACP v. New York*,
  413 U.S. 345 (1973)............................................................................................................. 13

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996).................................................................................................. 13

*Orange Cnty. v. Air Cal.*,
  799 F.2d 535 (9th Cir. 1986).............................................................................................. 6, 9

*Pampena v. Musk*,
  2026 WL 457256 (N.D. Cal. Feb. 18, 2026).......................................................................... 8

*Perry v. Proposition 8 Off. Proponents*,
  587 F.3d 947 (9th Cir. 2009).................................................................................................. 5

*Roman v. Mayorkas*,
  2021 WL 4621947 (C.D. Cal. July 7, 2021) ................................................................ *passim*

*S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries
  Svc.*,
  2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) ...................................................................... 12

*S.F. Baykeeper v. U.S. Fish & Wildlife Serv.*,
  2021 WL 3426961 (N.D. Cal. Aug. 5, 2021)...................................................................13, 14

iii

*Samsung Elecs. Co. v. Panasonic Corp.*,
   2016 WL 11781870 (N.D. Cal. Sept. 26, 2016) ................................................................. 14

*SFR Invs. Pool 1 LLC v. Newrez LLC*,
   2023 WL 112416 (D. Nev. May 10, 2023) ......................................................................... 12

*Smith v. Marsh*,
   194 F.3d 1045 (9th Cir. 1999) ................................................................................... 1, 6, 9

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977) .................................................................................. 6, 18, 19

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ............................................................................................. 14

*United States v. City of L.A.,* 288 F.3d 391 (9th Cir. 2002) ........................................................ 14

*United States v. Idaho*,
   661 F. Supp. 3d 1017 (D. Idaho 2023) .............................................................................. 16

*United States v. Oregon*,
   913 F.2d 576 (9th Cir. 1990) ........................................................................................... 6, 9

*United States v. State of Wash.*,
   86 F.3d 1499 (9th Cir. 1996) .......................................................................................... 6, 13

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ............................................................................................. 18

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ............................................................................................... 6

*Westchester Fire Ins. Co. v. Mendez*,
   585 F.3d 1183 (9th Cir. 2009) ........................................................................................... 17

*Williams v. CoreCivic of Tenn., LLC*,
   2026 WL 323971 (6th Cir. Feb. 6, 2026) ........................................................................... 14

**Rules**

Fed. R. Civ. P. 7 .................................................................................................................... 17

Fed. R. Civ. P. 24 ........................................................................................................ *passim*

Fed. R. Civ. P. 65 ................................................................................................................. 15

iv
PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC
6032771

## I.    INTRODUCTION[1]

This case concerns the conditions of confinement in California City Detention Facility ("California City"), specifically issues surrounding dangerously and unconstitutionally inadequate medical care, insufficient access to legal counsel, and punitive policies that make life in civil detention at California City harsher than in high-security prisons. On November 12, 2025, Plaintiffs—seven individuals who are or have been held in civil detention at California City—sued U.S. Immigration and Customs Enforcement ("ICE"), ICE officials Todd Lyons and Sergio Albarran, the U.S. Department of Homeland Security, and its then-Secretary, Kristi Noem (collectively, "Defendants"). Defendants have entered into a contract with non-party CoreCivic, Inc. ("CoreCivic"), a private, for-profit prison company, to operate California City. *See* ECF No. 37-1, Decl. of David Landin ("Landin Decl.") ¶ 12. Defendants oversee CoreCivic and are ultimately responsible for ensuring, among other things, that "detainee rights are upheld" and "that detainee medical care is properly given." *Id.* ¶ 13.

After watching this litigation unfold for months, CoreCivic now seeks to insert itself at the eleventh hour for the limited purpose of disrupting the implementation of urgently needed preliminary injunctive relief, which the Court issued to protect the rights, health and safety of the more than one-thousand people housed in California City. ECF No. 82 ("Mot."). Because CoreCivic satisfies neither Rule 24's requirements for mandatory intervention nor the discretionary standard for permissive intervention, the Court should deny the motion.

As a threshold matter, CoreCivic's limited intervention motion is untimely.[2] Rule 24 requires prospective intervenors to act when they "should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Here, to the extent that CoreCivic's asserted interests, such as they are, diverged from Defendants' interests, those fissures would have been apparent at the moment Plaintiffs filed suit in November 2025. CoreCivic indisputably knew what relief was at stake; its employees

---

[1] In all quotations, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless noted. "Rule" refers to the Federal Rules of Civil Procedure.

[2] CoreCivic proposes to intervene solely for the purpose of appealing the preliminary injunction order and seeking a stay pending appeal and not for the duration of the litigation. Mot. at 1.

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC

6032771

commented about the case in the press and submitted sworn declarations in support of Defendants' opposition to Plaintiffs' preliminary injunction motion. If CoreCivic believed then, as it professes to now, that it has contractual or due process interests that Defendants would not and *could not* represent, those interests were implicated immediately. CoreCivic could therefore not remain on the sidelines to wait and see how things turned out before moving to intervene. Moreover, allowing CoreCivic to intervene now for the sole purpose of upending the preliminary injunction would severely prejudice Plaintiffs by allowing a non-party to ambush Plaintiffs with arguments that it could and should have proffered before Plaintiffs secured preliminary relief with potentially life-saving effects. And, contrary to CoreCivic's arguments, the mere fact that the case is at an early procedural stage is in no way dispositive. What matters is whether and to what extent the Court has substantively engaged in the issues of the case. With two binding court orders already in place, voluminous briefing on core issues, and multiple hearings and conferences, there is a great deal of water under the bridge in this litigation.

Because timeliness is a threshold requirement for intervention as of right—and is applied even more strictly for permissive intervention—CoreCivic's strategic (yet unjustified) delay alone warrants denial of its motion. But CoreCivic fails to satisfy Rule 24's other requirements for intervention as of right as well. CoreCivic has no protectable interest in violating the constitution and its (undisclosed) contract with Defendants could in no way support such an interest.

CoreCivic's arguments for permissive intervention fare no better. CoreCivic ignores the discretionary factors that courts consider when deciding whether to allow permissive intervention, and those factors weigh against intervention here. Allowing intervention now would do more than reward CoreCivic's improper gamesmanship; it would prejudice Plaintiffs by allowing CoreCivic to seek to delay the delivery of time-sensitive relief to Plaintiffs, whose health, wellbeing, and, in some cases, very lives are at stake. Granting CoreCivic's motion would needlessly complicate this litigation and divert the Court and the parties from focusing on the task at hand: protecting Plaintiffs' constitutional and statutory rights and ensuring Defendants' compliance with the Court's orders. The Court should deny the motion.

6032771

## II.   BACKGROUND

This action arises from ongoing constitutional and statutory violations at California City, a remote former state prison in the Mojave Desert that began housing civil immigration detainees for the federal government in August 2025. For-profit prison company CoreCivic operates California City pursuant to a contract with ICE, with ICE retaining ultimate legal and constitutional responsibility for the treatment and conditions of confinement of individuals in their custody. *See* Landin Decl. ¶¶ 12–13.

Plaintiffs filed this action on November 12, 2025, alleging constitutional and statutory violations arising from the conditions of confinement at California City. ECF No. 1. Plaintiffs referenced CoreCivic on the first page of the complaint. *See id.* ¶ 3. The filing garnered significant media attention, in which the head of CoreCivic's national public affairs team provided comment.[3] On December 1, 2025, Plaintiffs moved for class certification and a preliminary injunction. ECF Nos. 21–22. Plaintiffs sought facility-wide relief relating to medical care, attorney access, freedom of movement, and other conditions of confinement. ECF No. 22. Among other relief, Plaintiffs requested the provision of temperature appropriate clothing, enhanced attorney access, and the appointment of an independent, third-party monitor to ensure the provision of constitutionally adequate medical care. ECF No. 22-38.

While Plaintiffs' preliminary injunctive relief was pending, Plaintiffs determined that two Named Plaintiffs were at serious risk of irreversible medical harm, including death, absent Court intervention. On December 16, 2025, Named Plaintiffs Fernando Viera Reyes and Yuri Alexander Roque Campos filed an emergency application for a temporary restraining order ("TRO") based on their acute medical needs. Mr. Viera Reyes was suffering from what was very likely—and has since been confirmed to be—an aggressive form of prostate cancer, while Mr. Roque Campos had a dangerous congenital heart condition that required the immediate attention of a cardiologist. ECF No. 27. After holding an emergency conference, the Court entered an order on December 22 (the "TRO Order") directing Defendants to ensure timely specialist care and follow-up for the affected

---

[3] *See, e.g.*, Jessica Flores, *Detained Immigrants Sue Over Alleged Inhumane Conditions at California City ICE Facility*, SAN FRANCISCO CHRONICLE, Nov. 13, 2025, https://www.sfchronicle.com/california/article/california-city-detention-lawsuit-21169402.php.

Named Plaintiffs. ECF Nos. 29, 34, 36.

Defendants filed their opposition to Plaintiffs' preliminary injunction motion on January 2, 2026. ECF Nos. 38, 40. Defendants supported their opposition with sworn declarations from CoreCivic employees, specifically Warden Christopher Chestnut and Regional Medical Director Dr. Susan Tiona, both of whom described the facility's policies and procedures. ECF Nos. 40-6, 40-7. On January 15, 2026, Warden Chestnut filed a "corrected" declaration that contained additional information about CoreCivic's operations. ECF No. 45.

The Court heard argument on Plaintiffs' preliminary injunction and class certification motions, as well as Defendants' motion to transfer, on February 6, 2026. ECF No. 71, 75. During the hearing, the Court and the parties discussed the scope, manageability, and type of preliminary relief as well as the appointment of an independent external monitor who will assess and report to the Court on California City's health care system.

On February 10, 2026, the Court entered an Order granting in part Plaintiffs' motion for preliminary injunction and provisionally certifying a class. ECF No. 72 ("PI Order"). The PI Order directed Defendants to ensure constitutionally adequate conditions of confinement in several areas, including adequate health care, confidential attorney access, and contact legal visits. *Id.* The Order further provided for the appointment of an independent, third-party monitor to oversee implementation of the required medical relief. *Id.* The substantive provisions of the Order are all directed at Defendants and comprise a subset of the relief outlined in Plaintiffs' Proposed Order accompanying the motion for preliminary injunction. *See* ECF Nos. 22-38, 72.

Following entry of the PI Order, which directed the parties to meet and confer regarding the appointment of the monitor, the parties submitted proposals for the Court's consideration, and the Court scheduled a conference for March 5, 2026 to address monitor selection.[4] ECF Nos. 72, 76–77, 81. By this point, the parties had submitted voluminous briefing on four substantive motions (TRO, preliminary injunction, class certification, and motion to transfer), the Court had held a day-long hearing and issued preliminary relief, and the Court and parties were focused on effectuating

---

[4] The Court originally requested that the conference take place on March 2, 2026, but extended the date due to Defendants' counsel's schedule.

that relief through the selection and appointment of an external monitor.

Four months after the complaint was filed, three months after the Court issued the TRO Order, three weeks after the Court issued the PI Order, and two days before the rescheduled conference on monitor selection, CoreCivic filed its Emergency Motion to Intervene and Emergency Motion to Stay [the PI Order] Pending Appeal. ECF Nos. 82, 86. The day before the conference, CoreCivic moved to shorten time to either require immediate briefing and hearing on its motions or to delay the monitor selection proceedings until some unspecified time in the future. ECF No. 88. By email to the courtroom deputy, counsel for CoreCivic asked to join the conference as a participant, despite no ruling as to intervention. The Court denied CoreCivic's Motion to Shorten Time that same day, finding no showing of good cause. ECF No. 89. At the conference the next day, the Court expressed skepticism regarding CoreCivic's effort to insert itself into the case, observing that CoreCivic "must have known for a long time that this case was pending" and that a monitor had been requested, yet "at the last minute, they were endeavoring to jump in feet first." ECF No. 99, Mar. 5, 2026 Hr'g Tr. ("Conf. Tr.") at 4:2–5.

## III.    LEGAL STANDARD

A party seeking to intervene as of right under Rule 24(a)(2) must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *as amended* (May 13, 2003). It is "incumbent on the [proposed intervenor] to show that all the requirements for intervention have been met." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021). "Failure to satisfy any one of the requirements is fatal." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Rule 24(b) governs permissive intervention, and "[c]ourts have broad discretion to deny permissive intervention under" that provision. *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002). Under Rule 24(b), "a district court has discretion to permit intervention when the movant

presents (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan v. Brookdale Senior Living Comtys, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022); *see also* Fed. R. Civ. P. 24(b)(1). But "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); *see also Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (listing relevant discretionary factors courts may consider). "In exercising its discretion, the district court must consider whether [permissive] intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly*, 159 F.3d at 412.

## IV.    ARGUMENT

### A.    CoreCivic fails to satisfy Rule 24(a)'s requirements for intervention as of right.

#### 1.    CoreCivic's motion is untimely.

Timeliness is "the threshold requirement" for intervention as of right. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Therefore, untimeliness alone defeats intervention. *See United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). To determine whether a motion for intervention as of right is timely, courts consider the totality of the circumstances, while focusing on (a) the reason for and length of the delay, (b) the prejudice to the other parties if intervention is permitted, and (c) the stage of the proceedings. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022). Taking each factor in turn, CoreCivic's delay in seeking intervention dooms its request.

##### a.    CoreCivic provides no justification for its delay, and none exists.

A prospective intervenor "must act ***as soon as he knows*** or has reason to know that his interests might be adversely affected by the outcome of the litigation," *Oregon*, 913 F.2d at 589, and that those interests "would not be adequately protected by the existing parties," *Marsh*, 194 F.3d at 1052. Absent such immediate action, the prospective intervenor must "convincingly explain its delay in filing its motion to intervene." *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986). CoreCivic has failed on both counts.

CoreCivic knew or had reason to know that Plaintiffs' lawsuit might adversely affect its

6

alleged interests as soon as Plaintiffs sued in November 2025. Plaintiffs' complaint referenced CoreCivic on the first page. ECF No. 1 ¶ 3. Plaintiffs' allegations were hardly a secret; indeed, the lawsuit received substantial media attention.[5] Warden Chestnut, himself a CoreCivic employee, provided a "detailed statement" disputing Plaintiffs' allegations soon after the complaint was filed. *See* Adjoa Aikins, *Warden Denies Poor Care, Conditions at California City Detention Center*, Fox26 News, Nov. 19, 2025, https://kmph.com/news/local/warden-denies-poor-care-conditions-at-california-city-detention-center. Simply put, CoreCivic clearly knew about Plaintiffs' allegations—and their potential effects on CoreCivic—from the moment the lawsuit was filed, and CoreCivic provides no reason to suspect otherwise.

Nor can CoreCivic dispute that it was on further notice when Plaintiffs filed their Motion for Preliminary Injunction on December 1, 2025. *See* ECF No. 22. The relief CoreCivic now belatedly seeks to challenge was front and center in that motion, and CoreCivic's own employees submitted declarations in support of Defendants' opposition to it. *See* ECF Nos. 40-6, 40-7. Indeed, CoreCivic now submits a declaration from one of those *same employees*, Warden Chestnut, who claims that the Court "did not have the benefit of [his] perspective on the current status of medical care, recreation, or access to counsel at Cal City when granting the relief requested by Plaintiffs." ECF No. 82-1. But that is demonstrably false. On January 2, 2026, Mr. Chestnut submitted a 220 paragraph-long declaration in opposition to Plaintiffs' preliminary injunction motion. ECF No. 40-6. He then submitted a corrected declaration two weeks later. ECF No. 45-1. There is no reason to believe that Mr. Chestnut's participation to date was in any way limited by CoreCivic's non-party status.

*Roman v. Mayorkas*, 2021 WL 4621947 (C.D. Cal. July 7, 2021), is instructive. There, as here, plaintiffs sued the federal government over the conditions of confinement in an immigration

---

[5] *See, e.g.*, Jessica Flores, *Detained Immigrants Sue Over Alleged Inhumane Conditions at California City ICE Facility*, SAN FRANCISCO CHRONICLE, Nov. 13, 2025, https://www.sfchronicle.com/california/article/california-city-detention-lawsuit-21169402.php; Rachel Uranga, *Why California's Newest Detention Facility Faces Federal Lawsuit Over Medical Neglect and 'Punitive' Unsanitary Conditions*, LA TIMES, Nov. 13, 2025, https://www.latimes.com/california/story/2025-11-13/immigrants-held-in-inhumane-conditions-at-california-detention-facility-sue-ice-dhs; Sam Levin, *People Held in 'Decrepit' California ICE Facility Sue Over 'Inhumane' Conditions*, THE GUARDIAN, Nov. 13, 2025, https://www.theguardian.com/us-news/2025/nov/13/california-ice-detention-lawsuit.

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC

6032771

detention facility. *Id.* at *1. The district court entered an injunction concerning the spread of COVID-19 in that facility, and the government appealed. After the Ninth Circuit affirmed, the district court heard additional argument from the parties and modified its injunction, ordering a reduction in the detained population. *Id.* At that point, private prison operator GEO Group, Inc., which operated the facility pursuant to a contract with the government, *id.*, moved to intervene. Finding the motion untimely, the court noted that GEO Group "knew, or at least should have known, that its interests would be adversely affected by this case," dating back to the lawsuit's commencement. *Id.* at *2. There, as here, the facility's warden had "submitted several declarations" in the case. *Id.*; *see also Pampena v. Musk*, 2026 WL 457256, at *1 (N.D. Cal. Feb. 18, 2026) (denying intervention where prospective intervenor's employees had been deposed earlier in the case). And there, as here, GEO Group could have moved to intervene at "every critical stage in th[e] case," including the plaintiff's initial motion for a preliminary injunction. *Roman*, 2021 WL 4621947, at *2. To be sure, in *Roman*, fifteen months had passed since the case's filing, and a preliminary injunction had been affirmed and later modified before GEO Group moved to intervene. But that provides no basis to distinguish *Roman* from this case. As the district court emphasized, "GEO Group's failure to move to intervene ***at any of those critical stages***," including when the plaintiffs first filed their preliminary injunction motion, made their motion untimely. *Id.*

The same is true here. CoreCivic understood that the litigation might result in an adverse outcome well before it moved to intervene. In December 2025, Plaintiffs moved for a TRO, seeking specialist care for one Named Plaintiff who likely had rapidly spreading and untreated prostate cancer and another who was at high risk of cardiac death. ECF No. 27. Despite the fact that Plaintiffs' TRO motion implicated the very same interests that CoreCivic now claims justify intervention, CoreCivic remained idle. The Court issued its TRO Order requiring specialist visits and follow-up care on December 22, 2025. ECF No. 36. Defendants neither moved to stay that order nor appealed it; on the contrary, they *stipulated* to the relief. CoreCivic remained idle. The parties then briefed the preliminary injunction motion and argued it on February 6, 2026, with CoreCivic employee declarations constituting the spine of Defendants' opposition. CoreCivic remained idle. At the hearing, the Court ordered the parties to submit revised proposed orders on

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC

6032771

February 9, 2026. See ECF Nos. 66–67. CoreCivic remained idle. The Court then issued its order on February 10, 2026. CoreCivic *still* did not move to intervene. Instead, CoreCivic sat on its hands until two days before the Court held a conference to appoint an external monitor, as contemplated in the PI Order. As was true for GEO Group in *Roman*, CoreCivic's "failure to move to intervene at any of those critical stages makes the instant motion untimely." 2021 WL 4621947, at *2.

CoreCivic argues that it "must intervene now" because the Court's PI Order impairs its interests. Mot. at 8. But potential intervenors may not wait until a potential harm "crystallizes" or becomes "certain" before moving to intervene. *Chavez v. PVH Corp.*, 2014 WL 6617142, at *6 (N.D. Cal. Nov. 20, 2014). Indeed, the Ninth Circuit has repeatedly affirmed district courts' untimeliness findings where the prospective intervenor knew the litigation could adversely affect its interests but chose a wait-and-see approach, as CoreCivic has done here. *See, e.g.*, *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119–20 (9th Cir. 2022); *Orange Cnty.*, 799 F.2d at 538; *Oregon*, 913 F.2d at 589. The Ninth Circuit is especially hostile to non-parties waiting until relief has been granted before moving to intervene, hoping to gum up the works or "relitigate issues already determined." *Alaniz v. Tille Lewis Foods*, 572 F.2d 657, 659 n.2 (9th Cir. 1978). Where, as here, the order at issue "was already being fulfilled," courts find that "to countermand it now would create havoc and postpone the needed relief." *Id.*

Ignoring the fact that it could and should have intervened much earlier in the litigation, CoreCivic contends that its timeliness clock started running only after the Court issued its PI Order and while Defendants were still "decid[ing] whether they will appeal." Mot. at 8. That argument fails. Timeliness runs from when a proposed intervenor should have been aware that the parties no longer protected its interests. *See Marsh*, 194 F.3d at 1052; *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997). Here, any alleged divergence in interests between CoreCivic and ICE existed from the outset of this litigation. In *Roman*, the court rejected as "disingenuous" GEO Group's claim that intervention became necessary only when the government stopped fighting the plaintiffs' efforts to reduce the detained population. 2021 WL 4621947, at *2. The court explained that the government's interests and GEO Group's financial interests "were never fully aligned" in the first place. *Id.* The same reasoning applies here. Because CoreCivic's

9

supposed concerns center on financial costs or operational burdens in light of its contractual relationship with Defendants, any such concerns existed from the very beginning of this case, long before the PI Order and regardless of Defendants' decision to appeal. CoreCivic cannot simultaneously claim that Defendants are *incapable* of defending its supposed business and due process interests while pretending it did not realize that until two weeks ago. And to the extent CoreCivic felt that Defendants failed to protect its interests by declining to stay and appeal a preliminary injunction requiring CoreCivic to expend resources and provide constitutionally adequate medical care, that ship sailed when the Court issued its TRO Order in December 2025. Defendants not only failed to appeal or move to stay that order, but they actually *agreed* to it. ECF No. 36.

Put simply, CoreCivic "could have intervened sooner to protect [itself]" and "should have known that the risks of waiting included possible denial of [its] motion[] to intervene as untimely." *Cal. Dep't of Toxic Substances Control*, 309 F.3d at 1120. CoreCivic's unhappiness with the result of the preliminary injunction proceedings offers no basis to excuse its strategic choice to wait and see what would happen before seeking to intervene.

### b.     Intervention would prejudice Plaintiffs.

CoreCivic's decision to wait and see how the Court would rule on Plaintiffs' preliminary injunction before moving to intervene has significantly prejudiced Plaintiffs. If CoreCivic had moved to intervene before the preliminary injunction proceedings, it could have raised its concerns before the parties and the Court expended significant resources defining the scope of time-sensitive preliminary relief. If the Court grants CoreCivic's belated motion, "plaintiffs would lose the time and resources they expended" in securing preliminary relief and would face the prospect of "having to relitigate this case," or at least the preliminary injunction motion that CoreCivic now seeks to stay and overturn, "with new parties." *Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*, 335 F.R.D. 316, 327 (E.D. Cal. 2020), *aff'd*, No. 20-16206, 2022 WL 10966098 (9th Cir. Oct. 19, 2022). All of the effort the parties (and the Court) have spent selecting the external monitor and preparing an order governing his appointment would be for naught.

In addition, by filing its motion for "limited" intervention alongside an "emergency" motion

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC

6032771

to stay the Court's PI Order, as well as a notice of appeal to the Ninth Circuit, it is clear that CoreCivic seeks to relitigate the preliminary injunction and stall urgently needed relief, placing Plaintiffs' health and safety at further risk. Proposed interventions that seek to relitigate or re-open decided issues are prejudicial. *See, e.g.*, *EEOC v. Ga.-Pac. Corrugated LLC*, 2008 WL 11388687, at *7 (N.D. Cal. Apr. 9, 2008) ("'Prejudice' in the context of a motion to intervene may exist[] where intervention would raise new issues, *re-open decided issues*, unnecessarily prolong litigation, threaten settlement, or delay remedies."); *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 2020 WL 554001, at *2 (N.D. Cal. Feb. 4, 2020) ("The Court is inclined to deny the motion insofar as it seeks intervention to relitigate or reconsider matters decided . . . ."); *E&B Nat. Res. Mgmt. Corp. v. Cnty. of Alameda*, 2019 WL 5697912, at *6 (N.D. Cal. Nov. 4, 2019) (granting intervention where the intervenor represented that it would neither "revisit any resolved issues," nor "derail the established schedule").

### c.    CoreCivic's motion comes after significant proceedings in this case.

Arguing that its motion is timely, CoreCivic relies heavily on the fact that this case is "in its infancy." Mot. at 7. But the "stage of proceeding" factor "demands a more nuanced, pragmatic approach" beyond merely asking how far along the case is procedurally. *League of Latin Am. Citizens*, 131 F.3d at 1303. The factor focuses on "what ha[s] already occurred" in the case, rather than "what has yet to occur." *Id.* It "weighs heavily against allowing intervention as of right under Rule 24(a)(2)" when, as here, "the district court has substantively—and substantially—engaged the issues in this case." *Id.*

Here, the Court has squarely grappled with the merits of Plaintiffs' claims and has issued two urgently needed preliminary orders to address ongoing constitutional violations affecting thousands of lives. Over the past four months, the Court has considered and granted Plaintiffs' request for a TRO, holding a substantive conference on the merits; both Plaintiffs and the government extensively briefed a preliminary injunction motion, a class certification motion, and the government's motion to transfer venue; and the Court thoroughly engaged with the preliminary injunction process, hearing nearly a full day of arguments. Following the hearing, the Court granted

11

preliminary relief and provisional class certification. The parties and the Court have since engaged in a painstaking process of reviewing potential monitors in accordance with the Court's Order. Given the Court's substantive engagement in the preliminary injunction proceedings, CoreCivic's belated decision to intervene—in a limited capacity solely to contest events that the Court has already decided—comes after "a lot of water had already passed underneath . . . [the] litigation bridge." *Id.*; *see also Roman*, 2021 WL 4621947, at *2–3 (denying private prison operator's motion to intervene after the issuance of a modified preliminary injunction and appointment of a Special Master).

Rather than confront this case's true posture, CoreCivic relies on cases permitting intervention at later stages of a lawsuit. Those cases are inapposite. As CoreCivic itself notes on page 7 of its motion, in *SFR Invs. Pool 1 LLC v. Newrez LLC*, 2023 WL 112416 (D. Nev. May 10, 2023), *Alaska Airlines, Inc. v. Schurke*, 2013 WL 12250544 (W.D. Wash. Feb. 25, 2013), and *S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries Svc.*, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007), the relevant courts had only ruled on preliminary motions and had **not** substantively engaged in the issues presented. Here, by contrast, the Court has already issued significant relief that lies at the very core of the Plaintiffs' claims. CoreCivic also misleadingly cites *Acosta v. Huppenthal*, 2012 WL 12829994 (D. Ariz. Feb. 6, 2012), as supporting intervention after a court had ruled on a preliminary injunction motion. But there, the court noted that it had "yet to deeply engage with the substantive issues" in the case, as "proceedings have been focused on preliminary matters such as standing." *Id.* at *2. Not so here.

Finally, CoreCivic contends that its motion to intervene is timely simply because it filed the motion before the deadline to appeal had passed. *See* Mot. at 6. But CoreCivic cites only a general rule regarding timeliness, not an ironclad one. *See U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 719 (9th Cir. 1994). When deciding timeliness, district courts must always consider Rule 24's timeliness factors. Indeed, in *Killingsworth*, the case on which CoreCivic relies, the Ninth Circuit still "require[d] an acceptable reason for the delay in filing the motion" and assessed the prejudice to the existing parties. *See id.* at 720. In short, a party cannot sit on the sidelines with full knowledge of the case, wait for an adverse ruling, and then invoke the appellate clock to cure its

12

earlier delay as CoreCivic seeks to do here. "Ultimately, the timeliness inquiry requires the Court to consider all of the circumstances." *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2016 WL 324015, at *8 (N.D. Cal. Jan. 27, 2016) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)). Those circumstances reveal that CoreCivic waited too long.

### 2.    CoreCivic has not sufficiently identified a protectable interest impaired by this action.

Because CoreCivic's motion is untimely, the Court should deny the motion and no further analysis is needed. *See State of Wash.*, 86 F.3d at 1503. But CoreCivic fails on the second and third mandatory intervention factors as well—the need to show a "significantly protectable" interest impaired by the disposition of the action. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). To demonstrate such an interest, the movant must show that the interest is protectable under some law and that a relationship exists between the legally protected interest and the claims at issue. *Id.* An applicant demonstrates such an interest where "the injunctive relief sought by the plaintiffs will have [] direct, immediate, and harmful effects upon a third party's legally protectable interests." *S.F. Baykeeper v. U.S. Fish & Wildlife Serv.*, 2021 WL 3426961, at *6 (N.D. Cal. Aug. 5, 2021). CoreCivic has made no such showing here.

CoreCivic contends that its undisclosed agreement with ICE gives rise to protectable, contractual interests that are impaired by the Court's PI Order. But because CoreCivic has failed to disclose this agreement, both the Court and Plaintiffs are unable to evaluate CoreCivic's contractual rights and duties.[6] Absent any detail whatsoever as to the relevant contract terms, CoreCivic's references to legal interests adversely affected by the PI Order amount to unsupported speculation.

In any event, CoreCivic ignores that the PI Order is aimed at remedying Defendants' constitutional violations. CoreCivic claims that the Order will impair its contractual obligation to "operate and manage the Facility according to the terms of [its] agreement" with ICE, and to comply with Defendants' National Detention Standards (NDS) and accreditation standards. Mot. at 10. In so arguing, CoreCivic seems to suggest that it has a contractual interest in not being bound by the constitution or by court order—or that it cannot comply with its contract terms if it is so bound.

---

[6] CoreCivic's contract with ICE related to California City is not publicly available.

Those arguments must fail. CoreCivic's assertion necessarily concedes that compliance with the NDS and accreditation standards may be insufficient to pass constitutional muster. That is, of course, correct: while these standards establish baseline detention requirements according to Defendant ICE, the U.S. Constitution may demand more.[7] But regardless of these standards and the contract's related provisions, CoreCivic must have known, when it contracted with the U.S. government to detain people at California City, that it was required to detain them in constitutional conditions and might be subject to a court order requiring as much. The law on this point is crystal clear and has been repeatedly applied to CoreCivic itself. *See, e.g.*, *Williams v. CoreCivic of Tenn., LLC*, 2026 WL 323971, at *3 (6th Cir. Feb. 6, 2026) (applying constitutional standards to "private corporations that perform traditional state functions such as run a prison"). CoreCivic's suggestion to the contrary is as absurd as it is dangerous.

*San Francisco Baykeeper v. U.S. Fish & Wildlife Service*, 2021 WL 3426961 (N.D. Cal. Aug. 5, 2021), is instructive. There, in a case in which the plaintiffs sought an order mandating an agency to issue a proposed rule under the Endangered Species Act, the movant sought to intervene to protect its purported contractual interests in water supply rights that it claimed would be impacted under the proposed rule. The Court recognized those contractual interests but found that the relief sought by the plaintiffs was "not sufficiently related to [those] contractual rights to give rise to a 'significantly protectable interest' for the purposes of mandatory intervention." *Id.* at *7. As is true here, in *S.F. Baykeeper*, the plaintiffs sought no changes to the contract itself and the proposed intervenor "would still have the opportunity to protect its rights" through other mechanisms. *Id.* All of the cases CoreCivic relies on are distinguishable for the same reason: in each of those cases, the contract itself was the target of litigation. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 (9th Cir. 2001) (relief sought included nullification of contract); *United States v. City of L.A.*, 288 F.3d 391, 399–401 (9th Cir. 2002) (proposed consent decree could contradict existing contract); *Samsung Elecs. Co. v. Panasonic Corp.*, 2016 WL 11781870, at *4 (N.D. Cal. Sept. 26, 2016) (contract and arbitration clause at heart of dispute); *Danmark v. CMI USA, Inc.*, 2016 WL

---

[7] Contrary to Defendants' repeated attempts to suggest otherwise, this litigation is not an attempt to hold Defendants to the standards they set for themselves in the NDS. It is to ensure compliance with the U.S. Constitution and federal statutory law.

14

31674, at *2 (N.D. Cal. Jan. 4, 2016) (injunction directly and specifically restrained intervenor). Here, Plaintiffs requested no relief aimed at invalidating, modifying, or terminating CoreCivic's contract with ICE, and the Court's PI Order makes no mention of the contract.

CoreCivic's arguments regarding its due process rights are even farther afield. To start, CoreCivic argues that it lacked notice before the Court entered its PI Order, but that is false. CoreCivic undoubtedly was on actual notice of the relief Plaintiffs were seeking and assisted Defendants through multiple declarations (and, presumably counsel-to-counsel coordination) in opposition to the relief Plaintiffs sought. CoreCivic's contention that the PI Order violates due process rights because the terms are overbroad and vague is a red herring. As Plaintiffs explain at length in their opposition to CoreCivic's motion to stay, filed concurrently, the PI Order is unambiguous and sufficiently specific under Rule 65(d). Finally, CoreCivic claims a liberty or property interest "in operating and managing [California City] according to the terms of its agreement with ICE." Mot. at 12. But again, that undisclosed contract is neither being litigated, modified, nor terminated in this action, and CoreCivic should have known it was subject to the U.S. Constitution and any court orders enforcing it when CoreCivic entered into that contract, regardless of the contract's terms.

### 3. CoreCivic has insufficiently identified inadequate representation justifying its limited intervention at this stage.

Courts examine three factors in evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). The most important factor is how the prospective intervenor's "interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (9th Cir. 2003). Where, as here, the applicant "and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* To rebut that presumption, the applicant must make a "compelling showing." *Id.*

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC
6032771

Here, the presumption of adequacy arises because—at the core of this litigation—ICE and CoreCivic share precisely the same ultimate objective: defending their operation of California City Detention Facility. *See, e.g.*, *United States v. Idaho*, 661 F. Supp. 3d 1017, 1024 (D. Idaho 2023) (applying the presumption because both the applicant and existing party shared the "ultimate objective of . . . defend[ing] the Idaho statute's constitutionality"). CoreCivic can hardly contend that it has some other ultimate objective than ICE, the governmental actor that hired it to operate California City and is vigorously defending the lawsuit. It is ICE that "provide[s] oversight of CoreCivic to ensure" that CoreCivic is complying with its contract, "that detainee rights are upheld," and "that detainee medical care is properly given." ECF 37-1 ¶ 13. If CoreCivic has some other ultimate objective in mind, such as cost savings, it is baseless. CoreCivic is ICE's contractor, not the other way around. CoreCivic's vague claim that "Defendants' interests are not completely aligned such that Defendants can and will 'undoubtedly' make CoreCivic's arguments" is insufficient to rebut the presumption. Mot. at 12.

But even setting aside the vague nature of CoreCivic's argument, the Court should reject CoreCivic's assertion that Defendants "cannot or will not" defend its interests. Mot. at 13. To the extent that CoreCivic claims Defendants are *incapable* of representing CoreCivic, that has been true since the outset of this litigation, and CoreCivic's failure to intervene in a timely manner is fatal to its motion. *See* Part IV.A.1. To the extent CoreCivic claims that Defendants are *unwilling* to defend CoreCivic's interest by appealing, that divergence became apparent when the Court issued the TRO Order in December 2025 and Defendants neither moved to stay nor appealed that order.[8]

Rule 24(a) is not a disjunctive test: it requires that a proposed intervenor satisfy each of the four factors required for mandatory intervention. CoreCivic has failed to carry its burden.

////

////

////

---

[8] It is worth noting that CoreCivic filed its motion before Defendants' time to appeal had expired, and it points to no definitive statement from Defendants foreclosing such a strategy.

16

### B.    Permissive intervention would be improper under Rule 24(b) and the *Spangler* factors.

#### 1.    CoreCivic's motion is untimely.

The timeliness requirement for permissive intervention is analyzed "more strictly" than it is for intervention as a matter of right. *League of Latin Am. Citizens*, 131 F.3d at 1308. Courts otherwise "consider precisely the same three [timeliness] factors" for intervention as of right and permissive intervention, and an untimeliness finding suffices to defeat a motion for permissive intervention. *Id.* Because CoreCivic's motion fails the timeliness requirement for intervention as of right, it *a fortiori* fails under the more demanding standard for permissive intervention. *See supra* IV.A.1.

#### 2.    CoreCivic's assertion of common questions is conclusory and unspecific.

Permissive intervention also requires the movant seeking to intervene to bring a claim or defense that shares a "common question of law or fact" with the main action. Fed. R. Civ. P. 24(b)(1)(B). CoreCivic summarily argues that "a common question of law or fact exists" without citing any case in support. *See* Mot. at 14–15. It offers only a single sentence, stating that "because Plaintiffs' claims arise out of the alleged conditions at the Facility, CoreCivic shares common defenses as Defendants to those claims, and the Court's Order granting a class-wide preliminary injunction based on Plaintiffs' allegations substantially impairs CoreCivic's operation and management of the Facility." *Id.* at 15.

Courts have recognized that failure to specify common questions frustrates assessment of potential intervention. For that reason, under Rule 24(c), "[a]n outsider moving to intervene, whether as of right under Rule 24(a) or permissively under Rule 24(b), 'must' attach to its motion 'a pleading that sets out the claim or defense for which intervention is sought.'" *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 n.7 (9th Cir. 2022). CoreCivic's request for limited intervention fails to include such a pleading. Fed. R. Civ. P. 24(c); *see also* Fed. R. Civ. P. 7 (defining pleadings and motions separately). While CoreCivic's failure to comply with Rule 24(c) may be a purely technical defect, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009), the failure makes it difficult for Plaintiffs or this Court to assess CoreCivic's

17

claims or defenses. *Cf. Jensen v. Thornell*, 2024 WL 5643162, at *1 n.1 (D. Ariz. May 1, 2024) ("[I]f NaphCare had submitted such a pleading, the Court would be better able to determine the basis on which NaphCare seeks to intervene.").

### 3. The Court should exercise its discretion to deny CoreCivic's attempts to delay vital relief under *Spangler* and related case law.

Even if the Court were to conclude that a common question of law or fact exists here, that "does not automatically entitle an applicant to intervene." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990). Rather, if the threshold Rule 24(b) factors are satisfied, the Court can still exercise its discretion to deny intervention because CoreCivic's motion for "limited" intervention seeks only to delay the vital preliminary relief covered under the Court's PI Order.

The law is clear: A district court is "entitled to consider other factors [beyond Rule 24(b)] in making its discretionary decision on the issue of permissive intervention." *Callahan*, 42 F.4th at 1022 (quoting *Spangler*, 552 F.2d at 1329). CoreCivic's motion utterly ignores these other considerations—known as the "*Spangler* factors." As relevant here, courts may consider whether (1) "intervention will prolong or unduly delay the litigation"; (2) whether the "parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented"; (3) "the nature and extent of the intervenors' interest, . . . the legal position they seek to advance, and its probable relation to the merits of the case"; and (4) "whether the intervenors' interests are adequately represented by other parties." *Id.* (quoting *Spangler*, 552 F.2d at 1329). Under these *Spangler* factors, this Court has ample reason to deny permissive intervention. *See id.* at 1022–23 (concluding that the district court acted within its discretion in denying permissive intervention when the threshold factors were satisfied but two *Spangler* factors counseled strongly against intervention).

***First***, intervention will surely prolong and unduly delay the proceedings. Granting intervention here for the limited purpose of allowing CoreCivic to stay and appeal the PI Order would require the Court to revisit issues that have already been fully briefed and litigated, which would needlessly expend judicial resources. *See Venegas*, 867 F.2d at 531 ("[J]udicial economy is

18

a relevant consideration in deciding a motion for permissive intervention."). And it would further delay the implementation of urgent and time-sensitive relief, as seen by the continued medical deterioration of Plaintiffs such as Mr. Viera Reyes and other class members. *See also* Pls.' Opp. to Stay Motion (filed concurrently). CoreCivic acknowledges that their goal with this limited intervention request is to halt that urgent and time-sensitive relief through a stay and ultimately to vacate it on appeal.

***Second***, with respect to the factual development of the record, CoreCivic has *already* "significantly contribute[d] to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented" without intervention, as seen by the many declarations provided by CoreCivic thus far. *Spangler*, 552 F.2d at 1329; *see also supra* IV.A.3. Allowing CoreCivic to intervene now, after it has consistently shown it is willing to fully support Defendants in factual development, would provide nothing new.

***Third***, as discussed above, CoreCivic's stated interests are administrative, pecuniary, and contractual. They are unrelated to the merits of this lawsuit, which concerns constitutional and statutory violations occurring under color of federal law.

***Fourth***, and also as discussed above, Defendants are and have been adequately representing CoreCivic's interests in this case, with CoreCivic's active participation. ICE ultimately calls the shots at California City. CoreCivic is the agent, not the principal in that contractual relationship. Accordingly, the federal government—which bears ultimate legal authority and responsibility for California City and directs its vendor, CoreCivic, to behave as the government sees fit—is adequately protecting CoreCivic's interests, which are subsidiary to, and contingent upon, Defendants' interests.

Finally, the *Spangler* factors are "nonexclusive," *Donnelly*, 159 F.3d at 412, and "[c]ourts are free to consider other factors in their analysis," *Mineworkers' Pension Scheme v. First Solar Inc.*, 722 F. App'x 644, 646 (9th Cir. 2018); *see also Est. of Dixon v. Comm'r*, 666 F.2d 386, 389 (9th Cir. 1982). This Court should consider as a factor the irreparable harm that the PI Order seeks to prevent. This case presents issues of the utmost urgency, with people's lives quite literally at stake. Allowing non-party CoreCivic to belatedly jump into the fray, solely for the purpose of

19

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC

6032771

halting potentially life-saving relief, would thwart the interests of justice. The Court should refuse to permit CoreCivic's cynical tactics to succeed.

## V.    CONCLUSION

For the foregoing reasons, CoreCivic's limited motion to intervene for purposes of appeal and stay pending appeal should be denied.

Dated: March 17, 2026

Respectfully submitted,

/s/ *Cody S. Harris*
KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND
CODY S. HARRIS
CARLOS C. MARTINEZ
LISA C. LU

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL
MARIEL VILLARREAL

/s/ *Margot Mendelson*
PRISON LAW OFFICE
MARGOT MENDELSON
TESS BORDEN
PATRICK BOOTH
ALISON HARDY
RANA ANABTAWI

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN
FELIPE HERNANDEZ
MARISOL DOMINGUEZ-RUIZ
CARMEN IGUINA GONZALEZ

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO NON-PARTY CORECIVIC'S MOTION TO INTERVENE
Case No. 3:25-cv-09757-MMC

6032771