Daniel P. Struck, Pro Hac Vice
AZ Bar #012377
Dana M. Keene, CA Bar #324993
Shannon L. Knorr, CA Bar #300399
STRUCK LOVE ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
dkeene@strucklove.com
sknorr@strucklove.com

Nicholas H. Rasmussen, Bar #285736
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & SMITH, LLP
7647 North Fresno Street
Fresno, CA  93720
Tel: (559) 433-1300
Fax: (559) 433-2300
nrasmussen@mccormickbarstow.com

Attorneys for Intervenor CoreCivic, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FERNANDO GOMEZ RUIZ, et al., | Case No. 3:25-cv-09757-MMC |
| Plaintiffs, | **PROPOSED INTERVENOR CORECIVIC, INC.'S REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL** |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | Date:   April 10, 2026 |
| Defendants. | Time:   9:00 a.m. |
| | Dept:   Courtroom 7 |
| CORECIVIC, INC., | Judge:  Honorable Maxine M. Chesney |
| Intervenor | |

CORECIVIC'S REPLY TO EMERGENCY                                    3:25-CV-09757-MMC
MOTION TO STAY PENDING APPEAL

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

I.      CoreCivic Is Likely to Succeed on the Merits of the Appeal ........................................... 1

    A.      The Court Failed to Apply the Legal Standards for Granting Preliminary Injunctive Relief.......................................................................................................... 1

    B.      The Preliminary Injunction Violates Rule 65 ........................................................ 6

    C.      The Court Failed to Follow the Legal Standard in Granting Provisional Class Certification........................................................................................................... 9

II.     CoreCivic Will Suffer Irreparable Harm Absent a Stay Pending the Appeal.................... 11

III.    The Parties Will Not Be Harmed by a Stay of the Order Pending the Appeal ................. 13

IV.     The Public Interests Favor a Stay of the Order Pending the Appeal ................................ 14

V.      Conclusion ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*
284 F.3d 1091 (9th Cir. 2002) ................................................................................................ 8

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ............................................................................................... 3

*Armstrong v. Brown*,
768 F.3d 975 (9th Cir. 2014) ................................................................................................. 7

*B.K. by next friend Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) .......................................................................................... 10, 11

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ............................................................................................... 14

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ............................................................................................... 10

*Cyntec Co., LTD. v. Chilisin Elecs. Corp.*,
2024 WL 3087973 (N.D. Cal. May 22, 2024) ........................................................................ 4

*Dahl v. HEM Pharms. Corp.*,
7 F.3d 1399 (9th Cir. 1993) ................................................................................................. 15

*Dayton Bd. of Ed. v. Brinkman*,
433 U.S. 406 (1977) ............................................................................................................. 14

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ............................................................................................. 11

*Doe v. Noem*,
783 F. Supp. 3d 907 (W.D. Va. 2025) .................................................................................. 12

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ............................................................................................. 14

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ............................................................................................... 11

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ............................................................................................... 11

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) ........................................................................................... 7, 8

*Garcia v. Albarran*,
No. 25-8055 (9th Cir. Dec. 23, 2025) .................................................................................... 7

*Goldie's Bookstore, Inc. v. Super. Ct.*,
739 F.2d 466 (9th Cir. 1984) ................................................................................... 13

*Hallett v. Morgan*,
296 F.3d 732 (9th Cir. 2002) ..................................................................................... 5

*Helling v. McKinney*,
509 U.S. 25 (1993) ...................................................................................................... 7

*Hernandez v. County of Monterey*,
110 F. Supp. 3d 929 (N.D. Cal. 2015) ...................................................................... 2

*In re Excel Innovations, Inc.*,
502 F.3d 1086 (9th Cir. 2007) ................................................................................. 12

*Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*,
389 U.S. 64, (1967) ..................................................................................................... 6

*Kesling v. Tewalt*,
476 F. Supp. 3d 1077 (D. Idaho 2020) ...................................................................... 5

*Kimberly v. Arms*,
129 U.S. 512 (1989) ..................................................................................................... 7

*Lewis v. Casey*,
518 U.S. 343 (1996) ................................................................................................... 14

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980) ................................................................................. 12

*Mansor v. U.S. Citizenship & Immigr. Servs.*,
345 F.R.D. 193 (W.D. Wash. 2023) ........................................................................ 10

*McGuckin v. Smith*,
974 F.2d 1050 (9th Cir. 1992) ................................................................................... 4

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024) ................................................................................. 8

*Mercado v. Noem*,
800 F. Supp. 3d 526 (S.D.N.Y. 2025) ....................................................................... 7

*Mizzoni v. Brooks*,
548 Fed. App'x 468 (9th Cir. 2013) ........................................................................... 1

*Nken v. Holder*
556 U.S. 418 (2009) ................................................................................................... 13

*Pablo Sequen v. Albarran*,
2025 WL 3283283 (N.D. Cal. Nov. 25, 2025) .......................................................... 7

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Ross*,
2020 WL 2527452 (E.D. Cal. May 18, 2020) ........................................................... 4

CORECIVIC'S REPLY TO EMERGENCY           iii                    3:25-CV-09757-MMC
MOTION TO STAY PENDING APPEAL

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......................................................................... 10

*Reno Air Racing Association, Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006) .......................................................................... 7

*Safari Club Int'l v. Bonta*,
2023 WL 3505373 (E.D. Cal. May 17, 2023) ................................................ 15

*Sali v. Corona Regional Medical Center*,
909 F.3d 996 (9th Cir. 2018) .......................................................................... 10

*Sampson v. Murray*,
415 U.S. 61 (1974)........................................................................................... 11

*Schmidt v. Lessard*,
414 U.S. 473 (1974)............................................................................................ 6

*Stevens v. Harper*,
213 F.R.D. 358 (E.D. Cal. 2002) ................................................................... 15

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .......................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)............................................................................................ 9

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 1
Fed. R. Civ. P. 23(a)....................................................................................... 9, 10, 11
Fed. R. Civ. P. 65 ..................................................................................................... 1
Fed. R. Civ. P. 23(b) ........................................................................................... 9, 10
Fed. R. Cvi. P. 23(b)(2)......................................................................................... 10

CoreCivic, Inc. files this Reply to Plaintiffs' Opposition to its Motion for Stay of Preliminary Injunction (Dkt. 105). Defendants do not oppose CoreCivic's request for a stay. For the following reasons, the Court should stay the February 10, 2026 Order pending the appeal.

## I.   CoreCivic Is Likely to Succeed on the Merits of the Appeal.

### A.   The Court Failed to Apply the Legal Standards for Granting Preliminary Injunctive Relief.

Plaintiffs do not dispute that CoreCivic raises serious questions regarding the likelihood of success on the merits of the appeal. Instead, they argue CoreCivic cannot demonstrate a likelihood of success and devote a significant portion of their Opposition to arguing the record supports a finding that "Defendants are failing to provide constitutionally adequate medical care at California City." (Dkt. 105 at 11.) But the Court did not make any finding that Defendants failed to ensure constitutionally adequate health care at the California City Detention Facility ("Facility"), much less that any such failure was systemic. To the contrary, it characterized Defendants as "trying to do their best" (Dkt. 75, R.T. 2/6/26 at 102:19–23), which is the opposite of deliberate indifference. *See Mizzoni v. Brooks*, 548 Fed. App'x 468, 468 (9th Cir. 2013) ("[B]y alleging that prison officials cleaned his cell to the best of their ability after he complained, Mizzoni essentially conceded that defendants did not know of or consciously disregard a serious risk to Mizzoni …").

Recognizing that the Court did not make findings during the February 6, 2026 hearing to support the extraordinary relief they convinced it to grant, Plaintiffs attempted to correct the error by adding conclusory language to the proposed Order stating: "Pursuant to Federal Rules of Civil Procedure 65 and 23, and having reviewed the Parties' filings and the argument of counsel, the Court finds that Plaintiffs have demonstrated that they are likely to prevail on the merits of their claims; that they will suffer irreparable harm if the Court does not issue relief; that the balance of equities tips in their favor; that the public interest lies in issuing a preliminary injunction." (Dkt. 66 at 8.) But this language was not supported by the Court's commentary during the hearing and is still insufficient to support the extremely broad scope of the injunctive relief ordered.

Plaintiffs' proposal to the Court began with having Defendants come up with a plan and appointing an independent monitor to review for compliance with Defendants' plan, which they

CORECIVIC'S REPLY IN SUPPORT      1      3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

claimed was "commonly done … in prison contexts." (Dkt. 75 at 51:25–52:1.) Plaintiffs cited a single case, *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015), where the defendants were ordered to propose a plan to address specific findings of constitutional and statutory violations that the court made following full discovery and complete briefing on summary judgment. Plaintiffs have not cited a case, either at the hearing or in their Opposition to CoreCivic's Emergency Motion to Stay, where a court ordered injunctive relief covering virtually all aspects of medical care and appointed a monitor without holding an evidentiary hearing and making express findings of systemic constitutional violations tied to the specific relief ordered. In the majority of the other cases cited by Plaintiffs where the court ordered a monitor, it did so only after a lengthy period of discovery followed by either a stipulated injunction or trial with specific findings of constitutional violations. Here, Defendants have not filed an answer or responsive pleading, discovery has not commenced, the Court has not held any evidentiary hearings or made any findings, and Defendants did not stipulate to supervision by a monitor.

Over the course of the hearing, Plaintiffs dropped the request that Defendants be ordered to develop a "detailed plan" as was done in *Hernandez* and substituted it with an extraordinarily far reaching and generalized "plan" of their own. The Court's initial reaction to Plaintiff's proposed order was disbelief:

> [W]ell, I can't do this. I mean, it's got all kinds of generic things well beyond what you were doing on the medical to start with. You have things like timely and responsive medical services. There's no way I can make an order that's just general like that.
>
> How is anybody going to know what they have to comply with? You told me there were a couple of things at the outset that you would deal with on the medical.

(Dkt. 75 at 61:11–18.) The Court noted that it was looking for "specifics as opposed to generics" from Plaintiffs that could be addressed in the brief period while the case was transferred. (*Id.* at 84:4–5.) No such specifics ever came. In their place, the Court articulated a general concern that unspecified harm might befall some unspecified detainees at the Facility in the time it would take to transfer the case to the Eastern District absent some measure of injunctive relief. (*Id.* at 86:6–21.) But that concern is wholly speculative. A preliminary injunction "cannot issue merely because

CORECIVIC'S REPLY IN SUPPORT          2          3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

it is possible that there will be an irreparable injury to the plaintiff." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citation omitted).

During oral argument on March 5, 2026, and in their Opposition, Plaintiffs relied heavily on an alleged delay in offsite specialty care for prostate cancer by Mr. Viera Reyes to support the need for injunctive relief. (Dkt. 99 at 90:24–91:24, 94:21–23; Dkt. 105 at 13, 16, 29.) But Plaintiffs have not shared the full story with the Court. Mr. Viera Reyes was seen by the urologist on February 12, 2026, when they discussed potential treatment options at length, and he told the urologist that he wished to wait 4–6 weeks to decide what treatment option to pursue. (Ex. 1: Chestnut Decl. at ¶¶ 10–11 and Attach. B at 4.) As a result, the urologist ordered an oncology consult *after* Mr. Viera Reyes made a treatment decision and ordered a follow-up visit in 4–6 weeks. (*Id.* at ¶¶ 12–13 and Attach. B at 4.) The urologist also ordered a catheter exchange in 3 weeks and a PET scan with normal turn around. (*Id.* at ¶¶ 13–14 and Attach B. at 4.) Thus, the delay in seeing the oncologist and receiving treatment was caused by Mr. Viera Reyes' own voluntary choice to wait 4–6 weeks to decide how to proceed, not anything CoreCivic or Defendants did.

During the catheter exchange appointment, which occurred as scheduled on March 3, 2026, Mr. Viera Reyes told the urologist that he wished to proceed with treatment for prostate cancer, and the oncology referral was made. (*Id.* at ¶¶ 15–16.) The urologist also ordered a stat PET scan because the initial PET scan had not yet been scheduled by Kern County. (*Id.* at ¶ 16 and Attach B. at 9.) Following this visit, the Facility called Kern County daily to check the status of the stat PET scan and were repeatedly told that the Facility would receive a call to schedule the appointment. (*Id.* at ¶ 19.) Because Kern County Medical Center does not have the ability to perform PET scans, they referred him to RadNet. (*Id.* at ¶¶ 20–21.) RadNet initially set an appointment of March 25, 2026, but cancelled the appointment, stating that it does not accept inmates. (*Id.* at ¶¶ 24–25.) Ultimately, an appointment was made for a stat PET scan for Mr. Viera Reyes at a hospital in Los Angeles, but the first available date was April 17, 2026. (*Id.* at ¶ 27.) This appointment has since been moved up and took place on March 24, 2025. (*Id.* at ¶ 28.) Mr. Viera Reyes saw the oncologist as scheduled on March 10, 2026, and has follow-up appointments with urology and oncology the week of April 6, 2026. (*Id.* at ¶¶ 17–18.)

CORECIVIC'S REPLY IN SUPPORT          3          3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

Plaintiffs are critical that Mr. Viera Reyes missed his February 2, 2026 appointment with the urologist. (Dkt. 105 at 13.) But this was due to a scheduling mistake. (Dkt. 75 at 8:13–25; Ex. 1 at ¶¶ 5–6.) Such an inadvertent error cannot support a constitutional violation. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) ("A defendant must ***purposefully*** ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.") (emphasis added)), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). After the mistake was discovered, the Facility promptly obtained a new appointment for Mr. Viera Reyes and ensured that he was transported to it. (*Id.* at ¶ 7.) Plaintiffs cannot point to any harm as a result of this brief delay, particularly given that when Mr. Viera Reyes saw the urologist a week later, he elected to hold off on treatment for an additional 4–6 weeks. *See id.* ("[W]hen, as here, a claim alleges 'mere delay of surgery,' a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'") (citation omitted).

Plaintiffs also point to alleged deficiencies in the care provided to Mr. Roque Campos and Mr. Gomez Ruiz, but both of them were released from the Facility prior to the February 6, 2026 hearing, and the Order will not address any alleged harm to them. (Ex. 1 at ¶¶ 30, 32.) When entering prospective injunctive relief, courts should look to current conditions and order relief that is narrowly tailored to address constitutional violations found at the time of the order. *See, e.g.*, *Cyntec Co., LTD. v. Chilisin Elecs. Corp.*, 2024 WL 3087973, at *3 (N.D. Cal. May 22, 2024) ("The Court should look to current circumstances as opposed to focusing on past procedural events and facts. Cyntec's arguments … are therefore irrelevant insofar as they do not reflect the 'current realties' the Court must consider in deciding whether a preliminary injunction shall issue.") (internal citation omitted); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Ross*, 2020 WL 2527452, at *9 (E.D. Cal. May 18, 2020) ("An injunction must be narrowly tailored to avoid the identified irreparable harm. It would seem obvious that any such tailoring must be accomplished based upon the current circumstances ….") (internal citation omitted).

Plaintiffs misstate the Declaration of Dr. Tiona. She acknowledged some delays in completion of initial comprehensive evaluations in the first few months after the Facility opened. (Dkt. 38-02 at ¶¶ 31–32.) None of them was "substantial," as Plaintiffs claimed. Of the 29 patients

identified in her Declaration, 16 had their initial comprehensive evaluation conducted in 14 days or less. (*Id.* at ¶ 31.) Of the patients whose evaluation took place more than 14 days after intake, the majority occurred in mid-September, when the Facility was experiencing large numbers of simultaneous intakes (*Id.*) Moreover, Plaintiffs have not identified any detainees who experienced harm as a result of receiving an evaluation more than 14 days after intake. And Dr. Tiona avowed that timeliness of evaluations has improved. (*Id.* at ¶ 32.)

With respect to availability of offsite appointment scheduling, Dr. Tiona acknowledged difficulties in finding certain specialists within a reasonable distance of California City who are contracted with ICE. (*Id.* at ¶ 47.) She also explained efforts by the Facility to secure additional specialists and facilitate new contracts with ICE and noted that in the first three months after activation, CoreCivic completed 65 offsite medical transports. (*Id.* at ¶¶ 47–48.) But as was apparent with Mr. Viera Reyes, not all specialists are willing to accept detained patients, which is a decision outside CoreCivic's control. *See Hallett v. Morgan*, 296 F.3d 732, 748–49 (9th Cir. 2002) (finding plaintiffs failed to establish deliberate indifference in transferring mentally ill inmate patients where the receiving institutions did not accept them). And those specialists who are willing to accept detained patients often do not have immediate availability.

As Dr. Tiona explains, CoreCivic experienced some expected initial growing pains associated with reactivating the Facility, but has taken measures to address issues and improve the delivery of health care to the detainees under its care. (Dkt. 38-02 at ¶¶ 52–55, 71–75.) The Court acknowledged that in a related case in the Eastern District,[1] Judge Thurston was familiar with what was going on at the Facility and found "a lot of [the complaints] appear to be just they really weren't set up to start when they did" and the conditions were improving. (Dkt. 75 at 33:2–6.) Under these circumstances, a finding of deliberate indifference is unsupported. *See Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1088 (D. Idaho 2020) (finding no deliberate indifference where prison officials undertook "reasonable measures, … which show that [they] have indeed been taking the risk seriously and considering how best to respond.").

---

[1] *Dignity Not Detention, et al. v. City of California, et al.*, 1:25-cv-01292-JLT-CDB (E.D. Cal.).

The Court also acknowledged that Judge Thurston "ruled expeditiously." (Dkt. 75 at 33:7–8.) Indeed, Judge Thurston issued a ruling denying the plaintiffs request for preliminary injunctive relief within just seven days of the case being assigned to her, despite the voluminous record. (*See* No. 1:25-cv-01292-JLT-CDB at Dkt. 26, 33.) While the Court here expressed concerns over what might happen in the time it takes to transfer the case to the Eastern District, by delaying the transfer, significantly more time has actually elapsed. As of the date of this filing, 46 days have elapsed since the Court indicated on the record it would transfer the case to the Eastern District.

### B.    The Preliminary Injunction Violates Rule 65.

Rule 65(d)(1) requires that every order granting an injunction "must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." The Court clearly recognized that Plaintiffs' proposed Order lacks the required specificity and detail. After reviewing Paragraph 1 of Plaintiffs' proposed Order, the Court stated, "[W]ell, I can't do this. I mean, it's got all kinds of generic things well beyond what you were doing on the medical to start with. You have things like timely and responsive medical services. There's no way that I can make an order that's just general like that." (Dkt. 75 at 61:9–16.) The Court went on to question, "How is anybody going to know what they have to comply with?" (*Id.* at 61:17–19.) The Court continued, "That's what this boils down to do it, do it right…. It says do it correctly. And ordinarily, that would not be a workable, in and of itself, injunctive order because then people would come back we are doing it fine." (*Id.* at 63:5–6, 10–14.)

Despite pointing out the fundamental deficiencies of Paragraph 1 of Plaintiffs' proposed Order, the Court was eventually persuaded that appointing a monitor could overcome them. But Rule 65 contains no such exception, and Plaintiffs have not cited any legal authority allowing a court to disregard Rule 65's express mandates when ordering injunctive relief. Binding Supreme Court precedent holds otherwise. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements") (citing *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, (1967) ("The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood,

CORECIVIC'S REPLY IN SUPPORT          6          3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.")). Moreover, appointing a monitor to avoid the Court having to adjudicate what the Court foresaw as inevitable disputes over whether Defendants are compliant with the Order's impermissibly vague provisions is an improper abdication of the Court's judicial responsibilities. *See Armstrong v. Brown*, 768 F.3d 975, 987–88 (9th Cir. 2014) (concluding delegation of authority to Rule 706 expert "to make findings that go to the very heart of this litigation—compliance with the remedial plan" and adjudicate disputes between the parties over whether non-compliance has occurred is impermissible) (citing *Kimberly v. Arms*, 129 U.S. 512, 514 (1989) ("[The court] cannot, of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers.")).

None of Plaintiffs' cited cases supports a different a result here. In *Helling v. McKinney*, 509 U.S. 25, 35–37 (1993), the court remanded for a determination whether an inmate was entitled to injunctive relief prohibiting prison authorities from subjecting him to environmental tobacco smoke when he had been transferred to a new prison with a no-smoking policy; there was no discussion regarding compliance with Rule 65. In *Reno Air Racing Association, Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006), the Ninth Circuit concluded that the temporary restraining order at issue was deficient for lack of specificity. Contrary to Plaintiffs' assertions, *Pablo Sequen v. Albarran*, 2025 WL 3283283, at *29–30 (N.D. Cal. Nov. 25, 2025), did not involve an analogous injunction mirroring the provisions at issue in Paragraph 1, but instead included far greater specificity and detail from which defendants could arguably determine what was required for compliance.[2] Likewise, *Mercado v. Noem*, 800 F. Supp. 3d 526, 579 (S.D.N.Y. 2025), included the requisite specificity and detail to satisfy Rule 65 and did not involve the provision of health care. In *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004), the Ninth Circuit upheld an injunction as satisfying Rule 65's specificity requirements where it commanded that AMC "modify its policies regarding companion seating to ensure that a companion of a wheelchair-

---

[2] Plaintiffs also fail to note that this case is pending an appeal of the preliminary injunction by the defendants. *See Garcia v. Albarran*, No. 25-8055 (9th Cir. Dec. 23, 2025).

bound patron be given priority in the use of companion seats ... [up until] ten (10) minutes prior to show time." It rejected AMC's argument that Rule 65 also required the district court "to elucidate *how* to enforce the injunction." *Id.* Unlike the Court's Order, which is reliant on the monitor to adjudicate compliance, the court in *A&M Records, Inc. v. Napster*, *Inc.*, approved the district court's use of a technical advisor to make recommendations subject to review by the district court but not "to displace the district court's judicial role." 284 F.3d 1091, 1097 (9th Cir. 2002). And in *Melendres v. Skinner*, 113 F.4th 1126, 1135 (9th Cir. 2024), the Ninth Circuit approved the district court's assignment to the monitor of "responsibilities related to the *implementation* of remedial measures—an executive function—rather than the *adjudication* of compliance with the injunction."

Plaintiffs are critical that Defendants do not dispute the specificity of the Order regarding attorney access, temperature-appropriate clothing and blankets, or outdoor recreation. (Dkt. 105 at 19.) In addressing the requirements of Rule 65, CoreCivic's Motion focused on Paragraph 1 of the Order because the language in that paragraph constitutes the most egregious violation of the Rule. But that by no means reflects a concession by CoreCivic that any portion of the Order is fully compliant with Rule 65. Arguably, Paragraphs 3 and 4(b) of the Order related to attorney access and outdoor recreation contain specific terms regarding what Defendants (and CoreCivic) are expected to do that they do not violate Rule 65(d)(1)(B) and (C). These paragraphs, however, still violate Rule 65(d)(1)(A) because the Court failed to make any findings as to why injunctive relief was ordered as to them. And Paragraph 4(a) related to "temperature-appropriate clothing and blankets" violates Rule 65(d)(1)(A), (B), *and* (C). This subparagraph is not specific in its terms and fails to provide sufficient detail for Defendants (and CoreCivic) to know whether any action is required. A reasonable reading of the Order is that Defendants are not required to do anything additional to comply when the Facility already provides temperature-appropriate clothing (jackets) and two blankets to every detainee free of charge. A subsequent dispute that has arisen between the parties after the issuance of the Order illuminates why Paragraph 4(a) violates Rule 65(d)(1)(B) and (C). While Plaintiffs' counsel has recently insisted that Defendants must provide a sweatshirt and sweatpants to each detainee, the plain language of Paragraph 4(a) does not require Defendants to do so. Plaintiffs could have requested that the Court include specific language in this

CORECIVIC'S REPLY IN SUPPORT 8 3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

subparagraph dictating that the Facility provide sweatshirts and sweatpants, or even that it provide "additional" temperature-appropriate clothing, but they did not. Paragraph 4(a) also violates Rule 65(d)(1)(A) because the Court did not make any findings supporting its issuance.

Because success is likely on appeal due to the Order's failure to satisfy Rule 65 and the Court's impermissible delegation of its adjudicatory role to the monitor to "cure" the violations of Rule 65, the Court should stay the Order pending appeal.

### C. The Court Failed to Follow the Legal Standard in Granting Provisional Class Certification.

A plaintiff wishing to depart from "the usual rule that litigation is conducted by and on behalf of the individual names parties only" must establish that class certification is appropriate under all the requirements of Federal Rule of Civil Procedure 23(a) and at least one requirement under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). "Actual, not presumed conformance with Rule 23(a) remains … indispensable." *Id.* at 351 (citation omitted). Class "certification is proper only if the … court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350 (citation modified and citations omitted).

Here, the Court made no inquiry into whether Rule 23(a) and (b) were satisfied. Instead, the Court merely inquired of Plaintiffs' counsel whether class certification was necessary. (Dkt. 75 at 49:16–19.) Plaintiffs' counsel initially responded, "I think Your Honor could issue a ruling without handling" the class-certification issue, then added that "essentially, class certification is appropriate because we represent a class of people …." (*Id.* at 49:20–2, 49:25–50:3.) The Court replied that the issue is not whether class certification was appropriate, but "why are you trying to get it?" (*Id.* at 50:7–8.) Plaintiffs' counsel skirted the question. Later in the hearing, the Court indicated that it was not inclined to grant class certification "because we already talked about you don't need it." (*Id.* at 70:1–3.) Plaintiffs' counsel then reversed course, stating, "[W]e want to make sure that this order runs to everyone in that facility, including people who aren't there yet and who aren't named as plaintiffs," and, "We don't want to be dealing with some mischievous motion about how if all of these plaintiffs were to be suddenly transferred out to another facility or deported then the Government comes in and says, oh, well this order is meaningless because you didn't have a

CORECIVIC'S REPLY IN SUPPORT
OF EMERGENCY MOT. TO STAY

9

3:25-CV-09757-MMC

provisional class cert." (*Id.* at 70:4–23.) With no further discussion or analysis, the Court simply adopted Plaintiffs' proposed language in the Order that states "all the requirements of Rule 23(a) and 23(b)(2) have been satisfied." (Dkt. 72 at 4.)

Plaintiffs assert that "a lengthy explanation or in-depth review of the record" or "conducting a mini-trial" is not required under Rule 23. (Dkt. 105 at 22.) They misplace reliance on *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005), where the court concluded that "[a]lthough the district court was succinct, it provided detailed, substantive examples of the common issues: (1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA." *Id.* at 962.  Plaintiffs also misplace reliance on *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1004 (9th Cir. 2018), where the court examined whether evidence presented at the class certification stage in support of certification must be admissible, concluding that it need not be. These cases are readily distinguishable because the admissibility of Plaintiffs' evidence is not at issue, and the Court failed to address any facts relating to class certification or reasons that Rule 23's requirements have been met.

Plaintiffs include multiple citations to *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), but in that case, unlike here, the district court issued a 23-page Order that the Ninth Circuit characterized as a "careful, thorough, and rigorous opinion" granting class certification. *Id.* at 672. Likewise, in *Mansor v. United States Citizenship and Immigration Services*, 345 F.R.D. 193, 203 (W.D. Wash. 2023), the district court considered each of the relevant Rule 23 factors, despite the defendants' failure to challenge the proposed class under any of the Rule 23(a) or 23(b) factors, instead arguing that the proposed class was an impermissible fail-safe class.

Plaintiffs claim that CoreCivic mischaracterizes the holding in *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019), arguing that *it* does not "support CoreCivic's contention that an absence of explicit factual findings equates to a failure to conduct the 'rigorous analysis' required by Rule 23. (Dkt. 105 at 24.) But this argument ignores the Ninth Circuit's explanation in *B.K.* that "[o]nly a separate class certification analysis, recognizing the difference between the due

process claims and the Medicaid claim as we have explained in this opinion, ***and making factual findings in conformity with that legal framework***, will ensure that 'after a rigorous analysis, ... the prerequisites of Rule 23(a) have been satisfied.'" 922 F.3d at 977 n.6 (emphasis added).

CoreCivic is likely to succeed on the merits of its appeal of the Order granting provisional class certification because the Court failed to conduct any analysis, much less the "rigorous analysis." *See B.K.*, 922 F.3d at 977 (vacating and remanding class certification order where "the district court did not make factual findings"). This was an abuse of discretion. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (finding the district court applied "impermissible legal criteria" by accepting the allegations in the complaint as true, rather than "resolving the critical factual disputes" overlapping with the Rule 23(a) requirements). The Court should stay the Order pending CoreCivic's challenge to the Court's certification order.

## II. CoreCivic Will Suffer Irreparable Harm Absent a Stay Pending the Appeal.

Plaintiffs claim that economic or monetary harm is not generally considered irreparable. (Dkt. 105 at 25.) But in *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021), the court recognized an exception to the general rule that economic harm is not considered irreparable "where parties cannot typically recover monetary damages flowing from their injury." The court further acknowledged that "[i]ntangible injuries may also qualify as irreparable harm, because such injuries 'generally lack an adequate legal remedy.'" *Id.* It thus concluded that a significant change in organizations' programs was an intangible and irreparable injury. *Id.*

None of the other cases Plaintiffs cite regarding economic/monetary harm have similar facts as this case or a similar posture. In *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020), the alleged monetary harm was the "substantial cost to healthcare providers and taxpayers by uninsured immigrants," which the court concluded was unsupported by the record, and the alleged injury was to third parties (health care providers and "the economy in general") rather than the government, which fails to meet the *Nken* standard that "the *applicant* will be irreparably injured absent a stay"). In *Sampson v. Murray*, 415 U.S. 61, 90 (1974), the Supreme Court concluded that a discharged government employee's temporary loss of income was not "irreparable" where the legislative history of the Back Pay Act "suggests that Congress contemplated that it would be the usual, if not

the exclusive, remedy for wrongful discharge." In *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1202–03 (9th Cir. 1980), the court concluded that the Coliseum's alleged lost revenues from its inability to acquire an NFL team did not constitute an irreparable injury where the lost revenues would be compensable by a damages award should it prevail on the merits, and it was undisputed that the Coliseum had strong college football attractions. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007), was an appeal of a bankruptcy proceeding in which both the bankruptcy court and BAP engaged in speculation that arbitration might result in inconsistent judgments based on a potential disagreement that was unsupported by any plausible legal theory. In *Doe v. Noem*, 783 F. Supp. 3d 907, 927 n.10 (W.D. Va. 2025), the court concluded that a student who lost F-1 visa status suffered multiple types of irreparable harm, including financial consequences due to inability to complete his academic program for which he took out loans, which will not be recoverable under 5 U.S.C. § 702.

Here, the alleged injury is to CoreCivic, not unrelated and nebulous third parties like in *Doe #1*. This is not a wage action for which the Back Pay Act would provide a remedy, and Plaintiffs have not cited any legal authority under which a damages award would be available to CoreCivic if it were to prevail on the merits of its appeal. Indeed, even if CoreCivic were to be the prevailing party, the Court would not assess fees against Plaintiffs, who may be indigent.

Plaintiffs further assert that "CoreCivic's additional claimed harms are both cursorily asserted and unpersuasive," and attack it ad hominem, stating "CoreCivic would no doubt prefer to operate California City in the dark." (Dkt. 105 at 27.) This is untrue. The Facility is subject to a multitude of inspections, including by the California Department of Justice, Disability Rights California, Kern County, California City, State and Federal lawmakers, ICE, the Nakamoto Group, and the Office of Detention Oversight, ensuring no shortage of transparency. Plaintiffs' again assert that appointment of a monitor "is often done in correctional and detention settings" but have cited no instances in which a court has appointed a monitor under similar circumstances—prior to Defendants answering, prior to the commencement of discovery, and prior to any finding of constitutional violations. Nor have Plaintiffs cited any instances in which a monitor was appointed to inspect a non-party's facility, policies, and procedures and interview its staff without affording

CORECIVIC'S REPLY IN SUPPORT          12          3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

it any due process. And while Plaintiffs assert the monitor will be neutral, they selected him and have already engaged in significant ex parte communications with him.

Plaintiffs cite the finding in *United States v. California*, 921 F.3d 865, 873 (9th Cir. 2019), that the government "did not present compelling evidence" that "inspections conducted by the California Attorney general harmed facilities' detention operations." But there, the court affirmed the denial of a preliminary injunction sought by the United States as to provisions of California Assembly Bill 103 requiring inspections of immigration facilities that duplicated inspection requirements otherwise mandated by California law. Here, the monitor's inspection of the Facility, interviews of staff and detainees, and unfettered access to CoreCivic's electronic health records do not duplicate pre-existing inspection requirements. Nor are they mandated by California law.

Plaintiffs misplace reliance on a finding in *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984), that "a purported constitutional claim was 'too tenuous' to constitute irreparable harm." (Dkt. 105 at 27.) That finding was based on facts that showed no equal protection violation.  The court did not hold, as Plaintiffs suggest, that a constitutional violation alone is too tenuous to support irreparable harm.  Indeed, it held that "[a]n alleged constitutional infringement will often alone constitute irreparable harm." *Id.*

Plaintiffs finally argue that CoreCivic "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." But that is what is improper about the Order—it enjoins CoreCivic without any finding of constitutional violations.

**III.     The Parties Will Not Be Harmed by a Stay of the Order Pending the Appeal.**

The third *Nken* factor is whether issuance of the stay will substantially injure the other parties.  *Nken v. Holder,* 556 U.S. 418, 434 (2009). Here, Defendants do not oppose CoreCivic's request for a stay pending an appeal of the Order. Nor will they be harmed by a stay. Indeed, staying the Order while the Ninth Circuit determines whether the Court applied the correct legal standards will avoid the irreparable harms that Defendants identified will result from granting Plaintiffs' request for a preliminary injunction. (*See* Dkt. 38 at 30–31.)

Plaintiffs also will not be harmed by a stay pending appellate review of the Order.  Their purported injury is based on conclusory allegations of speculative harm to class members,

CORECIVIC'S REPLY IN SUPPORT             13                    3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

supported by only a "few examples" of isolated and sporadic events that fall far short of establishing irreparable harms due to systemic deficiencies that the Court has ordered preliminary injunctive relief to address. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."). Moreover, those "few examples" were from events in January 2026, not on current conditions. In their Opposition, Plaintiffs failed to identify any harm to a class member that has occurred since then, let alone in the 42 days that have passed since the Order. If such a harm were to arise pending appeal of the Order, a stay would not prevent Plaintiffs from filing a temporary restraining order to address that issue.  Plaintiffs will thus suffer no harm. Further, the parties will suffer no harm because this case is still in its infancy as Defendants have not filed a responsive pleading or answer, and the parties have conducted no discovery. Nonetheless, a stay of the Order pending the appeal will not stay the proceedings or otherwise prevent the Court from transferring the case or addressing any other issues that may arise.

**IV.     The Public Interests Favor a Stay of the Order Pending the Appeal.**

Where, as here, the government is a party, the balance of equities and the public interests factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  Thus, the irreparable harms to Defendant's sovereign and compelling government interests identified in their opposition to the preliminary injunction merge with the public interests in this case.

Plaintiffs argue, however, that it is always in the public interest to prevent the violation of their constitutional rights.  This argument fails because it improperly assumes that the Court has found a violation of their constitutional rights. It has made no such finding. Nor does the record support one. To obtain a systemwide injunction, Plaintiffs were required to establish that they were injured by a systemically deficient policy or practice and that Defendants caused their injury by being deliberately indifferent to their risk of harm. *See Lewis v. Casey*, 518 U.S. 343, 359 (1996) (holding "two instances were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief.") (citing *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 417 (1977) ("[O]nly if there has been a systemwide impact may there be a systemwide remedy.")). Plaintiffs could not rely on discrete and isolated incidents to establish their claim or to obtain

CORECIVIC'S REPLY IN SUPPORT                 14                    3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

systemwide injunctive relief. *See*, *e.g.*, *Stevens v. Harper*, 213 F.R.D. 358, 373 (E.D. Cal. 2002) ("Plaintiffs cannot have it both ways by making broad allegations of institutional failure, yet providing class representatives who have suffered discrete and isolated incidents of harm.").

Plaintiffs not only insufficiently rely on discrete and isolated events, but the Court's finding that Defendants were doing their best under difficult circumstances belies any suggestion that they were deliberately indifferent to a particular risk of harm. (*See, e.g.*, Dkt. 75 at 102:11–25 ["I'm not finding there are any really bad people here, if I make certain findings. And it looks to me like they're trying to do their best as opposed to saying I don't care about these people, let this guy just rot away with his diabetic ulcers or whatever, that they are trying to do their best, but it's just beyond them at the moment and that they may need some help in how they're going to deal with it."). Defendants' cooperation with Plaintiffs to address Mr. Viera Reyes' medical issues further disproves any claim that they were deliberately indifferent to any risk of harm. (*See* Dkt. 34.)

Lastly, Plaintiffs incorrectly suggest that denying a stay pending appeal would preserve the status quo. This misstates the posture of this case because the Order dramatically alters the status quo by ordering the implementation of systemwide changes, supervised by a court-appointed external monitor. *See Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (explaining mandatory preliminary injunction is subject to heightened scrutiny because it alters the status quo). CoreCivic' request to stay the Order pending the appeal thus preserves the status quo. And because the Order has resulted in continuing litigation by the parties over the appointment of a qualified monitor who can be neutral and the scope of his authority, staying the Order until the appeal is resolved will promote the public interest by preserving judicial and party resources. *See, e.g.*, *Safari Club Int'l v. Bonta*, 2023 WL 3505373, at *1 (E.D. Cal. May 17, 2023) ("Because this case primarily involves questions of law that are pending on appeal, a stay of the proceedings until those questions are resolved will conserve judicial and party resources.").

## V.    Conclusion.

For the reasons above and those stated in CoreCivic's Motion, this Court should stay the Order pending the appeal.

CORECIVIC'S REPLY IN SUPPORT                    15                    3:25-CV-09757-MMC
OF EMERGENCY MOT. TO STAY

DATED this 24th day of March 2026.

STRUCK LOVE ACEDO, PLC


By /s/ Daniel P. Struck
    Daniel P. Struck
    Dana M. Keene
    Shannon L. Knorr

    Nicholas H. Rasmussen
    McCORMICK, BARSTOW, SHEPPARD,
    WAYTE & CARRUTH LLP

*Attorneys for Intervenor CoreCivic, Inc.*